IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GRANT BIRCHMEIER, STEPHEN PARKES, SUSAN VIGUS, and REGINA STONE, on behalf of themselves and a class of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC.,<br><br>*Defendants*. | Case No. 1:12-cv-04069<br><br>Honorable Matthew F. Kennelly |

**PLAINTIFFS' MOTION FOR EXTENSION OF
TIME TO FILE MOTION FOR CLASS CERTIFICATION**

Plaintiffs Grant Birchmeier, Stephen Parkes, Susan Vigus, and Regina Stone ("Plaintiffs"), pursuant to Federal Rules of Civil Procedure 6(b) and 16(b)(4), respectfully move the Court for a sixty (60) day extension of time, from September 20, 2013 to November 19, 2013, to file their motion for class certification, as well as for an extension of all corresponding class certification related deadlines. In support of their Motion, Plaintiffs state as follows:

**INTRODUCTION**

This case is a putative class action brought pursuant to the Telephone Consumer Protection Act and arising from massive, unsolicited robo-call campaigns that were designed to sell vacation packages and timeshare properties for Defendants The Berkley Group, Inc. ("Berkley"), Caribbean Cruise Line, Inc. ("CCL"), and Vacation Ownership Marketing Tours, Inc. ("VOMT") (Berkley, CCL, and VOMT, are collectively referred to as "Defendants"). The robo-call campaigns involved

1

millions of calls to cellular and residential telephones, all made without the consent of the called party, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. At issue in the current Motion is Plaintiffs' request to modify the deadline for class certification, as a result of Defendants' refusal to produce information related to a portion of the robo-calls at issue in this lawsuit, and with that, the Classes' claims. The crux of the issue is as follows:

Plaintiffs' Consolidated Complaint alleges that Defendants effectuated robo-call campaigns by hiring others to make robo-calls on their behalf. (Consolidated Complaint "Complaint" or "Compl.," Dkt. 102.) Each call contained a prerecorded voice offering the called party a "free cruise" in exchange for taking a survey, and each was a guise to sell expensive vacation packages and timeshare interests for Berkley, CCL, and VOMT. (*Id.*) Some of the calls offered a "free cruise" in exchange for taking a purported political survey.[1] Other calls similarly offered a "free cruise," but appear to have offered a more generic survey.

As each call, regardless of the content of the survey, violated the TCPA, Plaintiffs' Consolidated Complaint seeks to certify the following two classes:

> **Cellular Telephone Class:** All persons in the United States to whom (1) one or more telephone calls were made by, on behalf of, or for the benefit of the Defendants; (2) purportedly offering a free cruise in exchange for taking an automated survey; (3) which delivered a message using a prerecorded or artificial voice; (4) to a telephone number assigned to a cellular service; (5) since May 24, 2008.
>
> **Landline Telephone Class:** All persons in the United States to whom (1) one or more telephone calls were made by, on behalf of, or for the benefit of the Defendants; (2) purportedly offering a free cruise in exchange for taking an automated survey; (3) which delivered a message using a prerecorded or artificial voice; (4) to a residential landline telephone number; (5) since May 24, 2008.

---

[1] Plaintiffs refer to political survey calls, meaning those robo-calls that asked the called party to take a political survey in exchange for a "free cruse." Defendants' non-political survey calls refer to those robo-calls that asked the called party to take a survey that was not political in nature. Plaintiffs' reference to political vs. non-political calls is only for the sake of clarifying the disputed discovery issues. It is not an admission that any of the calls involved legitimate political surveys.

(the "Proposed Classes") (Compl. ¶ 31.)

Although Plaintiffs have diligently pursued discovery geared towards the certification of these Proposed Classes, to date, Defendant CCL has refused to produce any information about the non-political survey calls, taking the position that such information is outside the scope of Plaintiffs' claims. Given its position, CCL has refused to provide any documents, respond to interrogatories, or provide testimony from witnesses who were prepared to provide details about any of Defendants' non-political surveys calls. While Plaintiffs have attempted to meet and confer with CCL on these issues, CCL very recently confirmed that they would not produce information about their non-political surveys absent a compelling order from the Court.

