| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |

3

4   GRANT BIRCHMEIER, et al.,          )

5                     Plaintiffs,   )   Docket No. 12 C 4069
                                     )
6           vs.                      )
                                     )
7   CARIBBEAN CRUISE LINE, INC.,     )   Chicago, Illinois
    et al.,                          )   September 26, 2013
8                                    )   1:35 p.m.
                     Defendants.     )

9

10                   TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE MATTHEW F. KENNELLY

11

12  APPEARANCES:

13

14  For the Plaintiff:     LOEVY & LOEVY
                               BY:  MR. SCOTT R. RAUSCHER
                               312 North May Street, Suite 100
15                             Chicago, Illinois  60607

16

17                         EDELSON LLC
                               BY:  MS. EVE-LYNN J. RAPP
                               350 North LaSalle Street
18                             Suite 1300
                               Chicago, Illinois   60654

19

20  For the Defendant:     GREENSPOON MARDER, P.A.
                               BY:  MR. JEFFREY BACKMAN
21                             200 East Broward Boulevard
                               Suite 1500
22                             Fort Lauderdale, Florida  33301

23

24                         MC GUIRE WOODS, LLP
                               BY:  MR. BRIAN P. O'MEARA
                               77 West Wacker Drive
25                             Suite 4100
                               Chicago, Illinois   60601

1
2
3

ROSE, HARRISON & GILREATH, P.C.
BY:  MR. M. PEEBLES HARRISON
700 Blue Jay Street
Suite 1
Kill Devil Hills, NC   27948

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois  60604
(312) 435-5785

1     (The following proceedings were had in open court:)

2          THE CLERK:  Case 12 C 4069, Birchmeier v. Caribbean

3   Cruise Line.

4          THE COURT:  Start on this side and go across.

5          MR. HARRISON:  Peebles Harrison for the Berkley

6   defendant.

7          MR. O'MEARA:  Brian O'Meara, also here on behalf of

8   The Berkley Group defendant.

9          MR. BACKMAN:  Jeff Backman for Caribbean Cruise Line

10  and Vacation Ownership Marketing Tours.

11         MS. RAPP:  Eve-Lynn Rapp for plaintiffs.

12         MR. RAUSCHER:  Scott Rauscher for plaintiffs.

13         THE COURT:  Is that everybody we're expecting?

14         MR. BACKMAN:  Yes, your Honor.

15         THE COURT:  Okay.  So I guess the two motions are

16  related to each other, but on one of them, I've got three

17  briefs.  I don't know that I have ever had three briefs on a

18  motion to extend time before, but whatever, and not short

19  ones.

20         So I think I have a handle on the issues.  Does

21  anybody want to say anything that you haven't already told me?

22  I guess it's your motion.  Do you want to say anything else?

23         MR. RAUSCHER:  We don't have anything to add, your

24  Honor.

25         THE COURT:  You filed the last thing.  Do you all

1 | want to say anything else?

2 | MR. BACKMAN: Yes, your Honor, just briefly.

3 | Jeff Backman for Caribbean Cruise Line, which is the

4 | entity that filed the paperwork in opposition to the motion

5 | for enlargement.

6 | The only thing I really want to clarify is that it's

7 | not a distinction between political versus nonpolitical survey

8 | calls. It's a distinction between the defendants that are

9 | named in this lawsuit and the way in which the complaint is

10 | pleaded.

11 | The complaint is pleaded in a manner which basically

12 | alleges that conspiracy among the various defendants whereby

13 | this Economic Strategy Group POA group of defendants that's

14 | referenced, made the calls on behalf of everybody else and

15 | that they weren't real political surveys, and it was this real

16 | telemarketing scheme that was created by us on our side, and

17 | we set up this POA as kind of a front to make the calls.

18 | That's where the distinction lies, and that's where

19 | the discovery has been. We have given them everything that we

20 | have with respect to calls being made by the ESG group of

21 | defendants. And the references you see are POA, which was a

22 | d/b/a set up for one of the ESG defendants.

23 | So it's not whether it's political or nonpolitical.

