1
2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3

4   GRANT BIRCHMEIER, et al.,               )

5                       Plaintiffs,         )   Docket No. 12 C 4069
                                            )
6              vs.                          )
                                            )
7   CARIBBEAN CRUISE LINE, INC.,            )   Chicago, Illinois
    et al.,                                 )   October 16, 2013
8                                           )   10:00 a.m.
                       Defendants.          )
9

10                      TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12  APPEARANCES:

13

    For the Plaintiff:     LOEVY & LOEVY
14                             BY:  MR. SCOTT R. RAUSCHER
                               312 North May Street, Suite 100
15                             Chicago, Illinois  60607

16
                           EDELSON LLC
17                             BY:  MR. RAFEY S. BALABANIAN
                                    MS. EVE-LYNN J. RAPP
18                             350 North LaSalle Street
                               Suite 1300
19                             Chicago, Illinois   60654

20
                           ANDERSON & WANCA
21                             BY:  MR. GEORGE LANG
                                    MR. GLENN L. HARA
22                             3701 Algonquin Road
                               Suite 760
23                             Rolling Meadows, Illinois   60008

24

25

```
 1  For the Defendant:      GREENSPOON MARDER, P.A.
                              BY:  MR. JEFFREY BACKMAN
 2                            200 East Broward Boulevard
                              Suite 1500
 3                            Fort Lauderdale, Florida  33301

 4
                            ROSE, HARRISON & GILREATH, P.C.
 5                            BY:  MR. M. PEEBLES HARRISON
                            700 Blue Jay Street
 6                          Suite 1
                            Kill Devil Hills, North Carolina  27948
 7

 8                          MC GUIRE WOODS, LLP
                              BY:  MR. BRIAN P. O'MEARA
 9                          77 West Wacker Drive
                            Suite 4100
10                          Chicago, Illinois   60601

11

12

13

14

15

16

17

18

19

20

21

22

23

24              LAURA M. BRENNAN - Official Court Reporter
                 219 South Dearborn Street - Room 2102
25                     Chicago, Illinois  60604
                           (312) 435-5785
```

1     (The following proceedings were had in open court:)

2          THE CLERK:  Case 12 C 4069, Birchmeier v. Caribbean

3     Cruise Line.

4          THE COURT:  Mr. Harrison, could you please give your

5     name for the record?

6          MR. HARRISON:  Yes.  Peebles Harrison on behalf of

7     defendant Berkley Group.

8          THE COURT:  Mr. Harrison is appearing by phone.

9          So let's just start on the left side.  You know what,

10    Mr. Harrison doesn't need to hear your names.  Just give me

11    the names and then we will go on.

12         MR. BACKMAN:  Jeff Backman for Caribbean Cruise Line

13    and Vacation Ownership Marketing Tours.

14         MR. O'MEARA:  Brian O'Meara, also here on behalf of

15    The Berkley Group.

16         MS. RAPP:  Eve-Lynn Rapp here on behalf of

17    plaintiffs.

18         MR. BALABANIAN:  Rafey Balabanian on behalf of

19    plaintiffs.  Good morning, your Honor.

20         MR. RAUSCHER:  Good morning.  Scott Rauscher on

21    behalf of plaintiffs.

22         MR. LANG:  George Lang on behalf of Vigus.

23         MR. HARA.  Glenn Hara on behalf of the Vigus

24    plaintiffs.

25         THE COURT:  Okay.  So I just want to make sure I've

1    got a good inventory of what I've got to deal with here.  So

2    give me a second to just get the docket in front of me.

3            So the motion to file excess pages, that's an easy

4    one.  I assume nobody objects to that.  All right.

5            That's document number 147, Pam.  That is granted.

6            There is a motion to seal certain exhibits.  Does

7    anybody have a problem with that?

8            That's granted.  That's document 149.

9            So you may have done this already, Mr. Rauscher.  I

10   think you were the person who filed it.  So what you need to

11   do is file a public record version, and the public record

12   obviously includes everything that is not under seal, and file

13   the whole thing under seal.  But the chambers copy -- and it's

14   probably in here somewhere; I didn't go through to check.

15   What I want --  give me just a second here.

16       (Brief interruption.)

17            THE COURT:  So I'm going to give this back to you.  I

18   only want the unredacted version.

19            MR. RAUSCHER:  Okay.  This is the motion and exhibits

20   under seal and then to you.

21            THE COURT:  Yes.

22            MR. RAUSCHER:  Thanks.

23            THE COURT:  Okay.  So then the other matter that is

24   up is the motion by Ms. Vigus' attorneys which is entitled

25   Motion to Separate the Case, Allow Time For Discovery Or

1    Transfer, Appoint Interim Class Counsel.

2        So I gather that this all goes back to -- well, I

3    don't gather; I mean, you say it in the motion political much.

4    This goes back or relates to the discovery issue that I dealt

5    with a couple or three weeks ago which had to do with scope of

6    discovery and things like that.

7        MR. LANG:  Correct, your Honor.

8        THE COURT:  Actually why don't you just get over in

9    front of the microphone for a second.  Give your name again so

10   that Mr. Harrison --

11       MR. LANG:  George Lang from Anderson & Wanca on

12   behalf of the Vigus people.  That would be counsel and

13   plaintiffs.

14       THE COURT:  So I want to make sure that I understand

15   exactly, you know, what you're asking me to do.  When you say

16   separate the case, I mean, right now we have got a single

17   consolidated complaint, right?

18       MR. LANG:  Correct.

19       THE COURT:  Okay.  So are you talking about filing a

20   separate complaint or not exactly?

21       MR. LANG:  Well, that's optional.  That could be a

22   not exactly.  I went back to the minute orders and it said

23   that the cases were consolidated for discovery purposes.

24       THE COURT:  Well, but then a single complaint got

25   filed which kind of superseded everything else.

1        MR. LANG:  Correct.

2        THE COURT:  It's one case now.

3        MR. LANG:  Correct.  Now, we could under the same

4    case numbers separate those out.

5        THE COURT:  I think Rule 42 allows severance of

6    claims and things like that.

7        MR. LANG:  Or we could --

8        Well, let's just go the full spectrum.  On one end of

9    the spectrum, the case can go ahead as it is.  And on the far

10   end of the spectrum, they can be separated in one -- or in one

11   Vigus case and refiled in Missouri or here.

12       In the middle, it's what could be easy, which is, you

13   know, the easiest route, which could be defining the classes

14   in a way that they have a parallel track here in this Court or

15   a parallel track between this Court and the Missouri court.

