**IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and a class of others similarly situated, | Case No. 1:12-cv-04069 |
| *Plaintiffs*, | Honorable Matthew F. Kennelly |
| *v.* | |
| CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., | |
| *Defendants.* | |

**PLAINTIFFS' SECOND SUPPLEMENTAL REPLY
IN SUPPORT OF CLASS CERTIFICATION**

# INTRODUCTION

Defendants make a new argument that the Court should deny class certification because Plaintiffs supposedly will not be able to identify by name the "subscribers" to every relevant telephone number that received illegal political survey robocalls in 2011-2012, making the classes not "ascertainable." This eleventh-hour claim is no barrier to certification.[1] CCL conceded during oral argument that the Proposed Classes are ascertainable for the telephone numbers that appear in Defendants' call detail records or those of third-party telephone providers. *See* Plaintiffs' Supplemental Reply Brief, Dkt. No. 227 at 1-3.[2] Even if Defendants could ignore their judicial admission conceding ascertainability, however, Plaintiffs are not required to identify absent class members by name to obtain certification of their TCPA claims—the inquiry focuses on whether the class is defined by reference to objective criteria. And even though Plaintiffs are not required to identify class members for purposes of certification, Defendants' own expert admits that historical subscriber information is available from the telephone carriers themselves. Thus, Defendants' final argument does not stand in the way of certification.

---

[1] As an initial matter, Defendants' argument is based on a flawed premise—that the Seventh Circuit's decision in *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012) holds that "only the person subscribing to a number at the time of a call has a [TCPA] claim," and therefore that, "Plaintiffs must propose a method to identify" such persons "in order to ascertain and [] certify [the] class." (Def. Supp. Resp. at 1-2) The *Soppet* decision holds no such thing. First*, Soppet* does not address who has standing to assert a TCPA claim, and it does not say anything about Rule 23's ascertainability requirements. Rather*, Soppet* addresses who can be considered a "called party" for purposes of determining who may provide consent to receive robocalls. *Id.* at 640-641. In affirming the decision of this Court, the Seventh Circuit held that a previous subscriber's consent to receive robocalls did not transfer over to a new, unrelated subscriber when the previous subscriber relinquished the number, and rejected the argument that defendant's calls were valid so long as the "intended recipient" provided consent. *Id.* at 640-641. Moreover, in arriving at that holding, the *Soppet* Court did not construe the term "subscriber" as narrowly as Defendants here suggest. Instead, it described a "subscriber" as "the person who pays the bills *or* needs the line in order to receive other calls." *Id.* at 640 (emphasis added).

[2] This was a binding judicial admission that Defendants cannot retract now. *See, e.g., McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir. 2002) ("The verbal admission by SCI's counsel at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings."). And although CCL's counsel made the admission, Berkley took no issue with it during oral argument.

## ARGUMENT

Plaintiffs' earlier briefing in support of class certification demonstrated that classes may be certified without identifying each class member by name. *See* Dkt Nos. 146, 202, 227. In TCPA cases, the objective criteria sufficient to meet the ascertainability requirement for certification is readily found when class membership can be determined by a list of telephone numbers that received illegal communications, or from the subscribers' own telephone bills. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *7 (N.D. Ill. Aug. 20, 2009) (back up fax logs—which did not identify the name or addresses of the actual entities that received the faxes—satisfied Rule 23's ascertainability requirement); *CE Design v. Beaty Const., Inc.*, No. 07 C 3340, 2009 WL 192481, at *3-4 (N.D. Ill. Jan. 26, 2009) (certifying plaintiff's TCPA claims despite lack of master list of numbers receiving illegal fax solicitations).[3] Defendants' insistence that Plaintiffs must identify each subscriber's name and address to satisfy Rule 23's ascertainability requirement cannot be squared with these decisions, or with Rule 23's requirement that individual notice be provided "to all members who can be identified through reasonable effort," rather than requiring individual notice for all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

Nevertheless, Plaintiffs will be able to identify and provide notice to a substantial number of Class members using a combination of phone numbers in Defendants' records, the records of third-party phone carriers and third-party database providers. As such, Defendants' new argument fails.

