# EXHIBIT 51



601 Pennsylvania Ave., NW
North Building, Suite 800
Washington, DC 20004

October 4, 2013

The Honorable Edward J. Markey
United States Senate
218 Russell Senate Office Building
Washington DC 20510-2107

Dear Senator Markey:

We write in reply to your letter of September 12, 2013, regarding law enforcement practices with respect to mobile phones.  As you know, what was T-Mobile USA, Inc. in 2012 merged with Metro PCS Communications, Inc. on May 1, 2013, forming T-Mobile US, Inc. (hereinafter, "TMUS").  The combined company continues to operate T-Mobile and MetroPCS as separate brands but we are migrating to a common network infrastructure with common support functions.  As a result, this response is for the combined company.

TMUS provides customer information to law enforcement agencies only where legally permitted or required to do so.  TMUS maintains a dedicated law enforcement relations team (referred to as "LER") which handles lawful requests from law enforcement and other governmental agencies and the courts for customer information. This team is trained in legal requirements and follows strict internal policies and procedures.  LER works closely with our Chief Privacy Officer and reports into the VP of Legal Affairs and Compliance in the Legal Department.

We require law enforcement agencies to follow established legal processes when they make a request for customer information.  We examine each such request to ensure it meets legal requirements.   We seek clarification if a request appears overbroad, unauthorized or omits important details. If a request is beyond the scope of the law, requests information outside of the company's control, is facially defective or otherwise has a legal impairment it is rejected.   We would note that when a lawful request for customer information is presented to us we are obliged to comply.

1

As permitted by law, we seek to recover our costs incurred in responding to lawful requests. We do not, however, market services to law enforcement.

In response to your specific questions, please find our answers below:

*1. In 2012, how many total requests did your company receive from law enforcement to provide information about your customers' phone usage?*

> In 2012, TMUS received 297,350 requests for customer phone usage information.

*a. Within that total, please list the amount of requests your company received for each type of usage, including but not limited to the following: 1) Geo-location of device (please distinguish between historical and real-time); 2) Call detail records (i.e., pen register and trap and trace); 3) Text message content; 4) Voicemail; 5) Cell Tower dumps; 6) Wiretapping; 7) Subscriber information; 8) Data requests (e.g., Information on URLs visited).*

> While TMUS maintains records on each individual request, TMUS currently does not track requests according to all the categories listed above. TMUS received approximately 3000 wiretap requests.

*b. Within that total, how many of the requests were made in emergency circumstances, and how many were in non-emergency situations?*

> Approximately 29% of responses were for declared emergency circumstances or inquiries from public safety answering points ("PSAPs").

*c. Within that total, how many of the requests did your company fulfill and how many did it deny? If it denied any requests, for what reasons did it issue those denials?*

> While TMUS maintains records on each individual request and whether it has been fulfilled or denied, TMUS currently does not track the information requested above. Requests may be denied in whole or in part, or denied and resubmitted if the defect has been remedied.

*d. Within that total, please breakdown how many of the requests were made by Federal authorities, how many by state authorities, and how many by local authorities.*

> While TMUS maintains records on each individual request and requestor, TMUS currently does not track the information requested above.

*2. For each type of usage in 1(a), how long does your company retain the records?*

While there are minor variations based upon internal circumstances (such as type of account, exact type of information, etc.) which may alter the information below, TMUS generally retains customer information for the following time periods.

| Information Type | LEGACY COMPANY | |
|---|---|---|
| | T-Mobile | Metro PCS |
| Geo-location | Not stored | Not stored |
| Historic Cell Site Information | 180 Days | 180 Days |
| Call Detail Records | Up to 7-10 years | 2 years |
| Text Message Content | Not stored | 60 Days |
| Voicemail Content | Up to 21 Days | Up to 7 Days (on handset only) |
| Cell Tower Dump Information | 180 Days | 180 Days |
| Voice Content | Not stored | Not stored |
| Subscriber Information | 6 years from account close[1] | 6 years from account close[2] |
| Data requests (e.g., Information on URLs visited) | Not stored | Not stored |

*3. What is the average amount of time law enforcement requests for one cell tower dump (e.g., one hour, 90 minutes, two hours, etc.)? For each hour of a cell tower dump that your company provides, on average how many mobile device numbers are turned over to law enforcement?*

While TMUS maintains records on each individual request, TMUS currently does not track the information above. Cell phone tower usage (and thus the number of customer devices utilizing a specific tower across any given time period) varies greatly depending on location, time of day and other factors.

