IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and a class of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., | Case No. 1:12-cv-04069<br><br>Honorable Matthew F. Kennelly |

## PLAINTIFFS' OBJECTIONS TO THE DECLARATION OF DR. DEBRA J. ARON

Plaintiffs Grant Birchmeier, Stephen Parkes, and Regina Stone ("Plaintiffs") submit the instant filing to note their objections to the Declaration of Dr. Debra J. Aron, which Defendants Caribbean Cruise Line, Inc., Vacation Ownership Marketing Tours, Inc., and the Berkley Group, Inc. ("Defendants") proffered in support of their Corrected Joint Supplemental Response in Opposition to Plaintiffs' Motion for Class Certification, Dkt. 236. Aron's expert testimony is not based on sufficient data and facts, and it impermissibly relies on the out-of-court hearsay testimony of undisclosed individuals, whom Defendants have not demonstrated to be relied on by other experts in her field as required by the Federal Rules.[1] In support thereof, Plaintiffs state as follows:[2]

---

[1] Plaintiffs submit this brief merely to note on the record their objections to the manner and methods in which Aron's conclusions were reached. As stated in their Second Supplemental Reply in Support of Class Certification, to the extent the Court has additional questions regarding the substance of Aron's testimony—*i.e.* Plaintiffs' ability to obtain historical subscriber information—Plaintiffs have sought leave to submit their own expert testimony to address that issue. Dkt. 239.

[2] Plaintiffs intended to file their objections to Aron's Declaration late last week, but due to a building wide electric shutdown in the Northern District, the Court's ECF system was temporarily unavailable.

1

1.      On June 26, 2014, Defendants submitted the Declaration of Debra J. Aron in support of their Corrected Joint Supplemental Response in Opposition to Plaintiffs' Motion for Class Certification (the "Supplemental Response"). Dkt. 236.

2.      In her Declaration, Aron opines that "there is no readily available industry-wide source of current or historical wireless telephone numbers, names, and addresses." Dkt. 236-1 ¶ 9. Aron further states that "[r]everse look-up" services (i.e., services that provide a name and address associated with a telephone number) available on the web do not purport to provide information for past subscribers [] and…are highly unreliable with respect to current subscriber information." *Id.* ¶ 10.

3.      In arriving at these conclusions, Aron's declaration stated that she had conversations with various third-party companies that she determined offered relevant information on such topics. Specifically, Aron declared that she, *inter alia*:

- "contacted Pacific East and was informed by its representative that Pacific East does not have the capabilities to provide a reverse append service on historic data, only on current data…[and that t]he representative indicated that Pacific East could seek the services of another vendor that has some historical phone data but indicated that the (undisclosed) vendor does not purport to track complete historical data, Dkt. 236-1 ¶ 12;

- "investigated the offerings from Infutor...[and was] advised by a sales director that Infutor can only determine whether a telephone number is wireless or wireline currently, not historically [and that she] was also advised that Infutor is not aware of having used historic data for reverse append queries in the past, *id.* ¶ 11, FN 4;

- "contacted LSSiDATA…. [at which time a] vice-president of sales informed [her] that the company does not have the ability to do a historic reverse append on wireless phones," *id.*;

- contacted "representatives at Verizon's Legal Compliance Center [who] stated they never received a voluminous request of the magnitude of 900,000," that it would take "several day to process such request," and that "Verizon maintains information for seven years," *id.* ¶ 20,

2

- contacted AT&T whose "personnel…stated [that subpoena requests to identify 900,000] "would be discussed only after [a] court order" and that "AT&T retains information for seven years," *id.*

- contacted "Sprint's Corporate Security representatives" who stated that "Sprint has the ability to process [a request to look up 900,000 phone numbers] to see if it has subscriber information for each telephone number." *Id.*[3]

4.  On July 15, 2014, the Court entered an order directing Plaintiffs to file a limited five-page reply brief addressing Defendants' argument that Plaintiffs would not be able to identify the subscribers of the particular phone numbers called by Defendants. Dkt. 238. In an effort to respond to Defendants' argument as ordered, on July 19, 2014, Plaintiffs deposed Dr. Aron.

