**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and a class of others similarly situated, | Case No. 1:12-cv-04069 |
| *Plaintiffs*, | Honorable Matthew F. Kennelly |
| v. | |
| CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., | |
| *Defendants.* | |

**PLAINTIFFS' MOTION FOR ORDER
COMPELLING T-MOBILE US, INC. TO COMPLY WITH
PLAINTIFFS' SUBPOENAS FOR CLASS MEMBER INFORMATION**

Plaintiffs Grant Birchmeier, Stephen Parkes, and Regina Stone (collectively the "Plaintiffs"),

by and through Class Counsel, hereby submit this Motion requesting that the Court enter an order

requiring non-party T-Mobile US, Inc. ("T-Mobile") to produce the name and address information

of its subscribers in response to Plaintiffs' November 14, 2014 Subpoena, or alternatively, requiring

T-Mobile to designate a corporate representative to sit for deposition for the purpose of testifying

about T-Mobile's capabilities for complying with Plaintiffs' Subpoenas before the Court enters a

compelling order. In support of this Motion, Plaintiffs state as follows:

**FACTS AND RELEVANT PROCEDURAL BACKGROUND**

*The Class Certification Order and Plaintiffs' Subpoena to T-Mobile for Subscriber Information.*

On August 18, 2014, the Court entered an order certifying two Classes—a landline class and

cellular telephone Class—consisting of "All persons in the United States to whom 1) one or more

telephone calls made by, on behalf of, or for the benefit of the Defendants, (2) purportedly offering

a free cruise in exchange for taking an automated public opinion and/or political survey, (3) which

delivered a message using a prerecorded or artificial voice, (4) between August 2011 and August

2012, (5) and your (i) telephone number appears in Defendants' records of those calls and/or the

records of their third party telephone carriers or the third party telephone carriers of their call

centers or (ii) your own records prove that you received the calls – such as your telephone records,

bills, and/or recordings of the calls – and you submit an affidavit or claim form if necessary to

describe the content of the call." (Dkt. 214 at 31.) Shortly thereafter, Plaintiffs proposed a Notice

Plan in which they would seek, *inter alia*, to obtain the names and addresses of Class members whose

telephone numbers appeared in Defendants' records by serving subpoenas on certain wireless

telephone carriers who Neustar, Inc. ("Neustar") identified as owning the telephone numbers on the

date the calls were received. (Dkt. 247.)

As part of their class notice efforts, on October 30, 2014, Plaintiffs' Counsel issued a

subpoena to T-Mobile requesting such information for the approximately 42,000 numbers that had

been identified as belonging to T-Mobile during the relevant time period (the "October 30th

Subpoena"). Ex. 1, Plaintiffs' October 30, 2014 Subpoena to T-Mobile. On November 10, 2014, T-

Mobile's Senior Corporate Counsel, Patricia A. Cauldwell, provided Plaintiffs with its objections,

claiming that the October 30th Subpoena (i) was improperly addressed to "T-Mobile USA, Inc."

rather than "T-Mobile US, Inc.", (ii) was improperly served by email, (iii) sought information that

was likely in Defendants' possession, and thus unnecessary and duplicative, and (iv) was unduly

burdensome because T-Mobile did not have an automated process in place to run the necessary

queries required to obtain the information requested. Ex. 2, November 10, 2014 Letter from Patricia A. Cauldwell.[1]

### Plaintiffs' Efforts to Meet and Confer with T-Mobile

Shortly thereafter, Plaintiffs' counsel telephonically conferred with Ms. Cauldwell in an effort to resolve T-Mobiles objections. Ex. 3, Declaration of Eve-Lynn J. Rapp ¶ 5. In particular, Plaintiff explained that the name and address information sought by Plaintiffs was not in Defendants' possession, and that Plaintiffs' counsel had previously spoken to a representative from T-Mobile's subpoena compliance department who indicated that email service was acceptable. *Id.* ¶ 6. Plaintiffs also attempted to address T-Mobile's position that it would be unduly burdensome to comply with the October 30th Subpoena by suggesting that Plaintiffs' IT personnel confer directly with T-Mobile's IT personnel to work on a solution that would permit T-Mobile to automate the process of collecting the requested information (to the extent it could not already do so). *Id.* ¶ 7.

