**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GRANT BIRCHMEIER, STEPHEN PARKES, SUSAN VIGUS, and REGINA STONE, on behalf of themselves and a Class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY GROUP, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC.,<br><br>Defendants. | Case No. 1:12-cv-04069<br>*Related to:* Case No. 1:13-cv-00903<br>Case No. 1:13-cv-00908<br><br><br>Honorable Matthew F. Kennelly |

**THIRD PARTY T-MOBILE U.S., INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING T-MOBILE US INC. TO COMPLY WITH PLAINTIFF'S SUBPOENAS FOR CLASS MEMBER INFORMATION AND ALTERNATIVELY T-MOBILE'S CROSS MOTION TO QUASH THE SUBPOENAS AND/OR FOR PROTECTIVE ORDER**

NOW COMES T-Mobile US, Inc. ("T-Mobile") by its attorneys, Debra R. Bernard and

Perkins Coie LLP and hereby submits this Response to Plaintiffs' Motion for Order Compelling

T-Mobile US, Inc. to Comply with Plaintiffs' Subpoenas for Class Member Information

("Plaintiffs' Motion" or "Pl. Mot.") and Alternatively, T-Mobile's Cross Motion to Quash the

Subpoenas and/or for Protective Order[1]  and  states as follows:

---

[1] It is T-Mobile's view that Plaintiffs' Motion should be heard in the District Court of New Jersey, the Compliance Court.  By submitting this Cross-Motion, T-Mobile does not concede that this jurisdiction is proper for such motions.

## I.    INTRODUCTION

T-Mobile is a disinterested nonparty in this case.[2]  Plaintiffs have issued Subpoenas Duces Tecum ("Document Subpoenas") to T-Mobile as well as a Deposition Subpoena pursuant to Fed. R. Civ. P. 45 and 30(b)(6) requesting a corporate designee to testify regarding T-Mobile's inability to provide the requested information.  Plaintiffs' Subpoenas to T-Mobile and this Motion are procedurally improper and substantively impose an undue burden on nonparty T-Mobile. Further, as T-Mobile advised Plaintiffs' counsel, under Fed. R. Civ. P.  45 ("Rule 45"), any motion seeking compliance with its Subpoenas is required to be filed in the jurisdiction of compliance, in this case, the District of New Jersey.  Nonetheless, both in-house counsel for T-Mobile and outside counsel have engaged in the meet and confer process with Plaintiffs' counsel but have been unable to reach agreement given the extensive burden that these subpoenas impose on T-Mobile as will be described in detail herein  In fact, T-Mobile takes umbrage at Plaintiffs' suggestion that T-Mobile "has essentially refused to engage in a substantive meet and confer process." Pl. Mot. at  9.  As indicated by the correspondence attached to Plaintiffs' Motion and the Declaration of Patricia Cauldwell attached hereto as Exhibit A ("Cauldwell Declaration"), T-Mobile did in fact engage in a "substantive" meet and confer process.  The fact that the process did not result in an agreement does not detract from the fact that the process was "substantive" and conducted in good faith by all participants.

Given the procedural infirmities and the undue burden the subpoenas impose on T-Mobile, Plaintiffs' Motion should be denied.

---

[2] As a nonparty, T-Mobile's knowledge of the history of this case is based only on what can be gleaned from a review of the relevant pleadings on the docket.  T-Mobile takes no position on the issues relating to class certification or the merits in this case.

