IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRANT BIRCHMEIER, STEPHEN PARKES, SUSAN VIGUS, and REGINA STONE, on behalf of themselves and a Class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY GROUP, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC.,<br><br>Defendants. | Case No. 1:12-cv-04069<br>*Related to:* Case No. 1:13-cv-00903<br>Case No. 1:13-cv-00908<br><br>Honorable Matthew F. Kennelly |

**RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING
T-MOBILE US, INC. TO PRODUCE CALIFORNIA SUBSCRIBER INFORMATION**

NOW COMES T-Mobile US, Inc. ("T-Mobile") by its attorneys, Debra R. Bernard and Perkins Coie LLP and hereby submits this Response to Plaintiff's Motion for Order Compelling T-Mobile US, Inc. to Produce California Subscriber Information ("Plaintiffs' Motion" or "Pl. Mot.") and states as follows:

**I.     INTRODUCTION**

T-Mobile is a disinterested non-party in connection with this Telephone Consumer Protection Act ("TCPA") class action.  Plaintiffs have subpoenaed subscriber records from T-Mobile for approximately 42,000 T-Mobile customers including 4,605 California Subscribers. Pursuant to the meet and confer process and in accordance with this Court's directive, T-Mobile has agreed to develop a mechanism to access the names and addresses of the subscribers on the list provided by Plaintiffs.  However, as will be set forth herein, under the California Public Utilities Code and the California Code of Civil Procedure, which reflect California's right to

privacy embodied in its state Constitution, T-Mobile is legally prohibited from providing such information for the California Subscribers absent consent from those Subscribers. Moreover, there is no basis to conclude that Fed. R. Civ. P. 45 preempts this important California public policy. Thus, Plaintiffs' motion compelling disclosure of the identifying information of California Subscribers without consent, should be denied.

## II. ARGUMENT

### A. California Law Requires Consent of California Subscribers to Produce their Personal Information

California's Constitutional right to privacy applies to telecommunications subscriber information. This well-established right to privacy in telecommunications subscriber information has been codified in California Public Utilities Code ("P.U.C.") § 2891(a)(4), which states in full:

> (a) No telephone or telegraph corporation shall make available to any other person or corporation, **without first obtaining the residential subscriber's consent**, in writing, any of the following information:
>
> (4) Demographic information about individual residential subscribers, or aggregate information from which individual identities and characteristics have not been removed.

(emphasis added).

California law thus requires written consent before T-Mobile can disclose a subscriber's records. Plaintiffs assert that § 2891 only applies to residential rather than mobile phone records. (Pl. Mot. at 5). Plaintiff is incorrect. As a wireless telecommunications provider, T-Mobile is inarguably a "telephone or telegraph corporation" under P.U.C. § 2891. See *GTE Mobilnet of Cal. Ltd Partnership v. City and County of San Francisco*, 440 F. Supp. 2d 1097, 1102-03 (N.D. Cal. 2006) (wireless carriers are "telephone corporations" within the meaning of the California Public Utilities Code); *Re Consumer Protection Rules Applicable to All Telecommunications Utilities*, Decision 01-07-030, Rulemaking Proceeding, 00-02-004, 212 P.U.R. 4th 282, 2001

WL 1131856 (Cal. P.U.C., July 12, 2001) ("Wireless telephone service providers providing telephone service in California are 'telephone corporations' as defined by the Public Utilities Code . . ."). *Westcom Long Distance, Inc. v. Pacific Bell*, 2006 WL 2076342, at *12 (Cal. P.U.C. 2006) ("Although Pub. Util. Code § 2891 appears to apply only to residential telephone customers, the idea that someone can obtain and disclose the calling patterns of business telephone customers without their consent is reprehensible as well."). Indeed, courts have applied § 2891(a) to prohibit disclosure of T-Mobile's wireless subscriber records without consent. *See, e.g., In re Farsheedi*, No. C 09–3888 JF, 2009 WL 4572745 (N.D. Cal. Dec. 4, 2009) (acknowledging Order from bankruptcy court denying motion to compel T-Mobile to disclose subscriber records under Cal. Pub. Util. Code § 2891(a)); *Tataryn v. Barnett,* Case No. 08 FL 00527, Superior Court of California, County of Sacramento, June 9, 2014 Ruling at p. 4 ("On the balance, review of the statutes supports the view that PUC section 2891 applies to mobile subscribers").[1] (A copy of this Ruling is attached hereto as Ex. A). Thus, under the overwhelming weight of authority, § 2891 applies to the T-Mobile California Subscribers.

