IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and a class of others similarly situated, | Case No. 1:12-cv-04069 |
| *Plaintiffs*, | Honorable Matthew F. Kennelly |
| v. | |
| CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., | |
| *Defendants*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDER COMPELLING T-MOBILE US, INC. TO PRODUCE CALIFORNIA SUBSCRIBER INFORMATION**

**INTRODUCTION**

Plaintiffs filed a Motion to Compel T-Mobile US, Inc. ("T-Mobile" and the "Motion," respectively) to produce the name and address information for its California subscribers (the "California Class Members"). (Dkt. 278.) T-Mobile's Response in Opposition (the "Response") argues that Section 2891 of the California Public Utilities Act (the "Act") requires T-Mobile to obtain its mobile subscriber's written consent before such information can be provided. (Dkt. 283.) Simply put, T-Mobile's reading of the Act is wrong.

As set forth in Plaintiffs' Motion, Section 2891 limits the information that telephone companies may provide about their residential subscribers without the subscribers' consent. *See* Cal. Pub. Util. Code § 2891. The statute was implemented to protect California residents from receiving unwanted telephone solicitations. *See* Cal. Pub. Util. Code § 2894.10(a) (stating that the law had been enacted to "protect *residential* telephone subscriber's privacy rights with respect to telephone

1

solicitations") (emphasis added). It should not be read to prevent California residents from learning about their rights as class members in a certified class action seeking redress from Defendants for illegal telephone solicitations. Indeed, courts have interpreted the statute as not applying in similar situations—whether because it does not apply to wireless customers at all (the only customers' whose information was requested by the subpoena at issue), or because the Act also permits telephone companies to provide information in response to a Court order. Such a result is appropriate here.

Therefore, as set forth in Plaintiffs' Motion and below, the Court should hold that the Act does not require customer consent before T-Mobile provides Plaintiffs' counsel with their California subscribers' name and address information in this case.

## ARGUMENT

### A. Section 2891 does not apply to requests for wireless telephone subscribers' name and address information.

In its response, T-Mobile argues that the express language of Section 2891—which requires a "telephone or telegraph corporation" to obtain a "residential subscriber's consent" before providing "demographic information about individual residential subscribers, or aggregate information from which individual identities and characteristics have not been removed," *see* Cal. Pub. Util. Code § § 2891(a)(4)—requires it to obtain consent before disclosing its California wireless subscribers' contact information to Plaintiffs. (Resp. at 2.) This argument fails in two respects.

First, as discussed in Plaintiffs' Motion, the court in *Kamalu v. Walmart Stores, Inc.* correctly held that the Act does not apply to wireless subscribers. *See Kamalu v. Walmart Stores, Inc.*, No. 1:13-cv-00627-SAB, Dkt. 21 at 9 (E.D. Cal. Aug. 15, 2013) (holding that Section 2891 does not apply to mobile telephone subscribers, and further noting that the Act distinguishes between residential and mobile subscribers elsewhere). Rather, the plain language indicates that it applies only to "residential subscribers," and so the Court's analysis should end there. *See e.g.*, *United States v. Miscellaneous*

2

*Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) ("The cardinal rule of statutory interpretation is that courts must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose."); *see also Westcom Long Distance, Inc. v. Pacific Bell*, 2006 WL 2076342, at *10 (Cal. P.U.C. 2006) (demonstrating that even the California Public Utilities Commission has acknowledged that Section 2891 "appears to apply only to residential customers.").[1][2]

This reading is further supported by the fact that, although the Act does not define "residential subscribers," Section 2891.1 of the Act—which immediately follows Section 2891—distinguishes residential subscribers from mobile telephone customers. Namely, Section 2891.1, provides that:

> (a) Notwithstanding Section 2891, **a telephone corporation selling or licensing lists of *residential subscribers*** shall not include the telephone number of any subscriber assigned an unlisted or unpublished access number. A subscriber may waive all or part of the protection provided by this subdivision through written notice to the telephone corporation.
>
> (b) Notwithstanding Section 2891, **a provider of *mobile telephony* services, or** any direct or indirect affiliate or agent of a provider, providing the name and dialing number of a subscriber for inclusion in any directory of any form, or selling the contents of any directory database, or any portion or segment thereof, shall not include the dialing number of any subscriber without first obtaining the express consent of that subscriber.

---

[1] *Westcom* does not appear to be paginated, so the pin cite is to the page of the Westlaw document.

