IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and a class of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC.,<br><br>*Defendants*. | Case No. 1:12-cv-04069<br><br>Honorable Matthew F. Kennelly |

## PLAINTIFFS' STATUS REPORT REGARDING NOTICE PLAN

Plaintiffs, on behalf of themselves and the certified Classes, hereby submit the instant report in advance of the upcoming March 20, 2015 Status Hearing (i) to update the Court on the status of Plaintiffs' subpoenas to third-party telephone carriers, (ii) provide an updated Declaration of Daniel Rosenthal in Support of Plaintiffs' Notice Plan, which is attached hereto as Exhibit A, and (iii) inform the Court of the procedure agreed to by Plaintiffs, Defendants, and the relevant wireless carriers regarding providing name and address information to counsel of those class members who have expressed their desire to opt out, notwithstanding their requests to be excluded from the Classes.

**Status of Plaintiffs' Subpoenas to Third Parties**

1.      First, as explained to the Court in Plaintiffs' previous filings and during prior status hearings, in effort to identify the names and address information for the approximately 370,000 wireless telephone numbers appearing in Defendants' records (or the records of their third-party

1

telephone providers), Plaintiffs issued and are enforcing subpoenas to the five carriers identified by Neustar as owning approximately 90% of those wireless numbers. Those carriers include: Sprint, U.S. Cellular, Verizon, AT&T, and T-Mobile US, Inc.

2. To date, four of the five carriers (all but T-Mobile) have informed Plaintiffs' counsel how many phone numbers they were able to match to a name and address on the specific date Defendants' calls were received, which as evidenced by the chart below collectively amounts to 271,189 out of 348,001 individuals, or 78% of the total wireless numbers, without yet accounting for T-Mobile's production:

| Carrier | Number of Names & Addresses Returned | Total Number of Phone Numbers Provided | % of Matches |
|---|---|---|---|
| Sprint | 43,209 | 44,195 | 98% |
| US Cellular | 5, 821 | 10,291 | 57% |
| Verizon Wireless | 109,310 | 125,682 | 87% |
| AT&T | 112,849 | 125,952 | 90% |
| T-Mobile | **TBD** | 41,881 | **TBD** |
| **TOTAL** | 271,189 | 348,001 | 78% (without accounting for T-Mobile matches) |

3. As evidenced by the Chart above, Plaintiffs' counsel is still awaiting information from T-Mobile. Plaintiffs' counsel has attempted to contact counsel for T-Mobile on no fewer than three separate occasions to determine how many phone numbers they were able to match to a name and address on the date the call was received, or alternatively, to determine when T-Mobile will be able to provide that information, but counsel for T-Mobile has not responded to those emails or calls.

4. As such, the 78% number reflected in the above chart does not account for the name and address information expected to be produced by T-Mobile in response to Plaintiffs'

subpoenas, and Plaintiffs reasonably believe that this number will increase once T-Mobile provides that information.

**Updated Declaration of Daniel Rosenthal in Support of Plaintiffs' Notice Plan**

5. Second, on October 14, 2014, Daniel Rosenthal submitted a Declaration in support of Plaintiff's Motion for Approval of Class Notice Plan that provided the Court with his and KCC's qualifications and experiences regarding the development of class action notice plans generally, and to provide information regarding the specific Notice Plan in this case. As Plaintiffs have now received responses to nearly all of their subpoenas to wireless carriers and KCC has completed the reverse lookup process for residential landline telephone numbers, Mr. Rosenthal now submits an updated declaration (the "Updated Declaration"). *See* Exhibit A ¶ 2.

6. In his Updated Declaration, Mr. Rosenthal concludes that the "[c]ombined media efforts [of the Notice Plan] alone will reach an estimated 70.9% of all U.S. adults 18 years of age and older on average 1.2 times each," and separately that "the reach of Class members for whom valid mailing addresses have been obtained will exceed 85% of the known phone numbers (the estimated reach of the individual notice (direct mail) combined with the reach of the media efforts)." *Id.* ¶ 27. He further concludes that based on his "class action notice planning experience, the notice procedures utilized in this Notice Plan" (i) "provide the best notice practicable" and (ii) are "also consistent with the 70-95% reach guideline set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. *See* Ex. A. ¶¶ 28-29.

