## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

GERARDO ARANDA, GRANT BIRCHMEIER,
STEPHEN PARKES, and REGINA STONE, on behalf
of themselves and classes of others similarly situated,

    *Plaintiffs*,

 *v.*

CARIBBEAN CRUISE LINE, INC., ECONOMIC
STRATEGY GROUP, ECONOMIC STRATEGY
GROUP, INC., ECONOMIC STRATEGY, LLC, THE
BERKLEY GROUP, INC., and VACATION
OWNERSHIP MARKETING TOURS, INC.,

    *Defendants*.

Case No. 1:12-cv-04069

Honorable Matthew F. Kennelly

Jury Trial Demanded

## AMENDED CONSOLIDATED COMPLAINT

Plaintiffs, Gerardo Aranda ("Aranda"), Grant Birchmeier ("Birchmeier"), Stephen Parkes ("Parkes"), and Regina Stone ("Stone," and together with Aranda, Birchmeier, and Parkes, "Plaintiffs"), on behalf of themselves and classes of others similarly situated, for their Amended Consolidated Complaint against Defendants Caribbean Cruise Line, Inc. ("Caribbean Cruise Line"), Economic Strategy Group, Economic Strategy Group, Inc., Economic Strategy LLC (collectively the "Economic Strategy Group Companies"), The Berkley Group, Inc. ("Berkley" or the "Berkley Group"), and Vacation Ownership Marketing Tours, Inc. ("VOMT," and collectively, "Defendants"), state as follows:

### Introduction

1. From August 2011 through August 2012, millions of consumers received calls on their cellular and landline telephones made by or on behalf of Defendants to offer them a "free" cruise package from Caribbean Cruise Line in exchange for taking a supposed political or public opinion survey, many of which were purportedly conducted by an entity claiming to be "Political

Opinions of America" ("POA"). This survey was little more than a pretext for unsolicited telemarketing, which, as the Washington Attorney General's Office has described, involved "the patent illegality of commercial robo-calling and misrepresentations that it's a political poll." Not only was the "free" cruise not free, the survey was simply a marketing tool for Berkley, CCL, and VOMT.

2.      Nor was POA a legitimate survey organization, or even a real company. Instead, it was simply a name given to consumers on many of the illegal survey calls.

3.      Blatantly ignoring federal law, Defendants collectively launched and/or knowingly benefited from a massive "robo-calling" campaign, which involved millions of calls to consumers nationwide to sell Defendants' timeshares and vacation packages.

4.      Robo-dialing campaigns are regulated by federal law because of the potential for such campaigns to harass millions of telephone subscribers per month.

5.      Each call to a Class member's telephone to perpetuate this scheme was a knowing violation of the Telephone Consumer Protection Act's ("TCPA") prohibitions against calling telephone numbers using an automated telephone dialing system ("ATDS") and/or artificial or prerecorded voice. *See* 47 U.S.C. § 227, *et seq.*

6.      Plaintiffs and the Classes seek to recover statutorily set damages as well as treble damages from Defendants for their repeated violations of the TCPA.

<u>**Jurisdiction and Venue**</u>

7.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

8.      Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the conduct giving rise to the claims occurred here.

## Parties and Other Entities

*Plaintiffs*

9.      Named Plaintiff Gerardo Aranda is a natural person domiciled in Illinois, with a cellular telephone number that has a (773) area code. Aranda personally experienced the misconduct alleged herein when he received a telephone call made by or on behalf of Defendants on his cellular telephone.

10.     Named Plaintiff Birchmeier is a natural person domiciled in Illinois, with a cellular telephone number that has a suburban Chicago area code. Birchmeier personally experienced the misconduct alleged herein when he received a telephone call made by or on behalf of Defendants on his cellular telephone.

11.     Named Plaintiff Parkes is a natural person domiciled in Illinois, with a cellular telephone number that has a Chicago area code. Parkes personally experienced the misconduct alleged herein when he received multiple telephone calls made by or on behalf of Defendants on his cellular telephone.

12.     Named Plaintiff Stone is a natural person domiciled in Louisiana. She personally experienced the misconduct alleged herein when she received multiple telephone calls made by or on behalf of Defendants on her cellular and landline telephones.

