**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERARDO ARANDA, GRANT BIRCHMEIER, STEPEHN PARKES, and REGINA STONE, ON behalf of themselves and classes of others similarly situated,** | ) ) ) ) | |
| | ) | **Case No. 12-cv-4069** |
| **Plaintiffs,** | ) ) | **Honorable Matthew F. Kennelly** |
| **v.** | ) ) ) | |
| **CARIBBEAN CRUISE LINE, INC., ECONOMICSTRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC. AND VACATION OWNERSHIP MARKETING TOURS, INC.,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## THE BERKLEY GROUP, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant, The Berkley Group, Inc. ("Berkley"), submits this Memorandum in

Support of its Motion for Judgment on the Pleadings under Fed. R. Civ. P. ("FRCP")

12(c).

# TABLE OF CONTENTS

I.      INTRODUCTION………………………………………………………....1

II.     SUMMARY OF THE ARGUMENT……………………………………...1

III.    LEGAL STANDARD………………………………………………….…3

IV.     FACTS………………………………………………………………...…4

V.      ARGUMENT……………………………………………………………4

        A.      Berkley Is Not a Seller Under the TCPA………………………….4

        B.      *Dish Network* Liability Standards……………………………….....7

                i.      Plaintiffs Fail to Plead Direct Liability…………………..7

                ii.     Plaintiffs Fail to Plead Vicarious Liability
                      or Specific Vicarious Liability Theories………………………8

                        a.      Plaintiffs Fail to Plead Vicarious Liability……………....8

                        b.      Plaintiffs Fail to Plead Formal Agency…………………11

                        c.      Plaintiffs Fail to Plead Apparent Authority…………….14

                        d.      Plaintiffs Fail to Plead Ratification………………………15

        C.      No Joint Venture or Partnership by and Among Defendants………..18

                i.      Defendants are not Liable Under a Joint Venture Theory…….18

                ii.     Defendants are not Liable Under a Partnership Theory………21

VI.     CONCLUSION……………………………………………………………22

# TABLE OF AUTHORITIES

**Cases**

2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) ........................................................................ 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................................................... 3, 22

*Avio, Inc. v. Alfoccino, Inc.,*
   18 F. Supp. 3d 882 (E.D. Mich. 2014) ............................................................................... 15

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ............................................................................................. 16

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................................................... 3, 22

*Brooks v. Ross,*
   578 F.3d 574 (7th Cir. 2009) ................................................................................................. 3

*Buchanan-Moore v. Cnty. of Milwaukee,*
   570 F.3d 824 (7th Cir. 2009) .............................................................................................. 3, 7

*Burger v. Hartley,*
   896 F. Supp. 2d 1157 (S.D. Fla. 2012) ............................................................................... 18

*CE Design, Ltd. v. Prism Business Media, Inc.,*
   606 F.3d 443 (7th Cir. 2010) ................................................................................................. 1

*Commercial Union Ins. Co. v. Ramada Hotel Operating Co.,*
   852 F.2d 298 (7th Cir. 1988) ................................................................................................. 9

*Cunningham v. Kondaur* Capital,
   No. 3:14 CV 1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014) ..................................... 9

*Gomez v. Campbell-Ewald Co.,*
   786 F. 3d 871 (9th Cir. 2014) ................................................................................................ 7

*Harbaugh v. Greslin,*
   436 F. Supp. 2d 1315(S.D. Fla. 2006) ................................................................................ 21

*Hayes v. H.J.S.B.B. Joint Venture,*
   595 So.2d 1000 (Fla. 4th DCA 1992) ............................................................................. 18, 19

*Jackson v. Caribbean Cruise Line, Inc.,*
   No. 14 CV 2485, 2015 WL 667862 (E.D.N.Y. 2015) ........................................................... 12

Keating v. Peterson's Nelnet, LLC,
   No. 1:11 CV 1775, 2014 WL 1891369 (N.D. Ohio May 12, 2014) ...................................... 12

*Kolinek v. Walgreen Co.,*
   No. 13 C 4806, 2014 WL 518174 (N.D. Ill. 2014) ................................................................ 1

*Makaron v. GE Security Manufacturing, Inc.,*
   *et al.*, No. CV 14-1274, 2015 WL 3526253 (C.D. Ca. May 18, 2015) ................................. 16