Consequently, given the deadline for Plaintiffs to move for class certification, Defendants' refusal to provide relevant documents and information relating to non-political calls has left Plaintiffs with only three options: (i) move for class certification on both the political calls and non-political calls despite that the current record is not fully developed with respect to the non-political calls; (ii) move for certification with respect to only a subset of the Proposed Classes (*i.e.* the individuals that received political survey calls), while at the same time separately seeking discovery related to the non-political calls with the intention of filing a second motion for certification at a later date; or (iii) seek a brief extension of time to move for class certification in order to obtain discovery on the non-political calls, and move to certify the Proposed Classes in their entirety once that discovery is complete.

Plaintiffs respectfully submit that moving for certification now, or alternatively twice, is not in the best interests of the putative class members and would be unduly burdensome to the Parties and the Court. Therefore, Plaintiffs believe option three is the best course of action.[2] In line with

---

[2] Should the Court deny the instant Motion, Plaintiffs respectfully request seven (7) days from the date of the Court's ruling to file its motion for class certification as to the individuals who

3

that proposal, Plaintiffs are concurrently filing a motion to compel.

As such, this Motion asks the Court to allow Plaintiffs an additional sixty (60) days to move for class certification, so that Plaintiffs may complete the necessary discovery relating to non-political calls before moving for class certification. As explained in detail below, as Plaintiffs have been diligent in their discovery efforts to date, and the putative class members could be prejudiced by any other course of action, there is good cause for the requested extension. As such, for the reasons stated below, Plaintiffs' requested extension should be granted.

## RELEVANT FACTUAL BACKGROUND & PROCEDURAL HISTORY

*Plaintiffs' Discovery Efforts*

Plaintiffs filed their Consolidated Complaint on May 2, 2013. (Dkt. 102.) Since that time, Plaintiffs have continued to diligently litigate this case and have actively sought discovery into all of Defendants' automated survey marketing campaigns that are the subject of the Complaint. Specifically, in the last four months Plaintiffs have served six (6) sets of discovery on Defendants, issued various non-party subpoenas, and taken depositions of each of Defendants' corporate representatives. (*See* Declaration of Rafey S. Balabanian ("Balabanian Decl."), attached hereto as Exhibit 1 at 4.) Plaintiffs have also responded to a total of twenty-eight (28) sets of discovery from Defendants—including Requests to Produce, Requests to Admit, and Interrogatories that were served separately on every Plaintiff—and reviewed thousands of pages of documents related to the political calls. (*Id.* ¶ 5.)

Nevertheless, and despite acknowledging that they were responsible for effectuating calls that offered both political and non-political surveys (all in exchange for a "free cruise"), CCL has taken the position that only the politically based surveys are relevant and discoverable—everything

---

received the political survey calls, as well as leave to file a second motion for certification as to the non-political calls, once discovery on those calls is complete.

4

else is off limits. For example, during Plaintiffs' August 2, 2013 deposition of CCL's Marketing Director Jennifer Poole, Ms. Poole explained that Dan Lambert—the owner and operator of CCL—had instructed her not to answer questions that did not specifically relate to political surveys. (*See* Excerpts for Jennifer Poole's August 2, Deposition, attached hereto as Exhibit 2 at 30-32.) During that deposition, and upon Plaintiffs' request, the Parties contacted the Court, which addressed the issue by telephone, ruling that Plaintiffs could seek information about the non-political calls (*see* August 2, 2013 Transcript of Telephonic Hearing, a true and accurate copy of which is attached hereto as Exhibit 3 at 13:9-24) (Plaintiffs entitled to ask about "other surveys that were done in connection with offering cruises" because "essentially, the thrust of the[ir] complaint is that a survey is done, essentially, as a pretext").

Based on the Court's ruling during the Poole deposition, Plaintiffs believed that CCL would thereafter provide them with information about the non-political calls.[3] However, CCL's August 16, 2013 Responses to Plaintiffs' Second Set of Interrogatories and Requests for Production were again limited to the political surveys only. Therefore, that same day, Plaintiffs sent counsel for VOMT and CCL a meet and confer letter, pursuant to Local Rule 37.2, in effort to promptly resolve the Parties' issues. (*See* August 16, 2013 Letter from S. Rauscher to J. Backman, a true and accurate copy of which is attached hereto as Exhibit 4.) The letter reiterated that Plaintiffs were entitled to information about *all* of Defendants' automated calls, requested that CCL supplement its production by August 21st (given the time spent in discovery and Plaintiffs' upcoming class certification deadline), and explained that if CCL refused to do so, Plaintiffs would "proceed accordingly by seeking relief from the Court." (*Id.*)

---

[3] The Parties again addressed the issue at the August 7, 2013 status conference, at which time the Court invited formal briefing on the issue, but advised the Parties that it was unlikely that it would change its initial ruling. As such, Plaintiff had further reason to believe that discovery on the non-political calls would be forthcoming.