24 | It's all been provided if it related to these defendants in

25 | this case. What they're now seeking --

1    THE COURT:  I've got to tell you, this is a

2    completely different argument from the one you made in your

3    15-page response to this motion.  It's completely different.

4    So I want to hear what Mr. Rauscher has to say about

5    that.

6    MR. BACKMAN:  Sure.

7    THE COURT:  But I don't want to make all these other

8    people wait.  So you guys have a seat.  I'm going to deal with

9    all the other cases, and I will deal with you last.

10    MR. BACKMAN:  Thank you, your Honor.

11    (Brief recess.)

12    THE CLERK:  Case 12 C 4069, Birchmeier v. Caribbean

13    Cruise Line.

14    THE COURT:  All right.  Get in your spots again, and

15    I will have you give your names again, and we will sort of

16    pick up where we left off.

17    MR. HARRISON:  Peebles Harrison for the defendant The

18    Berkley Group.

19    MR. O'MEARA:  Brian O'Meara here, also on behalf of

20    defendant The Berkley group.

21    MR. BACKMAN:  Jeff Backman for Caribbean Cruise Line

22    and Vacation Ownership Marketing Tours.

23    MS. RAPP:  Eve-Lynn Rapp for the plaintiffs.

24    MR. RAUSCHER:  And Scott Rauscher for the plaintiffs.

25    THE COURT:  Okay.  So the argument that Mr. Backman

1    was articulating, just to sort of pick up and get to where we

2    left off, was that what's critical here is not the political

3    pretext calls versus nonpolitical pretext calls distinction;

4    it's the proposition that the complaint basically alleged a

5    joint effort, a group of people or a group of entities doing

6    something, and what you're asking for now goes beyond that.

7              Did I basically get it right?

8              MR. BACKMAN:  That's fair, your Honor.

9              THE COURT:  Was there more that you wanted to say

10   beyond that because I kind of cut you off in the middle?

11             MR. BACKMAN:  That's the premise with respect to

12   their motion to compel and the discovery they're seeking.

13   It's more of a futility argument as it relates to their

14   request for an extension.

15             THE COURT:  Right.

16             MR. BACKMAN:  The only thing that I would add,

17   because I know it's 15 pages, but really these cases have been

18   going on since May of 2012 when it was originally filed.

19             THE COURT:  Right.

20             MR. BACKMAN:  And we made clear in Exhibit A, some

21   discovery responses to discovery requests that were served

22   prior to consolidation, we made clear that our position with

23   respect to survey calls and telephone calls was limited to POA

24   and this group of defendants.

25             THE COURT:  Well, honestly, just to be fair about

1    that, the way you articulate it in your response, you're right

2    that you said that -- and you documented that you made your

3    fairly consistent objection going back to day one.  But it was

4    political versus nonpolitical.  I mean, it's really not what

5    you're articulating now, and I'm not faulting you for that.

6              I mean, there is no rule necessarily that says that

7    you can't come in with another argument if you think there's a

8    better one.

9              I mean, I do have a question.  You know, this was

10   kind of a known issue at least as of the time that I was

11   asked, you know, in the middle of your deposition back in the

12   early part of August or whenever it was -- it may have even

13   been late July -- you know, that there was a dispute about the

14   scope of discovery.  And I'm pretty sure I suggested on the

15   phone then, and then I said it again at the August 7th status,

16   somebody better come in here on a motion.  And, I mean,

17   nothing happens until somebody apparently doesn't think they

18   have enough time to file the class cert motion.

19             What went awry?  Why didn't I get this motion before?

20             MR. RAUSCHER:  Your Honor, at the time we asked for

21   that, we thought we got what we wanted from the ruling, which

22   was you're allowed to ask questions about the nonpolitical.

23             THE COURT:  I was only ruling on the questions.  I

24   wasn't ruling on the whole panoply of document discovery

25   because it wasn't in front of me.  I didn't know what it was.