16   But as the case stands right now, it's kind of off the rails.

17       THE COURT:  Okay, so a couple of other questions.

18   So, first of all, I mean, just to repeat something I said a

19   minute ago, on page 5 of the memorandum in support of the

20   motion, it says the cases here were consolidated specifically

21   for discovery purposes.  I mean, that is true as far as it

22   goes.  That was I think what I did -- I did that on, I think

23   it was like -- actually Judge Lindberg did that.  That was

24   when he still had the case, is that right?

25       MR. RAUSCHER:  That was here, your Honor.

1    MR. O'MEARA:  It was here.

2    THE COURT:  My mistake.

3    Document number 52, you cited the wrong document.

4  Number 52 on the docket of this case is a notice of motion on

5  the motion to dismiss that was noticed in front of Judge

6  Lindberg.

7    So what document 52 are you citing?

8    MR. LANG:  It would be the 52 that's in the Vigus, or

9  under the Vigus number.

10    THE COURT:  But you filed this under the only case

11  number that is an open case.  The Vigus case --

12    MR. LANG:  It's a minute order, your Honor.

13  Whatever, it should be -- when I pulled it up, it said

14  document number 52 at the top.

15    THE COURT:  All right, hang on a second.

16    (Brief interruption.)

17    MR. O'MEARA:  Judge, I believe it's docket number 93.

18    THE COURT:  Yes, I was closing in.  Okay, there it

19  is.

20    So 13 CV 908, was that the Vigus case?  So I had

21  previously at an earlier date consolidated the Birchmeier case

22  with 13 CV 903, which I assume is the -- is that Stone?

23    MR. BALABANIAN:  It was originally Wright, your

24  Honor.

25    THE COURT:  Wright, okay.

1        And then on the 13th of March, I consolidated it for

2    discovery purposes with the Vigus case, which at that point

3    was 13 C 908.

4        Then I got a consolidated amended complaint.  That

5    was filed in May of 2013 on behalf of all the plaintiffs,

6    including Ms. Vigus.  And shortly after that -- and I would

7    have to switch dockets to find the dates, so I'm not going to

8    do that right now -- but shortly after that, because the cases

9    no longer needed to be consolidated, because it was all one

10   case at that point, the other two cases were administratively

11   terminated.  That happened in the early part of March as well,

12   I think March the 9th or within days after that.

13       There was another case that somebody wanted me to

14   take, and I think I didn't take that one, or maybe they

15   changed their mind.  It was an Edelman Combs case.

16       MR. BACKMAN:  Correct.  It never got heard, your

17   Honor.

18       THE COURT:  Okay.  Whatever it is, they changed --

19       MR. BACKMAN:  It got resolved --

20       THE COURT:  It got resolved.

21       MR. BACKMAN:  -- before you had to make a decision.

22       THE COURT:  All right.  So then we went ahead with

23   discovery, and I had appointed the interim lead counsel back

24   in April before the cases -- before the consolidated complaint

25   was filed.  And so basically that's kind of, for my purposes

1    at least, the background for what's being discussed here.

2           So basically at least part of what you're saying in

3    this motion is that what you refer to as the nonpolitical

4    survey discovery didn't get done or at least didn't get done

5    soon enough.  And then we had the ruling that I made a couple

6    weeks ago.

7           So when did you first know that it wasn't getting

8    done?

9           MR. LANG:  In --

10          THE COURT:  Were you getting copied on stuff?

11          MR. LANG:  No, not everything, very rarely.

12          THE COURT:  Did you ask?

13          MR. LANG:  Yes.

14          THE COURT:  Did you ever ask me?  Did you ever come

15   in and say, Judge, these people aren't doing what they're

16   supposed to do?  You appointed them interim lead counsel.

17          MR. LANG:  You appointed them interim lead counsel.

18   And I did my job.  I did my role, which was to do what I was

19   told by them.

20          THE COURT:  So it never occurred to you to come back

21   in and say, Judge, I'm being shut out of this here, I need to

22   know at least what's going on with regard to my client with

23   whom I still have an attorney/client relationship?

24          MR. LANG:  I wasn't going to come in here and say

25   that they --

1     THE COURT:  This would be a longwinded no, I didn't
2  do that, Judge?

3     MR. LANG:  No, until I had something better to bring
4  in, instead of me describing that I wasn't getting hours.

5     THE COURT:  Did you get copies of the discovery that
6  was being served?

7     MR. LANG:  Not all the discovery.

8     THE COURT:  Did you ever ask for copies of the
9  discovery that was being served?

10    MR. LANG:  We asked.

11    THE COURT:  Did you get copies of the discovery that
12  was being served that you say omitted the requests for the
13  nonpolitical survey discovery for materials?

14    MR. LANG:  No, I don't believe I got any of that.  I
15  got the requests.  I didn't get all the answers.

16    THE COURT:  Does anybody disagree?

17    MR. BALABANIAN:  Yes.

18    THE COURT:  Whoa, whoa, whoa, whoa, whoa.  Actually
19  you guys are going to get to wait longer than the other case.
20  Have a seat.

21    Mr. Harrison, we'll call you back.  Stay at your
22  place.

23    MR. HARRISON:  Okay.

24    (Brief recess.)

25    THE CLERK:  Case 12 C 4069, Birchmeier v. Caribbean

1   Cruise Line.

2          THE COURT:  Mr. Harrison, would you give your name

3   again for the record, please?

4          MR. HARRISON:  Yes, sir.  Peebles Harrison for The

5   Berkley Group.

6          THE COURT:  Again, Mr. Harrison is by telephone.

7          I know you're all in the same place, but give your

8   names again, if you would, for the record.

9          MR. BACKMAN:  Jeff Backman for Caribbean Cruise Line

10  and Vacation Ownership Marketing Tours.

11         MR. O'MEARA:  Brian O'Meara here, also on behalf of

12  The Berkley Group.

13         MS. RAPP:  Eve-Lynn Rapp for plaintiffs.

14         MR. BALABANIAN:  Rafey Balabanian for plaintiffs.

15         MR. RAUSCHER:  Scott Rauscher for plaintiffs.

16         MR. LANG:  George Lang for Vigus.

17         MR. HARA:  Glenn Hara for Vigus.

18         THE COURT:  Okay.  So just to be clear about it, in

19  case you couldn't infer it from the circumstances, the reason

20  I had you sit down is I don't think I was getting square

21  answers to my questions.

22         MR. LANG:  I want to clarify, and I understand that.

23         THE COURT:  I'm not finished, okay.

24         So I'm asking questions about A, and I feel like that

25  I'm talking to somebody on one of those Sunday morning talk

1  shows who has talking points, and whatever the question is,

2  they're going to give their talking points.  This isn't a

3  Sunday morning talk show.  It's not a presidential press

4  conference.  It's not a conference on the steps of the Capitol

5  building.  You're in court.  You pretend you're on cross

6  examination because, in fact, you are, okay.