### Debra Aron's Declaration Confirms That The Classes Are Ascertainable

Relying on their purported expert's lack of awareness of an "industry-wide database or vendor who can reliably provide the name and address of the owner of a wireless number at a

---

[3] In fact, as the Seventh Circuit recently explained in another TCPA cited in Defendants' supplemental brief, "a class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). That courts may certify classes without even determining the class size shows that there is no requirement that each class member be identified either.

specified date in the past," Defendants suggest that there is *no way* to identify the person to whom a telephone number belonged when the calls at issue in this case were made. That is not accurate, and it is not even what Aron concludes in her declaration.[4]

Indeed, Aron never once says that historical subscriber information is unavailable. Instead, all she essentially claims (albeit incorrectly) is that such information can only be collected directly from telephone service providers, that it might take time, and that it might cost money.[5] Dkt. No. 236-1 at 6-8.[6] None of those factors have anything to do with whether class members can be identified, and the possibility that it might be costly to identify class members in a case that involves

---

[4] It appears that Defendants also base this argument, at least in part, on the fact that Richard Kroon was unable to discuss in detail how Plaintiffs would identify specific Class members using the telephone numbers obtained in this litigation. *See* Dkt No. 236 at 2-4. Kroon, however, was not retained to provide an opinion on that matter. Rather, he was retained solely to determine how many unique telephone numbers appeared in the records obtained by Plaintiffs, a task that required merely importing and consolidating 2,736 files into a single database, so that the total number of call detail records and unique telephone numbers could be calculated. *See* Dkt. No. 227, Ex. 45, Rich Kroon Decl. at ¶ 4. Defendants had expressly conceded the Proposed Classes were ascertainable as to those numbers, and so Plaintiffs did not then retain an expert to opine on the issues Defendants now (for the first time) raise. Because Aron does not actually say that Plaintiffs will not be able to compile historical subscriber information, but instead admits that the information is available from telephone companies, Plaintiffs are not submitting an additional affidavit to address third-party vendors that aggregate data to provide the type of historical subscriber information that Aron concedes is also available from the telephone carriers themselves. To be clear, however, there are third-party vendors who can provide historical subscriber information, and Aron's lack of knowledge regarding such databases does not mean that they do not exist. If the Court has additional questions regarding Plaintiffs' ability to obtain such historical subscriber information from sources other than telephone companies, Plaintiffs seek leave to submit an expert affidavit to address that issue.

[5] Specifically, Aron claims that there is no single "readily available industry-wide source of current or historical wireless telephone numbers, names, and addresses," Dkt. No. 236-1 at 4, but notably does not say that there are *no sources* of current or historical wireless telephone numbers, names, and addresses, or that such information cannot be obtained by combining the services of more than one company. Aron takes this approach with numerous other statements as well. For example, Aron does not state that Pacific East lacks the ability to provide a reverse append service on historic data, but instead explains that they "seek the services of another vendor that has some historical data." *Id.* at 12.

[6] Nothing in Aron's declaration suggests that she is qualified to provide an expert opinion regarding reverse telephone lookups or third-party carrier services. Rather, all she did was have an assistant call some third-parties, speak to unidentified representatives, and then include those hearsay statements of what those representatives purportedly said during the calls. And, as admitted during her deposition, although her declaration uniformly states that she made all of the calls herself, she did not make any of them. Ex. 50 at 12, D. Aron Deposition. Rather, her assistant called a bunch of randomly selected companies and then reported their hearsay as fact, misstating who made the calls (Aron's assistant), and sometimes misstating the number of representatives to whom her assistant spoke. *Id.* at 20-23. As such, Aron has no first-hand knowledge about the ability of these third-parties' to provide the services on which she opines.

potentially millions of individuals whose privacy rights were willfully violated, certainly should not prevent class certification.

More importantly for purposes of this brief, however, Aron acknowledges that telephone companies *do have* historical subscriber information.[7] For example, Aron explains that four wireless carriers serve approximately 92% of the market in 2012, *id.* at 7, and that all three of the companies she purportedly contacted have the relevant subscriber information. *See id.* at 7-8 (stating that: (1) Verizon wireless "can provide basic subscriber information, including information for disconnected subscribers, going back seven years"; (2) "Sprint has the ability to … look up the number to see if it has subscriber information for each telephone number (for current subscribers and disconnected subscribers)"[8]; and (3) "AT&T retains information for seven years on its customers.").[9] In addition, publicly available information shows that T-Mobile, which Aron did not contact, retains subscriber information for at least six years. Ex. 51, October 4, 2013 Letter from T-Mobile to U.S. Senator Edward J. Markey at 2-3. Thus, Aron's affidavit confirms that even if third-party databases with historical subscriber information did not exist (which is incorrect), there would still be no real question about the availability of such information, and certainly no bar to certification here.