*4. In 2012, how many requests did your company receive under Section 215 of the Patriot Act?*

TMUS understands that the Department of Justice considers whether or not a provider receives any request under the Foreign Intelligence Surveillance Act to be classified, as well as the total number of such requests, if any. Accordingly, TMUS can neither confirm nor deny that it receives such requests.

---

[1] Or longer period if T-Mobile needs such information for business, legal, or tax purposes.
[2] Ibid.

3

*5. What protocol or procedure does your company employ when receiving these requests?*

>TMUS cannot confirm whether it receives such requests as noted in the previous answer. As a general principle in regard to any legal process, Requests are reviewed to determine that they are valid on their face (for example, the request contains the appropriate signatures and the issuing body has the authority to make the request). Applying applicable state and Federal law, a determination is made whether the proper legal process (subpoena, court order, warrant) has been used based upon the type of information requested. The LER team will also determine that the demand is not beyond the scope of the law, is sufficiently specific and that it clearly describes the specific subscriber whose information is sought.

*a. What legal standard do you require law enforcement to meet for each type of usage in 1(a)?*

>The legal authority required may vary upon certain specific circumstances, case law and the jurisdiction. Based on our understanding of the applicable legal authority, generally, TMUS requires the following:

| Information Type | Required Authority |
| --- | --- |
| Prospective Location | Warrant |
| Historic Cell Site Information | Court Order |
| Historic Call Detail Records | Subpoena |
| Real-time Call Detail Records | Court Order |
| Text Message Content | Warrant |
| Voicemail Content | Warrant |
| Cell Tower Dump Information | Warrant |
| Real-time Voice Content | Warrant |
| Subscriber Information | Subpoena |
| Data requests (e.g. , Information on URLs visited) | Warrant |

*b. Does your company distinguish between emergency cell phone tracking requests from law enforcement and non-emergency tracking requests? If yes, what are the distinctions?*

>We do distinguish between emergency requests and non-emergency requests. The distinction we apply is based on federal law. The Electronic

4

>Communications Privacy Act or ECPA allows for disclosure of communications content or information pertaining to a subscriber if we believe in good faith that an emergency involving danger of death or serious physical injury to any person requires disclosure of the information without delay.[3] TMUS' requires law enforcement to make a written request describing the emergency and answer certain specific authenticating questions. Also, under federal law governing Customer Proprietary Network Information ("CPNI"), we are authorized to provide CPNI including call location information to law enforcement in order to respond to a user's call for emergency services.[4]

*c. Have any of these practices changed since your May 2012 correspondence?*

>No.

*6. Did your company encounter misuse of cell phone tracking by police departments during 2012? If yes, in what ways has tracking been misused? And if yes, how has your company responded?*

>We are not aware of any such misuse.

*7. Does your company have knowledge of law enforcement authorities that use their own tracking equipment (e.g., Stingray phone trackers)? If yes, please explain. Does your company cooperate with law enforcement that uses its own tracking equipment? If yes, how?*

>Other than what has been publicly reported about law enforcement's tracking equipment, we are not aware of the tracking equipment that law enforcement authorities may use and we are not aware that that any law enforcement authority has asked TMUS for assistance with their own tracking equipment. Any requests for assistance would be handled pursuant to legal requirements and we would require a proper showing of sufficient legal authority before providing such assistance.

*8. In 2012, did your company receive money or other forms of compensation in exchange for providing information to law enforcement? If yes, how much money did your company receive? And if yes, how much does your company typically charge for specific services (please refer to the list in 1(a) above)?*

>Federal law provides that carriers are entitled to be compensated for the reasonable costs of providing technical assistance for lawful surveillance

---

[3] 18 U.S.C. § 2702(b)(6)(c), *as amended* (communications content; 18 USC § 2702(c)(4) (customer records or content pertaining to a subscriber).
[4] 47 USC § 222 (d)(4)(A).

5

activities, and for costs incurred in providing stored electronic communications or backup copies to the government.[5] In addition, we may also assess certain other charges in connection with responding to lawful requests. See attached fee schedule. In 2012, T-Mobile USA collected approximately eleven million for providing LER services to law enforcement agencies.

*a. Does your company charge different amounts depending upon whether the request is for emergency or non-emergency purposes? Does your company charge fees for emergency cell phone tracking requests from police departments?*

Generally, TMUS does not charge law enforcement agencies for the costs incurred in responding to exigent requests (emergencies) such as kidnappings, imminent terrorist acts, specific threats to law enforcement agents and other crimes which may fall under 18 U.S.C. 2702. However, that depends on the type of production or service required and the volume of the production. 18 USC § 2706 precludes us from cost recovery for producing toll records and subscriber information except in cases of undue burden.