5.  Aron's deposition showed that her Declaration proffered in support of Defendants' Supplemental Response is objectionable, because the opinions contained in her Declaration (i) are not based on personal knowledge or sufficient facts and data, nor are they the product of reliable principle and methods, and (ii) contain the impermissible hearsay opinions of undisclosed individuals whom Defendants have not demonstrated would reasonably be relied on by other experts in her field as required by the Federal Rules of Evidence. As such, Plaintiffs object to Aron's Declaration, as more fully set forth below.

6.  Specifically, under Rule 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form an opinion or otherwise" so long as, *inter alia*, "the testimony is based on sufficient facts and data" and "the testimony is the product of reliable principles and methods." FRE 702. Additionally, "an expert may base their opinion on facts or data that the expert has been made aware of or personally observed" so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." FRE 703. The proponent of the testimony

---

[3]   Dr. Aron also reported on the capabilities of CenturyLink and Comcast. *See* Dkt. 236-1 ¶ 20.

bears the burden of demonstrating that persons in the expert's field would reasonably rely on such facts and data. *See Jamsport Entm't, LLC v. Paradama Prods., Inc.*, No. 02 C 2298, 2005 WL 14917, at *6 (N.D. Ill. Jan. 3, 2005) (Hon. Kennelly, M.).

7. In regards to Plaintiffs' first objection, as evidenced by her deposition, Aron's conclusion that there is "no readily available industry wide source of current or historical wireless telephone numbers, names, and addresses," Dkt. 236-1 ¶ 9, is not based on sufficient facts or data, and is not the product of reliable principles and methods. Foremost, Aron admits that she has not worked directly with the companies on whose capabilities she testifies, *see e.g.* Ex. A, July 19, 2014 Transcript of Testimony of Debra Aron at 12:22-24 (confirming that she has not worked directly with Infutor), but rather that she merely conducted "general research… to identify vendors that represent themselves as being able to provide the kind of information she was looking for." *Id.* at 13:15-19; *see also* 16:7-24 (confirming that to determine which vendors to contact she put search terms into Google or some other search engine).[4]

8. Moreover, she admits that she did not complete any of the interviews on which she relies directly as she claims in her Declaration, but rather that a member of her staff, Ana Danies, conducted "all of the specific interviews [] refer[ed] to in [her] report". *See id.* at 7:24-8:1-10. During her deposition Aron could not confirm the name of a single individual Ms. Danies spoke with at any of the companies that she contacted, nor could she recall the number of individuals with whom Ms. Danies spoke. *See e.g. id.* at 9:1-22 (confirming that Ms. Danies spoke to a representative of Pacific East whose name and title she did not know); *id.* at 12 (confirming that she did not personally interview anyone from Infutor and that she did not know off hand

---

[4] Dr. Aron testified that her decision to contact certain entities was also based on "the knowledge [she] obtained in the course of [her] involvement in other TCPA cases," but she could not recall which companies that she previously reported on as a result of such previous involvement. *See* Ex. A, Aron Decl. at 13:22-14:20. Not surprisingly, Dr. Aron subsequently testified that she never "participated in designing a notice plan for a TCPA case," and that she had only provided an expert report in one other TCPA case. *Id.* at 26:2-19.

which sales director Ms. Danies spoke with); *id.* at 15-17 (stating that she did not know the name of the vice president of sales at LSSiData with whom she claimed to speak in her Declaration); *see id* at 18-22 (confirming the same for Verizon, AT&T, and Sprint).

9. Further, Aron could not elaborate on why those individuals with whom Ms. Danies spoke were qualified to provide the so-called "facts" on which she ultimately relied, other than to state that the individuals *represented themselves* to be so qualified. *See e.g. id.* at 9:19-22 (testifying that the job responsibilities of Pacific East's representative "are those that, *according to the individual*, qualify them to speak on the questions [her staff] w[as] asking.") (emphasis added); *id.* at 14 (conceding that she contacted Infutor "because *they represent themselves*…as the industry's largest available database of telephone numbers for forward and reverse phone append) (emphasis added); *id.* at 19:9-15 (confirming that the Verizon representative was qualified to speak to its subpoena compliance policy based on the fact that that representative worked "in the office to which Verizon directs people who are making inquires about this [issue]).

10. Finally, Aron also admitted that neither she nor her staff ever spoke with anyone from Comcast, Century Link, or T-Mobile, *see id.* at 17, 24-26, but rather that the information she relied on came from the policies made publicly available by them on their websites.