Nevertheless, T-Mobile maintained that it would not likely dedicate the resources necessary to provide the information requested, and further informed Plaintiffs' counsel that they would need to re-issue the October 30th Subpoena and have it properly served. *Id.* As such, on November 14, 2014, Plaintiffs re-issued an amended subpoena for service on T-Mobile's registered agent, setting the deadline for T-Mobile to respond to November 26, 2014. Ex. 4, Plaintiffs' November 14, 2014 Subpoena to T-Mobile (the "November 14th Subpoena" and, with the October 30th Subpoena, the "Document Subpoenas"); Ex. 5, Affidavit of Service of November 14th Subpoena, respectively.

Hearing nothing from T-Mobile by the deadline to respond, on December 9th, and again on December 11th, Plaintiffs' counsel reached out to T-Mobile's counsel to inquire whether T-Mobile intended to provide Plaintiffs' counsel with the requested information and notified her of their intention to seek a compelling order from the Court if T-Mobile was unwilling to comply. Ex. 6,

---

[1] T-Mobile also complained that the October 30th Subpoena was "unsigned", but that was not the case. *See* Exs. 1 & 2.

November 10, 2014 -December 18, 2014 Email Correspondence between E. Rapp and P. Cauldwell at 5-6. On December 12, 2014, counsel for T-Mobile contacted Plaintiffs' counsel, at which time she confirmed that T-Mobile would not produce the information requested in the Document Subpoenas. In response, Plaintiffs' counsel informed T-Mobile's counsel that it intended to serve T-Mobile with a deposition subpoena in order to better assess T-Mobile's technical capabilities, which it did that same day. Ex. 7, December 12, 2014 Subpoena to T-Mobile (the "Deposition Subpoena," and collectively, with the Document Subpoenas, the "Subpoenas").[2]

### *T-Mobile's December 19, 2014 Objections*

After hearing nothing from T-Mobile for a week, on December 19, 2014, Plaintiffs' counsel received a letter from Debra R. Bernard of Perkins Coie, explaining that she would be representing T-Mobile in regards to Plaintiffs' Subpoenas moving forward. Ex. 8, December 19, 2014 Letter from Ms. Bernard. In addition to reasserting many of T-Mobile's previous objections, Ms. Bernard's letter additionally claimed that (i) the Subpoenas were "addressed to T-Mobile's New Jersey-based subpoena compliance department, but improperly required compliance in Chicago," (ii) given the circumstances, "the burden of complying with [the Document S]ubpoenas vastly outweigh[ed] the likely benefit," and that (iii) the Deposition Subpoena was procedurally defective because it was improperly served by email and did not provide T-Mobile with "reasonable notice." *Id.* Shortly thereafter, Plaintiffs' counsel telephonically conferred with Ms. Bernard, who confirmed that T-Mobile would not voluntarily comply with the Subpoenas. Ex. 3, Rapp Declaration ¶ 12.

As such, Plaintiffs now file the instant motion requesting that the Court enter an order requiring T-Mobile to produce the name and address information of its subscribers in response to Plaintiffs' Document Subpoenas, or alternatively, requiring T-Mobile to designate a corporate

---

[2]     Plaintiffs' November 14th Subpoena, December 12, 2014 also attached the documents provided with the October 30th Subpoena for reference, but to avoid repetition (and conserve paper), those Exhibits do not now include those attachments.

representative to sit for deposition in accordance with Plaintiffs' Deposition Subpoena, to the extent more information about T-Mobile's capabilities for complying with the Document Subpoenas is needed before the Court rules on Plaintiffs' Motion.

**ARGUMENT**

Although Federal Rule of Civil Procedure 45 governs the issuance of subpoenas, Rule 26 governs the scope of discovery for parties and non-parties alike, and broadly permits discovery into "any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 45, Advisory Comm. Notes ("Paragraph (a)(2) makes clear that…the non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34.") Additionally, where a non-party fails to comply with a subpoena, the issuing party may move for a compelling order under Rule 37. Fed. R. Civ. P. 37(a)(1). In that instance, the party objecting to the subpoena bears the burden of demonstrating that its non-compliance is justified. *See Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012).