## II.    ARGUMENT

### A.    This Court is Not the Appropriate Forum for the Adjudication of Plaintiffs' Motion

While the amended Rule 45 allows for issuance of subpoenas to be made in the name of the Court where the matter is pending, disputes regarding nonparty subpoenas should be resolved in the Court where compliance is required, not the issuing court, absent consent or "exceptional circumstances." Rule 45 (d)(3)(A) and (f). T-Mobile has not consented to the jurisdiction of this Court to adjudicate subpoena-related disputes and Plaintiffs do not even attempt to demonstrate "exceptional circumstances." Thus, Plaintiffs have not set forth any basis on which this Court can hear this dispute. It is well recognized that "[t]he new rule is focused on sparing nonparty witness needless burden and expense. That is reflected in its presumption that the court where compliance is required (colloquially, the 'compliance court') should hear and decide any motion to quash or modify a subpoena and not the issuing court." Gregory P. Joseph, *Major Changes in Federal Subpoena Practice,* 82 U.S.L.W. 584, Oct. 22, 2013. Indeed, the Advisory Committee Comments to the amended Rule 45 provide that "the prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Advisory Comm. Notes to subdivision (f) (2013). Plaintiffs cannot improperly provide for the deposition to occur in Illinois as a means to avoid the compliance court requirement of Rule 45. Where a motion is filed in a court other than the court where compliance is required, "the court lacks subject matter jurisdiction to hear the motion." *AngioScore, Inc. v. TriReme Medical, Inc.,* No. 12-cv-3393 (YGR)(JSC), 2014 WL 6706873, at *1 (N.D. Cal. Nov. 25, 2014). Accordingly, Plaintiffs' Motion should be dismissed for lack of subject matter jurisdiction.

## B. The Subpoena to T-Mobile Seeking Information for 42,000 Subscribers Imposes an Undue Burden on T-Mobile

As noted by the Court in *Pac. Century Int'l Ltd., v. Does 1-37,* 282 F.R.D. 189, 193 (N.D. Ill. 2012), cited by Plaintiffs, "[u]nder rule 45(c)(3), the court must quash or modify a subpoena to a non-party witness that 'subjects a person to undue burden'"  In assessing the burden, the court applies a balancing test to determine whether the burden of compliance exceeds the benefit of production.  *Id.*  It is axiomatic that "non-party status is a significant factor a court must consider when assessing undue burden for the purpose of a Rule 45 motion." *Robinson Steel Co., Inc. v. Caterpillar, Inc.,* No. 2:10-cv-438-JTM-PRC, 2012 WL 5903769, at *3 (N.D. Ind. Nov. 21, 2012).  The Document Subpoenas request T-Mobile to provide "documents sufficient to identify" the name and last known addresses and email addresses on a particular date in 2011 and/or 2012 of each subscriber from a list of over 42,000 phone numbers. ECF 266-4.  As will be demonstrated herein, production of the requested information would impose an undue burden on T-Mobile.  Where a subpoena subjects the nonparty recipients to undue burden, Rule 45 "mandates" that courts quash such subpoenas.  *Suture Express, Inc. v. Cardinal Health 200, LLC,* No. 14-cv-04737, 2014 WL 6478077, at *4 (N.D. Ill. Nov. 18, 2014).

### 1. T-Mobile does not have the technical capability to provide the requested information

As T-Mobile advised Plaintiffs' counsel and as set forth in the Cauldwell Declaration, T-Mobile simply does not have the technical capability to provide the information requested in the Document Subpoenas in any type of automated fashion.  Accordingly, the search, collection and necessary redaction of the information requested by Plaintiffs would impose a substantial burden on T-Mobile.  Plaintiffs' assertion that it was able to reach agreement with other carriers on the collection of information and that other carriers are able to provide the information is simply

irrelevant. (Pl. Mot. at 9). [3] That such other carriers may have different technical capabilities and resources has nothing to do with the existing capabilities at T-Mobile.  Significantly, in the approximately six years that Ms. Cauldwell has been in her position at T-Mobile, to her knowledge, T-Mobile has never been  required to provide subscriber information for thousands of subscribers in a bulk search, let alone for unique dates over a two year period as requested in this case. Cauldwell Decl. ¶ 9.  While T-Mobile has been served with subpoenas in one or two other TCPA cases, those subpoenas were subsequently abandoned prior to any judicial resolution of T-Mobile's similar objections.  *Id.* at ¶ 18.   Indeed, in connection with those other matters, T-Mobile had previously investigated whether it could conduct automated bulk searches and concluded that it did not have the capability to do so.  *Id.*