Moreover, in furtherance of California's concerns regarding consumer privacy, California Civil Procedure Code explicitly states that: "[a] subpoena duces tecum for personal records maintained by a telephone corporation which is a public utility, as defined in Section 216 of the Public Utilities Code, shall not be valid or effective unless it includes a consent to release, signed by the consumer whose records are requested, as required by Section 2891 of the Public Utilities Code." See Cal. Civ. Pro. Code § 1985.3(f); see also Cal. Pub. Util. Code § 216(a) (defining

---

[1] Plaintiffs also cite the decision in *Kamalu v. Walmart Stores, Inc.,* No. 1:13-cv-00627-SAB, 2013 WL 4403903, at *6 (E.D. Cal. Aug. 15, 2013) in support of her position that no consent is required here. However, in the *Kamalu* case, the records being sought were those of the individual Plaintiff herself and were specifically relevant to her allegations. Additionally, the *Kamalu* case has been criticized by at least one California State Court and is inconsistent with other courts' ruling on this issue (See attached ruling in *Tataryn v. Barnett*). Significantly, in the *Bad Boys* case referred to in the *Tataryn* ruling, the court found that "California law explicitly requires that a subpoena duces tecum for personal records maintained by a telephone corporation which is a public utility as defined in Section 216 of the Public Utilities Code shall not be valid or effective unless it includes a consent to release signed by the consumer whose records are requested as required by Section 2891 of the Public Utilities Code." (See transcript attached as Exhibit B at pp. 25-26). In fact, in the *Bad Boys* case, the court found that T-Mobile's opposition to the motion to compel was "well taken" and T-Mobile was entitled to reasonable expenses

"public utility" as "every . . . telephone corporation . . .where the service is performed for, or the commodity is delivered to, the public or any portion thereof.").

Consequently, if T-Mobile were to produce the records requested in Plaintiff's subpoena without the required consent, it could be in violation of the law and could expose itto civil liability under California law. *In re National Security Agency Telecommunications Records Litigation*, 483 F.Supp.2d 934, 945 (N.D. Cal. 2007) ("absent a statutory exemption, mere disclosure is enough" for a violation of Cal. Pub. Util. Code § 2891); see also, Cal. Pub. Util. Code § 2891(e) ("[e]very violation [of section 2891] is grounds for a civil suit by the aggrieved residential subscriber against the telephone or telegraph corporation and its employees responsible for the violation"). Accordingly, T-Mobile's unwillingness to produce the requested records is not only well-founded, but is required under California law.

Plaintiffs further argue that §2891 does not apply because the information is being requested pursuant to a federal court subpoena which Plaintiffs claim falls within the scope of §2894(a) of the Public Utilities Code. (Pl. Mot. at 4). §2894(a) provides, in pertinent part:

> (a) Notwithstanding subdivision (e) of Section 2891, the disclosure of any information by an interexchange telephone corporation, a local exchange telephone corporation, or a provider of commercial mobile radio service...**in good faith compliance with the terms of a state or federal court warrant or order or administrative subpoena issued at the request of a law enforcement official or other federal, state, or local government agency for law enforcement purposes, is a complete defense against any civil action brought under this chapter or any other law…**

(emphasis added).

However, contrary to Plaintiffs' suggestion, §2894(a) only applies to subpoenas issued **for law enforcement purposes.** Indeed, any other interpretation of this Section, i.e. one that encompasses civil subpoenas, would render Cal. Civ. Code §1985.3(f) completely superfluous and unnecessary. It is axiomatic that "courts should strive to give meaning to every word and should reject any interpretation that renders any portion of the statute superfluous." *Stapleton v.*

-4-

*Advocate Health Care Network,* No. 14 C 01873, 2014 WL 7525481, at *5 (N.D. Ill. Dec. 31, 2014) (quoting *United States v. Natour,* 700 F.3d 962, 973 (7th Cir. 2012). *See also, Jaworski v. Master Hand Contractors,* No. 09 C 07255, 2014 WL 4627794, at *4 (N.D. Ill. Sept. 16, 2014) ("[I]n *pari materia,* statutes should be construed so as to give effect to all statutory provisions in order that no portions of the statutes are rendered inoperative, superfluous, or ineffective.") (citation omitted). Thus, the only interpretation that gives meaning to §1985.3(f) is that it applies to lawfully issued civil subpoenas such as the one to T-Mobile in this case.