[2] *Westcom Long Distance*—a case that was cited in T-Mobile's Response—involved the California Public Utilities Commission's determination that a party was generally engaging in reprehensible conduct, including intercepting telephone communications, and the business-customer information that was disclosed involved "calling patterns," rather than just the names and addresses of the company's subscribers. *Id.* There are no factual similarities to this case, nor did the Commission provide any analysis of the scope of Section 2891. Therefore, *Westcom* is relevant for only the Commission's acknowledgement that Section 2891 "appears to apply only to residential customers."

Cal. Pub. Util. Code § 2891.1 (emphasis added).[3]

T-Mobile does not address the relevant statutory language regarding "residential subscribers," but instead argues that because T-Mobile is a "telephone carrier," it must adhere to the requirements of the Act. T-Mobile's status as a "telephone carrier"—which Plaintiffs do not dispute—says nothing about whether T-Mobile's wireless customers qualify as residential telephone subscribers, and as a result, whether the Act applies to the subscriber information currently at issue. Moreover, the two cases cited by T-Mobile in support of its contention that the Act applies to wireless customers—*In re Farsheedi*, No. C 09–3888 JF, 2009 WL 4572745 (N.D. Cal. Dec. 4, 2009) and *Tataryn v. Barnett,* Case No. 08 FL 00527 (Superior Court of California, County of Sacramento, June 9, 2014)—provide no persuasive reason to depart from the Act's plain language. For example, in *In re Farsheedi* the court merely held that that the Act applied to T-Mobile's customers because "T-Mobile is a wireless telecommunications provider," but as explained above, that determination is not relevant to the issue of whether its customers are "residential subscribers." Dkt 283-2 at 25. Likewise, in *Tataryn*, the court held that Section 2891 applied to wireless customers on the ground that the legislature's use of "residential" was meant only to distinguish between subscribers who used their telephones for personal reasons and business customers, rather than between "residential" telephones and wireless telephones. The *Tataryn* court also acknowledged that Section 2891 was implemented before the proliferation of wireless telephones, so it is possible that the legislature

---

[3] Mobile telephony services is separately defined in the California Public Utility Code, and the definition makes no reference to residential service. Instead, it is defined as "commercially available interconnected mobile phone services that provide access to the public switched telephone network (PSTN) via mobile communication devices employing radiowave technology to transmit calls, including cellular radiotelephone, broadband Personal Communications Services (PCS), and digital Specialized Mobile Radio (SMR). 'Mobile telephony services' does not include mobile satellite telephone services or mobile data services used exclusively for the delivery of nonvoice information to a mobile device." Cal. Pub. Util. Code § 224.4(d).

never considered wireless customers when it enacted Section 2891.[4] Nevertheless, because Section 2891's plain language limits its application to residential subscribers, it is improper for courts interpreting the statute to try to divine the legislative intent, and those decisions should not be followed. *See Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d at 712.

Second, even assuming, *arguendo*, that Section 2891 applies to wireless subscribers, T-Mobile's contention that the Act prevents it from disclosing the information requested because the Act prohibits the dissemination of "demographic information" is off base. Although Plaintiffs acknowledge that the Act prohibits the disclosure of certain types of residential subscriber information, such as calling patterns, details about services that subscribers purchase, the subscriber's personal financial information, and demographic information, *see* Cal. Pub. Util. Code § 2891 (a)(1)-(a)(4),[5] a person's name and address alone are not typically considered "demographic information." In fact, the first definition for "demographic" on dictionary.com is "the statistical data of a population, especially those showing average age, income, education, etc."[6] And the most relevant definition in Merriam Webster states that "demographic" is "the statistical characteristics of human populations (as age or income) used especially to identify markets."[7] T-Mobile has not provided any basis to read "demographic information" as meaning name and address alone, and the Court should not do so here.

---

[4] That the legislature may have been unaware of wireless technology provides another reason to hold that Section 2891 does not apply to wireless customers, rather than a basis to assume that the legislature would have covered wireless customers had wireless technology been prevalent at the time. Notably, despite that wireless technology is now widespread, no amendment to the statute has been made.

[5] It also prohibits the dissemination of "aggregate information" without removing a subscriber's identifying information, but Plaintiffs have not requested any aggregate demographic information.

[6] *See* http://dictionary.reference.com/browse/demographics (last visited on March 17, 2015).

[7] *See* www.merriam-webster.com/dictionary/demographic (last visited on March 17, 2015).