**Supplemental Notice to AT&T and Verizon Wireless Opt-Out Customers**

7. Third, in attempt to reach an agreement with AT&T and Verizon about providing their respective subscribers' name and address information to Plaintiffs' counsel without sending a separate letter notifying its customers of Plaintiffs' subpoenas (at Plaintiff's expense), through the meet and confer process, Plaintiffs' counsel originally proposed that AT&T and Verizon provide

3

their subscriber information to Plaintiffs' class administrator directly—without providing it to counsel in the event the class member opted out.

8. In ruling on Plaintiffs' proposed notice documents, however, and subsequently at the February 13, 2015 Status Hearing, the Court held that Defendants were entitled to know which potential class members had opted out of the Classes, and therefore that the procedure originally proposed by Plaintiffs' counsel and agreed to by AT&T and Verizon would need to be changed.

9. In light of that ruling, following the February 13th Status, counsel for Plaintiffs further conferred with counsel for AT&T and Verizon, who have both agreed to the following process:

   a. Verizon and AT&T will first provide the name and address information of their respective subscribers directly to KCC, without providing it to counsel for the Parties;

   b. Subject to the Court's approval, KCC will then send direct notice to all class members from whom it has complete names and valid mailing addresses;

   c. KCC will keep track of the specific AT&T and Verizon subscribers who choose to opt-out of the Classes, and inform AT&T and Verizon of those individual's decision to be excluded from the Classes;

   d. AT&T and Verizon will then send a second supplemental notice letter to those individuals—at their own expense—informing them that despite their decisions to exclude themselves from the Classes, AT&T and/or Verizon will nonetheless be required to provide counsel with the subscribers' name and address information unless they file a motion by a date certain, and ultimately obtain an order from the Court instructing AT&T and/or Verizon not to provide such information (the "Supplemental Notice Letter");

   e. Unless AT&T and/or Verizon receives a notice that such a motion has been filed within the date determined (likely two weeks from the date the Supplemental Notice Letter was issued), KCC will make the name and address information of their opt-out subscribers available to the Parties directly.

10. Plaintiff has discussed this process with Defendants who have indicated that they have no objection to this procedure so long as the cost of such process does not increase the cost of

4

Plaintiff's Notice Plan. The fact that AT&T and Verizon will bear the expense of sending out the supplemental letters should satisfy Defendants' concerns.

11.  As a result of this agreement, on March 12, 2015, Plaintiffs provided both AT&T and Verizon with a proposed draft Supplement Notice Letter. Plaintiffs' counsel has reached an agreement with AT&T as to the contents of such letter, but is still waiting to hear back from Verizon at this time.[1]

Date: March 19, 2015                    By: /s/ Eve-Lynn J. Rapp

| Jay Edelson | Scott R. Rauscher |
|---|---|
| jedelson@edelson.com | scott@loevy.com |
| Rafey S. Balabanian | Michael I. Kanovitz |
| rbalabanian@edelson.com | mike@loevy.com |
| Eve-Lynn J. Rapp | Jonathan I. Loevy |
| erapp@edelson.com | jon@loevy.com |
| EDELSON PC | LOEVY & LOEVY |
| 350 North LaSalle Street, Suite 1300 | 312 N. May Street, Suite 100 |
| Chicago, Illinois 60654 | Chicago, Illinois 60607 |
| Tel: 312.589.6370 | Tel: 312.243.5900 |
| Fax: 312.589.6378 | Fax: 312.243.5902 |
| *Class Counsel* | *Class Counsel* |

Scott D. Owens
scott@scottdowens.com
LAW OFFICES OF SCOTT D. OWENS, ESQ.
664 East Hallandale Beach Boulevard
Hallandale, Florida 33009
Tel: (954) 306-8104

*Counsel for Stone*

---

[1]  To the extent that the Court wishes to review AT&T and Verizon's Supplemental Notice Letters, Plaintiffs will promptly make those available.

## **CERTIFICATE OF SERVICE**

  I, Eve-Lynn J. Rapp, an attorney, hereby certify that on March 19, 2015, I served the above and foregoing *Plaintiffs' Status Report Regarding Notice Plan,* by causing a true and accurate copy of such paper to be transmitted to all counsel of record via electronic mail, on this the 19th of March, 2015.

                        /s/ Eve-Lynn J. Rapp