*Defendants*

13.     Defendant Caribbean Cruise Line, Inc. is a corporation incorporated and existing under the laws of the State of Florida, with its principal place of business located at 2419 E. Commercial Boulevard, Suite 100, Fort Lauderdale, Florida 33308. Caribbean Cruise Line does not operate its own cruise ships, but instead places travelers on a ship operated by Celebration Cruise Line. According to Annual Reports filed with the Florida Secretary of State, Caribbean Cruise Line and Celebration Cruise Line are headquartered in the same office building in Fort Lauderdale,

Florida. In addition, Caribbean Cruise Line and Celebration Cruise Line are run by the same principals, as is VOMT. Moreover, Caribbean Cruise Line's principal place of business is listed as the mailing address for National Travel Service, Inc. on that company's annual report filed with the Florida Secretary of State. In 2000, National Travel Service, Inc. entered into a settlement agreement with Attorney Generals' from 16 states and the District of Columbia for running a scam involving "free" vacation packages.

14.     Defendant Economic Strategy Group was a political action committee registered with the Federal Election Commission ("FEC"), with a Delaware address and a Delaware registered agent. According to documents it filed with the FEC, Economic Strategy Group has neither raised nor disbursed any money since its founding in November 2011.

15.     Defendant Economic Strategy Group, Inc. was a corporation incorporated and existing under the laws of the State of Delaware that was formed in September 2011.

16.     Defendant Economic Strategy LLC was a limited liability company incorporated and existing under the laws of the State of Florida, with its principal place of business located at 10060 Lake Cove Drive, K101, Fort Meyers, Florida 33908. The manager and registered agent of Economic Strategy LLC was Jacob DeJongh, who also served as the treasurer of Economic Strategy Group, the political action committee.

17.     Defendant The Berkley Group, Inc. is a corporation incorporated and existing under the laws of the State of Florida, with its principal place of business located at 3015 N. Ocean Boulevard, Fort Lauderdale, Florida 33308.

18.     Defendant Vacation Ownership Marketing Tours, Inc. is a corporation incorporated and existing under the laws of the State of Florida, with its principal place of business located at 2419 E. Commercial Boulevard, Suite 100, Fort Lauderdale, Florida 33308, the same address as Defendant Caribbean Cruise Line. VOMT is the primary marketing vendor for The Berkley Group's

4

Florida properties, and through that contractual relationship, The Berkley Group expressly acknowledges that VOMT will utilize affiliated companies in carrying out its duties to the Berkley Group.

## General Factual Background

19.     Using an ATDS and/or prerecorded messages, i.e., "robo-calling", is a cheap and efficient method of reaching millions of consumers nationwide. The calls at issue in this case were made using randomly generated lists of phone numbers and/or purchased lists.

20.     Each call was made using automated dialing equipment and each delivered messages using an artificial or prerecorded voice.

21.     Calls were made to both cellular telephone and residential landline numbers. Defendants placed (or directed or allowed to be placed for their own benefit and on their behalf), the robo-calls from numerous telephone numbers with area codes from around the country.

22.     Consumers robo-called by Defendants did not, in any capacity, consent to receive such calls. Instead, Defendants placed (or directed or permitted to be placed for their benefit and on their behalf) calls from a third-party or randomly generated list of phone numbers without authorization.

23.     The true purpose of the calls was to help Defendants sell vacation packages and time shares.

24.     After call recipients completed the surveys, they could be connected to a live Caribbean Cruise Line sales agent, who would attempt to sell them an upgraded vacation package.

25.     Each upgraded vacation package included a mandatory presentation for a Berkley timeshare.

26.     Individuals who chose not to purchase an upgraded vacation package were offered a Berkley timeshare presentation at a later date.

27. Moreover, according to its website, Caribbean Cruise Line offers consumers a "free round-trip Caribbean Cruise Line cruise with meals and entertainment included to and from Grand Bahama Island, with no purchase necessary."

28. In exchange for the purportedly free cruise, passengers are required to attend "a presentation on the sale" of a Berkley Group time share.

29. VOMT, which is owned and operated by the same individuals (and out of the same office) as Caribbean Cruise Line, is a marketing partner of both Caribbean Cruise Line and the Berkley Group, and all of those entities directly benefited from the calls that Plaintiffs and the Classes received.

30. For years, the Berkley Group has contracted with VOMT and related entities to generate sales for its timeshare and other vacation packages.