*Mey v. Monitronics Intern., Inc.*,
  959 F.Supp.2d 927 (N.D. WV 2013) ................................................................................ 7
*NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*,
  736 F.3d 1054 (7th Cir. 2013) ................................................................................... 11, 15
*Northern Indiana Gun & Outdoor Shows v. City of South Bend*,
  163 F.3d 449 (7th Cir. 1998) ...................................................................................... 6
*Opp v. Wheaton Van Lines, Inc.*,
  231 F.3d at 1064 ................................................................................................. 11, 14
*Pisciotta v. Old Nat'l Bancorp*,
  499 F.3d 629 (7th Cir. 2007) ...................................................................................... 3
*Russell v. Thielen*,
  82 So.2d 143 (Fla. 1955) ........................................................................................... 18
*Satkar Hospitality Inc. v. Cook County Bd. of Review*,
  819 F.Supp.2d 727 (N. D. Ill. 2011) ........................................................................... 3
*Sefton v. Toyota Motor Sales U.S.A.*,
  No. 09-3787, 2010 WL 1506709 (N.D. Ill. Apr. 14, 2010) ...................................... 9
*Siding & Insulation Co. v. Alco Vending, Inc.*,
  No. 1:11 CV 01060, 2015 WL 1858935 (N.D. Ohio Apr. 22, 2015) .................... 8, 10
*Skeen v. Carnival Corp.*,
  No. 08-22618-CIV, 2009 WL 1117432 (S.D. Fla. Apr. 24, 2009) ...................... 19, 20
*Smith v. State Farm Mut. Auto. Ins. Co.*,
  No. 13-cv-2018, 2014 WL 3906923 (N.D. Ill. Aug. 11, 2014) ......................... 8, 17
*Soler v. Secondary Holdings, Inc.*,
  832 So.2d 893 (Fla. 3d DCA 2002) ........................................................................ 18
TCPA seller liability. *In the Matter of the Joint Petition Filed by Dish Network, LLC,
  et al.*, 28 FCCR 6574 (2013) .................................................................................. 1, 8
*Toney v. Quality Res., Inc.*,
  No. 13 CV 42, 2014 WL 6757978 (N.D. Ill. Dec. 1, 2014) ............... 8, 12, 13, 15, 16, 17
*Wallis v.  Card Services Int'l, Inc.*,
  No. 10-7250, 2012 WL 1866374 (N.D. Ill. May 22, 2012) ..................................... 6

**Statutes**

805 Ill. Comp. Stat. Ann. 206/106 .............................................................................. 18
Fla. Stat. Ann. § 620.8106 ............................................................................................ 18
Fla. Stat. Ann. § 620.8202 ............................................................................................ 21

**Rules**

Fed. R. Civ. P. 12(c) ........................................................................................... 1, 3, 6, 11
Fed. R. Civ. P. 8 ............................................................................................................. 3
Fed. R. Civ. P. 12(b)(6) ................................................................................................. 3

**Regulations**

29 C.F.R. § 64.1200 (f)(9) ................................................................. 5

**Other Authorities**

Restatement (Third) of Agency § 1.01 ............................................. 11
Restatement (Third) of Agency § 2.03 ............................................. 14
Restatement (Third) of Agency § 4.01 ......................................... 15, 16
Restatement (Third) of Agency § 4.03 ............................................. 16

# I. INTRODUCTION

Plaintiffs filed their Amended Consolidated Complaint ("ACC"), in part, to "conform the allegations of their Complaint to the facts adduced during discovery" and "conform their allegations to the evidence." (Doc. #284, pp. 1-2, 5). The ACC, with the benefit of three years of discovery and almost two years of FCC precedent, is the third version of a complaint attempting to articulate a basis for Berkley's alleged liability under Section 227(b) of the Telephone Consumer Protection Act ("TCPA"). This latest attempt, however, fails to plead viable claims against Berkley. Under FRCP 12(c), Berkley is entitled to a judgment in its favor on the pleadings.

# II. SUMMARY OF THE ARGUMENT

Berkley is not liable based on the FCC's articulated TCPA liability standards.[1] On May 9, 2013, one week after Plaintiffs filed the Consolidated Complaint (Doc. #102), the FCC issued a declaratory ruling regarding TCPA seller liability. *In the Matter of the Joint Petition Filed by Dish Network, LLC et al.*, 28 FCCR 6574 (2013) ("*Dish Network*"). In *Dish Network*, the FCC held that a party who physically places a phone call has direct (*i.e.*, strict) TCPA liability; however, such direct liability does not apply to any person or entity "that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* at 6583, ¶ 26.

---

[1] The FCC interpretation of the TCPA is binding on this Court. *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 518174, at *2 (N.D. Ill. 2014)(citing *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 449-50 (7th Cir. 2010)) *vacated on other grounds, Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813.

As to those who do not physically place the call, various parties in *Dish Network* argued that "on behalf of" liability subjects a non-dialing seller to liability for both Section 227(b) and Section 227(c) violations if a call is made simply to aid or benefit the seller. *Id.* at 6585, ¶ 31. The FCC rejected this position and held that, "we do not think an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section [sic] either section 227(c) or section 227(b)." *Id.* at 6593, ¶ 47. Rather, the FCC determined that "while a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common-law agency related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services." *Id.* at 6574, ¶ 1 and 6593, ¶ 48. This liability could arise under formal agency, apparent authority or ratification. *Id.* at 6584, ¶ 28.

*Dish Network* established the legal framework to be applied when a seller's goods and services are marketed by a third-party telemarketer. Under that framework, and Florida joint venture and partnership law, judgment on the pleadings in favor of Berkley is appropriate because: (a) the pleadings demonstrate that Berkley is not a seller under the TCPA and (b) Plaintiffs have not properly pled direct, vicarious, joint venture or partnership liability as to Berkley.