5

On or around September 6, CCL's Counsel responded to Plaintiffs' August 16 Letter and produced roughly 6,000 pages of documents, but none of those documents related to non-political calls. That letter and supplemental production (which related only to political calls) for the first time confirmed that Defendants had no intention of producing any information related to Defendants' non-political survey calls without a further Court order. (*See* September 6, 2013 Letter from J. Backman to S. Rauscher & E. Rapp, attached hereto as Exhibit 5.)

*Plaintiffs' Motion for Class Certification*

The Court's August 23, 2013 Minute Order set up the briefing schedule for Plaintiffs' Motion for Class Certification as follows:

| | |
|---|---|
| **Plaintiffs' Motion for Class Certification:** | September 20, 2013 |
| **Defendants' Opposition to Class Certification:** | October 21, 2013 |
| **Plaintiffs' Reply in Support of Class Certification:** | November 4, 2013 |

(Dkt. 133.)[4] Plaintiffs, however, now seek a sixty (60) day extension of their deadline to move for class certification, so that they may continue pursuing discovery on Defendants' non-political calls with the goal of ultimately filing a single motion for class certification that encompasses all of Defendants' automated surveys.

## ARGUMENT

Federal Rule of Civil Procedure 16 provides that a schedule may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Similarly, Federal Rule of Civil Procedure 6 states that "[w]hen an act may or must be done within a specified time, the court may,

---

[4] According to the Court's May 16, 2013 Minute Order, Plaintiffs' Motion for Class Certification was originally due on September 6, 2013, with the deadline for Defendants' Opposition and Plaintiffs' Reply set for October 7th & 21st, respectively. (Dkts. 112 & 114.) On August 23, 2013, Plaintiffs filed an unopposed motion to extend the time for Plaintiffs to file their class certification motion, as well as to extend all corresponding deadlines by two weeks. (Dkt. 131.) On August 27, 2013, the Court granted Plaintiffs' request, establishing the current briefing schedule set forth above. (Dkt. 133.)

6

for good cause, extend the time…before the original time or its extension requires." Fed. R. Civ. P. 6(b). Under either Rule, good cause turns on whether the moving party exercised due diligence. *Masonite Corp. v. Craftmaster Mfg., Inc.*, No. 09 CV 2131, 2011 WL 1642518, at *2 (N.D. Ill. Apr. 29, 2011). "Courts enjoy wide latitude in managing their dockets" and determining if "good cause" exists when "ruling on motions to continue." *Krukowski v. Omicron Techs., Inc.*, No. 10 CV 5282, 2012 WL 3841491, at *3 (N.D. Ill. Aug. 29, 2012) (citing *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998)). A party "demonstrates sufficient good cause" to extend a discovery related deadline "when it shows that, despite [its] diligence, the established timetable could not be met." *Id.* Here, there should be no question that "good cause" exists to enlarge the deadline for Plaintiffs to move for class certification.

There can be no doubt that Plaintiffs have diligently pursued discovery in this case. Indeed, in the last four months alone, Plaintiffs have issued a total of six (6) sets of discovery to Defendants, and collectively responded to a total of twenty-eight (28) sets of discovery served on them by Defendants. (Balabanian Decl. ¶¶ 3 & 4.) Plaintiffs have also issued numerous third-party subpoenas to individuals and entities likely in possession of crucial information about Defendants' "free cruise" marketing campaigns, taken the deposition of each of Defendants' corporate designees, CCL's Marketing Director, and Jacob DeJongh of Economic Strategy Group (one of the individuals who drafted and recorded the surveys). In addition, the named Plaintiffs are scheduled to sit for their own depositions in the upcoming week. (*Id.*) Further, Plaintiffs have reviewed thousands of pages of documents from Defendants and third parties—many of which have been produced only in the last two weeks—and will continue to do so as additional third-party productions are forthcoming. (*Id.* ¶ 4.)

As a result of such diligence, Plaintiffs have uncovered a significant amount of information about Defendants' automated survey calls, including that they: (i) contained a materially identical

offer for a "free cruise" in exchange for taking an automated survey; (ii) were made by, or for the benefit, of Defendants; and (iii) numbered in the millions. (*Id.* ¶ 5.) In addition, for the political calls, Plaintiffs have learned, among other things: (i) the specific individuals responsible for physically executing the calls; (ii) the manner and method used to record them; and (iii) how the class members' numbers were obtained. (*Id.* ¶ 6.)