1      MR. RAUSCHER:  Understood.

2      We had some outstanding discovery requests.  It's not

3  --

4      As we learn more, we are continuing to seek

5  discovery.  It's not always been clear to us how defendants

6  categorize certain calls, and so we have some outstanding

7  discovery requests that basically said give us all documents

8  and information relating to automated survey calls offering a

9  cruise in exchange for taking a call.  They respond to those

10  requests a couple weeks after we got the ruling.  They say,

11  we're not giving these to you.  That was, I think,

12  August 16th.

13      We sent them back a "meet and confer" letter the very

14  same day and said, please let us know if you're going to

15  change your position.  Obviously, I am paraphrasing.

16      THE COURT:  Right.

17      MR. RAUSCHER:  We said, let us know if you're going

18  to change your position.  And if you're not, then I think it

19  was five days, we're going to seek Court intervention.

20      They sent us back an email saying, we're going to

21  need more time to consider your position with the hope of

22  resolving this without Court intervention.

23      THE COURT:  Okay.  So basically what you are telling

24  me is that you were hopeful of getting it worked out.

25      MR. RAUSCHER:  Right.

1      THE COURT:  Fine, all right.

2      So respond to the point of Mr. Backman, the one he

3  made today.

4      MR. RAUSCHER:  Right.

5      The violation here, the TCPA violation, occurs when

6  an illegal call is made by or on behalf of the defendants who

7  are standing here today.

8      THE COURT:  Well, but his point is your complaint

9  doesn't say the defendants violated the TCPA by making illegal

10  calls, period, end of discussion.  His point is that you have

11  this whole scenario that is painted here that says, well,

12  there is this whole group of people and one is acting as sort

13  of the front person for the other and it's all this big scam

14  basically, or sham, or scam, or both of the above.

15      MR. RAUSCHER:  And I think that adds a flavor to the

16  complaint.  It adds some detail.  It adds detail that we knew

17  as we were drafting the complaint and we described it.  We do

18  list some other names that we thought they may have been using

19  in paragraph 17.  But the classes define -- the classes are

20  defined in a way that doesn't limit.

21      It says:  All persons in the United States to whom

22  one or more telephone calls were made by or on behalf of or

23  for the benefit of defendants purportedly offering a

24  free cruise in exchange for taking an automated survey.

25      THE COURT:  Okay.  So you have done --

1    In terms of discovery so far, and I know that some of
2  these entities have similar names, and I assume the ones with
3  similar names are sort of affiliated with each other, the ones
4  that have economic and strategy in their names, but do you
5  have any --

6    And I'm not saying that is a determinative factor;
7  it's just a question.  Do you have any sense that these
8  entities or some of them were involved in other what you would
9  call sort of improper pretext type calls, surveys, whatever it
10  was, on behalf of CCL?

11    MR. RAUSCHER:  The ESG?  I'm sorry.  Which, just so I
12  --

13    THE COURT:  Any of them that you named in the
14  complaint.  I'm just trying to get at what -- you know,
15  whether there is some reason to believe that, you know, for
16  want of a better word, that the conspiracy goes beyond the
17  political type pretext calls.

18    MR. RAUSCHER:  We certainly know that defendants have
19  used multiple different people to make different types of
20  robocalls.

21    THE COURT:  When you say "defendants," which one?

22    MR. RAUSCHER:  Well, as we understand it, learning
23  through discovery, at least the way it worked with the
24  political type calls, CCL Caribbean had a contract with the
25  ESG defendants.

1         THE COURT:  Okay.

2         MR. RAUSCHER:  The ESG defendants then hired someone

3    to do the robocalling.  There's a lot more detail we could, of

4    course, get into.  But it appears that CCL, according to Ms.

5    Poole's deposition testimony, also had a contract with at

6    least one other person, a different type of lead broker, and

7    as we learned --

8         THE COURT:  Lead broker, is that what you think ESG

9    was?

10        MR. RAUSCHER:  I think ESG worked through a lead

11   broker.

12        THE COURT:  Through a lead broker, okay.

13        MR. RAUSCHER:  And we learned recently Mr. --

14        THE COURT:  A lead broker is somebody who gets leads,

15   in other words.

16        MR. RAUSCHER:  Correct.

17        And we learned recently that Ms. Vigus -- we took the

18   deposition of the person who supposedly ran the ESG companies.