7        So you're done with giving me indirect answers to my

8  questions.  Okay.  You're done with doing your talking points.

9  If you don't answer the questions, you don't get to talk

10 anymore more, okay.

11        So now I'm going to ask some straight questions and I

12 want direct answers that don't go off on to tangents, and

13 don't answer some other question that I haven't asked.

14        What discovery requests did you receive from the

15 class counsel as they were being served or after they were

16 served?

17        MR. LANG:  I don't have a problem with written.  The

18 problem I have with your question was the oral, and I answered

19 no based on the oral, not on the written.

20        THE COURT:  Let me state my question again.  What

21 discovery requests did you receive from the plaintiffs' class

22 counsel as they were served or after they were served?  I'm

23 asking for a list.

24        MR. LANG:  For written, I believe --

25        THE COURT:  No, discovery requests.  That could be a

1    request for production of documents.  It could be a set of

2    interrogatories.  It could be a notice of deposition.  It

3    could be a 30(b)(6) notice of deposition.  It could be a set

4    of requests for admissions, anything that's discovery.  What

5    discovery requests did you receive?

6              MR. LANG:  I believe I received all of those.  I

7    believe I received all of those.

8              THE COURT:  I'm just going to tell you right now, Mr.

9    Lang, that is not the impression that you gave me before.

10             MR. LANG:  And I had trouble with your question, and

11   if I may?

12             THE COURT:  What trouble?  Tell me.

13             MR. LANG:  I heard your question as to did I receive

14   all of the discovery so that I was aware that there was a

15   problem with the scope of the class.  That's the question I

16   heard.

17             THE COURT:  Some day you will look at the transcript

18   of that and you will see that that is not the question that I

19   asked, but fine.  That's fine.  That's behind us now.

20             So you got all of the discovery requests that were

21   being served by the plaintiffs as they were served.

22             MR. LANG:  And by the defendants, too.

23             THE COURT:  And by the defendants, okay.

24             Now, next question.  Were you copied on the responses

25   that the defendants were serving to the written discovery

1    requests that the class counsel were served?

2        MR. LANG:  Yes.

3        THE COURT:  Okay.  Did you see in those discovery

4    responses the objections to what I will call the nonpolitical

5    discovery?

6        MR. LANG:  Yes.

7        THE COURT:  Okay.  Did you at any point in time --

8        Let me ask a different question.  The order

9    appointing class counsel I assume doesn't prohibit you from

10   communicating with the people that I appointed as the class

11   counsel, right?

12       MR. LANG:  Correct.

13       THE COURT:  Okay.  Did you communicate with them at

14   any point after you saw that the defendants were objecting to

15   the nonpolitical discovery and say, hey, problem?

16       MR. LANG:  Yes.  There was a phone call.

17       THE COURT:  Okay.  To whom and when?

18       MR. LANG:  That would be with Mr. Rauscher, and I

19   forget your last name.

20       MS. RAPP:  Rapp.

21       MR. LANG:  Eve-Lynn Rapp.

22       THE COURT:  Ms. Rapp, about when approximately, ball

23   park?

24       MR. LANG:  Early on, right when the issue first

25   started.  I can't --

1    THE COURT:  Can anybody give me any kind of a ball

2  park sense of when that was?  Are we talking about a month

3  ago, three months ago, a year ago?

4    MR. LANG:  It was more than a couple of months ago.

5    THE COURT:  Okay.  And what was the response that you

6  got?

7    MR. LANG:  I was informed that there might be an

8  issue with that, that they were going to deal with that in

9  depositions.

10    THE COURT:  The "that" being not ask -- the issue

11  about the dispute over --

12    MR. LANG:  Political versus nonpolitical.

13    THE COURT:  Yes.

14    MR. LANG:  That that was still being filled out.  I

15  was told they were going to deal with that in depositions.

16    THE COURT:  Okay.

17    MR. LANG:  I offered my services and my firm's

18  services to attend depositions and abstract depositions, and I

19  was told they had it handled.

20    THE COURT:  Is there a --

21    And this is a question for everybody.  Is there a

22  written order that describes the terms, the metes and bounds,

23  if you would, of the appointment of class counsel, in other

24  words, what the responsibilities of class counsel are and what

25  they aren't and what, if anything, the role of somebody like

1    Mr. Lang would be?

2           MR. LANG:  There's the minute order and the

3    transcript.  The minute order does not go into that.

4           THE COURT:  Does not go into detail.  The transcript

5    does?

6           MR. LANG:  The transcript gives the Court's

7    indication.  You specifically said that they get a lead and we

8    should not have -- that we had something valuable to offer.  I

9    quoted you exactly in one of the footnotes.

10          THE COURT:  Is this the April 17th, 2013, transcript?

11          MR. LANG:  Yes, sir.

12          THE COURT:  Okay.  I just need a second to look at

13   that.

14       (Brief interruption.)

15          THE COURT:  The next question I have is for the other

16   plaintiffs' attorneys here.  So do you agree or disagree with

17   what Mr. Lang said about there having been some communication

18   at some point in time about the omission of, or the objection,

19   if you will, to the nonpolitical discovery he called to

20   inquire about that and was told essentially it's going to get

21   covered during the depositions?

22          MR. RAUSCHER:  I don't recall Mr. Lang ever calling

23   to initiate a conversation, certainly not about that.

24          THE COURT:  Now, Mr. Rauscher --

25          MR. RAUSCHER:  I'm sorry.

1  THE COURT:  -- you have been sitting here.  You have

2  been standing here for a while, right?

3      (Brief interruption.)

4      THE COURT:  You have got to get the answer quicker.

5      MR. RAUSCHER:  I recall the conversation, yes.

6      THE COURT:  What do you recall being said in the

7  conversation?

8      MR. RAUSCHER:  I recall generally talking about that

9  being an issue, the political versus nonpolitical.

10      THE COURT:  Did you say that you were going to try to

11  cover it, or did somebody say you were going to try to cover

12  it in the depositions?

13      MR. RAUSCHER:  I don't recall specifically, but that

14  makes sense because we did try to cover it in depositions, and

15  we did send them outlines of our depositions -- or the first

16  deposition outline.

17      THE COURT:  Did you get a deposition outline, Mr.

18  Lang?

19      MR. LANG:  I don't recall getting it.  I may have

20  gotten that.  I never got a transcript.  I asked to abstract

21  them.  I never got a chance to abstract them.

22      I was told -- and I don't want to get too far out of

23  bounds here.

24      THE COURT:  Then don't.

25      MR. LANG:  No, it's important for all of this.

1      THE COURT:  Okay.

2      MR. LANG:  I was told I could third chair the

3  depositions, and you said that that wasn't allowed.  I told

4  these guys I couldn't do that.