---

[7] Aron also states that only 2% - 2.5% of telephone subscribers per month change their telephone numbers. Dkt No. 236-1 at 5. Put differently, Aron's testimony is that 98% of telephone subscribers *do not change* their telephone numbers, evidencing that current subscriber data would still be highly likely to reveal a large number of class members.

[8] Presumably, this means that if a customer provided subscriber information (such as name, address, etc.) to Sprint, the company retains a record of that information.

[9] Defendants' assertion that the existence of family plans with multiple members using different telephones would prevent certification based on ascertainability or manageability grounds is also wrong. As evidenced by *Soppet*—and other persuasive cases in this District—either the person who pays the bill or the person who "needs the line in order to receive other calls" has standing to assert a claim. *See Soppet*, 679 F.3d at 640; *see also Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *4 (N.D. Ill. Feb. 11, 2014) ("ownership of the receiving machines is not required by the [TCPA]") (quoting *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *3 (N.D. Ill. Sept. 30, 2011)). As such, it does not matter if those individuals differ, as either one would be in the Class(es). Aron also questions the ability to identify subscribers to prepaid service. At most, that presents a sub-classing issue with respect to prepaid wireless customers, and they could be required to prove their class membership with their own billing information.

In short, Plaintiffs will be able to take the approximately 900,000 unique telephone numbers they have identified, along with the names and (partial) addresses of thousands of individuals who purchased a vacation package after receiving one of the illegal political robocalls—which Defendants have also produced,[10] *see* Dkt No. 227 at 3-4—and obtain their contact information to provide notice from either a third-party database or from the telephone carriers themselves. Others not on those lists can be identified by phone records they produce. Either way, objective criteria exists through which the Proposed Classes can be ascertained, and the Court should grant certification.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order (i) certifying the Proposed Amended Classes, (ii) appointing Plaintiffs Birchmeier, Parkes, and Stone as the Class Representatives of the Cellular Telephone Class and Plaintiff Stone as the Class Representative of the Landline Class, (iii) appointing Jay Edelson of Edelson PC and Scott Rauscher of Loevy & Loevy as Class Counsel, and (iv) granting any such further relief as this Court deems reasonable and just.

Date: July 21, 2014                    By: /s/  Scott R. Rauscher
                                                *Interim Co-Lead Class Counsel*

Date: July 21, 2014                    By: /s/ Rafey S. Balabanian
                                                *Interim Co-Lead Class Counsel*

| Jay Edelson | Scott R. Rauscher |
|---|---|
| jedelson@edelson.com | scott@loevy.com |
| Rafey S. Balabanian | Michael I. Kanovitz |
| rbalabanian@edelson.com | mike@loevy.com |
| Eve-Lynn J. Rapp | Jonathan I. Loevy |
| erapp@edelson.com | jon@loevy.com |
| EDELSON PC | LOEVY & LOEVY |

---

[10] Defendants' supplemental response brief does not so much as acknowledge the records showing the names and addresses of individuals who purchased a vacation package, let alone explain how the classes would not be ascertainable as to those individuals.

| 350 North LaSalle Street, Suite 1300<br>Chicago, Illinois 60654<br>Tel: 312.589.6370<br>Fax: 312.589.6378<br><br>***Counsel for Stone, and Interim Co-Lead Class Counsel*** | 312 N. May Street, Suite 100<br>Chicago, Illinois 60607<br>Tel: 312.243.5900<br>Fax: 312.243.5902<br><br>***Counsel for Birchmeier and Parkes, and Interim Co-Lead Class Counsel*** |
|---|---|
| Scott D. Owens<br>scott@scottdowens.com<br>LAW OFFICES OF SCOTT D. OWENS, ESQ.<br>664 East Hallandale Beach Boulevard<br>Hallandale, Florida 33009<br>Tel: (954) 306-8104<br><br>***Counsel for Stone*** ||

<u>**CERTIFICATE OF SERVICE**</u>

       I, Scott R. Rauscher, an attorney, hereby certify that on July 21, 2014, I caused the foregoing to be filed by the Court's CM/ECF system and to be served on all counsel of record.

                                 /s/ Scott R. Rauscher