*b. Please include any written schedule of any fees that your company charges law enforcement for these services.*

Please see attachments. Separate price sheets have been provided for the two separate business units. The T-Mobile USA price list is a combination of price sheets used for different request types.

Respectfully Submitted,

*Tony Russo*

Tony Russo
Vice President, Federal Legislative Affairs

---

[5] See 18 U.S.C. § 2518(4) (wiretaps); 18 U.S.C. § 3124 (c) (pen register, trap and trace); 18 U.S.C. § 2706(a) (stored electronic communications).

6

**T· ·Mobile·**
Law Enforcement Relations
Combined Price Sheet (excluding Metro PCS)

## Fee Schedule for Real-Time Surveillance and Location Information

Telecommunications carriers are entitled, under federal and state statutes, to be compensated for reasonable expenses incurred in providing the "information, facilities and technical assistance" necessary for pen register and lawful intercept activities. T-Mobile USA's fee schedule reflects the cost of back-office infrastructure, personnel and other costs incurred in providing such services pursuant to court order.

**Fees for Pen Register/Trap and Trace Orders (call associated data only) and Wire-Communications or Electronic Communications Intercept Orders (call associated data and call content)**
A flat Provisioning fee of **$500.00** per target number/per intercept type (i.e. circuit-switched/telephony or packet-data communications) applies to each International Mobile Subscriber Identity (IMSI) number targeted in a PR/TT/Wire-Communications Intercept Order.
- A pro-rated fee for each <u>initial</u> order (i.e. 30 day initial order for T-III/T50, 60 days initial order for PR/TT) is as follows:
- Pen Register: **$20.00** per day/per target/per intercept type
- Pen Register with cell site (18 USC, 2703d): **$25.00** per day/per target/per intercept type
- T-III/T-50 (includes PR/TT): **$40.00** per day/per target/per intercept type

**Pen Register/Intercept Orders - Additional Charges**
- Should the order involve additional technology types (for instance, packet data information), an additional flat fee of **$250.00** per target number will be incurred.
- Re-initiations of intercepts for orders that have expired are treated as new intercepts.
- Packet Data interceptions are treated as an additional interception and are charged in addition to Voice/SMS intercepts.
- Costs associated with any temporary or permanent leased circuits (i.e. ISDN, T1, etc.), ancillary equipment (i.e. routers) and/or software application(s) are the sole responsibility of the law enforcement agency administering the court-authorized activity.  T-Mobile USA currently provides secure VPN connection at no cost.

**Voice Mail Content Retrieval**
- The preferred method of production is a copy of all historic content responsive to your request.
- A flat fee of $150.00 per voice mailbox applies to the "cloning" of a subscriber's voice mail services. The flat fee applies to each period of ninety (90) days or part thereof.

**WebMap Location Tool charges**
- **$100.00** per day per MSISDN.
- **Only Government E-Mail addresses will be accepted for response (up to five addresses).**
- Repeat notifications are set to every 15 minutes by default.
- Charges may be waived for certain authenticated emergency situations (pursuant to 18 U.S.C. §§ 2518, 2701, 2702, 3125 and any other applicable Federal or State statute).

**Cell Tower Searches**
- **$100.00 per cell site per day** to provide a list of mobile numbers only.
- **$150.00 per cell site per day** to provide a list of mobile numbers <u>and</u> corresponding subscriber information.
- Requests for less than 24 hours but include contiguous time frames that cross over two dates (such as 11:00 pm – 1:00 am) will only be counted as one date.

*****Fee Schedule Subject to Change Without Notice**
**Fee Authorization for Expedited Service**

1

**T··Mobile··**

Law Enforcement Relations
Combined Price Sheet (excluding Metro PCS)

T-Mobile USA's Law Enforcement Relations (LER) receives thousands of requests for customer information each year. The only fair method for production is to respond in the order received. We recognize that on occasion, however, our requestors need expedited processing in non-emergency situations. Working requests out of order generally leads to duplication of work, additional delays for some requests and more phone calls due to those delays. All of this involves significant cost and risk to T-Mobile. To meet the needs of our requestors, we offer paid expedited service. The turnaround time for most expedited responses is one (1) business day or less after receiving payment and the legal demand. This is a premium service and not subject to the confines of 18 USC §2706 as we are not charging for the records but for the premium expedited service. T-Mobile will only release expedited records upon payment in full for the service. We will verify the existence of records prior to any charges being incurred. **T-Mobile reserves the right to refuse expedited service and change any and all policies or prices regarding such service.**

ERT Requests are "all or nothing" requests. This means that if a legal demand requests more information than the party seeking the expedite desires, s/he must submit a new legal demand limiting their request or accept the expedited portion as a full response to the original legal demand. A request for limited production must be made explicitly and in writing.