11. Based on the foregoing, Plaintiffs object to Aron's reliance on the use of such speculative and unreliable information to form the basis of her conclusions here. *See e.g. Olympia Express, Inc. v. Linee Aeree Italiane S.p.A.*, No. No. 02 C 2858, 2006 WL 293883, at *5 (N.D. Ill. Feb. 3, 2006) ("Expert testimony relying on the opinions of others should, of course, be rejected if the testifying expert's opinion is too speculative ... or the underlying basis is faulty.") (quoting *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000)).

12. Plaintiffs similarly object to Aron's Declaration as it relies on otherwise impermissible hearsay testimony, and Defendants have failed to demonstrate that such "facts"

are the type reasonably relied on by other experts in Aron's field. Aron references her staff's conversation with the representatives of six separate companies, without any substantiation to support their qualifications other than their own attestations that they were so qualified. *See* Ex. A, Aron Decl. at 9:19-22, 14, 19:9-15; *see also Jamsport Entm't, LLC*, 2005 WL 14917, *6 (rejecting expert's reliance on third-party out-of-court affidavits where party "provided no basis [to] claim that persons in [the expert's] field reasonably rely upon otherwise impermissible hearsay statements…whose veracity ha[d] not been subjected to testing").

13.     Such statements constitute otherwise impermissible hearsay, and Defendants should not be permitted to rely on these unsubstantiated statements merely by submitting them through their so-called expert.[5] *See e.g. e.Client Funding Solutions Corp. v. Crim*, 943 F. Supp. 2d 849, 861-62 (N.D. Ill. 2013) (rejecting expert's attempt to rely on the unsubstantiated opinions of other individuals and holding that "Rule 703 is not intended to allow oblique evasions of the hearsay rule, by allowing a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.") (citing *Wielgus v. Ryobi Techs., Inc.*, 893 F.Supp.2d 920, 928 (N.D. Ill. 2012); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 808 (N.D. Ill. 2005) (internal citations omitted).[6] As such, Plaintiffs object to both Defendants' and Aron's reliance on such statements as well.

---

[5]     Such statements are in fact double hearsay, because Aron relies on the out-of-court statements of her staff to recap the out-of-court statements of the third party vendor/companies with whom her staff members spoke. *See* FRE 801 (hearsay is an out of court statement "offered in evidence to prove the truth of the matter asserted in the statement").

[6]     Indeed, including such statements in Dr. Aron's Declaration, essentially allows Defendants to do what they otherwise could not: proffer out of court statements for their truth. To be sure, the opinions offered by Defendants through Dr. Aron's Declaration are akin to those they could have instructed their paralegal to obtain by calling the various carriers and companies, and then submitting a declaration reporting on what they said. Of course, such statements would unquestionably be considered impermissible hearsay rather than relevant evidence.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court note and sustain their objections to Aron's Declaration for the record.

Date: July 28, 2014                                        By: /s/  Rafey S. Balabanian

| Jay Edelson | Scott R. Rauscher |
|---|---|
| jedelson@edelson.com | scott@loevy.com |
| Rafey S. Balabanian | Michael I. Kanovitz |
| rbalabanian@edelson.com | mike@loevy.com |
| Eve-Lynn J. Rapp | Jonathan I. Loevy |
| erapp@edelson.com | jon@loevy.com |
| EDELSON PC | LOEVY & LOEVY |
| 350 North LaSalle Street, Suite 1300 | 312 N. May Street, Suite 100 |
| Chicago, Illinois 60654 | Chicago, Illinois 60607 |
| Tel: 312.589.6370 | Tel: 312.243.5900 |
| Fax: 312.589.6378 | Fax: 312.243.5902 |
| *Counsel for Stone, and Interim Co-Lead Class Counsel* | *Counsel for Birchmeier and Parkes, and Interim Co-Lead Class Counsel* |
| Scott D. Owens || 

Scott D. Owens
scott@scottdowens.com
LAW OFFICES OF SCOTT D. OWENS, ESQ.
664 East Hallandale Beach Boulevard
Hallandale, Florida 33009
Tel: (954) 306-8104

*Counsel for Stone*

## **CERTIFICATE OF SERVICE**

      I, Eve-Lynn J. Rapp, an attorney, hereby certify that on July 28, 2014, I caused the foregoing to be filed by the Court's CM/ECF system and to be served on all counsel of record.

      /s/    Eve-Lynn J. Rapp