As discussed in detail below, here, T-Mobile cannot satisfy this burden and should be compelled to comply with Plaintiffs' Subpoenas immediately.

## I. T-MOBILE SHOULD BE ORDERED TO COMPLY WITH THE DOCUMENT SUBPOENA.

### A. The Northern District of Illinois is the Appropriate Place to Enforce the Subpoena.

Foremost, T-Mobile's assertion that Plaintiffs must seek to enforce the Subpoenas in the United States District Court for the District of New Jersey because the Subpoenas were addressed to its registered agents in that District, Ex. 8 at 1, is wrong. Pursuant to Rule 45, as amended, a subpoena may command a person to attend a deposition and/or produce documents "within 100 miles of where the person resides, is employed, or regularly transacts business in person," *see* Fed. R.

Civ. P. 45(c)(1)(A); (c)(2), respectively, and requires enforcement "by the court for the district *where compliance is required.*" Fed. R. Civ. P. 45(d) (emphasis added).[3]

Here, Plaintiffs' Subpoenas—which were appropriately issued out of this District, where the case is pending—each instructed T-Mobile to produce documents to and/or appear to sit for a deposition in Chicago. Exs. 1 & 4 (instructing T-Mobile to produce the requested documents at Plaintiffs' counsels' Chicago offices, or alternatively, to the Clerk of the Court for the United States District Court of the District of New Jersey); Ex. 7 (noticing the deposition to occur at "The Offices of Loevy & Loevy, 312 N. May Street, Chicago, Illinois."). As T-Mobile does not dispute that it "regularly transacts business" in Chicago—and elsewhere throughout this District—requiring T-Mobile to produce documents, and ultimately, moving to enforce the Subpoenas in this District is therefore proper. *See* Fed. R. Civ. P. 37(a)(2); 45(c)(1)(A).[4] Thus, T-Mobile's contention that the Subpoena cannot be enforced in this District is wrong.

## B. The Subscriber Information Requested in Plaintiffs' Subpoena Is Necessary to Provide the Best Notice Practicable to Class Members and Not Unduly Burdensome Given the Circumstances.

Plaintiffs' Document Subpoenas seek the identity of approximately 42,000 T-Mobile subscribers, whose telephone numbers all appear on lists showing that they received the survey calls at issue in this case, and who are almost certainly class members. Thus, there is no question that Plaintiffs' subpoena seeks relevant information, and that identifying these individuals is an important

---

[3]     Rule 37 likewise requires that a motion seeking to compel a non-party to comply with the subpoena "be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2).

[4]     *M'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205, 207 (S.D.N.Y. 2007), which T-Mobile cited in its letter to Plaintiffs, does not hold that a subpoena must be enforced in the location to which it is addressed or served, as T-Mobile claims. Ex. 1 at 1. Rather, it holds that a non-party shall not be required to travel more than 100 miles from where he resides, is employed, or regularly transacts business in person in order to comply with a subpoena, *id.*, which is entirely consistent with Plaintiffs' position here. In any event, that decision was issued before Rule 45's recent amendments. *See* Fed. R. Civ. P. 45 Advisory Comm. Notes, Subdivision (c) ("Subdivision (c) is new. It collects the various provisions on where compliance can be required and simplifies them. *Unlike the prior rule, place of service is not critical to place of compliance.*") (emphasis added).

part of Plaintiffs' proposed Notice Plan. T-Mobile, however, has informed Plaintiffs that it will not comply with the subpoena because doing so would be "costly and time-consuming," and because Plaintiffs have not established that the production of the subscriber information "will lead to the identification of class members." Ex. 8. Neither of those positions is justified.