Responses to subpoenas and other lawful process or requests, are handled by T-Mobile's Law Enforcement Relations Group ("LER Group").  Cauldwell Decl. ¶ 2.  T-Mobile maintains a team of approximately fifty subpoena compliance professionals in its LER Group which maintains offices in Parsippany, New Jersey and Allentown, Pennsylvania.  *Id.*  The LER Group is tasked with responding to lawful requests for information regarding T-Mobile telephone subscribers. *Id.*  The LER Group assists law enforcement, criminal defense attorneys and private attorneys from all fifty states and the federal jurisdictions and responds to over 700 written requests for information and handles over 400 telephone inquiries each and every day of the year. *Id.*  The average request received by the LER Group seeks subscriber information (as defined by 18 USC 2703(c)(2)) on a single telephone number and 51 days of call

---

[3] Plaintiffs' Motion also claims that it was able to reach agreement with other carriers "including by finding automated ways of collecting the information that at least some carriers initially suggested they did not have the capability to do." (Pl. Mot. at 9).  As set forth in the Cauldwell Declaration, T-Mobile simply is not able to do so absent extraordinary burden and expense and had previously investigated this issue.  Cauldwell Decl. at ¶ 18.

detail/connectivity records. *Id.* at ¶ 3. The LER Group operates 24 hours a day, seven days a week to fulfill its obligations. *Id.*

Of the hundreds of thousands of lawful requests received each year in the LER Group, less than 4% are issued by civil and/or criminal defense attorneys. *Id.* at ¶ 4. Based on these numbers, the LER Group is primarily designed to respond to demands from federal, state and local law enforcement, including life threatening exigencies and emergency calls for assistance. *Id.* The subpoena response system currently used by the LER Group is adequate for its intended purpose and for T-Mobile's business needs. *Id.* at ¶ 14. There is no need to develop an automated solution capable of a bulk search for the subscriber records on different historical dates. *Id.* With its existing capabilities, the LER Group is able to satisfactorily meet its obligations to respond to all lawful process it receives. *Id.* T-Mobile responds to thousands of demands each and every week without incident, complication or delay. *Id.* The government, which is the largest requestor by far, has not ever sought delivery of the scope of information now sought by Plaintiffs. *Id.* In fact, the government has not ever requested or demanded that T-Mobile create a solution with the capabilities Plaintiffs now demand. *Id.*

If T-Mobile were compelled to produce the information sought on 42,000 subscribers, the LER Group would be crippled. All searches are done manually—T-Mobile does not have the capability to input target telephone numbers via .csv file or other type of data file to locate subscriber information in an automated manner. *Id.* at ¶ 15. Using the system currently in place, it would take 4,200 work hours to search, redact and compile the subscriber information sought. *Id.* at ¶ 15. A single search can accept up to ten target telephone numbers. *Id.* The search results would have to be analyzed by hand to ensure that only the subscriber information for the unique date is collected. *Id.* Thereafter the subscriber information would need to be hand

redacted, to remove all but the name and address of the subscriber. *Id.* The responsive subscriber information would have to be compiled and readied in some organized fashion for delivery to Plaintiffs. *Id.* It is estimated that each ten target search would take one work hour to complete, redact and compile. *Id.* at ¶ 15. This process would have to be repeated 4200 times resulting in 4200 person hours of effort. *Id.* It would shut down the LER for over 2 weeks at the risk of the number of law enforcement and emergency requests that are handled each day. *Id.* at ¶ 16.