Plaintiffs' reliance on the decision in *McArdle v. AT&T Mobility LLC,* No. C 09-1117 CW (MEJ), 2010 WL 1532334 (N.D. Cal. April 16, 2010) is unavailing. In *McArdle,* while the court recognized that "Section 2891 provides that no telephone corporation shall make available certain information without first obtaining the customer's written consent," the court then seized on the word "order" in § 2894 (a) claiming that "§ 2894 of the Utilities code proves an exception to this rule for court orders." *Id.* at *6. However, it is apparent that the word "order"—like "warrant" or "administrative subpoena"—is limited to orders stemming from requests by government officials "for law enforcement purposes." As noted above, Plaintiffs' approach also would nullify §1985.3(f) barring subpoenas for personal records maintained by telephone corporations unless they include a written consent to release.

Further, in *McArdle,* the court also claimed that the Defendant's reading of section 2891 was "not in line with the California Supreme Court's decision in *Pioneer*".[2] *Id.* However, *Pioneer* did not involve the interpretation of §2891 of the Public Utilities Code or §1985.3(f) of the California Civil Code, but rather California's right to privacy provision in the California Constitution.[3] Thus, the decision in *McArdle* is not helpful to Plaintiffs and does not require production of the requested information absent consent.

---

[2] *Pioneer Electronics (USA), Inc. v. Superior Court,* 40 Cal. 4th 360 (2007).
[3] Plaintiffs erroneously contend that "the California Supreme Court has found that adherence to Section 2891—i.e. by requiring consent be obtained—"could have potentially adverse effects in cases brought to redress a variety of social ills, including consumer rights litigation" citing *McArdle* and *Pioneer.* (Pl. Mot. at 5). However, *Pioneer,* the California Supreme Court decision, **did not involve** Section 2891. Significantly, in *Pioneer,* the Court held that "section 1985.3 permits discovery of consumer's records held by record holders (e.g. banks, lending institutions,

### B. Rule 45 Does Not Preempt the California Public Utilities Code

Plaintiffs contend that §1985.3(f) does not apply to subpoenas issued by federal courts citing a one page decision in *RBS Sec. Inc. v. Plaza Home Mortgage, Inc.,* No. 12CV2132-JM MDD, 2012 WL 3957894, at *1 (S.D. Cal. Sept. 10. 2012) which acknowledged that there is a difference of opinion in the federal district courts in California on this issue citing *Corser v. County of Merced,* 2006 WL 253622 (E.D. Cal. Aug. 31, 2006) and *Robinson v. Kia Motors America, Inc.,* 2011 WL 2433369 (E.D. Cal. June 13, 2011). Regardless, §2891 and §2894 of the Public Utilities Code clearly encompass subpoenas issued in federal courts and prohibit the production of the T-Mobile California Subscribers information absent consent.

Demonstrating the importance of the privacy concerns that are the foundation of these provisions, in *Robinson,* the court observed that "California takes the privacy rights of its citizens seriously…" and that "[t]he threshold issue is the extent to which this formal statement of California should be respected by federal courts. *Id.* at *1-2. Because of the privacy concerns implicated by these statutes, in *Robinson,* the court also noted they could be construed as "substantive policy statutes," which would then be subject to a preemption analysis. *Id.*

Indeed, in this case, the preemption argument is inescapable. Plaintiffs are asking the Court to ignore the California statutes and California's well entrenched right to privacy under the California Constitution. This argument is tantamount to asserting that Rule 45, providing for federal subpoenas, preempts the California laws governing the disclosure of the type of information sought in the subpoena. There is no basis for this conclusion. The statutes at issue, §1985.3 and §§2891, 2894 reflect the policy in California of safeguarding its citizen's privacy and are therefore, substantive. Accordingly, there is no applicable federal law that would