B.  **The Court has Authority to Issue an Order Directing T-Mobile to Produce the California Subscriber Records.**

Next, T-Mobile argues that the Court lacks the authority to issue an order directing T-Mobile to turn over the requested information. In making that argument, T-Mobile asserts that Plaintiffs' subpoena is not valid because the Act "only applies to subpoenas issued **for law enforcement purposes**." (Resp. at 4 (citing Cal. Pub. Util. Code § 2894(a) (emphasis in the original).) This argument is also unavailing. As an initial matter, Plaintiffs do not, as T-Mobile suggests, contend that Section 2891 authorizes telephone companies to provide protected information merely because a party issues a subpoena. Rather, Plaintiffs agree that telephone companies may provide protected information in response to subpoenas, without consent, only if the subpoena is an "administrative subpoena issued at the request of a law enforcement official or other federal, state, or legal government agency for law enforcement purposes." Cal. Pub. Util. Code § 2894(a).[8] That was a sensible way for the legislature to ensure that law enforcement officials could issue necessary subpoenas, while protecting consumers from non-law enforcement subpoenas seeking the same information.

But Section 2894(a) also allows for information to be released "in good faith compliance with the terms of a state or federal court order…, " *id.*, and T-Mobile has not provided any reason why the Act should be read to prohibit a federal court from issuing an order unless it was requested by a government agency for law enforcement purposes. Moreover, contrary to T-Mobile's argument, no part of the statute is rendered superfluous by reading it to mean that administrative subpoenas

---

[8] As described by the Department of Justice, administrative subpoenas may be used by government agencies in a variety of contexts. *See* http://www.justice.gov/archive/olp/rpt_to_congress.htm#2 (last visited on March 18, 2015). The California legislature, therefore, may have sensibly decided to limit the situations in which administrative subpoenas could be used to request information that is otherwise protected by Section 2891, to those involving "law enforcement purposes," but that does not mean a federal court may not order the disclosure of the information requested where appropriate.

must be issued by law enforcement officials, but court orders may be issued at the request of a party. Notably, in the only case that Plaintiffs located addressing this issue, the court entered an order directing the production of otherwise protected information in a putative class action. *See McArdle v. AT&T Mobility LLC*, No 09-1117 CW (MEJ), 2010 WL 1532334, at *5 (N.D. Cal. Apr. 16, 2010) (ordering the production of the putative class members' contact information and holding that "[s]ection 2891 does not prohibit the disclosure of [d]efendants' customers' contact information under a court order, and there is no requirement that the [c]ourt require an affirmative waiver from any such persons"). In ordering production of that information, the *McArdle* court recognized that a different result "could have potentially adverse effects in cases brought to redress a variety of social ills, including consumer rights litigation." Notably, T-Mobile has not identified any contrary case law, and given the similarities between the circumstances present in *McArdle* and those presented here, *McArdle* should be dispositive.

In short, Section 2891 does not apply to the information requested in Plaintiffs' subpoenas, and even if it does, the Court has the authority to, and should, order T-Mobile to comply with Plaintiffs' subpoenas here.

### C. Section § 1985.3 of the CCP does not require T-Mobile to obtain consent under the instant circumstances either.

Finally, T-Mobile's brief includes a heading asserting that "Rule 45 does not preempt the California Public Utilities Code." (Resp. at 6.) Plaintiff, however, makes no such contention. Rather, as T-Mobile acknowledges in the first sentence below its heading, Plaintiffs argue that the California Code of Civil Procedure (the "CCP")—which also contains a section that would require customer consent for certain types of information—does not apply to Plaintiffs' subpoena. *See id.* The Court in *RBS Sec. Inc. v. Plaza Home Mortgage, Inc.*, No. 12CV2132-JM MDD, 2012 WL 3957894, at *1 (S.D. Cal. Sept. 10, 2012) agreed, explaining that "[a] subpoena *duces tecum* issued under the Federal Rules of Civil Procedure is not subject to CCP 1985.3 which, by its terms, is limited to subpoenas issued

7

under the [California Code of Civil Procedure]," and further explaining that although "[c]ourts have wandered into the morass of determining whether CCP 1985.3 creates a privilege under California law and whether that privilege should be accorded some recognition in federal proceedings" it would be more appropriate to "credit the plain language of the statute regarding its scope." *Id*; *see also* CCP 1985.3(a)(3) (limiting the requirements of CCP 1985.3 to "a subpoena duces tecum to be issued or served in connection with any civil action or proceeding *pursuant to this code* . . . .") (emphasis added).