31. VOMT, which has no employees, carries out its responsibilities under that contract through CCL.

32. Berkley, CCL, and VOMT operate as a joint venture and/or a partnership with respect to the sale of Berkley timeshares and vacation packages.

33. Among other things, Berkley, CCL, and VOMT (and related entities owned and controlled by VOMT owners Dan Lambert and James Verillo) have joined together for their mutual benefit, each contribute labor and capital to the relationship, and share the profits and losses of their marketing efforts. VOMT and CCL also have the ability to bind Berkley by, among other things, providing Berkley with prospects to whom Berkley is then required to provide presentations and timeshare tours. In many circumstances, if a timeshare and/or vacation package is sold, Berkley, CCL, and VOMT all collectively benefit.

34. Defendants each were aware that robo-calls were being made either by them directly or on their behalf, and that the robo-calls were being made to consumers without Defendants

6

engaging in any mechanism to obtain valid express consent to make such calls. Because the robo-calls were made by or on behalf of all Defendants, and each Defendant individually monetarily (and knowingly) benefited from the calls, all Defendants are liable for violating the TCPA's prohibition on calling telephones using an artificial or prerecorded voice without prior express consent.

### Facts Relating to Named Plaintiffs

35.     As described below,  each of the Plaintiffs received robocalls in which they were offered a free cruise for taking a purported survey.

36.     In March 2012, a telephone call was made to Aranda's cellular telephone number by or on behalf of Defendants offering him a cruise in exchange for taking a political or public opinion survey. Aranda was subsequently connected to a Caribbean Cruise Line call center, and his telephone number appears on the records produced by a third-party telephone service provider and by Caribbean Cruise Line itself as having received such a call and having been transferred to a call center.

37.     On May 7, 2012, a telephone call was made to Birchmeier's cellular telephone number by or on behalf of Defendants using an ATDS and/or an artificial or prerecorded voice to deliver a message. Upon answering the call, Birchmeier was greeted by a recorded message informing him that he would receive a free cruise if he took a political survey.

38.     In 2012, at least nine calls were made to Parkes' cellular telephone number by or on behalf of Defendants using an ATDS and/or delivering a message using an artificial or prerecorded voice. Parkes repeatedly tried to remove himself from the call list by following recorded prompts that purport to remove telephone numbers from the call list, but Defendants failed to honor those requests and continued making unwanted calls.

39.     Between April 27, 2012 and June 20, 2012, numerous phone calls were made to Plaintiff Stone's two cellular telephone numbers and a landline telephone number by or on behalf of

Defendants, using an ATDS and/or delivering a message using an artificial or prerecorded voice.

When Stone answered the calls, she heard a recorded voice promoting a free cruise in exchange for

answering a series of questions. The robo-calls stated that the questions and call were on behalf of

"Political Opinions of America" and/or "Independent Survey Group." Stone's cellular and landline

telephone numbers have been registered with the National Do Not Call Registry since at least 2009.

      40.    The above-described calls violated the TCPA's restrictions on a) using an automated

telephone dialing systems and/or an artificial or prerecorded voice to call cellular telephone numbers

and/or b) using an artificial or prerecorded voice to deliver a message to a residential telephone line

that included the transmission of a telephone solicitation or an unsolicited advertisement. Further,

Defendants acted "knowingly" within the meaning of the TCPA by knowingly calling consumers'

telephones, or allowing others to do so on their behalf, using an automated telephone dialing

systems and/or an artificial or prerecorded voice to make such calls. Pursuant to 47 U.S.C. §

227(b)(3), Plaintiffs are entitled to the greater of the amount of their actual damages or $500 per call

together, trebled.

## Class Allegations

      41.    Plaintiffs represent themselves and a class of others similarly situated, which is

defined as follows:

      **Cellular Telephone Class:** All persons in the United States to whom (1) one or more
telephone calls were made [to his or her cellular telephone] by, on behalf, or for the benefit of the
Defendants, (2) purportedly offering a free cruise in exchange for taking an automated public
opinion and/or political survey, (3) which delivered a message using a prerecorded or artificial voice;
(4) between August 2011 and August 2012, (5) whose (i) telephone number appears in Defendants'
records of those calls and/or the records of their third party telephone carriers or the third party
telephone carriers of their call centers or (ii) own records prove that they received the calls—such as
their telephone records, bills, and/or recordings of the calls—and who submit an affidavit or claim
form if necessary to describe the content of the call.