## III. LEGAL STANDARD

Rule 12(c) motions are analyzed under the same standard that applies to a Rule 12(b)(6) motion. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The Court takes the facts alleged as true, draws all reasonable inferences in favor of the plaintiff, and will grant the motion unless the plaintiff's allegations state a plausible claim for relief. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

Federal Rule of Civil Procedure 8 requires a plaintiff to plead "a short and plain statement" and to provide grounds for relief that are both more than conclusions and more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that offers bare bone assertions and labels cannot stand. *Id.* "A pleading that states a claim for relief must contain: ... a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a). That rule has three requirements:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Satkar Hospitality Inc. v. Cook County Bd. of Review*, 819 F.Supp.2d 727, 735-36 (N. D. Ill. 2011)(citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

3

## IV. FACTS

Plaintiffs contend that Berkley is liable under the TCPA for the telephone calls at issue in this case "[b]ecause the robo-calls were made by or on behalf of all Defendants and each Defendant individually monetarily (and knowingly) benefited from the calls…" (Doc. #289, ¶ 34, *see also*, ¶¶ 3, 21, 22, 29, 41, 42, 45 (all containing conclusory statements that all Defendants benefited from the calls)). Plaintiffs support this conclusion by alleging: (1) call recipients were offered "vacation packages [free cruises] in exchange for taking a political or public opinion survey" (*Id.*, ¶¶ 1, 46); (2) once transferred, the call recipient would be "connected to a live Caribbean Cruise Line[2] sales agent, who would attempt to sell them an upgraded vacation package" (*Id.*, ¶ 24); and (3) Berkley benefited from these calls because the free cruise passengers and the upgraded vacation package purchasers would be required to attend a Berkley timeshare presentation. (*Id.*, ¶¶ 25, 28).

## V. ARGUMENT

### A.     Berkley Is Not a Seller Under the TCPA

The most fundamental issue in any TCPA case is whether a defendant's goods and services were marketed or advertised during the call that is the subject of a TCPA claim. In other words, the threshold issue for the Court is whether Berkley is a *seller* under *Dish Network*.

---

[2] Caribbean Cruise Line is hereafter referred to as "CCL".

Simply put, Berkley has no TCPA liability because it is not a seller in this case. "While a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common-law agency related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services." *Dish Network* at 6574, ¶ 1 and 6593, ¶ 48 (emphasis added). Put another way, the FCC saw "no reason that a seller should not be liable under those provisions [227(c) and 227(b)] for calls made by a third-party marketer when it has authorized that telemarketer to market its goods and services." *Id.* at 6593, ¶ 47 (emphasis added). This requirement is consistent with FCC regulations governing the TCPA: "[t]he term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." 29 C.F.R. § 64.1200 (f)(9) (emphasis added). Based on the FCC ruling and this definition, Berkley is a seller only if its timeshares were marketed or advertised during the calls.

The ACC fails to allege that the calls were initiated to market or advertise Berkley's timeshares, to promote the benefits of Berkley timeshare ownership, to disclose the location of Berkley timeshare units, to give timeshare purchase prices or to provide other purchase terms and conditions. To the contrary, the ACC affirmatively states that the call recipient would be "connected to a live Caribbean Cruise Line sales

agent, who would attempt to sell them an upgraded vacation package." (Doc. #289, ¶ 24; *see also*, *id*., ¶ 44(a) (alleging that CCL books 1000 cruise passengers a week using telemarketing.)) As provided in the script used for these calls, the vacation packages sold for either $567 or $837. [3] (Doc. # 301-1 at pp. 7-9). Based on the ACC's allegations, CCL is the alleged seller of the goods and services marketed and advertised during the call, not Berkley.

Moreover, liability for TCPA violations is downstream of the seller, which in this case is CCL. CCL sold the vacation package to the customer and then, according to the ACC, sold those leads to Berkley for VOMT. (Doc. #284, ¶ 31).[4] There can be no liability for everyone upstream of the seller not mentioned during the call. That would lead to limitless exposure. For example, liability would attach to the rental car companies who leased cars to those vacationers or the hotels in which the customers stayed while on vacation. On this point, the FCC rejected the "benefit of seller" theory of liability and

---

[3] "Rule 12(c) permits a judgment based on the pleadings alone" and "the pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Northern Indiana Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998)(holding that the district court properly considered documents attached to plaintiff's complaint and defendant's answer in making its ruling under Rule 12(c)). Moreover, the ACC mischaracterizes the content of the calls in that it states Berkley was mentioned by name during the calls. (Doc. #289, ¶¶ 25, 28). When the document contradicts the allegations in the plaintiff's complaint, the document trumps the plaintiff's allegations. *Wallis v. Card Services Int'l, Inc.*, No. 10-7250, 2012 WL 1866374, at *7 (N.D. Ill. May 22, 2012).