Plaintiffs have likewise been diligent in attempting to obtain information about the non-political surveys more specifically as well, seeking this discovery through written requests—and also from Defendants' corporate representatives during their depositions. (*Id.* ¶ 7.) Nevertheless, CCL has stonewalled each attempt by Plaintiffs to get at such information. (*Id.* ¶ 8.) Moreover, Plaintiffs repeatedly conferred with CCL in effort to resolve their disagreement on this topic and exchanged various letters and emails in support of their position in an attempt to do so. (*Id.* ¶ 9.) However, given the date on which CCL actually confirmed their refusal to produce such information (September 6, 2013), the timetable to obtain this information prior to the class certification deadline could not be met. *See Krukowski*, 2012 WL 3841491, at *3.

Furthermore, requiring Plaintiffs to move for certification of the Proposed Classes in their entirety now, given the lesser developed record related to the non-political survey calls, may result in prejudice to the putative Classes. *See Hollis v. Defender Sec. Co.*, No. 1:09-CV-01178-WTL-JMS, 2010 WL 1137485, at *2 (S.D. Ind. Mar. 19, 2010) ("Rule 16 can and does consider prejudice as part of its 'good cause' analysis.") (citing *Kortum v. Raffles Holdings, Ltd.*, 2002 U.S. Dist. LEXIS 21252, at *17, 2002 WL 31455994 (N.D.Ill. 2002)). This is particularly true given that, as recently as DeJongh's August 29, 2013 deposition,[5] Plaintiffs learned that Susan Vigus, one of the Named Plaintiffs, likely was the recipient of only Defendants' non-political calls. Additionally, the alternative approach of

---

[5] Plaintiffs originally issued a subpoena to Jacob DeJongh to testify at civil deposition, as well as for the production of documents, on June 28, 2013, but he was initially unresponsive.

8

moving for certification with respect to only a subset of the calls (those involving political surveys only) and filing a separate certification motion for the non-political calls once discovery is completed (to the extent the Court allows that)—would have a different, but equally relevant effect, in that it would create inefficiencies and unnecessarily burden the Parties and the Court. To be sure, such action would require both the Parties and the Court to address potentially duplicative arguments, pursue and oversee the case on dual tracks, and ultimately hinder the overall natural progression of this action. Thus, the judicial economy gained by permitting additional discovery so that Plaintiffs may file one comprehensive class certification brief also favors granting Plaintiffs' request. *See id.*[6]

Finally, as the Parties have at all times anticipated that discovery would continue beyond the briefing of class certification, and no other deadlines have been set, no other scheduled deadlines will be disrupted or need to be changed. *See Gould v. Motel 6, Inc.*, No. CV 09-8157 CAS FMOX, 2011 WL 759472, at *5 (C.D. Cal. Feb. 22, 2011) (finding that "defendants will not be unduly prejudiced…particularly in light of the fact that discovery is ongoing" and granting the plaintiffs' request to continue the filling date "so that the motion for class certification may be properly briefed").

In the end, granting an extension to give Plaintiffs the opportunity to continue pursuing discovery with the goal of filing a unified motion for certification that includes all of Defendants' automated "free cruise" survey robo-calls, rather than pursuing the alternative piecemeal approach, would best serve the interests of the Parties and the Court, and would not be unduly burdensome or

---

[6] Any argument by Defendants that they will be burdened by Plaintiffs' attempts to obtain additional discovery is better suited as a response to Plaintiffs' motion to compel. As discovery in this case remains ongoing and class definitions are amendable, *see* Fed. R. Civ. P. 23(c)(1)(C) ("[a]n order that grants or denies class certification may be altered or amended before final judgment"), Plaintiffs will continue to pursue discovery relating to non-political calls (subject, of course to the Court's approval), regardless of when their certification motion is filed. Nevertheless, the information sought is unquestionably relevant and greatly outweighs any potential burden Defendants might suffer as a result of requiring its production.

prejudicial to anyone. Thus, because "good cause" exists to extend the class certification deadline and to allow the case to proceed down this course, Plaintiffs respectfully request that the Court extend the deadline for Plaintiffs to move for class certification sixty (60) days, as well as any and all related deadlines.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court grant its Motion to extend the deadline for Plaintiffs to move for class certification sixty (60) days, and to enter the following schedule for class certification: (i) Plaintiffs' Motion for Class Certification is now to be filed by November 19, 2013; (ii) Defendants' Opposition to Plaintiffs' Motion for Class Certification is to be filed by December 19, 2013, and (ii) Plaintiffs' Reply Brief is to be filed by January 2, 2014.