19   He is supposedly responsible for creating the recordings.  We

20   played them, at least partial recordings.

21        THE COURT:  Oh, yes, you referred to this in the

22   motion.  He said it didn't look like anything --

23        MR. RAUSCHER:  Right.  Defendants, I think,

24   acknowledge that -- or at least CCL would acknowledge that

25   they were involved in other robocall survey campaigns.

1    THE COURT:  Yes.  But, I mean, the question here is

2    whether that is part of this case or not, I think.

3    MR. RAUSCHER:  We think it certainly is.  We think

4    it's alleged in the complaint although we have more detail

5    about what the POA type calls are.  POA, they can call it a

6    d/b/a; it's just a name that used on the survey.

7    THE COURT:  POA is?

8    MR. RAUSCHER:  Political opinions of America.

9    THE COURT:  Okay.

10    MR. RAUSCHER:  And they used different names.  It

11    looks like when they got complaints, they may have changed the

12    name that they were using.  But when we alleged the classes

13    more broadly, and then we learned that Ms. Vigus actually got

14    a different call, and CCL is not saying, wait, we didn't make

15    any; we didn't hire anyone to make any of those type of calls.

16    THE COURT:  So how do you pronounce her name?

17    MR. RAUSCHER:  Vigus.

18    THE COURT:  Vigus.  Did Ms. Vigus get her calls

19    during the same general time frame that the other plaintiffs

20    did?

21    MR. RAUSCHER:  It was during the same general time

22    period.

23    THE COURT:  On Birchmeier there's a specific date.

24    On Parkes it's more general; on Vigus it's more general; on

25    Stone it's pretty specific.

1     MR. RAUSCHER:  I think on paragraph -- it was in

2  2012.  I could look at discovery responses, but it was the

3  same general time period.

4     THE COURT:  And so what you're saying is that as far

5  as Vigus is concerned, at least the way things seem to have

6  shaken out so far, it wasn't a sort of political type survey

7  that she was asked to do in return for getting a cruise ticket

8  or whatever.

9     MR. RAUSCHER:  Correct.  It appears that she got some

10  other type of automated survey call.  It's still offering the

11  free cruise.

12     THE COURT:  So, Mr. Backman, I want to sort of ask

13  you a question about sort of the second part of your argument.

14  You referred to this as a futility argument.

15     I've got to tell you, I mean, when you say

16  "futility," you don't mean futility in terms that one would

17  normally argue; for example, when somebody wants to file an

18  amended complaint, the defendant comes in and says, no, it's

19  futile because it's a nonviable legal theory.  What you're

20  basically saying here is, I'm assuming -- you will correct me

21  if I'm wrong -- is that there's no way the plaintiff could

22  ever -- the plaintiffs could ever get a class certified that

23  would cover all of the various types of calls that they're

24  conceivably contending were made.

25     MR. BACKMAN:  While I do believe that's true, that's

1   not why I was using that word.  I was using that word only

2   related to the request for enlargement of time.  In posing

3   that, I'm saying it would be futile to give them an additional

4   60 days --

5           THE COURT:  Why?

6           MR. BACKMAN:  -- because they shouldn't get any of

7   this discovery anyway because it doesn't relate to the

8   allegations in their complaint.

9           THE COURT:  I get what you are saying.  And I

10  wouldn't --

11          MR. BACKMAN:  It may be a poor choice of words.

12          THE COURT:  I wouldn't refer to it as a futility

13  argument.  Now I understand.

14          MR. BACKMAN:  That was my only point.  I would like a

15  briefing schedule.

16          THE COURT:  No, I'm going to give it.

17          Does anybody else want to weigh in on this at all?

18          MR. O'MEARA:  No.

19          THE COURT:  Okay.  Go ahead, Mr. Backman.

20          MR. BACKMAN:  Sure.

21          With respect to the allegations in the complaint,

22  your Honor, paragraph 1, paragraph 3, paragraphs 26 through 29

23  where the specific named plaintiff calls were made, they all

24  reference POA.  Even Ms. Stone, what she says is, it was POA

25  and/or Independent Survey Group, and she uses a different

1   name.