5      THE COURT:  When did I say that?  In this transcript

6  I'm looking at?

7      MR. LANG:  Yes.

8      THE COURT:  Can you give me a page number?

9      MR. LANG:  Later on in there.  You were concerned

10  about overbilling.

11      THE COURT:  Got it, okay.  Actually I was kind of

12  closing in on that here.

13     (Brief interruption.)

14      THE COURT:  Yes, another hearing at which my

15  questions weren't getting answered.  All right, here it is.  I

16  say:

17          "There's going to be issues about who gets what, what

18  work was reasonable and was it is reasonable to have X number

19  of lawyers at depositions and so forth.  What is your sense of

20  how depositions would be staffed from a lawyer's standpoint?"

21          I get 12 lines of a nonanswer.  I then say -- this is

22  Mr. Edelson who isn't here today.

23          "Someone here, you've got to get to my question.  Do

24  you remember what it was?  Okay."

25          And he says:

1    "It depends on the deposition.  It depends."

2    He said:

3    "Well, I believe there should be very few lawyers at

4    a deposition."

5    I said:

6    "What does that mean?"

7    And then Mr. Edelson says:

8    "Two.  There should be two.  If he was going to

9    second chair it, perhaps Scott and he would go," he being Mr.

10   Lang.  "This is not a case where you need 30 lawyers on

11   everything."

12   I said:

13   "Well, there's a lot of space between 2 and 30."

14   Mr. Edelson says:

15   "Two lawyers at a deposition would be more than

16   appropriate in my view."

17   I said:

18   "Well, my view is there's plenty of depositions where

19   one is appropriate.  And so now you know that, just so I have

20   that out on the table."

21   I'm looking for the place where I said you can't have

22   a third person at the deposition.

23   MR. LANG:  I took the inference, your Honor.

24   THE COURT:  Actually just a second ago, Mr. Lang, you

25   said, quote, "you said that," close quote.  I didn't.

1        I mean, I can see you drawing an inference from that,

2   but, you know, you're a lawyer.  Precision is important, okay.

3   You are dealing with somebody who is being expected to rely on

4   the veracity of what you're telling me.  You're not doing too

5   good a job with that right now, okay.  I will leave it at

6   that.

7        So at some point, did it become apparent to you

8   folks, you folks being Mr. Balabanian and Mr. Rauscher and

9   your various colleagues, that you had a problem here in terms

10  of you have got somebody who maybe didn't get the same kind of

11  calls as everybody else did?

12        MR. RAUSCHER:  Your Honor, we learned about --

13        We learned more about the calls in this case when we

14  played the recordings to the person who made or was

15  responsible for making the political calls.  That's when he

16  said:  Those don't sound anything like my calls.  Then we

17  moved to compel after that.

18        I apologize if that's too long.  The answer is, yes,

19  at some point it did become apparent, and we told them, also.

20        THE COURT:  Okay, but you're the class counsel.  You

21  have a fiduciary duty not just to your own people and not just

22  to the people who are exactly aligned with them; you have a

23  fiduciary duty to everybody in the class including the people

24  who got different kinds of calls.

25        MR. RAUSCHER:  And that's why we --

1      THE COURT:  So nobody said to me, for example, when I

2  was hearing this argument on the motion to compel, you know, a

3  couple weeks ago or whenever it was, which went on for quite a

4  while, if I recall correctly -- nobody said, hey, wait a

5  second, Judge, we're going to have a real problem here.  We're

6  going to have a real problem here because it's going to lead

7  to a conflict in the class if you do not approve this

8  discovery.

9      Did anybody say that?

10     MR. RAUSCHER:  Not in that way, your Honor.

11     THE COURT:  Anything close to that?

12     MR. RAUSCHER:  Well, I think we tried to point out

13  that Ms. Vigus wouldn't be part of the class and that was

14  going to be an issue because she was -- as the plaintiffs

15  pled.  So I don't --

16     That was what we were, I think, trying to accomplish,

17  at least to say that there is an issue with respect to Vigus

18  and others like her.

19     THE COURT:  So when you got the --

20     And I guess to some extent I'm asking you to reinvent

21  the wheel, not reinvent the wheel, just sort of go over again

22  stuff that we probably talked about back in September when I

23  dealt with this other motion.

24     So remind me, if you will, when you got these

25  objections, and when you found out that there were two types

1    of phone calls and when you started getting objections to the

2    other things, I mean, how did you deal with those, just sort

3    of in an overview sense?

4              MR. RAUSCHER:  We dealt with them in a number of

5    ways, and the first thing we -- I would say the first time we

6    brought it to the Court was during the first deposition in

7    this case.  We asked questions --

8              THE COURT:  Is this the one where you called in?

9              MR. RAUSCHER:  Correct.

10             THE COURT:  And I let you ask it at that point.

11             MR. RAUSCHER:  Correct.

12             THE COURT:  Right.  Then I got the longer briefing on

13   the motion that I heard a couple of couple weeks or probably

14   three weeks at this point.

15             MR. RAUSCHER:  Correct.

16             And in the interim, we had been attempting to meet

17   and confer with the other side, and we had hoped that the

18   issue was going to be resolved without Court intervention.  It

19   wasn't.  And then we brought it to the Court's attention with

20   the motion to compel.

21             MR. BALABANIAN:  We also propounded additional

22   requests aimed specifically at those issues, Judge.

23             THE COURT:  I understand.  I'm just going to say that

24   -- and, I mean, I'm not doubting that you said it, and I

25   haven't gone back word for word through the transcript from

1    September the 26th.  I guess I did not perceive when I ruled

2    on that motion that I was going to be -- this is probably a

3    wrong choice of words -- contributing to a potential conflict

4    within the class.  I mean, conceivably that might have

5    influenced my ruling on that.

6         So let me ask what your position with the other, what

7    I guess the current class counsel's position is on the motion

8    that Mr. Lang and Mr. Hara have filed.

9         MR. RAUSCHER:  Substantively we do not oppose them

10   separating their case, having a separate case, and proceeding.

11        THE COURT:  Did I give you the wrong name for you?

12        MR. HARA:  Hara.

13        THE COURT:  Okay, I'm sorry.

14        MR. HARA:  Thank you, your Honor.

15        MR. RAUSCHER:  Judge, just --

16        THE COURT:  Meaning what exactly?  I'm just following

17   up on your question.  Meaning what exactly?  Split it out,

18   whole new case, subpart of this case?

19        MR. RAUSCHER:  I think it could be either one of

20   those things.  I think splitting it out as the case may be, as

21   far as housekeeping, might be easier.

22        THE COURT:  So if I had allowed the discovery that I

23   didn't allow back on the 26th or whatever it was of September,

24   you would have done the follow-up discovery on these other

25   types of calls.  Is it likely that I would have ended up with

1    a class cert motion that had subclasses in it?  Probably?