**We will not process civil case expedites.** We will process criminal defense expedites but NOT in California. Please call LER between 10:00am and 4:00pm ET for more details.

| |
|---|
| $50 minimum charge. |
| $50 per number charge on CDR requests (past 30 days). |
| Additional Charges: $15 for each additional billing cycle (bills – pdf format) or month (xls format; available for up to 90 days) following the most recent 30 days of records **T-Mobile will only expedite a maximum of 6 months of records per expedited request. If your require more than 6 months of records you must submit (an) additional(s) legal demands to support the full time frame, and will be charged separately for each request.** |
| For Subscriber Info only requests: $50 Fee (allows for production of 1 number). $10 for each additional number. |
| Cell site records with CDR: $10 extra per number per month (xls format; available for up to 90 days) over normal CDR pricing. |
| Cell tower dumps: Standard fee is $100/hr plus $50 expedite (minimum charge of $150). If subscriber info is requested on all numbers, the charge will be $150/hr plus $50 expedite plus $50 for every ten subs (minimum charge of $250). |
| Criminal Defense expedites will be charged per the normal cost structure plus the $50 expedite fee. |
| Any fees that would normally be charged in the normal course of business will have to be prepaid upfront and are in addition to the expedite fee of $50. |

2

Law Enforcement Relations
Combined Price Sheet (excluding Metro PCS)

## Fee Authorization for Burdensome or Unusually Burdensome Requests

PLEASE TAKE NOTICE THAT T-MOBILE IS IN RECEIPT OF YOUR SUBPOENA AND PROVIDES THE FOLLOWING RESPONSE: GENERALLY, T-MOBILE DOES NOT CHARGE FOR RECORDS RELATED TO A REQUEST MADE PURSUANT TO 18 USC §2703(c)(2) OR EQUIVALENT STATE STATUTE. HOWEVER, 18 USC §2706(c) ALLOWS CARRIERS TO RECOVER COSTS IN CASES DEEMED TO BE UNDULY BURDENSOME. THE AVERAGE REQUEST RECEIVED BY T-MOBILE REQUESTS APPROXIMATELY 55 DAYS OF RECORDS (WITH A MEDIAN NUMBER OF 31).

YOUR SUBPOENA (ATTACHED) REQUESTS CALL DETAIL RECORDS FOR THE PERIOD OF _____ THROUGH _____.
THIS WOULD RESULT IN \_\_\_\_ MONTHS OF RECORDS. THE COMPILATION OF SUCH RECORDS INVOLVES MORE THAN ACCESSING MAINTAINED RECORDS. SIGNIFICANT COMPILATION AND ANALYSIS IS NECESSARY IN ORDER TO FULFILL SUCH A LARGE REQUEST.

MULTIPLE SYSTEMS MAY NEED TO BE ACCESSED THEN ANALYZED FOR COMPLETENESS AND COMPILED TO MAKE IT COHERENT FOR AN EXTERNAL REQUESTOR. MULTIPLIED BY THE NUMBER OF SUBSCRIBERS, YOUR REQUEST INVOLVES \_\_\_32\_\_\_ MONTHS OF RECORDS.

DUE TO THE VOLUMINOUS NATURE OF YOUR REQUEST, T-MOBILE WILL REQUIRE ADDITIONAL TIME TO RESPOND WITH CALL DETAIL RECORDS (ANY SUBSCRIBER INFORMATION IS INCLUDED WITH THIS LETTER NOTWITHSTANDING AND WITHOUT WAIVING ANY OBJECTION). ADDITIONALLY, T-MOBILE SEEKS RECOVERY OF COSTS.

- $25 per number charge on CDR requests (the past 30 days).
- $15 for each additional billing cycle (bills – pdf format) or month (.xls format; available for up to 90 days) following the most recent 30 days of records.
- Cell site records with CDR: $10 extra per number per month (xls format; available for up to 90 days) over normal CDR pricing.
- Cell tower dumps: Standard fee is $100/hr. If subscriber info is requested on all numbers, the charge will be $150/hr plus $50 for every ten subs (minimum charge of $200).