When determining if a burden is undue, the court must ask whether the cost "of compliance with [the subpoena] exceed[s] the benefit of production of the material sought." *Pac. Century Int'l, Ltd.*, 282 F.R.D. at 193 (N.D. Ill. 2012) (citing *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)). In making this inquiry, courts generally balance various factors, including but not limited to, "the needs of the case, the amount in controversy, the parties' resources, [and] the importance of the issues at stake in the litigation…" *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) (quotations omitted). Courts also often consider "whether the discovery is unreasonably cumulative or duplicative [and] whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source." *Mosely v. City of Chicago*, 252 F.R.D. 421, 427 (N.D. Ill. 2008) order vacated in part on reconsideration sub nom. *Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D. Ill. 2008) (citing *Northwestern Memorial Hospital*, 362 F.3d at 927). As stated above, the party opposing the discovery has the burden of demonstrating that the burden faced by complying with the subpoena outweighs the benefit. *Id.*[5]

Here, the benefits of compliance far outweigh the costs. To start, there can be no dispute that the information sought from T-Mobile is necessary and relevant to Plaintiffs' case. As noted above, Plaintiffs have identified approximately 42,000 cellular telephone numbers belonging to T-

---

[5]     Even before engaging in this analysis, however, it must be noted that as T-Mobile did not timely respond to Plaintiffs' November 14th Subpoena by the November 26th deadline, it has waived its right to claim that compliance would be unduly burdensome. *See* Fed. R. Civ. P. 45(d)(2)(B) ("[O]bjection[s] must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); *see also, e.g.*, *Brogren v. Pohlad*, No. 94 C 6301, 1994 WL 654917, at *1 (N.D. Ill. Nov. 14, 1994) (holding non-party waived ability to object to party's document and deposition subpoenas as it failed to object within the requisite fourteen (14) days).

Mobile on the date Defendants' calls were received, and the Court has already certified a Class that includes those individuals. As such, T-Mobile's compliance is the most reliable means to ensure that the best notice practicable is provided to those class members, and thus necessary to Plaintiffs' case.[6]

T-Mobile's assertion that this benefit is "vastly outweigh[ed]" by the burden of manually collecting and redacting 42,000 individual subscriber records, Ex. 8 at 2, cannot withstand scrutiny. Foremost, T-Mobile does not argue that it does not possess or cannot access the requested information. Rather, it merely asserts that it would be time consuming and costly to provide it. *Id.* But, "[t]he mere fact that compliance ... will cause great labor and expense or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought does not of itself" justify non-compliance. *Land v. United Tel. Se., Inc.*, No. CIV.A.95-MC-220-KHV, 1995 WL 128500, at *5-6 (D. Kan. Mar. 22, 1995) (citing 8 Wright & Miller § 2214, at 647–48 (2d. 1984)). This is especially true given the size of T-Mobile and the resources it has. *See Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 358 (D. D.C. 2011) (finding it relevant that Time Warner had "additional resources already on staff" to assist with answering "a large volume of subpoenas [requesting] identifying information about its customers that may strain its subpoena compliance team"). Moreover, such a boilerplate, non-specific objection, fails to demonstrate how or why Plaintiffs' Document Subpoenas would be unduly burdensome, and is equally deficient. *See e.g. Kelley v. Bd. of Educ. of City of Chicago*, No. 10 C 7875, 2012 WL 1108135, at *2 (N.D. Ill. Apr. 2, 2012) (explaining that the burden of demonstrating that the cost of production outweighs the benefit "cannot be met by a reflexive invocation of the same baseless, often abuse litany, that the requested

---

[6]     T-Mobile argues that compliance with Plaintiffs' Subpoenas would be burdensome because Plaintiffs can obtain the information from Defendants and/or other third-party database providers. Ex. 8 at 2. This argument, however, fails to take into account that the information sought is not in Defendants' possession, and that Defendants have vigorously opposed Plaintiffs' efforts to obtain historical cellular telephone subscriber information from third party databases on the basis that such information is unreliable. *See Mosely*, 252 F.R.D. at 427 (explaining that the requisite benefit-burden analysis requires courts to consider whether the requested information is available from "*equally* reliable" sources) (emphasis added).

discovery is…unduly burdensome" and further noting that such objections are "ineffectual" and "tantamount to not making any objection at all.") (internal quotations and citations omitted). Indeed, the assertion that a company as large and sophisticated as T-Mobile has no way of collecting the subscriber information of its own subscribers other than by manually searching for each number is highly questionable.