Further complicating matters, as of Q3 2014, nearly 30% of T-Mobile customers were "prepaid" customers. *Id.* at ¶ 5. T-Mobile does not require personal identification information upon activation of a prepaid account. *Id.* at ¶ 5. If personal information happens to be provided upon activation of a prepaid account, T-Mobile does not take any steps to verify the completeness or accuracy of such information. *Id.* at ¶ 5.

      **2.**    **The extraordinary and undue burden to T-Mobile in order to provide the requested information is not justified in this case.**

Relying on the decision in *Call of the Wild Movie, LLC v. Does 1-1062,* 770 F.Supp.2d 332,358 (D.D.C. 2011), Plaintiff effectively asserts that the expense or hardship to T-Mobile is diminished "given the size of T-Mobile and the resources it has." (Pl. Mot. at 8). However, not only is this statement wholly unsupported and expressly addressed (and contradicted) by the Cauldwell Declaration, but the factual context is quite different. In *Call of the Wild,* Plaintiffs were seeking the IP addresses for copyright infringers and the total number of subscribers for which information was being sought was 1,028. By contrast, here, Plaintiffs are seeking subscriber information for 42,000 *potential* class members for purposes of providing notice that they may be class member entitled to a monetary award under the TCPA. Significantly, direct

mail to individual potential class members is only one of several different means of notice proposed by the class administrator. See Rosenthal Declaration¶¶ 15-27, ECF 247-1.

Additionally, Plaintiffs argue herein that "the benefits of compliance far outweigh the costs" and that "there can be no dispute that the information sought from T-Mobile is *necessary and relevant* to Plaintiffs' case." Pl. Mot. at 7. Plaintiffs claim that since the T-Mobile numbers were called by Defendants, "T-Mobile's compliance is the most reliable means to ensure the best notice practicable is provided to those class members, and thus *necessary* to Plaintiffs' case." Pl. Mot at 8. However, Plaintiffs' own prior arguments regarding class notice belie these claims and the assertion that T-Mobile should undertake debilitating effort to provide the requested subscriber information. . First, in its class notice filings, Plaintiffs argued that "Rule 23 does not require direct notice to every Class member." Rather, only "the best notice practicable under the circumstances" is required to those "members who can be identified throughout *reasonable effort*." ECF 258 at p. 7.[4] Second, Plaintiffs cited *Burns v. Elrod,* 757 F.2d 151, 153 (7th Cir. 1985) for the proposition that the parties "were not required to exhaust every conceivable method of identifying potential class members so long as the best notice practicable was given to the class through the diligent efforts of counsel." ECF 258 at p.7 n.5 (internal quotations omitted). The "diligent efforts of counsel" does not require burdening a nonparty with discovery to obtain information regarding a small percentage of *potential* class members.

Third, contrary to the instant claim that T-Mobile's information is "necessary" to its case, Plaintiffs previously relied on a number of TCPA cases where the courts approved notice plans where the class administrator would perform a "reverse lookup process' on cellular numbers "to obtain names and addresses for direct notice." ECF 258 at p. 8. (and cases cited therein including *Kristensen v. Credit Payment Servs. Inc. et. al.,* No. 2:12-cv-00528-APG (PAL)

---

[4] Plaintiffs' Reply in Support of Motion for Approval of Class Notice Plan.

(D.Nev.), Dkt. 188 and *Lozano v. Twentieth Century Fox,* No. 1:09-cv-06344, Dkts 55, 57 (N.D. Ill.)). Finally, Plaintiffs relied on this Court's comment that "[g]iven that the number of class members approaches and possibly exceeds one million persons, it is likely that there will not be a practicable way to reach each person individually, ***making broad-based forms of notice appropriate.***" ECF 258 at p. 9 (citing ECF 241 at 28) (emphasis in Plaintiffs' pleading). Based on the above, the governing rules, the relevant case law and this Court all clearly agree that it is not possible to reach all potential class members individually. Accordingly, it is similarly clear that the extensive burden imposed on T-Mobile far outweighs the possibility that individual notice might be achieved with regard to the very small percentage of potential T-Mobile class members.