---

utilities) **if the consumer is given prior notice and an opportunity to object or seek a protective order.**" *Pioneer,* 40 Cal.4th at 374. (emphasis added). Indeed, in *Pioneer,* the Court held that the trial court's order was sufficient where it provided for notice to the complaining customers about the lawsuit, about Plaintiff's request for identifying information in order to contact them, and their right to object to release of that information—their failure to response would be treated as consent to the release. *Id.* at 365-66. Moreover, in *Pioneer*, the Plaintiff was seeking the identities of consumers who had already complained about the allegedly defective products. Here, Plaintiffs are not advocating that the consumers (who unlike in *Pioneer*, have not complained about the allegedly unwanted calls) be given prior notice of the disclosure of their information to Plaintiffs.

preempt the substantive privacy rights that California constitutionally guarantees its citizens. It is well settled that "[i]n a preemption analysis, Congress' intent governs but there is the assumption that Congress does not intend to interfere with a state's police power to improve the welfare of its citizens." *Curry v. Kraft Foods Global,Inc.,* No. 10 C 1288, 2012 WL 104627, at * (N.D. Ill. Jan. 12, 2012) (quoting *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1994–95, 173 L.Ed.2d 51 (2009)). Further, in *Mason v. SmithKline Beehcam Corp,* 596 F.3d 387, 390, the Seventh Circuit described the three types of preemption:

> Preemption comes in three forms. First, and the easiest to apply, is express preemption which occurs when Congress clearly declares its intention to preempt state law. Second, we have implied preemption which occurs when the "structure and purpose" of federal law shows Congress's intent to preempt state law. Finally, we come to conflict preemption which occurs when there is an actual conflict between state and federal law such that it is impossible for a person to obey both. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

The only type of preemption that might apply here would be "conflict preemption." To allow Plaintiffs the requested discovery without regard to the procedures set out in §1985.3 and §§2891, 2894 would make it impossible for T-Mobile to comply with both the state and federal laws. Preemption analysis begins with a presumption *against* preemption. *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health,* 699 F.3d 962, 984 (7th Cir. 2012). Given this presumption, it is clear that Plaintiffs have not set forth any basis to rebut that presumption and to conclude that Rule 45 should preempt California's privacy policies embodied in these statutes.

> C. **Alternatively, if the Statutes at Issue Involve a Privilege, the Court Must Engage in an Analysis of Whether a Privacy Interest is Infringed**

In *Robinson,* at issue were subpoenas issued to Pacific Bell for the individual Plaintiffs' telephone records—*Robinson* did not concern the issue in the instant case—a subpoena which

requests subscriber information for 4600 California Subscribers. Thus, the decision in *Robinson* is of limited utility here. Further, since the preemption issue was not raised by the parties, the court considered the statute to encompass a "mere privilege" not to produce certain information.[4] The court held that federal privilege law applied but that a federal court can consider state privilege law. *Id.* at *2-3.

Since this case involves a federal question, federal privilege law may control—according to the *Robinson* court, "state privilege law which is consistent with its federal equivalent may significantly inform in applying privilege law to discovery disputes." *Robinson,* 2011 WL 243369, at *2. The *Robinson* court (and Plaintiffs herein) relied on factors identified by the court in *Pagano v. Orvoville Hospital,* 145 F.R.D. 683, 688-89 (E.D. Cal. 1993) on whether a privacy interest was unduly infringed. These criteria are as follows:

> (1) the probable encroachment of the individual's privacy right if the contested action is allowed to proceed, and the magnitude of that encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment.

In reviewing the first two factors, the encroachment of the individual's right to privacy, the underlying action in this case is for allegedly unwanted telephone calls made without the subscribers' consent. The California Public Utilities Code provides that certain information, including demographic and identifying information, maintained by T-Mobile cannot be disclosed without the subscriber's consent. Yet Plaintiffs are requesting that this court override that privacy interest to provide names and addresses of subscribers, without their consent, so they can be advised that they may be entitled to relief for a different unsolicited contact. This anomalous

---

[4] In fact, the *Robinson* court utilized a privilege analysis rather than a preemption analysis noting that because the Plaintiff did not argue a preemption theory "the court is unwilling to embark on such a unique course without a party rowing for such a result." *Id.* at 3.