Nevertheless, to the extent that the Court disagrees, and is inclined to consider Section 1985.3 of the CCP as a substantive privilege law that should be addressed (despite the fact that this case involves claims arising under a federal statute), as the court did in *Robinson v. Kia Motors America, Inc.*, No. Civ-S-10-3187, 2011 WL 2433369 (E.D. Cal. June 13, 2011), Plaintiffs' motion should still be granted. As explained fully in Plaintiff's Motion, each *Robinson* factor weighs in favor of disclosure, or at best, is neutral.[9] With respect to the first two factors, contrary to T-Mobile's argument, mailing a consumer notice of his or her rights with respect to privacy violations is not even close to being "precisely the type of encroachment implicated by the Public Utilities Code provisions (and the invasions of privacy addressed by the TCPA)". Rather, the statutes at issue were enacted to limit improper telephone solicitations. *See* Cal. Pub. Util. Code § 2894.10(a) (stating that the law had been enacted to "protect residential telephone subscriber's privacy rights with respect to telephone solicitations"); *see also Mims v. Arrow Fin. Svcs's, LLC*, 132 S. Ct. 740, 744 (2012) (explaining that Congress enacted the TCPA in 1991 in response to "[v]oluminous consumer complaints about abuses of telephone technology . . ."). Plaintiffs, of course, do not intend to use the subscriber name

---

[9] The five factors are: (i) "the probable encroachment on the individual's privacy right…and the magnitude of the encroachment," (ii) whether the information sought is of the type that has "traditionally been off limits[,]" (iii) whether the information "is available from other sources with less encroachment[,]" (iv) "the extent to which [] exercising [] the individual' privacy rights [would] impinge [] the rights of others[,]" and (vi) the "interests of society." *Id.* at *3

8

and address information to attempt to sell products to those individuals, or for any other improper purpose. With respect to the third *Robinson* factor, as explained in Plaintiffs' Motion, Plaintiffs have asked only for limited information that subscribers have voluntarily provided to T-Mobile. Moreover, the information is not readily available elsewhere. The fourth factor—the extent that the individual's right to privacy would impinge on the rights of others—is neutral (although Defendants may argue that their rights are affected if they are not provided with the known identities of class members). Finally, society's interests would be advanced by the production of this information, so that class members can be informed of their rights.[10] As such, to the extent the Court engages in a *Robinson*-type analysis, disclosure is favored.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court enter an order (ii) instructing T-Mobile to comply with their Subpoenas by producing the names and last known home and email address(es) (if any) for the California subscribers whose numbers received the calls at issue in this case on the dates identified in Plaintiffs' Subpoenas, and (ii) granting any other relief that the Court deems reasonable and just.

Date: March 19, 2015                                       By: /s/ Eve-Lynn J. Rapp

| Jay Edelson | Scott R. Rauscher |
| --- | --- |
| jedelson@edelson.com | scott@loevy.com |
| Rafey S. Balabanian | Michael I. Kanovitz |
| rbalabanian@edelson.com | mike@loevy.com |
| Eve-Lynn J. Rapp | Jonathan I. Loevy |
| erapp@edelson.com | jon@loevy.com |
| EDELSON PC | LOEVY & LOEVY |

---

[10] Another potential option would be for T-Mobile to mail the approved class-action notice to its California residents, without providing their contact information to the parties or the Court. Plaintiffs would agree to pay the reasonable costs associated with that process, although the reasonable costs would not be anything close T-Mobile's proposed cost of approximately $20 per customer to send a consent form. Rather, Plaintiffs submit that the reasonable costs would be the costs that their class administrator, KCC, would charge for the same work.

9

| 350 North LaSalle Street, Suite 1300<br>Chicago, Illinois 60654<br>Tel: 312.589.6370<br>Fax: 312.589.6378<br><br>*Class Counsel* | 312 N. May Street, Suite 100<br>Chicago, Illinois 60607<br>Tel: 312.243.5900<br>Fax: 312.243.5902<br><br>*Class Counsel* |
|---|---|
| Scott D. Owens<br>scott@scottdowens.com<br>LAW OFFICES OF SCOTT D. OWENS, ESQ.<br>664 East Hallandale Beach Boulevard<br>Hallandale, Florida 33009<br>Tel: (954) 306-8104<br><br>*Counsel for Stone* ||

**CERTIFICATE OF SERVICE**

      I, Eve-Lynn J. Rapp, an attorney, hereby certify that on March 19, 2015, I served the above and foregoing *Plaintiffs' Reply in Support of Motion for Order Compelling T-Mobile US, Inc. to Produce California Subscriber Information*, by causing a true and accurate copy of such paper to be transmitted to all counsel of record via electronic mail, on this the 19th of March, 2015.

                                                          /s/ Eve-Lynn J. Rapp