42.     Plaintiff Stone represents herself and a class of others similarly situated, which is defined as follows:

**Landline Telephone Class:** All persons in the United States to whom (1) one or more telephone calls were made [to his or her landline residential telephone] by, on behalf, or for the benefit of the Defendants, (2) purportedly offering a free cruise in exchange for taking an automated public opinion and/or political survey, (3) which delivered a message using a prerecorded or artificial voice; (4) between August 2011 and August 2012, (5) whose (i) telephone number appears in Defendants' records of those calls and/or the records of their third party telephone carriers or the third party telephone carriers of their call centers or (ii) own records prove that they received the calls—such as their telephone records, bills, and/or recordings of the calls—and who submit an affidavit or claim form if necessary to describe the content of the call.

43.     Excluded from the Classes are 1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors; 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family; 3) persons who execute and file a timely request for exclusion; 4) the legal representatives, successors, or assigns of any such excluded person; 5) Plaintiffs' counsel and Defendants' counsel; and 6) any persons who have had their claims against Defendants fully and finally adjudicated on the merits or released.

44.     The individuals in the Classes are so numerous that joinder of all members is impractical. Plaintiffs estimate that the Classes number in the millions because, *inter alia*,

a.    Upon information and belief, Caribbean Cruise Line is responsible for booking approximately 30% of all passengers who travel on Celebration Cruise Line's 1,500 passenger cruise ship, which sails every two days (meaning that Celebration Cruise Line can carry 3,000 or more passengers each week, and that Caribbean Cruise Line is booking up to 1,000 of those passengers). To book such a high number of passengers through its telemarketing efforts, Caribbean Cruise Line must contact a significantly higher number of potential passengers each week. Thus, Caribbean Cruise Line is undoubtedly contacting many thousands of Class members each week;

b.    Hundreds of complaints appear online related to receiving unwanted robo-calls from POA;

9

     c.   Discovery produced in this litigation shows that millions of political or public opinion survey calls were placed by and/or on behalf of Defendants.

45.    There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

     a.   Whether Defendants have a policy or practice of using artificial or prerecorded voice messaging to make telemarketing calls, either directly or by those with whom they contract;

     b.   Whether Defendants have proper procedures in place to prevent the use of artificial or prerecorded voice messaging when making telemarketing calls, either directly or by those with whom they contract;

     c.   Whether Defendants systematically place or allows others to place on their behalf and/or for their benefit calls using a prerecorded or artificial voice to persons that did not previously provide Defendants with consent to call their respective telephone numbers;

     d.   Whether the relevant calls were made using a prerecorded or artificial voice violated Class members' respective rights to privacy;

     e.   Whether Defendants violated the TCPA; and

     f.   Whether the Defendants acted knowingly in violating the TCPA.

46.    The Named Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telemarketing activities. Specifically, each Plaintiff received one or more unsolicited robo-calls offering vacation packages in exchange for taking a political or public opinion survey.

47.    The Named Plaintiffs will fairly and adequately represent the interests of the Classes. The Named Plaintiffs have retained skilled counsel with experience in federal and class action

litigation to represent the Class. Plaintiffs have no interest antagonistic to those of the Class, and

Defendants have no defenses unique to Plaintiffs.

48.     The Court certified the Classes set forth in paragraphs 29 and 30, above, on August

11, 2014. *See* Dkt No. 241.

## COUNT I

**Violation of the TCPA, 47 U.S.C. § 227 (b)(1)(A)(iii)**
**(On behalf of Plaintiffs and the Cellular Telephone Class, as against all Defendants)**

49.     Plaintiffs incorporate each and every paragraph of this complaint as if fully set forth

herein.

50.     Defendants and/or their agents made unsolicited telephone calls to cellular

telephone numbers belonging to Plaintiffs and the other members of the Cellular Telephone Class

without their prior express consent.

51.     Defendants and/or their agents made unsolicited telephone calls to cellular

telephone numbers belonging to Plaintiffs and the other members of the Cellular Telephone Class

using a prerecorded or artificial voice, more commonly known as a "robo-call."

52.     By making, or having or allowing to be made on their behalf, the unsolicited robo-

calls utilizing an artificial or prerecorded voice to Plaintiffs' and the Cellular Telephone Class's

cellular telephones without prior express consent, Defendants violated 47 U.S.C. § 227 (b)(1)(A)(iii).