[4] The ACC alleges that CCL and VOMT are owned and operated by the same people and work out of the same office. (Doc. #284, ¶¶ 13, 18, 29). VOMT has no employees, and CCL carries out VOMT's obligations under the contract with Berkley. (*Id*. at ¶ 31). Under the ACC, VOMT is not upstream of CCL; they are one and the same.

created an overarching limiting principle to the direct liability/vicarious liability analysis: TCPA liability only attaches to sellers. *See accord, Dish Network* at 6583, ¶ 45 (ruling that manufacturer of appliances is not a seller if calls placed to sell the appliances were made by "big box" stores "to the extent that such store is selling on its own account"). [5]

## B.    *Dish Network* Liability Standards

### i.    Plaintiffs Fail to Plead Direct Liability

If the Court finds the ACC alleges that Berkley's goods and services were advertised or marketed on the calls and that Berkley is a seller under the TCPA, judgment on the pleadings in favor of Berkley is still appropriate. The ACC only alleges that Berkley benefited from the calls; it fails to plead any *Dish Network* theory of liability.

---

[5] *Gomez v. Campbell-Ewald Co.*, 786 F. 3d 871 (9th Cir. 2014), *Mey v. Monitronics Intern., Inc.* 959 F.Supp.2d 927 (N.D. WV 2013), and *Makaron v. GE Security Manufacturing, Inc. et al.*, No. CV 14-1274, 2015 WL 3526253 (C.D. Ca. May 18, 2015) are in accord with these arguments. In *Gomez*, the Navy hired Campbell-Ewald to develop and execute a specific recruiting campaign. Campbell-Ewald hired Mindmatics to transmit the messages. Campbell-Ewald argued that it could not be liable for the alleged TCPA violations because it was not the seller; the Navy was being advertised during the call, not Campbell-Ewald. Campbell-Ewald argued that only the seller and the dialer, no other party, could be liable under the TCPA. In rejecting that argument, the court found that such a construction would contradict the ordinary rules of vicarious liability and it would make little sense to only hold the seller liable but not the advertising professional. *Id.* at 879. Likewise, in *Mey* and *Makaron*, the defendants agued they were not sellers but manufacturers and thus not liable. In those two cases, unlike this case, the manufacturers' goods, GE security systems, were expressly mentioned during the call. Pls.' 2nd Am. Mast. Cons. Compl. (Doc. # 355) at ¶ 78 *Mey v. Monitronics Intern., Inc.* 959 F. Supp. 2d 927 (N.D. WV 2013)(No. 5:11 CV 90); *Makaron v. GE Security Manufacturing, Inc. et al.*, 2015 WL 3526253, at *8, n. 7).

Under *Dish Network,* the party who initiates, that is, physically places the call is directly liable for TCPA violations. *Dish Network*, 28 FCCR at 6582, ¶ 24, 6583, ¶ 26; *Smith v. State Farm Mut. Auto. Ins. Co.,* No. 13-cv-2018, 2014 WL 3906923, at *3 (N.D. Ill. Aug. 11, 2014). To assert that Berkley has direct liability, there must be a short and plain statement that Berkley placed the call. The ACC contains no such allegations against Berkley. Rather, it contends that an organization claiming to be Political Opinions of America ("POA") purportedly conducted the calls and surveys in question. (Doc. #289, ¶ 1; *see also id.* at ¶ 44(b) ("hundreds of complaints appear online related to receiving unwanted robo-calls from POA").

### ii.  Plaintiffs Fail to Plead Vicarious Liability or Specific Vicarious Liability Theories

#### a.  Plaintiffs Fail to Plead Vicarious Liability

Without the allegations of direct liability, Plaintiffs must plead vicarious liability under federal common-law agency principles. *Dish Network* at 6584, ¶ 28. Plaintiffs have not done that here, and this failure warrants a judgment on the pleadings in favor of Berkley. *See Siding & Insulation Co. v. Alco Vending, Inc.,* No. 1:11 CV 01060, 2015 WL 1858935 (N.D. Ohio Apr. 22, 2015)(granting summary judgment in TCPA case because the plaintiff failed to plead vicarious liability in complaint); *Toney v. Quality Res., Inc.,* No. 13 CV 42, 2014 WL 6757978 (N.D. Ill. Dec. 1, 2014)(TCPA case dismissing the vicarious liability theories of apparent authority and ratification because they were not properly pled); *Smith v. State Farm Mutual Automobile Insurance Company,* 30 F. Supp. 3d

765 (N.D. Ill. 2014)(granting 12(b)(6) motion in TCPA case in favor of Nationwide and Farmers because the complaint failed to properly allege facts supporting formal agency, apparent authority or ratification theories of vicarious liability); *Cunningham v. Kondaur Capital*, No. 3:14 CV 1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014); *adopted by* No. 3:14 CV 1574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015)(court granted 12(b)(6) motion in TCPA case because allegations in complaint were based on unsupported speculation and insufficient facts to support vicarious liability claims); *See also Commercial Union Ins. Co. v. Ramada Hotel Operating Co.*, 852 F.2d 298, 303, n.5 (7th Cir. 1988)(trial court ordered on remand to consider direct liability only where there was no indication of "any theory of vicarious liability having actually been pled"); *Sefton v. Toyota Motor Sales U.S.A.*, No. 09-3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010)("pleading the existence of an agency relationship requires more than a general statement that such a relationship exists" and complaint must contain "allegations concerning an actual agency relationship beyond purely conclusory statements").