Alternatively, should the Court deny the instant Motion, Plaintiffs respectfully request seven (7) days from the date of the Court's ruling to file its motion for class certification as to the individuals who received the political survey calls, as well as leave to file a second motion for certification as to the non-political calls, once discovery on those calls is complete.

Date: September 20, 2013                             By: /s/ Rafey S. Balabanian

| Jay Edelson | Scott R. Rauscher |
| --- | --- |
| Rafey S. Balabanian | Michael Kanovitz |
| Christopher L. Dore | Jonathan I. Loevy |
| Eve-Lynn J. Rapp | LOEVY & LOEVY |
| EDELSON LLC | 312 N. May Street, Suite 100 |
| 350 North LaSalle Street, Suite 1300 | Chicago, Illinois 60607 |
| Chicago, Illinois 60654 | Telephone: (312) 243-5900 |
| Telephone: (312) 589-6370 | Email: scott@loevy.com |
| Email: jedelson@edelson.com | mike@loevy.com |
| rbalabanian@edelson.com | jon@loevy.com |
| cdore@edelson.com | |
| erapp@edelson.com | *Counsel for Birchmeier and Parkes, and Interim Co-Lead Class Counsel* |
| *Counsel for Stone, and Interim Co-Lead Class* | |

10

| *Counsel* | |
|---|---|
| Scott D. Owens<br>LAW OFFICES OF SCOTT D. OWENS, ESQ.<br>664 East Hallandale Beach Boulevard<br>Hallandale, Florida 33009<br>Telephone: (954) 306-8104<br>Email: scott@scottdowens.com<br><br>*Counsel for Stone* | George Lang<br>ANDERSON & WANCA<br>3701 Algonquin Road<br>Suite 760<br>Rolling Meadows, Illinois 60008 Telephone: (847) 368-1500<br>Email: glang@andersonwanca.com<br><br>John S. Steward<br>Steward Law Firm, LLC<br>1717 Park Avenue<br>St. Louis, Missouri 63104<br>Telephone: (314) 571-7134<br>Email: Glaw123@aol.com<br><br>Max G. Margulis<br>Margulis Law Group<br>28 Old Belle Monte Dr.<br>Chesterfield, MO 63017<br>Telephone: (636) 536-7022<br>Email: maxmargulis@margulislaw.com<br><br>*Counsel for Vigus* |

## CERTIFICATE OF SERVICE

I, Eve-Lynn J. Rapp, an attorney, hereby certify that on September 20, 2013, I caused the foregoing to be filed by the Court's CM/ECF system and to be served on counsel of record for all Defendants.

| | |
|---|---|
| Brian P. O'Meara<br>bomeara@mcguirewoods.com<br>McGuire Woods LLP<br>77 West Wacker Drive, Suite 1400<br>Chicago, Illinois 60601<br>Telephone: (312) 849-8100<br>Facsimile: (312) 849-3690<br><br>M. Peebles Harrison<br>peebles@outerbankslaw.com<br>Rose Harrison & Gilreath, P.C.<br>7000 Blue Jay St., Suite 1<br>P.O. Box 405<br>Kill Devil Hills, NC 27948<br>Telephone: (252) 480-1414<br>Facsimile: (242) 480-1765<br><br>*Attorneys for Defendant The Berkley Group, Inc.* | Richard Epstein<br>richard.epstein@gmlaw.com<br>Jeffrey Backman<br>jeffrey.backman@gmlaw.com<br>GREENSPOON MARDER, P.A.<br>200 East Broward Blvd., Suite 1500<br>Fort Lauderdale, FL 33309<br>Telephone: (954) 734-1853<br>Facsimile: (954) 213-0140<br><br>Timothy A. Hudson<br>thudson@tdrlawfirm.com<br>Tabet DiVito Rothstein<br>209 South LaSalle Street, 7th Floor<br>Chicago, Illinois 60604<br>Telephone: (312) 762-9450<br><br>*Attorneys for Defendants Vacation Ownership Marketing Tours, Inc. and Caribbean Cruise Line, LLC* |

/s/ Eve-Lynn J. Rapp