2          And then they asked Mr. DeJongh, who is affiliated

3   with the ESG defendants and -- if he knew about Independent

4   Survey Group, and he said no.  And so now they're trying to

5   use that as an angle to get some sort of expanded class here.

6          But if you look at their class definition, they refer

7   to the defendants and they group them all together.  So it's a

8   different entity that was making additional calls.

9          THE COURT:  How I do know it was a different entity?

10         MR. BACKMAN:  Well, Mr. DeJongh said he doesn't know

11  anything about Independent Survey Group, and in their new

12  discovery requests that they're seeking to compel documents

13  for, they reference a particular -- they reference particular

14  entities and they reference a particular type of call.  None

15  of their plaintiffs describe this foghorn call that they are

16  asking about in their discovery requests.

17         And Mr. DeJongh --

18         THE COURT:  I should say this.  I've gotten the

19  foghorn call, I have, on my cell phone.  I mean, it's been a

20  while ago, maybe a year.  And when you said that, you pick up

21  the phone and there's this long foghorn, and I don't remember

22  what happens after that because I have hung up by that point.

23  But just so you know, that's now out there.

24         MR. BACKMAN:  That is a specific request that they

25  make in their discovery.

1          THE COURT:  I will opt out of any class.

2          MR. BACKMAN:  And that is the additional document

3    they want.

4          And I will also tell you, your Honor, there are

5    lawsuits pending against Caribbean Cruise Line relating to

6    that foghorn call.

7          THE COURT:  To the foghorn call, okay.

8          MR. BACKMAN:  And it's not --

9          THE COURT:  I haven't gotten any class notices,

10   though, so it hasn't gotten far enough along.

11         MR. BACKMAN:  So my point, though, Judge, is that

12   their background and their factual allegations leading to

13   liability against Caribbean, VOMT and Berkley is all based

14   upon the fact, according to them, that the ESG group of

15   defendants was set up as a front.

16         And if you look at paragraphs 33(b) and 35, which are

17   in their class allegations, 33(b) is part of their numerosity

18   allegation, and they specifically reference call --

19         THE COURT:  POA.

20         MR. BACKMAN:  POA.

21         And look at 35.  That's their typicality argument,

22   and the last sentence says specifically all the claims are

23   typical because they all receive calls from POA.  So if they

24   didn't get a call from POA, it's not part of this case.

25         THE COURT:  How do we deal with what evidently seems

1 to be the case with regard to Ms. Vigus then?

2 MR. BACKMAN: Are you asking me?

3 THE COURT: Yes.

4 MR. BACKMAN: If they feel that they have a case,

5 then they have to file a case against the right defendants and

6 allege the right allegations and put us on notice.

7 But that's not what this case is about. That's not

8 what we have been litigating for a year and a half. We're

9 done. We're finishing the plaintiff depos tomorrow. We're

10 ready.

11 And I would also point out for your Honor that on

12 September 6th, they asked for an extension, the plaintiffs,

13 and they didn't mention this.

14 THE COURT: Yes, I was kind of wondering about that,

15 but, you know, it's not that terribly significant.

16 MR. BACKMAN: My final point, your Honor, would be

17 that if you are to grant it, I don't think 60 days is enough

18 time.

19 I think we're talking about --

20 THE COURT: No, I certainly agree with that.

21 MR. BACKMAN: Okay.

22 THE COURT: What else would you like to tell me, Mr.

23 Rauscher?

24 MR. RAUSCHER: I think I want to clear up some of the

25 factual things that Mr. Backman was just talking about. I'm

1  sorry.

2  THE COURT:  Okay.

3  MR. RAUSCHER:  Plaintiff Stone alleges names of

4  different groups in her thing, but I don't know that that is

5  relevant to Ms. Vigus receiving a different call.  I don't

6  know if he was confusing it or describing it.

7  Plaintiffs don't think she got a couple different

8  names.  The document certainly suggests, despite Mr. DeJongh's

9  memory, that Independent Survey Group was another name listed.