2    Decent chance of it?

3            Go ahead, if you want to talk.

4            MR. BALABANIAN:  Yes.  Actually, not to get into our

5    work product too much, but that was what we had contemplated

6    was actually moving on behalf of the class that Ms. Vigus

7    represented as well in our original brief.  The truth is,

8    though, your Honor, the info was lacking based on their

9    objections and their unwillingness to provide the answers.

10           THE COURT:  Well, and then my ruling not giving it to

11   you.

12           MR. BALABANIAN:  Yes, but I understood your ruling

13   because it really stemmed from the fact that a different

14   entity made those calls, but that was not clear until very

15   recently.  And, frankly, we had gone back and forth with

16   discovery letters and meet-and-confers with them to try to get

17   to the issue, and we thought --

18           THE COURT:  Them being the defendants.

19           MR. BALABANIAN:  Yes.

20           We thought we were on the right side of it because of

21   --

22           Not to put it on the Court, but because of the ruling

23   at the deposition, we thought they were going to cave on that.

24           THE COURT:  No, no.  You figured -- I mean, it would

25   not have been an unreasonable conclusion for you to have

1  inferred from the ruling that I made during the course of the

2  deposition, admittedly on the fly that you could do this, that

3  I would continue to do that.  Now, I mean, as it turned out,

4  when I got a more complete presentation on that, I was

5  persuaded in the other direction.  But I can see you making

6  that assumption.

7         MR. BALABANIAN:  And then after that deposition, we

8  had a status conference with the Court.  We flagged the issue.

9  But the Court rightfully, I think, said, bring a motion, but

10 we had to meet and confer on it.

11        THE COURT:  That was in early August, right?

12        MR. BALABANIAN:  And it took awhile.

13        And at the end of the day, as the class cert deadline

14 approached, they said, no, we're not giving you this info, and

15 so we moved to compel it.

16        Now, I want to be clear, we spoke to the Vigus group

17 about perhaps pursuing the political calls on class cert and

18 then separately them pursuing the discovery on the

19 nonpolitical calls and asking the Court to allow kind of two

20 tracks within the case because it's not unheard of that we

21 could move for class cert on this political call class, which

22 was an enormous class in and of itself, but then that the

23 Court would allow us also to pursue discovery on the

24 nonpolitical calls given the situation we found ourselves in.

25 That's when contact stopped with them basically, and it was

1    all email communications, and then followed up by this motion.

2            And, look, Mr. Rauscher said --

3            THE COURT:  I mean, at some point people, I assume,

4    figured I need to have this in writing rather than doing it

5    orally because we're going to have a big stink in front of the

6    judge and I just need to document my position.

7            I'm not going fault anybody for saying, okay, it's

8    time to start doing emails or letters or whatever.

9            MR. BALABANIAN:  Sure.

10           I will say this.  Mr. Rauscher is right.  We don't

11   oppose them, whatever it means, separating the case and

12   seeking to be appointed interim lead of that other class going

13   to Missouri or whatever.  We vehemently --

14           THE COURT:  Vehemently.

15           MR. BALABANIAN:  Excuse me.

16           -- vehemently reject all the accusations they make in

17   their papers which are totally irrelevant.

18           THE COURT:  Give me a for instance.

19           MR. BALABANIAN:  For instance --

20           THE COURT:  Like give me the worst one.

21           MR. BALABANIAN:  -- we duped them into consolidating

22   the case.

23           Judge, we duped them?  They filed the lawsuit six

24   months after we did in a separate court that we didn't know

25   anything about.  And guess what?  In their original complaint,

1  they talked about the political calls that their client

2  received.  They made edits to our consolidated complaint.

3        THE COURT:  Well, that touches on a question that I

4  was about -- that at some point I'm going to ask Mr. Lang, but

5  I understand what you're saying.

6        Okay.  Give me just a second.  I just want to find

7  one thing here.

8        (Brief interruption.)

9        THE COURT:  Well, why don't I get to that question.

10  So at what point --

11        I will just ask this.  At what point did you all

12  know, Mr. Lang or Mr. Hara or whoever, know that Ms. Vigus had

13  not gotten a, quote, unquote, political pretext call?  I'm

14  hoping that the answer is going to be, before we filed the

15  lawsuit, Judge.

16        MR. LANG:  No.  No, it wasn't.  We filed it believing

17  that she did.

18        THE COURT:  And what was that based on?  What would

19  make you think that she had gotten a political call?  I can

20  only think of one legitimate source.  That would be --

21        MR. LANG:  Her.

22        THE COURT:  -- my client, yes.

23        MR. LANG:  Her.

24        My hesitation was it came through co-counsel, but

25  her.

1    THE COURT:  And then at some point, you realized that

2    that was not the case.

3    MR. LANG:  Yes, yes.

4    And when I was asked by lead counsel to voluntarily

5    dismiss my case, that's when I knew it was big.  They didn't

6    mention that.

7    THE COURT:  And when approximately was that?

8    MR. LANG:  A few weeks ago.  That I don't know

9    exactly.

10   THE COURT:  So the Vigus case, it was originally

11   filed in Missouri and then transferred here.  It was

12   transferred here in the early part of 2012, I think, or 2013

13   rather.

14   MR. LANG:  Correct.

15   THE COURT:  About when was it filed in Missouri?

16   MR. BACKMAN:  September, your Honor.

17   MR. LANG:  Yes.

18   THE COURT:  Of 2012?

19   MR. BACKMAN:  '12, yes, your Honor.

20   THE COURT:  So you're telling me it was like a year

21   after the lawsuit was filed that you first learned that

22   Ms. Vigus didn't get a political call?

23   MR. LANG:  Yes.

24   THE COURT:  To which my response is eek.

25   MR. LANG:  Well --

1            THE COURT: E-e-k, exclamation point.

2            MR. LANG: If you look at the record, the case that

3 we filed, and there was a handshake deal between John Lowery,

4 one of the filing attorneys, and interim counsel to bring the

5 case up here. Discovery was then postponed, stayed,

6 consolidated, and then it was taken out of our hands.

7            THE COURT: Just a second.

8        (Brief interruption.)

9            THE COURT: I'm just pulling something up from the

10 case.

11            So at the time that you all --

12            I mean, I hadn't appointed an interim lawyer yet when

13 you first started talking about a consolidated complaint. At

14 the time the consolidated complaint got filed, you still

15 thought that Ms. Vigus had gotten a political-type pretext

16 call.

17            MR. LANG: Correct.

18            THE COURT: And so was it around the time of her

19 deposition or before the deposition or at the deposition or

20 somewhere in there that you found out otherwise?

21            MR. LANG: Well before, months before, is when we had

22 the conversation. Her deposition didn't go until recently.