**TOTAL CHARGES FOR COMPLIANCE WITH THIS SUBPOENA WILL BE $_____.**

PLEASE CHECK ONE OF THE OPTIONS BELOW, **SIGN** AND FAX TO OUR OFFICE AT (973) 292-8697. THANK YOU FOR YOUR COOPERATION.

\_\_\_ PLEASE COMPLY WITH THE SUBPOENA AS IT WAS ISSUED. I AUTHORIZE ALL CHARGES AND ACKNOWLEDGE THAT COMPLIANCE TIME WILL BE EXTENDED DUE TO THE VOLUMINOUS AND BURDENSOME NATURE.

\_\_\_ PLEASE COMPLY WITH THE SUBPOENA, AMENDING THE REQUESTED DATE RANGE FOR CALL DETAIL RECORDS TO THE FOLLOWING: _____. I AUTHORIZE THE AMENDED CHARGES AS OUTLINED ABOVE.

\_\_\_ PLEASE DISREGARD THE SUBPOENA, AS I DO NOT AUTHORIZE ANY CHARGES.

 # MetroPCS Subpoena Compliance

**Law Enforcement Agencies/Attorneys:**
*Welcome to MetroPCS! Please read the updated information. Thank you!*

## What is Needed from Law Enforcement/Attorneys to Process Requests
The following information will assist our team of analysts to process your records:

- Please include the requesting agent's first and last name, phone number, fax number, email and mailing address with each request. **Email is our preferred method of returning records.**
- Please include specific agency billing instructions.
- Please use 1-800-571-1265 when calling the Compliance Department. Please listen to the options and choose appropriately.
- For general questions and status checks, please use our leaquestions@metropcs.com email.
- Be prepared with the tracking number, target number, or invoicing number if calling or emailing for information.

All requests received by fax or email will generate an automatic receipt when accepted into the system. The records will be returned via email, fax, or mail. **Email is the fastest method of receiving results**.

### How to Contact MetroPCS

Phone 24x7: **(800) 571-1265**
Office Hours: **8:00-5:00 CST**
Please listen to the options and choose appropriately.

Mailing address:
**MetroPCS Subpoena Compliance
2250 Lakeside Blvd.
Richardson, TX 75082**

To fax subpoenas/court orders:
**972-860-2635**

To E-mail subpoenas/court orders:
**subpoenas@metropcs.com**

For questions and status checks:
**leaquestions@metropcs.com**

For pen/wire issues or questions:
**esu@metropcs.com**

For invoicing issues or questions:
**leainvoicing@metropcs.com**

## What is Available
The following cites what information is available, specific documentation required, and the associated reasonable and customary fees.

- **Subscriber**: Subscriber information may be obtained with a subpoena. Current subscriber data is provided unless a specific time frame is requested.
- **Call Detail Records**: Call detail records are retained approximately **6** months from the current date after which they are overwritten and cannot be recovered. Call detail records may be obtained with a subpoena. Call detail records with *cell sites* require a court order or a search warrant. Since subscribers change often, it is advised to narrow the timeframe to the time of the event.
    **$50 per number for call detail records for more than 30 days**
- **Text messages**: Text messages are stored for approximately 60 days and require a court order, search warrant, or grand jury subpoena.
    **$50 per number for text messages with content or without content for any date range**
- **Voicemail Password Reset**: Voicemail is stored on the server for 7 days unless the subscriber saves the message. Once the message is deleted, it is permanently deleted and cannot be restored. A court order or search warrant is required in order for the voicemail to be reset.
    **$50 per number for a voicemail password reset**
- **Calls to Destination Search**: Requires a court order or a search warrant.
    **$50 per number for calls to destination search**
- **Cell Tower/Area Dumps**: Requires a court order or a search warrant.
    **$50 for a Cell Tower Dump per tower number for a 2 hour period**
    **$100 for an Area Dump (if you know the location but do not know the cell towers that affect the area) for a maximum of 2 cell towers for a 2 hour period per cell tower search**
- **Pen Registers**: Requires a court order.
    **$200 set-up fee and $20 per day maintenance with a minimum fee of $500**
- **Wire Taps**: Requires a court order.
    **$400 set-up fee and $40 per day maintenance**

## What is not Available
The following information is not available:

- Subscriber information based on an IP Address
- Picture messages or Multi-Media Messages (MMS)
- Caller ID blocked from Non-MetroPCS customers
- GPS, pinging or triangulation

Rev. 6-26-2012 dml