Moreover, Plaintiffs have worked to avoid imposing an undue burden or expense on T-Mobile as required under Rule 45. *See* Fed. R. Civ. P. 45(d)(1). Indeed, Plaintiffs' counsel first subpoenaed Neustar to ensure that the information requested was specific, narrowly tailored, and not overly broad. Plaintiffs' counsel then attempted to confer with T-Mobile's counsel to address all of its objections and explore ways in which the information sought could be obtained in the most cost-efficient manner possible. Plaintiffs even went as far as to offer to provide T-Mobile with someone to create an automated process to compile the information (as opposed to manually entering each number), and when T-Mobile rejected that offer, made clear that they would reimburse T-Mobile for all reasonable costs incurred in compiling the information. Ex. 3, Rapp Declaration 8. *See Call of the Wild Movie, LLC*, 770 F. Supp. 2d 332, 358 (D. D.C. 2011) (finding it relevant to the burdensome analysis that "the plaintiffs' counsel offered to pay Time Warner to…respond to the subpoena requests").

Aside from reducing the burden in this regard, it is additionally worth noting that through similar meet and confer discussions, Plaintiffs were able to reach agreement with all other major cellular carriers on the collection of their subscriber information, including by finding automated ways of collecting the information that at least some carriers initially suggested they did not have the capability to do. T-Mobile is the only carrier that essentially refused to engage in a substantive meet and confer process, and the fact that every other major carrier is able to collect the information casts further doubt on T-Mobile's assertion that it cannot do so without incurring an extraordinary

expense. *See Call of the Wild Movie, LLC*, 770 F. Supp. 2d at 357 (finding "Time Warner's contention that it c[ould] only produce 28 IP addresses per month seem[ed] extraordinarily dilatory compared to the rate at which other ISPs [we] re able to produce the requested information," and ultimately compelling production).

Finally, T-Mobile's remaining contention—that the Subpoenas are unduly burdensome because Plaintiffs have not established that the subscriber names and addresses will lead to the identification of class members, Ex. 8 at 2—is easily dispensed with as well. As an initial matter, even if there was no guarantee that T-Mobile's compliance with the Document Subpoenas would lead to the identification of each and every class member who operated a T-Mobile cellular telephone number on the date in question, that is not a basis to prohibit the discovery sought. *See, e.g. Malibu Media, LLC v. Doe*, No. 13 C 8484, 2014 WL 1228383, at *3 (N.D. Ill. Mar. 24, 2014) (refusing to quash a subpoena because the subpoena may not identify the correct individuals and explaining that, information is relevant so long as its "reasonably calculated to lead to the discovery of admissible evidence"). Nevertheless, as the Court has already held that the individuals who utilized the telephone numbers provided to T-Mobile—i.e. the numbers obtained from Defendants and/or their telephone carriers—are members of Plaintiffs' Cellular Telephone Class, T-Mobile's contention that the Document Subpoenas will not lead to the identification of class members is entirely basis.

In short, the Court should order T-Mobile to promptly comply with Plaintiffs' Document Subpoenas.

## II. TO THE EXTENT MORE INFORMATION ABOUT T-MOBILE'S TECHNICAL CAPABILITIES IS NEEDED BEFORE AN ORDER ISSUES ON PLAINTIFFS' MOTION TO COMPEL, T-MOBILE SHOULD BE ORDERED TO PRODUCE A RULE 30(B)(6) WITNESS.

T-Mobile also argues that the December 12th Deposition Subpoena is ineffective because (i) it was improperly served via email rather than personally delivered on T-Mobile's registered agent,

(ii) Plaintiffs did not provide T-Mobile with "reasonable notice," of the deposition date,[7] and because (iii) it was meant solely to harass T-Mobile after they refused to comply with the Documents Subpoenas. Simply stated, none of these arguments have merit.

Foremost, as Plaintiffs repeatedly made clear to T-Mobile during the course of their meet and confer discussions, the purpose of the Deposition Subpoena was meant only to better understand T-Mobile's ability to comply with the Document Subpoenas, and specifically, to test the veracity of its statements that it would be unduly burdensome to produce the information requested. Thus, to the extent the Court does not require such information to rule on the instant Motion, Plaintiffs do not intend to proceed with T-Mobile's deposition.