Significantly, as set forth in the Rosenthal Declaration ¶14, ECF 247-1, Neustar identified approximately 530,000 of the 930,000 numbers as landlines—presumably the remaining 400,000 are assigned to cellular numbers. Thus, the 42,000 alleged T-Mobile numbers are only 10% of the Wireless Class numbers and less than 5% of the total numbers overall. Notwithstanding these arguments, Plaintiffs are now asserting that T-Mobile, a nonparty to this case must engage in extraordinary efforts at great burden, inconvenience and expense to provide a list of at most 5% of the total potential class members.

Interestingly, according to representations made in an unrelated case also handled by Plaintiffs' counsel, the claims rates in TCPA cases generally range between .5 and 8 percent." *Pimental v. Google,* Case No. 11-2585 YGR, ECF 92-1 (N.D. Cal.).[5] Given that nearly 30% of T-Mobile customers are for prepaid phones and for whom T-Mobile will have limited or no information, the actual number of potential class members that could be located from T-Mobile

---

[5] A copy of the Declaration submitted by a representative of Epiq Systems, the Class Administrator in that case is attached hereto as Exhibit B.

is substantially less than the 10% of the Wireless Class. Coupled with the high side of 8% as the claims rate, it is likely that, at most, only 32,000 of the 400,000 Wireless Class will file a valid claim—substantially less than the potential class members for whom Plaintiffs seek information from T-Mobile. Under the circumstances in this case, the unreasonable and extraordinary efforts which would be required for T-Mobile to provide the information requested by Plaintiffs are beyond what is required pursuant to the "reasonable effort" standard to identify members under Rule 23. The costs and burden of compliance clearly outweigh the benefits.

### C. The Deposition Subpoena to T-Mobile is Procedurally and Substantively Improper

Plaintiffs have also issued a Rule 30(b)(6) and Rule 45 Subpoena for the deposition of a corporate representative of T-Mobile to appear in Chicago to provide a deposition on the following topic:[6]

> T-Mobile's ability to provide the subscriber information requested in Plaintiffs' October 20, 2014 and/or November 14, 2014 Subpoenas to T-Mobile (the "Subpoenas") in the above captioned case…including, but not limited to the structure of the system, software, database(s), etc. used by and available to T-Mobile to store and/or access subscriber information, the queries/stored procedures/views and any other methods used by T-Mobile and/or necessary to obtain subscriber information, the amount of time and cost it would take to perform, and if necessary, develop such methods, and whether such methods can be performed automatically against a list of provided telephone numbers.

ECF 266-9.

This Subpoena should be quashed for the same reasons highlighted above in relation to the Document Subpoenas. However, there are several additional problems with this Subpoena and topic as well. First, Plaintiffs' position is that since T-Mobile transacts business in Illinois, it can compel a nonparty Rule 30(b)(6)/Rule 45 deponent to come and testify in Illinois. Plaintiffs'

---

[6] The Subpoena also contained a second topic which is largely duplicative of the first topic: "The relevant policies and procedures, if any, effecting T-Mobile's ability to comply with the Subpoenas. ECF 266-9.

argument in this regard is plainly wrong. The recent amendments to Rule 45 "were intended to circumscribe the Court's authority to compel parties and officers to travel to faraway trials." *Havens v. Maritime Communications/Land Mobile, LLC,* No. 11-993 (KSH)(CLW), 2014 WL 2094035,at *2 (D.N.J. May 20, 2014). The same holds true for nonparties—the argument enforcing the geographic limitation is "even more compelling" to a nonparty Rule 30(b)(6) designee—a nonparty cannot be subject to a greater burden than a party simply because the nonparty [an individual] was designated as the Rule 30(b)(6) designee). *Id.* Under Rule 45(c)(1)(A), a nonparty witness can be compelled to travel only where he or she resides, is employed or regularly transacts business *in person.*" There is no authority and Plaintiffs cite to none, which interprets this provision to mean that a nonparty Rule 45/Rule 30(b)(6) designee can be compelled to appear for a deposition anywhere that the corporation transacts business. Indeed, *Havens* stands for the exact contrary proposition. Thus, the Deposition Subpoena improperly requires the corporate designee to appear in Chicago for a deposition and should be quashed on this basis.