result favors Defendants' position as the probable encroachment by such a process is precisely the type of encroachment implicated by the Public Utilities Code provisions (and the invasions of privacy addressed by the TCPA). Further, the third factor, whether the information is available with less encroachment on the privacy rights, for reasons set forth in Defendant's Response to Plaintiffs' First Motion also weighs against production. Moreover, given that consent can be obtained from the subscribers to allow for production of their information, the information is available with less encroachment—Plaintiffs are simply trying to avoid the extra step required to comply with the California law. With regard to the fourth and fifth factors, while Plaintiffs assert that they are "attempting to provide the best notice practicable to the members of the Classes they represent,"(Pl. Mot. at 8) and thus, serving society's interests—again, Plaintiffs can obtain the information, they simply must follow the procedures required by the California statutes governing the right to privacy of the California subscribers.[5] It is not enough to suggest as Plaintiffs do, that the expense "should not be unnecessarily incurred" when the privacy rights guaranteed California citizens are at issue.[6] *Id.*

### III. CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion to Compel should be denied.

Respectfully, submitted,

T-MOBILE US, INC.

By: /s/ Debra R. Bernard
One of its Attorneys

---

[5] To the extent that the cases cited by Plaintiffs for the proposition that the disclosure of names and addresses is permissible in the pre-certification class context, do not involve the California statutes at issue, they are inapposite. *See e.g., Sanbrook v. Office Depot,* No. C07-5938,-RMW (PVT), 2009 WL 840019 (N.D. Cal. March 30, 2009); *Pioneer, supra.*

[6] Plaintiff also suggests that Plaintiff should not bear the expense of providing notice to, or obtaining consent from, the California subscribers. (Pl. Mot. at 8 n.6). However, it has long been established that "the plaintiff must pay for the cost of notice [to a class] as part of the ordinary burden of financing his own suit." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178-79 (1974).

Debra R. Bernard, ARDC No. 6191217
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
312.324.8400

Dated: ___March 12, 2015_____

## CERTIFICATE OF SERVICE

I, Debra R. Bernard, certify that on March 12, 2015, I caused the foregoing **T-Mobile's Response to Plaintiff's Motion for Order Compelling T-Mobile US, Inc. to Produce California Subscriber Information** to be filed and served via the Court's CM/ECF system upon the following parties:

| | |
|---|---|
| Scott R. Rauscher<br>scott@loevy.com<br>Jonathan I. Loevy<br>jon@loevy.com<br>Michael I. Kanovitz<br>mike@loevy.com<br>LOEVY & LOEVY<br>312 N. May Street, Suite 100<br>Chicago, Illinois 60607<br>T: 312-243-5900<br>F: 312-243-5902 | Richard W. Epstein (Florida Bar No. 229091)<br>Richard.Epstein@gmlaw.com<br>Rebecca F. Bratter (Florida Bar No. 685100)<br>Rebecca.Bratter@gmlaw.com<br>Jeffrey A. Backman (Florida Bar No. 662501)<br>Jeffrey.Backman@gmlaw.com<br>GREENSPOON MARDER, P.A.<br>200 E. Broward Blvd., Suite 1500<br>Fort Lauderdale, FL 33301<br>T: 954-491-1120<br>F: 954-343-6958<br>*Admitted Pro Hac Vice* |
| Jay Edelson<br>jedelson@edelson.com<br>Rafey S. Balabanian<br>rbalabanian@edelson.com<br>Eve-Lynn J. Rapp<br>erapp@edelson.com<br>EDELSON PC<br>350 North LaSalle Street, Suite 1300<br>Chicago, Illinois 60654<br>T: 312-589-6370<br>F: 312-589-6378 | Timothy Hudson<br>TABET DIVITO & ROTHSTEIN LLC<br>209 South LaSalle Street, 7th Floor<br>Chicago, Illinois 60604<br>T: 312-762-9476<br>F: 312-762-9451<br>thudson@tdrlawfirm.com |
| M. Peebles Harrison (*Pro Hac Vice*)<br>Rose, Harrison & Gilreath, P.C.<br>700 Blue Jay Street, Suite 1<br>Post Office Box 405<br>Kill Devil Hills, North Carolina 27948<br>T: 252-480-1414<br>F: 252-480-1765<br>Peebles@outerbankslaw.com | Brian P. O'Meara<br>Forde Law Offices LLP<br>111 West Washington Street, Suite 1100<br>Chicago, Illinois 60602<br>T: 312-465-4780<br>F: 312-641-1288<br>bomeara@fordellp.com |

                 /s/ *Debra R. Bernard*
                 One of the attorneys for T-Mobile US Inc.

LEGAL125267912.2