53.     As a result of Defendants' unlawful conduct, Plaintiffs and the members of the

Cellular Telephone Class suffered actual damages in the form of monies paid to receive the

unsolicited telephone calls—including, but not limited to the cost for each call—and therefore,

Plaintiffs, on behalf of themselves and the other members of the Cellular Telephone Class, seek an

Order under section 227(b)(3)(B) awarding a minimum of $500 in damages for each of Defendants'

violations of the TCPA.

54.     Further, Plaintiffs, on behalf of themselves and the other members of the Cellular Telephone Class, seek an Order under section 227(b)(3)(A) of the TCPA enjoining Defendants' unlawful telephone calling activities described in this Complaint.

55.     By all of the above, the Defendants engaged in knowing violations of the TCPA's restriction on using artificial or prerecorded voice to call Plaintiffs' and Cellular Telephone Class members' telephones.

56.     Should the Court determine that Defendants' conduct was knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Cellular Telephone Class.

## COUNT II

### Violation of the TCPA, 47 U.S.C. § 227(b)(1)(B)
### (On behalf of Plaintiff Stone and the Landline Telephone Class, as against all Defendants)

57.     Plaintiff Stone incorporates each and every paragraph of this complaint as if fully set forth herein.

58.     Defendants and/or their agents made unsolicited telephone calls to residential landline telephone numbers belonging to Plaintiff Stone and the other members of the Landline Telephone Class without their prior express consent.

59.     Defendants and/or their agents made unsolicited telephone calls to telephone numbers belonging to Plaintiff Stone and the other members of the Landline Telephone Class using a prerecorded or artificial voice, more commonly known as a "robo-call."

60.     By making, or having or allowing to be made on their behalf, the unsolicited robo-calls utilizing an artificial or prerecorded voice to Plaintiff Stone and the other members of the Landline Telephone Class's landline telephones without prior express consent, Defendants have violated 47 U.S.C. § 227(b)(1)(B).

12

61.     Plaintiff Stone, on behalf of herself and the other members of the Landline Telephone Class, seeks an Order under section 227(b)(3)(B) awarding a minimum of $500 in damages for each of Defendants' violations of the TCPA.

62.     Further, Plaintiff Stone, on behalf of herself and the other members of the Landline Telephone Class, seeks an Order under section 227(b)(3)(A) of the TCPA enjoining Defendants' unlawful telephone calling activities described in this Complaint.

63.     By all of the above, Defendants engaged in knowing violations of the TCPA's restriction on using artificial or prerecorded voice to call Plaintiff Stone's and the other members of the Landline Telephone Class's residential landline telephones.

64.     Should the Court determine that Defendants' conduct was knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff Stone and the other members of the Landline Telephone Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Certified Classes, pray for the following relief:

1.     An award of actual and statutory damages;

2.     An injunction requiring Defendants to cease all unsolicited phone call activities, and otherwise protecting the interests of the Classes;

3.     An award of reasonable attorneys' fees and costs; and

4.     Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

13

Respectfully submitted,

| /s/ Rafey S. Balabanian | /s/ Scott Rauscher |
|---|---|
| Jay Edelson | Scott Rauscher |
| jedelson@edelson.com | scott@loevy.com |
| Rafey S. Balabanian | Michael Kanovitz |
| rbalabanian@edelson.com | mike@loevy.com |
| Eve-Lynn J. Rapp | Jonathan I. Loevy |
| erapp@edelson.com | jon@loevy.com |
| EDELSON PC | LOEVY & LOEVY |
| 350 North LaSalle Street, Suite 1300 | 312 N. May Street, Suite 100 |
| Chicago, Illinois 60654 | Chicago, Illinois 60607 |
| Tel: 312.589.6370 | Tel: 312.243.5900 |
| Fax: 312.589.6378 | Fax: 312.243.5902 |
| *Counsel for Stone, and Interim Co-Lead Class Counsel* | *Counsel for Birchmeier and Parkes, and Interim Co-Lead Class Counsel* |

|  |
|---|
| Scott D. Owens |
| LAW OFFICES OF SCOTT D. OWENS, ESQ. |
| 664 East Hallandale Beach Boulevard |
| Hallandale, Florida 33009 |
| Telephone: (954) 306-8104 |
| Email: scott@scottdowens.com |
| *Counsel for Stone* |