Here, Plaintiffs simply alleged that Berkley has TCPA liability because it benefited from the calls, which is insufficient under *Dish Network*. (Doc. #289, ¶ 34, *see also*, ¶¶ 3, 21, 22, 29, 41, 42, 45 (all containing conclusory statements that all defendants benefited from the calls). The ACC fails to allege that an agency relationship existed between Berkley and the party that physically placed the call, much less factual detail supporting such a relationship. There are no allegations that Berkley had any

relationship, or any other link, with the ESG Defendants or the dialer of the calls. Plaintiffs apparently attempt to get around this requirement by pleading that the calls were "made by or on behalf" of Defendants. *See, e.g.*, Doc. #289 at ¶¶ 21-22 ("Defendants placed (or directed or allowed to be placed for their own benefit and on their behalf)); *Id.* at ¶ 34 ("robo-calls were being made either by them [Defendants] directly or on their behalf"); *Id.* at ¶¶ 9, 10, 11, 12, 36, 37, 38, 39, 45 (calls were made "by or on behalf of Defendants"); *Id.* at ¶ 40 (Defendants "knowingly calling consumers telephones, or allowing other to do so on their behalf"); and *Id.* at ¶¶ 52, 60 ("by making or having or allowing to be made on their behalf the unsolicited robo-calls . . . Defendants violated [the TCPA]"). Such allegations are insufficient to plead vicarious liability.

A similar complaint was considered in the *Alco* case. There, the plaintiff contended that the defendant was strictly liable for faxes sent by an unnamed defendant, B2B. In the alternative, the plaintiff asserted that it had properly pled vicarious liability because it had alleged that (1) the faxes were sent "by or on behalf of Defendant" and (2) "Defendant knew or should have known" the faxes about Defendant's goods and services were sent without permission. *Alco*, 2015 WL 1858935 at *7, n. 3. The court rejected these arguments and held that using language alluding to the fact that another entity other than the defendant physically sent the faxes did not amount to a sufficient pleading of vicarious liability. *Id.*

The same analysis applies here. The ACC only alleges the calls were made "on behalf of" Berkley and nothing more. It pleads no other allegations that support the vicarious liability theory. The ACC is insufficient under FRCP 12(c) for this reason alone. *Bank v. Philips Electronics North America Corp.*, 2015 WL 1650926 at *2 (E.D.N.Y. April 14, 2015)(granting motion to dismiss because allegations that the calls were "made by, or on behalf of, or with the authorization of" a defendant were too conclusory to state a claim against the defendant).

### b.    Plaintiffs Fail to Plead Formal Agency

A further analysis of the *Dish Network* vicarious liability theories demonstrates the ACC's failure to plead these claims. Formal agency is based on a "[f]iduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006).[6] "An essential element of agency is the principal's right to control the agent's actions" and "power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." Restatement (Third) of Agency § 1.01, cmt. f(1) (2006).

---

[6] The federal common law of agency is in accord with the Restatement. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000); *NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1058 (7th Cir. 2013).

The ACC fails to assert that Berkley had control over the calls or the dialer who placed them. Nor are there any allegations that Berkley controlled CCL, the seller of the goods and services offered on the call. There are no allegations that Berkley knew of the calls, that Berkley participated in the calls, that Berkley instructed anyone as to the content of the calls, that Berkley had any input in the survey call concept or that Berkley directed any Defendant regarding the calls. Without these allegations, the ACC cannot survive this 12(c) Motion. *See, e.g., Jackson v. Caribbean Cruise Line, Inc.*, No. 14 CV 2485, 2015 WL 667862 (E.D.N.Y. 2015)(court granted 12(b)(6) motion in TCPA case because vicarious liability not pled where complaint fails to allege ability to give "interim instructions" or any non-conclusory allegation of "direction" or "control"); *Bank v. Philips Electronics North America Corp.*, 2015 WL 1650926 *3 (E.D.N.Y. April 14, 2015)(granting motion to dismiss in TCPA case for failure to allege facts that establish an agency relationship between defendant and dealers or any control by defendant over the dealers); *Keating v. Peterson's Nelnet, LLC,* No. 1:11 CV 1775, 2014 WL 1891369 (N.D. Ohio May 12, 2014)(summary judgment for seller because evidence showed the seller did not control or have the right to control the dialer, nor did the seller provide any guidance, authorization or other directives to dialer).

The *Toney* case illustrates the activities that must be pled to establish formal agency liability. There, the plaintiff ordered children's slippers online. *Toney*, 2014 WL 6757978, at *1. The plaintiff later received a call purportedly to verify her order. *Id*.

During that call, an attempt was made to sell the plaintiff a "Budget Savers" membership sold by one of the defendants in the case. *Id*.