10  THE COURT:  Okay.

11  MR. RAUSCHER:  And I'm not sure that -- I don't

12  think, it's our position, that the fact that Caribbean may

13  have hired multiple different people to carry out robocall

14  campaigns changes anything in this complaint.  It's vicarious.

15  There is vicarious liability.

16  And as far as some of the specific points he just

17  mentioned about our allegations about hundreds of complaints

18  appear online related to receiving unwanted robocalls from

19  POA, that's true.  That's what we wrote in our complaint.

20  It's still true although we think the numbers are

21  substantially larger.  But as discovery has continued and we

22  learn more detail, we continue to try to seek discovery to

23  relevant issues.

24  THE COURT:  So, you know, as a general rule, over the

25  years, you know, defendants used to complain, and actually

1    still do a lot, about how the complaint's allegations aren't

2    specific enough, and then, you know, Bell Atlantic v. Twombly

3    got decided and Ashcroft v. Iqbal, and, you know,

4    plaintiffs tend to make more specific or specified or

5    particularized complaints now.  And I suppose that every now

6    and then I get a motion or I get a request or an argument,

7    something along the lines that's been made here, that, well,

8    okay, it's specific, now they're stuck with that.

9         And generally I sort of tend not to agree with that,

10    and the reason I don't agree with it is that I think that

11    people are -- you know, oftentimes, and maybe more often than

12    not, the more specified specific allegations in the complaint

13    are reasonably interpreted as illustrative rather than sort of

14    encompassing.  I have a hard time saying that about this

15    complaint.  You know, it's --

16         And I understand what I did on the motion, or during

17    the deposition, and I will turn to that in a second.  But, you

18    know, I agree with you that the class definition, as it's

19    alleged in the complaint here, is pretty general, and it's not

20    tied down to, you know, political calls.  But, you know, the

21    thrust of the complaint as a whole is sort of this group

22    activity where, you know, you say that they collectively

23    launched a robocalling campaign and they were acting -- you

24    know, one is acting as the front for the other, and, you know,

25    that's not just in one place.  It's really, you know,

1   scattered throughout the complaint.  It comes up again and
2   again.

3         And I don't know how to account for Ms. Vigus, and I
4   don't know that I agree with the notion that she would have to
5   have a whole separate lawsuit even if she wasn't part of this.
6   I mean, you could have other claims.  But I think the way you
7   have got your complaint right now, I think you have sort of
8   staked your claim, if you will, in this joint activity, and so
9   it's really not so much --

10        And I think actually that Mr. Backman is right about
11  this.  It's really not so much the political versus the non-
12  political.  It's the group activity element of this.

13        Now, I don't know -- I have no way of knowing because
14  I haven't done any of the discovery; I haven't seen any of the
15  discovery; and I don't know what the underlying facts are.
16  It's at least conceivable that some of the non-Caribbean
17  Cruise Line defendants, in other words, the other defendants,
18  may have engaged in other activity on behalf of the Caribbean
19  Cruise Line.

20        And I guess I'm not prepared to say that if you had,
21  for example, sort of a -- if you can imagine, Caribbean Cruise
22  Lines being the company that wants to sell its cruises and
23  they're doing it in various ways, and there's this one
24  particular branch of it that consists of the ESG folks, The
25  Berkley Group and VOMT, but then maybe there's another head of

1   it where, you know, there's some subset of that same group of

2   people -- I don't know that I'm prepared to say that that

3   would not be fairly encompassed within this.

4        In other words, I don't know that there has to be a

5   sort of one-to-one match of each of the entities involved in

6   this, but I think that the requests that you have made here,

7   which really don't tie it down to any sort of that kind of

8   relationship at all -- in other words, you basically just

9   asked Caribbean Cruise Lines, just give us all of your stuff

10  for all of your phone marketing campaigns or telemarketing

11  campaigns -- I think it's too broad.

12       So I'm not going to grant the motion to compel.  It's

13  denied.  It's conceivable that you could come up with a

14  narrower version of this that would pass muster.  And so I'm

15  just going to leave it to you to decide whether to try to do

16  that.