23            THE COURT: Okay. So ball park when did you find

24 out?

25            MR. LANG: That it was an issue, I want to say --

1        THE COURT:  That she did not get a political call?

2        MR. LANG:  April-ish.

3        THE COURT:  April of this year.

4        MR. LANG:  Yes.

5        THE COURT:  Just a second.

6     (Brief interruption.)

7        MR. BALABANIAN:  Judge, a consolidated --

8        THE COURT:  Don't talk.  I'm looking at something.  I

9  will give you a chance in a second.

10        MR. BALABANIAN:  Yes.

11     (Brief interruption.)

12        THE COURT:  I'm looking at the complaint.  I guess

13  the state law term in Missouri is class action petition.  I'm

14  looking at that.  It was attached to the notice of removal.

15  It refers only to political calls.  It doesn't refer to any

16  other type of call.  And I --

17        You're the local person here, right?

18        MR. LANG:  Yes.

19        THE COURT:  And I recognize that you were not the

20  lawyer who filed this thing.  Would that be somebody from your

21  firm, Mr. Hara, or are you also local?

22        MR. HARA:  I'm also Anderson & Wanca.

23        THE COURT:  Anderson & Wanca was on this case.

24  Mr. Wanca filed a -- signed onto the complaint, the Missouri

25  complaint, in other words.

1      MR. LANG:  The parties you're looking for are John

2  Lowery and Max Margulis.

3      THE COURT:  I'm looking at Mr. Wanca.  He signed the

4  complaint.  It only referred to political calls.  My God, you

5  guys --

6      I mean, has anybody looked -- I mean, I assume

7  Missouri has got an equivalent of Rule 11.  Have you ever read

8  the thing about reasonable inquiry?

9      I know I'm getting a little offtrack on your motion

10  here, but, I mean, I read this thing, and the first thing that

11  comes to my mind when I read your motion is why didn't I hear

12  about this before.  And now what I'm hearing is that when the

13  lawsuit gets filed, I mean, it gets filed as a political

14  pretext call lawsuit.  Apparently that's what Ms. Vigus said,

15  and at some point Ms. Vigus wakes up in the middle of the

16  night in a cold sweat and says, oh, my, God, I was wrong.

17      I need to know more about that.  And if it's

18  privileged and it's something that you would have to tell me,

19  you know, under seal and in camera, then maybe that's the way

20  to do that.  I mean, there's a whole lot of issues here.  I

21  mean, the options run anywhere from, on the one side, going

22  back and revisiting the ruling I made three weeks ago on the

23  discovery issue to somewhere, you know, in the middle -- you

24  know, Mr. Balabanian had a suggestion somewhere a little bit

25  further down the spectrum, your suggestion to sort of, okay,

1    undo the consolidated complaint and allow you to go back to

2    Missouri which, by the way, would simply result in, you know,

3    a CAFA removal to federal court and then probably either a

4    1404(a) motion or an MDL thing; in the interim, we would have

5    lost like 18 months -- to, at the other end, who gets

6    sanctioned here.  And I've got a lot of potential targets at

7    this point.

8         But I just have to say that anybody who looked at

9    this and didn't walk out of hearing this, you know, that for

10   this very extended period of time, the Vigus part of the case

11   was proceeding on the allegation that she got a political call

12   just like everybody else did and that at some point that

13   changed, if you didn't walk out of that with your mouth

14   hanging open, there's something badly wrong.  It just doesn't

15   make sense on any sort of reasonable attorney playing field.

16        MR. LANG:  And that changed at the deposition of the

17   defendant when he said that that wasn't one of their calls.

18        THE COURT:  No, no.  Ms. Vigus at some point had to

19   say, no, I was wrong, I didn't get a political call, I got a

20   nonpolitical call; right?

21        MR. LANG:  Well, no.  Without going into attorney

22   communications and work product, we double-checked, after the

23   April phone call.  I called local counsel to inquire on that,

24   and it was confirmed it was a political call.

25        THE COURT:  Wait a second.  Maybe I'm operating under

1    a mis- --

2         What did she testify at her deposition?

3         MR. LANG:  I haven't seen the transcript.  We would

4    have to ask these guys.

5         MR. BACKMAN:  I have it, your Honor.  I'm ready to

6    address a lot.

7         THE COURT:  Political call or nonpolitical call?

8         MR. BACKMAN:  She said no, and she said that her

9    lawyers told her that it was political call from the outset,

10   but she has never heard of POA, Political Opinions of America.

11        THE COURT:  Well, I mean, nobody would have heard of

12   who the entities were.  They wouldn't know that.

13        MR. BACKMAN:  No, no.  Their allegations are that the

14   class members and the class representatives were told that the

15   call was from POA in the recording.  She says she never heard

16   of POA.  She also said --

17        THE COURT:  Then she says in the deposition that she

18   didn't get a political call.

19        MR. BACKMAN:  Correct.

20        She also says that she didn't hear an offer for a

21   free cruise in exchange for taking a survey, which is the

22   other allegation that she puts in the consolidated complaint.

23   And when asked why she didn't do anything, she said that her

24   lawyers had conducted the research and told her that it was

25   these defendants that had been sued in this case that should

1    be sued for the call.

2          THE COURT:  And did somebody say, which lawyers are

3    you talking about, there's a pretty long list here?

4          MR. BACKMAN:  She said all of them.

5          THE COURT:  All of them.

6          MR. BACKMAN:  She wasn't sure which one.

7          THE COURT:  Yes, she wouldn't have to know which one.

8          MR. BACKMAN:  I can tell you Mr. Margulis was sitting

9    next to her at the deposition.

10         THE COURT:  Who is that?

11         MR. BACKMAN:  He was the lawyer who is on the

12   original --

13         THE COURT:  He's the Missouri lawyer?

14         MR. BACKMAN:  Correct, your Honor.

15         THE COURT:  Okay.  That was going to be my question.

16   One of Ms. Vigus' actual lawyers was at her deposition.

17         MR. BACKMAN:  Yes, your Honor.

18         THE COURT:  Okay.

19         MR. BACKMAN:  And may I go on?

20         THE COURT:  Yes, go ahead.  I haven't given anybody

21   on this side of the room a chance to talk.

22         MR. BACKMAN:  We have a lot to say actually, your

23   Honor.  We were going to ask for a briefing schedule --

24         THE COURT:  Well, let's just talk about it a little

25   bit first.

1    MR. BACKMAN:  -- since we are here.

2    The other issue with respect to the deposition and

3  the due diligence, if you will, with respect to filing this

4  lawsuit is they had the recordings that Ms. Vigus allegedly

5  received.

6    THE COURT:  She recorded it when she got it or she

7  saved it on her phone or something?