That aside, none of T-Mobile's procedural objections to Plaintiffs' Deposition Subpoena support its non-compliance. Indeed, although Plaintiffs counsel provided T-Mobile with the Deposition Subpoena on December 12th via email only, Plaintiffs' counsel specifically inquired as to whether T-Mobile's counsel would accept service at that time, and asked that she notify them immediately if the subpoena needed to be formally served. Ex. 6 at 3. T-Mobile did not respond to this request for a week, however, and instead choose to assert its objections to Plaintiffs' method of service for the first time in its December 19th Letter. *Id.* at 2; *see also* Ex. 8. Moreover, in addition to repeatedly informing T-Mobile's counsel of their intention to depose a corporate representative if necessary, Plaintiffs' counsel made clear in her December 12th Email, that although Plaintiffs noticed the deposition for December 22, 2014, they were "willing to work with [T-Mobile] on the date" so long as it would "agree to make someone available over the next couple of weeks," and even offered to "consider taking the deposition by telephone or videoconferencing technology if feasible." Ex. 6 at 3. As such, both of these arguments should be rejected.[8]

---

[7]   Counsel for T-Mobile has since indicated that it would withdraw this objection.

[8]   In any event, Plaintiffs have since served another deposition subpoena on T-Mobile, with a return date of January 15, 2014, and to the extent more information is needed before a ruling on the enforcement of

**CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that the Court enter an order (i) instructing T-Mobile US, Inc. to comply with their October 30, 2014 and November 14, 2014 Document Subpoenas by producing the names and last known physical and email address(es) for the subscribers whose numbers received the calls at issue in this case on the dates identified therein, or alternatively, to the extent more information about T-Mobile's capabilities for complying with this Document Subpoenas is needed before an order issues on Plaintiffs' motion to compel, (ii) requiring T-Mobile to designate a corporate representative to sit for deposition in accordance with Plaintiffs' December 12, 2014 and December 30, 2014 Deposition Subpoenas, and/or (iii) granting any other relief that the Court deems reasonable and just.

Date: January 5, 2015                             By: /s/ Eve-Lynn J. Rapp

| | |
|---|---|
| Jay Edelson | Scott R. Rauscher |
| jedelson@edelson.com | scott@loevy.com |
| Rafey S. Balabanian | Michael I. Kanovitz |
| rbalabanian@edelson.com | mike@loevy.com |
| Eve-Lynn J. Rapp | Jonathan I. Loevy |
| erapp@edelson.com | jon@loevy.com |
| EDELSON PC | LOEVY & LOEVY |
| 350 North LaSalle Street, Suite 1300 | 312 N. May Street, Suite 100 |
| Chicago, Illinois 60654 | Chicago, Illinois 60607 |
| Tel: 312.589.6370 | Tel: 312.243.5900 |
| Fax: 312.589.6378 | Fax: 312.243.5902 |
| | |
| *Class Counsel* | *Class Counsel* |

---

that subpoena issues, *see* Ex. 9, Plaintiffs' December 30, 2014 Subpoena to T-Mobile (attached without exhibits), T-Mobile should be ordered to designate one or more representatives to testify at a mutually convenient date and time.

Scott D. Owens
scott@scottdowens.com
LAW OFFICES OF SCOTT D. OWENS, ESQ.
664 East Hallandale Beach Boulevard
Hallandale, Florida 33009
Tel: (954) 306-8104

*Counsel for Stone*

## CERTIFICATE OF SERVICE

I, Eve-Lynn J. Rapp, an attorney, hereby certify that on January 5, 2015, I served the above and foregoing *Plaintiffs' Motion for Order Compelling T-Mobile US, Inc. to Comply With Plaintiffs' Subpoenas for Class Member Information*, by causing a true and accurate copy of such paper to be transmitted to all counsel of record via electronic mail, as well as on counsel for T-Mobile US, Inc., on this the 5th of January, 2015.

/s/ Eve-Lynn J. Rapp

14