Second, the topic identified in the Deposition Subpoena is overbroad, seeks confidential and proprietary information and in any event, much of the information requested is contained in the Cauldwell Declaration. As set forth above in Section II, A, the Cauldwell Declaration sets forth in detail the capabilities of T-Mobile's Subpoena Compliance Group and demonstrates the unreasonable burden imposed by Plaintiffs' Document Subpoenas. There is nothing further to be gained by a Rule 30(b)(6) deposition of T-Mobile wherein the substance of the Cauldwell Declaration will just be reiterated. Thus, it would merely be cumulative and inappropriate. Accordingly, the Deposition Subpoena should be quashed on this basis as well.

### III.    CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion to Compel should be dismissed and/or denied and T-Mobile's Cross Motion to Quash should be granted.

WHEREFORE T-MOBILE US, INC. respectfully requests that this Court deny Plaintiffs' Motion to Compel, grant T-Mobile's Motion to Quash and/or for Protective Order and for such other relief the Court deems necessary and appropriate in the interests of justice.

Respectfully, submitted,


T-MOBILE US, INC.


By: /s/ Debra R. Bernard
           One of its Attorneys

Debra R. Bernard, ARDC No. 6191217
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
312.324.8400

Dated:  January 7, 2015

## CERTIFICATE OF SERVICE

I, Debra R. Bernard, certify that on January 7, 2015, I caused the foregoing **Third Party T-Mobile U.S., Inc.'s Response to Plaintiff's Motion for Order Compelling T-mobile US INC. to Comply with Plaintiff's Subpoenas for Class Member Information and Alternatively T-Mobile's Cross Motion to Quash the Subpoenas and/or for Protective Order** to be filed and served via the Court's CM/ECF system upon the following parties:

Scott R. Rauscher
scott@loevy.com
Jonathan I. Loevy
jon@loevy.com
Michael I. Kanovitz
mike@loevy.com
LOEVY & LOEVY
312 N. May Street, Suite 100
Chicago, Illinois 60607
T: 312-243-5900
F: 312-243-5902

Richard W. Epstein (Florida Bar No. 229091
Richard.Epstein@gmlaw.com
Rebecca F. Bratter (Florida Bar No. 685100)
Rebecca.Bratter@gmlaw.com
Jeffrey A. Backman (Florida Bar No. 662501)
Jeffrey.Backman@gmlaw.com
GREENSPOON MARDER, P.A.
200 E. Broward Blvd., Suite 1500
Fort Lauderdale, FL 33301
T: 954-491-1120
F: 954-343-6958
*Admitted Pro Hac Vice*

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Eve-Lynn J. Rapp
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
T: 312-589-6370
F: 312-589-6378

Timothy Hudson
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Floor
Chicago, Illinois 60604
T: 312-762-9476
F: 312-762-9451
thudson@tdrlawfirm.com

M. Peebles Harrison (*Pro Hac Vice*)
Rose, Harrison & Gilreath, P.C.
700 Blue Jay Street, Suite 1
Post Office Box 405
Kill Devil Hills, North Carolina 27948
T: 252-480-1414
F: 252-480-1765
Peebles@outerbankslaw.com

Brian P. O'Meara
Forde Law Offices LLP
111 West Washington Street, Suite 1100
Chicago, Illinois 60602
T: 312-465-4780
F: 312-641-1288
bomeara@fordellp.com

/s/ *Debra R. Bernard*
One of the attorneys for T-Mobile US Inc.

LEGAL124677217.5