To show liability for the seller defendant in *Toney*, the plaintiff alleged that the seller defendant and telemarketer defendant entered into a marketing contract authorizing the calls at issue in order to generate leads for the seller defendant. The complaint further alleged that the seller controlled the manner and means of the telemarketing, that the telemarketer could enter into contracts on the seller's behalf, that the seller participated in developing the sales pitch script, that the seller required consensual recording of all calls made on their behalf, that the seller required the telemarketer to provide them with a toll-free phone number, and that the seller imposed strict guidelines about the telemarketer's handling of credit card numbers and customers' acceptance of the seller's terms and conditions. *Id*. at *10. Based on these alleged facts, the court found that the plaintiff had pled a level of control by the seller over the telemarketer "to make the existence of the agency relationship plausible." *Id*. at *11.

The ACC is devoid of this type of factual detail to demonstrate that Berkley had control over or was able to give interim instruction to the ESG Defendants, the dialer, or CCL. In fact, the word "instruct" is not in the ACC and "control" is only used twice, both without reference to Berkley. *See* Doc #289 at ¶¶ 33, 43. Here, after completing

their discovery, Plaintiffs have pled no facts that support Berkley's TCPA liability under a formal agency theory.

### c. Plaintiffs Fail to Plead Apparent Authority

The ACC is similarly deficient with regard to apparent authority. Apparent authority holds a principal accountable for the results of the third-party's belief about an actor's authority to the act as an agent when the belief is reasonable and is traceable to a manifestation of the principal. Restatement (Third) of Agency § 2.03 cmt. c (2006). To plead apparent authority, Plaintiffs must allege that they reasonably believed that CCL called them as Berkley's agent and that their belief is traceable to a manifestation of CCL's authority from Berkley. *See id.*

The ACC does not allege that Plaintiffs believed CCL or the dialer were Berkley's agents, that any of the Plaintiffs have had any contact with or communicated with Berkley employees, or that Berkley took some act or made some statement to Plaintiffs that caused Plaintiffs to believe CCL or the dialer were Berkley's agent. It is well-established that apparent authority must derive from the statements or actions of the alleged principal, not the alleged agent. *See Opp*, 231 F.3d at 1064 ("[O]nly the words or conduct of the alleged principal, not the alleged agent, establish the [actual or apparent] authority of an agent."); Restatement (Third) of Agency § 2.03 cmt. c (2006) ("An agent's success in misleading the third-party as to the existence of actual authority does not itself make the principal accountable.").

In this matter only Plaintiff Gerardo Aranda ("Aranda") communicated with a CCL operator. The ACC provides no detail regarding the content of that call. (Doc. #289, ¶ 36). Aranda does not allege that Berkley was mentioned during the call or that he communicated with a Berkley representative. Aranda's failure to allege that he had any direct or indirect communications with Berkley is fatal to his pleading of an apparent authority claim. *See, e.g., Toney,* 2014 WL 6757978, at *11 (12(b)(6) motion granted dismissing apparent authority claim because the plaintiff did not communicate directly or indirectly with the seller); *Avio, Inc. v. Alfoccino, Inc.,* 18 F. Supp. 3d 882, 895 (E.D. Mich. 2014)(granting defendant's motion for summary judgment and finding no apparent authority because there "are no record facts establishing that Plaintiff believed [the sender] was acting on Defendants' behalf").[7]

### d.     Plaintiffs Fail to Plead Ratification

The final *Dish Network* vicarious liability theory not properly pled is ratification. Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority. Restatement (Third) of Agency

---

[7] The ACC contends the hook for Berkley's liability for the calls is the fact that the free cruise passengers and the upgraded vacation package purchasers would be required to attend a "Berkley" timeshare presentation. (Doc. #289, ¶¶ 25, 28). However, Berkley was not mentioned by name during the call. (Doc. #301, ¶¶ 25, 28). The script only references "touring one of our developer's offsite vacation-ownership resorts." (Doc. #301-1 at p. 7). With regard to CCL's attempted upsell, the timeshare requirement was not mentioned to or required for Illinois (3 of the 4 Plaintiffs) and California residents. *Id.* Further, there is nothing in the script supporting the notion that call recipients were told a timeshare tour, much less a Berkley timeshare tour, was required in exchange for the free cruise. This refutes even the most liberal reading of the ACC in the light most favorable to Plaintiffs.

§ 4.01(1) (2006). A principal, however, "is not bound by a ratification without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Id.*, § 4.01 cmt. b. "[K]nowing acceptance of the benefits of a transaction ratifies the act of entering into the transaction." *Id.*, § 4.01 cmt. d (2006).

First, the ratification theory must fail because the principal-agent relationship is a prerequisite to finding ratification. Restatement (Third) of Agency § 4.03, cmt. b (when actor is not an agent and does not purport to be an agent, ratification is not a basis of liability for the actor's conduct); *Batzel v. Smith,* 333 F.3d 1018, 1036 (9th Cir. 2003) (principal agent relationship is a requisite for ratification); *Makaron v. GE Security Manufacturing, Inc. et al.,* No. CV 14-1274, 2015 WL 3526253, at *10 (C.D. Ca. May 18, 2015)(no finding of ratification because no evidence to support principal-agent relationship existed). As noted above, Plaintiffs failed to plead a principal-agent relationship between Berkley and the ESG Defendants, Berkley and the dialer, or Berkley and CCL.