17       As far as, you know, the extension of time is

18  concerned, I mean, as of right now, you have a denied motion

19  to compel.  So I'm willing to give you --

20       You know, your brief is due.  When is it currently

21  due?

22       MR. RAUSCHER:  It was due.

23       THE COURT:  I mean, I will give you a little bit of

24  time to do it.  We're not talking about 60 days.  So it was

25  due by --

1    What did I extend it to?  It was originally the 6th

2  of September, and I didn't write down when I extended it to.

3    MR. RAUSCHER:  It was due the 20th.

4    MR. BACKMAN:  It was due the 20th.

5    THE COURT:  The 20th, okay.  So it was like a week

6  ago.

7    So I will give you two weeks from today.  So the

8  deadline for the class cert motion is extended to the 10th of

9  October.

10    You know, how many of you are coming from out of

11  town?

12    I know you are.

13    MR. HARRISON:  Yes.

14    THE COURT:  You're coming from out of town, too.  How

15  far out of town?

16    MR. BACKMAN:  Fort Lauderdale.

17    THE COURT:  Oh, okay.

18    So all I'm going to do on that date is set a

19  schedule.  So I'm going to make it 9:00 o'clock, and we can do

20  it by phone so that I don't make people come up here just to

21  set a schedule.  And, I mean, I suppose I could just set the

22  schedule, you know, do the same thing I did now, but, you

23  know, it's conceivable that it might, once you see the motion,

24  that your thinking on that might change.

25    So let's say a phone conference at 9:00 o'clock, if

1  this date works okay, on the 16th.  Oh, not good.

2       Can you do 9:00 o'clock on the 15th of October?

3  Would that work okay?

4       MR. BACKMAN:  Certainly.

5       THE COURT:  So you will have the motion by then, in

6  other words.

7       So here's what I will need you to do on that.

8  There's two options, and I know we have a lot of people here.

9  One option is you get everybody on the phone and then call in.

10  Another option is that you have a call-in number, and I just

11  need to make sure I have it like the afternoon before.  So I

12  will leave it up to you to figure out which is the best way to

13  do it.

14       MR. BACKMAN:  I have local counsel who could come,

15  your Honor.

16       THE COURT:  Okay.  All right.

17       MR. RAUSCHER:  Your Honor, we have an October --

18       THE COURT:  So the motion to extend is granted in

19  part, and the motion to compel is denied.

20       What did you want to say, Mr. Rascia?

21       MR. RAUSCHER:  We have an October 7 status, I

22  believe.

23       THE COURT:  Oh, that's vacated.  Thanks for telling

24  me.

25       MR. RAUSCHER:  And then is there -- I think Ms.

1 Vigus, I'm sure, is going to want to come in and have

2 something to say if she's not going to be part of it.

3          THE COURT:  You were Birchmeier and Parkes, right?

4          MR. RAUSCHER:  That's the Anderson Wanca group.

5          THE COURT:  That's the Anderson Wanca people.  Well,

6 maybe she can --

7          Well, I mean, I would just tell her to get some sort

8 of a motion on file.  Like I say, I mean, I didn't adopt the

9 view that she would have to file a whole separate lawsuit.

10 But, I mean, I don't know enough to say exactly what she would

11 have to do at this point.  So they will do what they need to

12 do when they need to do it, file some sort of a motion to do

13 something.  I don't know.

14          MR. RAUSCHER:  Okay.

15          THE COURT:  That's what they get paid big bucks for.

16          All right, take care.  Thanks.

17          MR. RAUSCHER:  Thank you.

18          MR. BACKMAN:  Thanks for your time, your Honor.

19          MS. RAPP:  Thank you, your Honor.

20      (Which were all the proceedings had in the above-entitled

21 cause on the day and date aforesaid.)

22

23

24

25

1       C E R T I F I C A T E

2

3           I hereby certify that the foregoing is a true and

4   correct transcript of the above-entitled matter.

5

6

7   */s/ Laura M. Brennan*                    September 27, 2013

8

9   _____          _____

10  Laura M. Brennan
    Official Court Reporter                              Date
11  Northern District of Illinois

12

13

14

15

16

17

18

19

20

21

22

23

24

25