8    MR. BACKMAN:  Yes, your Honor.  Ms. --

9    I will digress slightly.  Yes.  She works for Mr.

10  Margulis.  And apparently there is a policy in that office

11  where if you get a prerecorded call, you should record it.  So

12  she had the recording, lucky for all of us.  But the recording

13  is about 30 seconds long.  And it does not say anything like

14  what they put in the allegation in either the original

15  Missouri complaint or for her in the consolidated complaint.

16  And when asked why, again, she said -- excuse me.  She said

17  she was relying on her lawyers.

18    And if I could go slightly more into the background,

19  your Honor touched upon some of it, but you're correct, that

20  the original Missouri complaint filed in state court did refer

21  only to political survey calls, specifically referenced

22  Political Opinions of America.  It was filed in September

23  of 2012.  And you will see references in it to various

24  articles and attorney generals.

25    THE COURT:  Yes, I have got it on my screen.

1      MR. BACKMAN:  Yes.

2          And then what happened after that, your Honor, there

3  was some litigation going on there.  There was a motion to

4  dismiss filed by the defendants in that case.  And then

5  ultimately somehow the various plaintiffs' counsels that are

6  before the Court got together and decided that a transfer and

7  then ultimately a relation and consolidation before your Honor

8  for all of these cases should be the appropriate way to go

9  about this so that they did not have competing class actions

10  throughout the country.

11          And I just wanted to read one portion of the motion

12  to transfer that was filed by --

13      THE COURT:  In Missouri?

14      MR. BACKMAN:  Yes, in the Missouri case and Vigus.

15          In addition to going through and talking about the

16  similarities between the three cases, the fact that the same

17  alleged conduct is being challenged and all of the reasons for

18  transfer and consolidation; i.e., judicial economy, prevent

19  waste of resources, duplication, they state:

20          "The putative class definitions in each of the

21  actions are also nearly identical.  All seek to include all

22  individuals in the United States who received a phone call

23  made by or on behalf of defendants to their cellular

24  telephones regarding political survey questions and a free

25  cruise offer."

1          Yet Ms. Vigus never had either a request to take a

2   survey or heard any political surveys.  And it doesn't end

3   there.  I'm now hearing for the first time from Mr. Lang, is

4   it?

5          MR. LANG:  Yes.

6          MR. BACKMAN:  -- Mr. Lang that they knew in April

7   that there was a potential issue; yet they answered

8   interrogatories in August and September again referring to

9   Political Opinions of America and the defendants' sham

10   political polls.

11          Your Honor was concerned.  You stated just before

12   that perhaps your ruling on discovery a couple of weeks ago

13   created this conflict.  I don't think that this is a conflict

14   between the lawyers behind us.  This is a conflict with the

15   pleadings.  And what they been pleading since inception of all

16   three of these cases that were put before your Honor is

17   Political Opinions of America, the ESG defendants, this joint

18   enterprise, this common enterprise based upon the offering of

19   these surveys in exchange for a free cruise.  That's why you

20   denied their motion to compel.  That's why we have been

21   objecting, not just in the consolidated action, but in the

22   entire action.  So there is no basis or reason for your Honor

23   to feel like you created this conflict.  There is certainly no

24   reason to revisit the discovery.

25          That's what this case is about.  They have sued these

1   defendants based upon this common enterprise, and we deserve

2   the opportunity to address the issues that have arisen in

3   opposing class certification with respect to Ms. Vigus.  If

4   they couldn't figure out --

5               THE COURT:  Pause for a second.

6               MR. BACKMAN:  Sure.

7               THE COURT:  Ms. Vigus, is she proposed as a class rep

8   on the --

9               I would assume not.

10              MR. BALABANIAN:  No.

11              THE COURT:  She's not, okay.

12              All right, go ahead.

13              MR. BACKMAN:  And that's one of our concerns with

14  this particular motion which conveniently is filed the same

15  day as they filed their motion for class certification.  They

16  want a do-over.

17              THE COURT:  Well, filed by different people.

18              MR. BACKMAN:  They want a do-over.  Let's take her

19  out.  Let's avoid this issue in the defendants' opposition to

20  class cert.

21              THE COURT:  So let me just ask you this because, you

22  know, I probably am going to ask for further briefing on this.

23  In fact, it's a virtual certainty, so I don't need you to sort

24  of give me what the whole brief is going to say.

25              MR. BACKMAN:  Sure.

1    THE COURT:  But what is the bottom line of what it is

2    that you're going to propose to me if I give you a chance to

3    file a written response to this motion?

4    MR. BACKMAN:  That their motion be denied, that we be

5    provided the opportunity to argue whatever it is we feel we

6    need to argue in opposing class certification, including the

7    issues that have been raised by the class representative,

8    Susan Vigus.  Perhaps we may want to file a dispositive motion

9    with respect to Ms. Vigus' claims.  We may want to seek

10   sanctions.

11   THE COURT:  So as things stand right now, and this is

12   really a question for the three plaintiffs -- I know there's

13   more than three plaintiffs' lawyers, but the three who have

14   been talking -- as the class -- and I'm going to confess I did

15   not go through the class cert motion, okay.

16   As the class is defined right now, given Ms. Vigus'

17   testimony about the type of phone call she got, would she be a

18   member of the class?

19   MR. BALABANIAN:  No.

20   THE COURT:  You're saying yes, you're saying no.  Is

21   the class defined to say people who got political pretext

22   calls or something like that?

23   MR. BALABANIAN:  In the cert motion, it's a different

24   definition than we allege in the consolidated complaint,

25   Judge.  We have narrowed.

1          THE COURT:  So your sense, though, is that she would

2    not be even a member of the class.

3          MR. RAUSCHER:  Of the class that we have moved to

4    certify, correct.

5          MR. BALABANIAN:  Correct.

6          MR. RAUSCHER:  We believe she would not be a member.

7          THE COURT:  You think otherwise.

8          MR. HARA:  I have it here.

9          THE COURT:  That's a proposed class definition?

10         MR. HARA:  Yes.  The key part of it is "received

11   phone calls offering a free cruise in exchange for taking an

12   automated public opinion and/or political survey."

13         THE COURT:  So do you think she is a member of that

14   class?

15         MR. HARA:  It's arguable if she had a nonpolitical

16   survey question.

17         THE COURT:  Oh, there was some other kind.

18         What was the nature of the call that she testified

19   that she got?

20         MR. HARA:  I have not read it yet.

21         THE COURT:  Whatever.

22         So let's just sort of -- let me just kind of carry

23   out what Mr. Balabanian and Mr. Rauscher were saying a second

24   ago.  So what happens?  What happens in a case --

25         You know, I suppose if I dredged my memory, I could

1  think of something where this has happened in a case I have

2  had before.  You got a case that's got four named plaintiffs

3  in it, current, all of whom are actual plaintiffs in the

4  lawsuit.  A motion for class certification gets filed.  Let's

5  just say for purposes of discussion the class as defined does

6  not include one of the plaintiffs.  He's not a member even of

7  the class.  The judge certifies the class of which the single

8  named plaintiff is not a member but the other three are.