Second, although the ACC is replete with conclusory allegations that Defendants benefited from the calls, the ACC does not explain how Berkley benefited from the calls or if it benefited from a call to one of the Plaintiffs. The *Toney* case demonstrates how this pleading deficiency is fatal to Plaintiffs' ACC.

In *Toney*, the plaintiff alleged that the seller ratified the telemarketer's misconduct by knowingly accepting the benefits from tens of thousands of sales while knowing that the telemarketer was using automated dialing to obtain those customers. *Toney*, 2014 WL 6757978, at *12. The plaintiff also alleged that the seller knew of a host of complaints about the nature of the calls, but the seller continued to accept the benefits of the calls after those complaints. *Id.* Based on that, the plaintiff argued that the defendants were liable under the ratification theory of liability.

In finding that such a complaint failed to plead a ratification cause of action, the *Toney* court was persuaded by the fact that the plaintiff did not allege that the seller accepted any benefits that stemmed from a call to the plaintiff. In fact, the court found the plaintiff failed to allege that she did any business with the seller because of the calls. These facts were determinative in concluding that ratification had not been pled. *Toney*, 2014 WL 6757978, at *12; s*ee also, Smith v. State Farm Mut. Auto Ins. Co.,* 30 F. Supp. 3d 765, 777-80 (N.D. Ill. Aug. 11, 2014)(ratification theory dismissed because the plaintiffs failed to allege that they did business with Farmers because of the call and they failed to plead that Nationwide obtained any benefit from the call).

Here, Plaintiffs have not plead any factual detail supporting a ratification theory. They have not pled that they conducted business with Berkley or that Berkley benefited from any calls made to the Plaintiffs. The ACC simply does not plead how Berkley ratified the act of any Defendants.

**C.    No Joint Venture or Partnership by and among Defendants**

**i.    Defendants are not Liable Under a Joint Venture Theory**

The ACC asserts for the first time in this case that Berkley has partnership and joint venture liability for the actions of CCL and VOMT. The alleged joint venture is with "respect to the sale of Berkley timeshares and vacation packages." (Doc. #289, ¶ 32). To plead there is such a joint venture, Plaintiffs must allege: (i) a community of interest in the performance of a common purpose; (ii) joint control or right of control; (iii) a joint proprietary interest in the subject matter; (iv) a right to share in the profits; and (v) a duty to share in any losses which may be sustained. *Burger v. Hartley*, 896 F. Supp. 2d 1157, 1168 (S.D. Fla. 2012) (citations omitted).[8] When any element is unsatisfied under this analysis, Florida courts have declined to find that a joint venture exists. *Id*.

The ACC fails to allege a joint venture on two fronts. First, Plaintiffs fail to allege joint control or right of control. The ACC contains no allegations that VOMT and CCL

---

[8] Berkley contends that Florida law must apply. Both Florida and Illinois have adopted the Uniform Partnership Act, which provides the following choice of law clause: (1) Except as otherwise provided in subsection (2), the law of the jurisdiction in which a partnership has its chief executive office governs relations among partners and between the partners and a partnership. Fla. Stat. Ann. § 620.8106; 805 Ill. Comp. Stat. Ann. 206/106. Florida law considers joint ventures to be akin to partnerships, and thereby "governed by the principles controlling partnership law." *Soler v. Secondary Holdings, Inc.*, 832 So.2d 893, 897 (Fla. 3d DCA 2002) (citing *Russell v. Thielen*, 82 So.2d 143, 145 (Fla. 1955). *See also generally Hayes v. H.J.S.B.B. Joint Venture*, 595 So.2d 1000 (Fla. 4th DCA 1992). The ACC alleges that Berkley, VOMT and CCL are Florida corporations with their principal places of business in Florida. (Doc. #289, ¶¶ 13, 17, 18). These Florida corporations form the alleged partnership or joint venture.

have control or joint control over Berkley's timeshare sales operations or properties. Likewise, there are no allegations that Berkley had control over VOMT or CCL regarding the calls, CCL's or VOMT's marketing efforts or CCL's cruise operations.

Second, the ACC does not allege that Berkley, VOMT and CCL are joint owners of the assets used in the joint venture, a necessary showing under the "joint proprietary interest" element. There are no allegations that Berkley, VOMT and CCL jointly owned (i) the assets to effectuate the phone calls in the marketing campaign or any other marketing effort, (ii) the upgraded cruise vacation packages sold or the cruise ship or (iii) the Berkley timeshare properties or vacation packages. A complaint alleging joint venture liability must plead such joint ownership.

*Skeen v. Carnival Corp.*, No. 08-22618-CIV, 2009 WL 1117432 (S.D. Fla. Apr. 24, 2009) demonstrates how the ACC fails with respect to the joint ownership allegations.[9] In *Skeen*, the plaintiff attempted to hold Carnival, a cruise ship operator, liable under a joint venture theory for injuries she sustained while on a "Caves and Caverns" excursion booked and purchased through Carnival. The excursion took place away from the ship and was operated by Total Gusto, a third-party defendant. The plaintiff alleged that each party contributed assets to the joint venture because they owned assets individually that were used to conduct the business. *Id.* at *4.