9  They're the class representatives.

10      That doesn't mean her claim goes away.  It gets

11  litigated as these things get litigated, and it would be

12  decided however it gets decided and so on, right?  And I

13  suspect that I have had cases before where not all of the

14  named plaintiffs are class reps or even class members and they

15  have got different kinds of claims.

16      Do you disagree with that, Mr. Lang or Mr. Hara?

17      MR. LANG:  No.

18      THE COURT:  In other words, assuming for purposes of

19  discussion Ms. Vigus is not a member of the class and I end up

20  certifying the class as proposed and she's not a member of it,

21  then she's got an individual claim and proceeds on that claim.

22      MR. LANG:  It's a scope issue.  It's a plain and

23  simple scope issue.

24      THE COURT:  The discovery schedule that I had set,

25  was it a class certification discovery schedule or was it an

1  everything discovery schedule?  I don't remember.  I could

2  figure it out.

3         MR. RAUSCHER:  Your Honor, we just had a date for the

4  class certification.  So there was no separate --

5         THE COURT:  In other words, did I say all fact

6  discovery is to be completed by X?

7         MR. RAUSCHER:  No.

8         THE COURT:  No, okay.

9         Let me ask the defendants.  So, again, with the

10  scenario that I just described, you have got a class that's

11  got four -- or you have got a lawsuit that's got four named

12  plaintiffs, a motion for class certification gets filed, the

13  class as defined does not include one of the named plaintiffs.

14  She's not even a member of it.  If the class gets certified as

15  to the class that's proposed, do you agree that what happens

16  with her case is it just gets litigated however it gets

17  litigated?  I mean, you may file a motion for sanctions or

18  summary judgment or whatever, but is that how it would work

19  typically?

20         MR. BACKMAN:  I believe we're entitled to an

21  adjudication on the merits of her claim.

22         THE COURT:  Yes, right, sort of a yes.

23         MR. BACKMAN:  Perhaps she may be able to file a

24  different lawsuit.  That is yet to be seen, but as it

25  relates --

1    THE COURT:  I mean, you can't have two lawsuits

2    pending on the same thing at the same time.  And if she's got

3    a claim here, even if it's an individual claim, then I don't

4    think you --

5    In other words, if you just hypothesize that

6    Ms. Vigus would then go over to state court in Missouri and

7    file a claim there, presumably somebody, if there's a common

8    defendant in these cases, that defendant would presumably come

9    and say, wait a second, she's got a lawsuit pending.

10   MR. BACKMAN:  Well, perhaps I didn't answer -- it

11   didn't come out the way I wanted.

12   Once there is an adjudication on the merits in favor

13   of the defendant --

14   THE COURT:  Then she's out of the luck.  I understand

15   that.  I'm just talking about in the meantime, though.  In

16   other words, if I just --

17   If what happens here is that, you know, things go on

18   and the motion for class certification gets decided, Ms. Vigus

19   is still part of this case, her claim would get adjudicated

20   here somewhere in the context of this proceeding whether it is

21   exactly the same time as the other claims or not.  Probably

22   not, but it would get decided here.  Okay.

23   MR. RAUSCHER:  Agreed, but not as a separate class.

24   THE COURT:  Well, I mean --

25   MR. BACKMAN:  There is no separate class.  There is

1  no underlying allegation.

2  THE COURT: There is no motion for class

3  certification pending at least as it has been described to me

4  that covers her claim. I understand that.

5  MR. BACKMAN: There would be no underlying allegation

6  to a class that she seeks to represent. This case relates to

7  Political Opinions of America, and this common enterprise

8  among the defendants were not on notice of what calls she got

9  apparently. Apparently the plaintiffs aren't either.

10  THE COURT: Well, you were at her deposition, so you

11  know from that, if nothing else.

12  MR. BACKMAN: She said she didn't --

13  THE COURT: Okay, so this is what I am going to do.

14  Anybody who wants to respond to this motion -- it can be

15  anybody. If the other plaintiffs want to respond to this

16  motion and any defendant who wants to respond --

17  Does anybody else want to say anything on the defense

18  side? I'm just going set a briefing schedule. If you

19  don't --

20  Mr. Harrison, did you want to say anything?

21  MR. HARRISON: No, sir.

22  THE COURT: Okay. Any responses to this motion are

23  to be filed, let's say, within three weeks. That's the 6th of

24  November. Any reply to the response is to be filed within two

25  weeks after that. That's the 20th of November.

1    I'm going to set it over to the 3rd -- 2nd of

2  December -- that's a Monday -- at 9:30 in the morning.  We'll

3  call that a status hearing.

4    Have I set the rest of the briefing schedule on class

5  certification yet?  I think I --

6    Did I?

7    MR. BALABANIAN:  No.

8    THE COURT:  No, didn't.

9    So I guess one question would be:  Should I do that?

10  I think I'm going to.  I mean, I don't see any reason not to.

11    How long do you want to respond to the class cert

12  motion, the one that is on file right now, which is the only

13  one you've got?

14    MR. BACKMAN:  To answer your question, we were going

15  with December 6th, but may I comment on whether it's even

16  appropriate at this time?

17    THE COURT:  You think you said wait until things

18  shake out a little bit more.

19    MR. BACKMAN:  We want to make sure that we --

20    THE COURT:  Fine.  That's convincing.

21    MR. BACKMAN:  Thank you, your Honor.

22    THE COURT:  Because it may be that something changes

23  that might alter what the response would be.  So it doesn't

24  make sense to make you do it twice.  Okay.

25    So the motion for class certification is entered and

1  continued to the status hearing on the December the 2nd.

2         Is there anything else that anybody would like to say

3  to me?

4         Hearing nothing, take care.

5         MR. BACKMAN:  Thank you, your Honor.

6         MS. RAPP:  Thank you, your Honor.

7         MR. LANG:  Thank you.

8         MR. HARRISON:  Thank you, your Honor.

9         THE COURT:  Thanks, Mr. Harrison.

10    (Which were all the proceedings had in the above-entitled

11  cause on the day and date aforesaid.)

12

13

14                 C E R T I F I C A T E

15

16         I hereby certify that the foregoing is a true and

17  correct transcript of the above-entitled matter.

18

19

20  */s/ Laura M. Brennan*                    October 17, 2013

21

22  _____        _____

23  Laura M. Brennan
    Official Court Reporter                    Date
    Northern District of Illinois

24

25