---

[9] Although the *Skeen* court analyzed the joint venture claim under federal common law because of an admiralty issue, it opined that the case would have been dismissed under Florida law as well because the plaintiff failed to plead the common element of joint proprietary interest. *Id.* at fn. 3.

In granting a 12(b)(6) motion to dismiss for failure to allege a joint proprietary interest, the Court found,

> [i]n the case before the court, Carnival can book tour excursions, yet lack an ownership interest in assets used for conducting excursions. Further, Total Gusto can provide excursions to Carnival passengers, yet not have an ownership interest in Carnival's sales and booking systems. Thus, Plaintiff has not established that Carnival and Total Gusto jointly own resources for conducting excursion tours.
> *Id.*

The same is true here. The ACC, read in the light most favorable to Plaintiffs, asserts that CCL and/or VOMT were booking tours for Berkley. However, the ACC does not assert that the alleged joint venture jointly owned the assets being sold – Berkley timeshares and vacation packages. Further, no ACC allegation asserts that CCL, VOMT and Berkley jointly owned and operated the cruise ship or have any joint interest in the upgraded vacation packages sold to the call recipients who took the survey. Plaintiffs do not allege that CCL, VOMT and Berkley jointly owned the infrastructure serving the marketing efforts, which must include the ESG Defendants. Without these types of allegations, Plaintiffs have simply alleged an economic relationship no more unique than that of a vendor, supplier or contractor, all of which are not automatically liable for the acts of the other under a joint venture theory. Because there are no allegations of joint ownership or control, Berkley is entitled to a judgment on the pleadings.

### ii. Defendants are not Liable Under a Partnership Theory

Under Florida partnership law, "the attribute of co-ownership distinguishes a partnership from a mere agency relationship. A business is a series of acts directed toward an end. Ownership involves the power of ultimate control. To state that partners are co-owners of a business is to state that they each have the power of ultimate control." Fla. Stat. Ann. § 620.8202 cmt. 1; *see also Harbaugh v. Greslin*, 436 F. Supp. 2d 1315, 1321 (S.D. Fla. 2006) *aff'd*, 218 F. App'x 950 (11th Cir. 2007).

Here again, Plaintiffs fail to plead a claim under a partnership theory. Similar to the joint venture analysis above, the ACC does not allege co-ownership and control. Plaintiffs do not allege Berkley controlled CCL or VOMT in any fashion, much less how Berkley controlled CCL's and VOMT's conduct in their marketing activities. Rather, the ACC contains conclusory allegations of shared mutual benefits and contributions of labor and capital "to the relationship" without describing the relationship other than in conclusory terms. Plaintiffs further allege that profits and losses are shared out of the "marketing efforts" without elaborating on those efforts. If Plaintiffs are referencing the marketing efforts of the calls, as explained above, there are no factual allegations supporting that Berkley controlled, directed or instructed VOMT or CCL in those efforts. Moreover, sharing in the profits and losses in marketing efforts is a different allegation than sharing in the profits and losses of "the joint venture and/or partnership

with respect to the sale of Berkley's timeshares and vacation packages." (Doc. #289, ¶ 32).

By injecting the joint venture and/or partnership theory in the ACC for the first time, after over three years of litigation, Plaintiffs are attempting to find another way to create TCPA liability for Berkley because it allegedly benefited from the calls. However, as explained above, assessing liability against Berkley only because it allegedly benefitted from the calls was rejected by *Dish Network*. Likewise, under Florida joint venture and partnership laws, Plaintiffs' ACC must include allegations showing more than just an allegation that Berkley benefited from the calls. Without doing so, the joint venture and partnership allegations remain nothing more than "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))(internal citations omitted).

## VI. CONCLUSION

For the forgoing reasons, Defendant The Berkley Group, Inc.'s Motion for Judgment on the Pleadings should be granted in its entirety.

DATED this the 12th day of June, 2015.

Respectfully submitted,

THE BERKLEY GROUP, INC.


By: /s/Brian P. O'Meara
        M. Peebles Harrison (*Pro Hac Vice*)
        700 Blue Jay Street, Suite 1
        Post Office Box 405
        Kill Devil Hills, North Carolina 27948
        Telephone: (252) 480-1414
        Facsimile: (252) 480-1765
        Email: peebles@outerbankslaw.com


        Brian P. O'Meara
        Forde Law Offices, LLP
        111 West Washington Street
        Suite 1100
        Chicago IL 60602
        Telephone: (312) 465-4780
        Facsimile: (312) 641-1288
        Email: bomeara@fordellp.com

        *Attorneys for The Berkley Group, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that the foregoing THE BERKLEY GROUP, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS was electronically filed with the Clerk of Court by using the CM/ECF system, which will provide copies to all counsel of record registered to receive CM/ECF notification on this 12th day of June 2015.

/s/Brian P. O'Meara