IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and a class of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC.,<br><br>*Defendants*. | Case No. 1:12-cv-04069<br><br><br>Honorable Matthew F. Kennelly |

**PLAINTIFFS' AND THE CLASSES'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** | 1 |
| **II.** | **STATEMENT OF FACTS** | 2 |
| | A. The Defendants' Relationship and the Origin of the Robocall Campaign | 2 |
| | B. The Illegal Telemarking Campaign | 4 |
| **III.** | **ARGUMENT** | 5 |
| | A. Summary Judgment Standard | 5 |
| | B. The Robocalls Violated The TCPA as to Both Classes | 6 |
| | C. There is No Evidence Showing Consent or Any Other Potential Exemption | 7 |
| | D. A Jury Must Decide Berkley's, CCL's, and VOMT's, Liability for the Robocalls Under Vicarious Liability Principles | 10 |
| **IV.** | **CONCLUSION** | 12 |

# TABLE OF AUTHORITIES

**Cases**

*Addison Automatics, Inc. v. RTC Grp., Inc.*, No. 12 C 9869, 2013 WL 3771423
 (N.D. Ill. July 16, 2013) ..................................................................................................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................................5

*Bank v. Caribbean Cruise Lines*, No. 12-cv-00584, Dkt. 49
 (E.D.N.Y. Aug. 26, 2013) ..................................................................................................9

*Cabrera v. Jakabovitz*, 24 F.3d 3722d Cir. 1994) ..........................................................................11

*Capitol Records, Inc. v. Progress Record Distrib., Inc.*, 106 F.R.D. 25 (N.D. Ill. 1985) ......................6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................5

*Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147 (N.D. Ill. 2014) ................................................. …..7

*Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742 (7th Cir. 1998) ..........................................11

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012) ........................................................9

*Gondeck v. A Clear Title & Escrow Exch., LLC*, 47 F. Supp. 3d 729 (N.D. Ill. 2014) ..............11

*In re Richard Gilmore d/b/a Democratic Dialing* (FCC File No. EB-TCD-12-00004943) ..............8

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
 18 FCC Rcd. 14014, 2003 WL 21517853 (F.C.C. July 2, 2003) ..............................9, 10

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
 27 F.C.C. Rcd. 1830 (2012) ..............................................................................................8

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
 30 F.C.C. Rcd. 7967 (2015) ..........................................................................................6, 7

*In the Matter of the Jt. Pet. Filed by Dish Network, LLC, Declaratory Rul. Concerning the
 Tel. Consumer Protec. Act (Tcpa) R.*, 28 F.C.C. Rcd. 6574 (F.C.C. 2013) ......................10

*Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 518174 (N.D. Ill. Feb. 10, 2014) ......................7

*Loop Paper Recycling, Inc. v. JC Horizon, Ltd.*, No. 08-cv-7364, 2012 WL 266312,
 (N.D. Ill. Jan. 23, 2012) ....................................................................................................6

*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012) ..................................................................6

*Modrowski v. Pigatto*, 712 F.3d 1166 (7th Cir. 2013) .................................................................5, 8

*Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060 (7th Cir. 2000) ..................................................11

*Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 802 F.2d 963 (7th Cir. 1986) ...............11

*Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996 (N.D. Ill. 2014)....................................................6, 7

*Vance v. Bureau of Collection Recovery LLC*, No. 10-CV-06324, 2011 WL 881550
  (N.D. Ill. Mar. 11, 2011) ..............................................................................................6

*Worley v. Mun. Collections of Am., Inc.*, No. 14 C 2418, 2015 WL 890878
  (N.D. Ill. Feb. 27, 2015) ...............................................................................................6

## Rules and Statutes

47 C.F.R. 64.1200.................................................................................................................8, 9

47 U.S.C 227 .........................................................................................................................*passim*

Fed. R. Civ. P. 56 .................................................................................................................1, 5

## Other

3 C.J.S. Agency § 547 (1973) ....................................................................................................11

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 56.1, Plaintiffs Grant Birchmeier, Stephen Parkes, Regina Stone, and Gerardo Aranda (collectively "Plaintiffs") respectfully move for partial summary judgment and request that this Court hold that the calls made to Plaintiffs and the certified Classes violated the Telephone Consumer Protection Act, 47 U.S.C 227, *et seq.* (the "TCPA").

## I. INTRODUCTION

This case is about widespread TCPA violations in connection with a highly successful robocall campaign designed to sell Defendants' timeshares and other vacation products. The year-long unsolicited robocall campaign involved millions of prerecorded survey calls made to Plaintiffs and the Classes that offered a free cruise in exchange for taking a purported political and/or public opinion survey. The undisputed facts confirm what Plaintiffs have alleged all along: that Defendants Caribbean Cruise Line, Inc. ("CCL") and Vacation Ownership Marketing Tours, Inc. ("VOMT") worked closely with Defendants Economic Strategy Group, Economic Strategy Group, Inc., Economic Strategy LLC (together "ESG") and ESG's associates to develop a "nonpermission based telemarketing" campaign involving prerecorded political surveys; that this campaign was designed to bring them consumers to whom they could pitch their vacation packages and sell Defendant The Berkley Group, Inc.'s ("Berkley") timeshares; and that all Defendants gladly accepted the resulting benefits.

The undisputed facts show that the millions of calls made in an effort to sell Defendants' vacation packages and timeshares violated the TCPA because they were prerecorded (i.e. "robocalls") calls made to the cellular telephones and/or residential telephone lines of Plaintiffs and the Classes. In addition, there are no facts to support the affirmative defenses that Plaintiffs anticipate Defendants will raise (relating to the consent of the called party and the purported political nature of the calls). Rather, the undisputed facts show that (i) Defendants did not have—or

1

even attempt to obtain—the prior express consent of the Plaintiffs or any of the other call recipients, and that (ii) the calls are not exempt from the TCPA merely because they included a political survey, given their clear commercial purpose. As such, Plaintiffs and the Classes are entitled to partial summary judgment on the issue of whether the calls violated the TCPA.

In terms of which Defendants can be held liable for the calls, the FCC has said that the party who actually dials the calls can be held directly liable, while other responsible parties can be held vicariously liable under federal common law agency principles. Here, ESG[1] and its associates actually made the calls, and Plaintiffs and the Classes seek to hold Berkley, CCL, and VOMT vicariously liable for them. That said, despite the substantial weight of the evidence that exists against Berkley, CCL, and VOMT Plaintiffs are not moving for summary judgment on the issue of vicarious liability because whether an agency relationship exists so as to establish vicarious liability is a question of fact for the jury. Thus, Plaintiffs do not now move for summary judgment on that issue. Rather, Plaintiffs request that the Court enter partial summary judgment only with respect to the underlying TCPA violations at this time, which will simplify and streamline the issues presented at trial.

## II. STATEMENT OF FACTS

Because the facts relating to the Defendants' relationship with each other, as well as the facts relating to the robocall campaign provide some necessary context to the issues for which Plaintiffs' seek partial summary judgment (as well as for the explanation of what issues remain for trial), they are set forth below.

### A. The Defendants' Relationship and the Origin of the Robocall Campaign.

Berkley is a Florida "timeshare sales and marketing company" that sells timeshare interests for its affiliated properties in Florida, Virginia, Massachusetts, and Nevada. (SOF ¶ 4.) CCL is

---

[1] Despite having been served with the original complaint, ESG has failed to appear as a defendant in this action for years.

likewise a Florida company that "markets and sells vacation packages" to consumers, including by securing potential buyers for Berkley's Florida timeshare properties. (SOF ¶ 6.)

Essentially, VOMT existed only on paper, and merely as a shell company that CCL used to pass all of its sales leads directly to Berkley. (SOF ¶¶ 7-10.) In fact, CCL was founded and is operated by Daniel Lambert and James Verrillo, who also founded and operated VOMT. (SOF ¶ 8.)

Berkley has a deep relationship with CCL/VOMT, having been founded by Dan Lambert's father and having done business with Dan Lambert and James Verrillo for years. (SOF ¶ 11.) In addition, each entity has maintained a regular and physical presence promoting their businesses on each others' properties. (SOF ¶ 14.)

CCL found potential buyers, or "sales leads," for Berkley properties through an exclusive contract with VOMT, under which CCL provided all of its sales leads for timeshare properties to VOMT. (SOF ¶¶ 20-22.) VOMT, in turn, had an exclusive contract with Berkley, whereby VOMT provided all of its sales leads for timeshare properties to Berkley. (*Id.*)

Around August 2011, CCL decided to generate sales leads for Berkley and VOMT by entering into a contract with ESG, a now-defunct political action committee that was at one time registered with the Federal Election Commission, and which operated through its President and sole employee, Jacob DeJongh. (SOF ¶¶ 19, 25.)

The below chart demonstrates the contractual relationships between each of the Defendants:



B.      **The Illegal Telemarking Campaign.**

CCL and ESG documented how the robocall campaign was to work. Namely, CCL and ESG signed contracts for ESG to "solicit survey takers by transmitting or causing to be transmitted prerecorded survey messages using an autodialer." (SOF ¶ 25.) The calls were to include offers for a "complimentary" three day/two night cruise certificate, which ultimately required the survey taker to pay additional costs prior to departure and once aboard the ship. (SOF ¶ 32.) And that is exactly how the campaign worked, with each call being made using an autodialer and with a survey delivered by a prerecorded voice. (SOF ¶¶ 29-32.) At the end of each robocall, the call recipient had the option of being transferred to a live CCL sales representative, at which point the call recipient received a materially identical pitch for an upgraded vacation package that included a mandatory presentation of Berkley's timeshare properties. (SOF ¶¶ 33-36.) CCL paid ESG and its associates approximately $2 for each survey call that was transferred to a CCL sales agent for more than 30 seconds (which resulted in payments of approximately $4 million from CCL to ESG and its

associates), and that money was used to pay for the costs associated with arranging and executing the robocall campaign. (SOF ¶ 26.)

CCL, and by implication VOMT, exercised a large degree of control over the calling campaign. (SOF ¶ 37.) CCL edited scripts, weighed in on the states to which calls should be made, decided how many calls it would accept each day, and even instructed the ESG Defendants to change the name of the purported survey group when it received a complaint from a legitimate company with the same name. (*Id.*) CCL also ensured that it had sales agents available to talk to call recipients who chose to be transferred to a live CCL representative at the end of the survey. (*Id.*)

During the year-long robocall campaign, approximately two million calls were transferred to CCL and lasted more than thirty seconds. (SOF ¶ 40.) Each of the Plaintiffs and class members received one or more of these robocalls, despite that none of them ever consented to their receipt. (SOF ¶¶ 39, 46, 50, 52, 54.) Although any of the Defendants could have ended the robocall campaign or, at a minimum, repudiated the illegal conduct, not one of them stopped accepting the sales leads or repudiated the campaign in any way. (SOF ¶¶ 43-44.)

### III.   ARGUMENT

#### A.   Summary Judgment Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment on a particular issue is appropriate so long as no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the nonmovant bears the ultimate burden on a particular issue, Rule 56 merely requires pointing out "that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Partial summary judgment is appropriate to "narrow[] the triable issues in the case." *Capitol Records, Inc. v. Progress Record Distrib., Inc.*, 106 F.R.D. 25, 29 (N.D. Ill. 1985); *see also Loop Paper Recycling, Inc. v. JC Horizon, Ltd.*, No. 08-cv-7364, 2012 WL 266312, at *4 (N.D. Ill. Jan. 23, 2012) ("If [an issue] may be resolved on summary judgment, the issues remaining for trial may be reduced, thus resulting in a more efficient resolution of this case.").

### B. The Robocalls Violated The TCPA as to Both Classes.

The TCPA was enacted to address the "intrusive invasion of privacy" that results from the proliferation of "[u]nrestricted telemarketing." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (quoting congressional findings). To that end, "the TCPA principally outlaws four practices," *id.*, two of which are relevant here. Specifically, the calls at issue violated the TCPA because they were robocalls made to cellular telephones (47 U.S.C. § 227(b)(1)(A)(iii)) ("Section (A)(iii)") and residential landline telephones (47 U.S.C. § 227(b)(1)(B)) ("Section (B)") without the consent of the called parties.

To establish liability under Section (A)(iii), a plaintiff must prove that a call was made "using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1000 (N.D. Ill. 2014). Either the use of an automatic telephone dialing system (often called an "autodialer") *or* a prerecorded voice is sufficient. *See, e.g., id.* at 1003; *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7967 (2015) ["2015 FCC Order"]; *Vance v. Bureau of Collection Recovery LLC*, No. 10-CV-06324, 2011 WL 881550, at *3 (N.D. Ill. Mar. 11, 2011). Similarly, Section (B) "prohibits the initiation of 'any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party[.]'" *Worley v. Mun. Collections of Am., Inc.*, No. 14 C 2418, 2015 WL 890878, at *3 (N.D. Ill. Feb. 27, 2015). It is "the prevailing view in this district . . . that 'prior express consent'

under the TCPA 'is an affirmative defense on which the defendant bears the burden of proof; it is not a required element of the plaintiff's claim.'" *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014) (quoting *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 518174, *2 (N.D. Ill. Feb. 10, 2014)).

The undisputed evidence shows that the robocalls at issue here violated both Section (A)(iii) and Section (B). Specifically, ESG entered into a contract with CCL to make "prerecorded survey messages using an autodialer." (SOF ¶ 25.) With CCL's funding, it then drafted the political survey scripts and recorded an interactive survey with online software called Voice Talent. (SOF ¶¶ 25-28.) Every call that was part of the robocall campaign utilized a prerecorded voice, not a live person. (SOF ¶ 29.)[2] The Plaintiffs and the other members of the Cellular Telephone Class received these robocalls on their cellular phone. (SOF ¶¶ 45-54.) Plaintiff Stone and the other members of the Landline Class received at least one of the robocalls on their residential telephone line. (SOF ¶¶ 53-54.) Thus, because calls were made to Plaintiffs' and the class members' cell phones and landlines using a pre-recorded voice (not to mention an autodialer), the undisputed evidence establishes that the calls violated the TCPA.

### C. There is No Evidence Showing Consent or Any Other Potential Exemption.

In addition to the undisputed evidence establishing a prima facie TCPA violation, there is a complete lack of evidence establishing any defense that such a violation occurred. To be sure, although consent is an affirmative defense and it is not Plaintiffs' burden to prove its absence, each

---

[2] Although Defendants' use of a prerecorded voice is sufficient to render the calls unlawful under the TCPA, *see Sojka*, 35 F. Supp. 3d at 1000, the undisputed facts show that an autodialer was also used to make the calls. (SOF ¶ 31.) "[T]he basic functions of an autodialer are to 'dial numbers without human intervention' and to 'dial thousands of numbers in a short period of time.'" *2015 FCC Order*, 30 F.C.C. Rcd. at 7974 (2015). The equipment must also have the capacity to "dial … numbers at random, in sequential order, or from a database of numbers." *Id.* ESG's contracts with CCL and VOMT explicitly state that ESG makes calls using an autodialer. (SOF ¶¶ 25, 31.) Further, it is undisputed that ESG's equipment dialed numbers at random from a database of numbers. (SOF ¶ 28, 31.) Finally, it dialed thousands of numbers in a short period of time. (SOF ¶ 40.) It therefore meets the statutory definition of an autodialer.

7

of the Plaintiffs testified that they did not consent to receive the calls (SOF ¶¶ 46, 50, 52, 54). And, Defendants have not been able to point to a shred of evidence suggesting that any class member consented. To the contrary, the undisputed evidence shows that the call recipients were chosen randomly (SOF ¶¶ 28, 39), with the goal of calling the entire country. (SOF ¶ 28.) As such, Plaintiffs and the Classes are entitled to summary judgment on Defendants' affirmative defense of consent. *See*, *e.g.*, *Modrowski*, 712 F.3d at 1168.

Defendants also seem to believe that a limited exception set out by the FCC for "*non-telemarketing, informational* calls, such as calls by or on behalf of tax-exempt non-profit organizations [or] calls for political purposes," *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1841 (2012) (emphasis in original) ["2012 FCC Order"], should save them from being found liable here. *See*, *e.g.*, Dkt. No. 292 at 21 (VOMT raising the affirmative defense that "Plaintiffs' claims may be barred by the exceptions provided under the TCPA, including but not limited to, the political purpose exception); Dkt. No. 294 at 24 (Berkley stating the same); Dkt. No. 301 at 22 (CCL stating the same). They are wrong.

First, that exception does not apply to calls made to cellular phones. *See 2012 FCC Order*, 27 F.C.C. Rcd. at 1841. Rather, the only two exceptions for calls made to cellular phones are those made for emergency purposes and those made with consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii); *In re Richard Gilmore d/b/a Democratic Dialing* (FCC File No. EB-TCD-12-00004943), attached hereto as Exhibit A at 3-4 (noting that there is no exemption for political calls to cellular telephones). Thus, the defense plainly does not apply to the Cellular Telephone Class members.

Second, non-telemarketing information calls to landlines are exempt from the TCPA *only* "to the extent that they do not contain telemarketing messages." *2012 FCC Order*, 27 F.C.C. Rcd. at 1841. Telemarketing "means the initiation of a telephone call or message for the purpose of

8

encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. 64.1200(f)(12); *see also In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14149 (2003) ["2003 FCC Order"] (same). If a call includes such a message, then it is subject to the TCPA, even if it has another ostensible purpose or somehow involves a non-profit organization. *Id.* at 14089; *see also* SOF Ex. 48, *Bank v. Caribbean Cruise Lines*, No. 12-cv-00584, Dkt. 49 at 9–13 (E.D.N.Y. Aug. 26, 2013) (denying Defendant CCL's motion for summary judgment on the grounds that the calls made by ESG did not fall under the political purpose exception, and suggesting that summary judgment in favor of plaintiff would have been warranted had plaintiff moved for summary judgment on this issue); *see also Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them.").

Here, there is no dispute that these robocalls calls were made—at least partially—for the commercial purpose of selling timeshares and cruises. To be sure, CCL admits that the calls were an important part of its marketing program, and that each call was designed to sell CCL and Berkley vacation products. (SOF ¶¶ 16, 33-36, 41, 42.)

Further, even if the Court were to give Defendants the benefit of the (perhaps dubious) inference that the survey portion of the call had a genuine political purpose and was made on behalf of a non-profit, that merely renders them dual-purpose calls, which are not permissible either. Indeed, in *Bank v. Caribbean Cruise Line*, another district court in the Eastern District of New York rejected CCL's exact argument that the same calls at issue in this case might qualify for the exception for non-telemarketing calls, and the same result is appropriate here. SOF Ex. 48, *Bank*, No. 12-cv-00584, Dkt. No. 49 at 9–13; *see also Chesbro*, 705 F.3d at 917 ("The FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational component as well as

9

a marketing component, are prohibited [under the TCPA].") (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14095 ¶ 136, 2003 WL 21517853 (F.C.C. July 2, 2003)). As such, Plaintiffs and the Classes are entitled to summary judgment on these statutory defenses as well.

### D. A Jury Must Decide Berkley's, CCL's, and VOMT's, Liability for the Robocalls Under Vicarious Liability Principles.

Once the Court determines that the robocalls violated the TCPA, it remains only to sort out how each Defendant is liable. There are two ways that a defendant can be liable under the TCPA: directly and vicariously. Entities are directly liable for unlawful calls when they "initiate" those calls, typically by actually dialing the calls themselves. *In the Matter of the Jt. Pet. Filed by Dish Network, LLC, Declaratory Rul. Concerning the Tel. Consumer Protec. Act (Tcpa) R.*, 28 F.C.C. Rcd. 6574, 6583 (F.C.C. 2013) ["2013 FCC Order"]. Vicarious liability, on the other hand, hinges on theories of agency, partnership, and joint venture, which are nearly always question of fact for the jury, and in this case, cannot be decided at summary judgment.

Entities "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *2013 FCC Order*, 28 F.C.C. Rcd. at 6582; *see also Addison Automatics, Inc. v. RTC Grp., Inc.*, No. 12 C 9869, 2013 WL 3771423, at *4 (N.D. Ill. July 16, 2013) ("[T]he federal common law of agency should be followed in determining whether agency exists for purposes of establishing vicarious liability under the TCPA.").[3] Applicable theories of vicarious liability extend beyond classical agency, and include apparent authority and ratification (which, although a type of agency, does not require a pre-existing agency relationship) as well. *See, e.g., 2013 FCC Order*, 28 F.C.C. Rcd. at 6584 (explaining that sellers can be held liable under the

---

[3] Plaintiffs and the Classes also contend that Berkley, CCL, and VOMT are liable as joint venturers and under a partnership theory of liability and under a theory of attractive nuisance, and they anticipate pursuing those theories at trial as well.

10

TCPA under agency theories of actual authority, apparent authority, or ratification); *cf. Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 802 F.2d 963, 966 (7th Cir. 1986)("[p]rincipals are strictly liable for their agents' acts . . . if the principals authorize or ratify the acts or even just create an appearance that the acts are authorized.").

Here, ESG is the only Defendant directly liable for the calls. As explained above, it is undisputed that ESG created robocall scripts, leased a dialer, and placed prerecorded calls pursuant to a contract with CCL. (SOF ¶¶ 25-32.) As discussed, those calls violate the TCPA because they used a prerecorded voice and because no affirmative defense is available. ESG, therefore, can be held directly liable under the TCPA.

For Berkley, CCL, and VOMT, that leaves vicarious liability for their TCPA violations. However, "the existence and scope of an agency relationship are questions of fact, to be decided by the trier of fact." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 746 (7th Cir. 1998).[4] For that reason, courts generally refuse to decide agency issues at summary judgment. *See, e.g.*, *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065 (7th Cir. 2000) (reversing grant of summary judgment on agency issue); *Gondeck v. A Clear Title & Escrow Exch., LLC*, 47 F. Supp. 3d 729, 742–43 (N.D. Ill. 2014) (finding agency "not appropriate for resolution on summary judgment" even though the evidence presented "possibly and perhaps even likely will convince a jury"). Therefore, despite Plaintiffs' strong evidence that Berkley, VOMT, and CCL are all vicariously liable for ESG's calls, Plaintiffs and the Classes will await trial for a jury to determine those three Defendants' vicarious liability here.

---

[4] In fact, under federal common law, the issue of agency *must* be determined by the jury "unless no competent evidence legally sufficient to prove it has been introduced or the material facts from which it is to be inferred are undisputed and only one conclusion can be reasonably drawn therefrom." *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 & n.14 (2d Cir. 1994) (quoting 3 C.J.S. Agency § 547 (1973).

11

**IV. CONCLUSION**

For the reasons set forth above, the Court should grant Plaintiffs' and the Classes' motion for partial summary judgment and find that the prerecorded voice calls made to the Plaintiffs and the Classes without their consent violated the TCPA.

Respectfully submitted:

| | |
|---|---|
| /s/ Rafey S. Balabanian | /s/ Scott R. Rauscher |
| Jay Edelson | Scott R. Rauscher |
| Rafey S. Balabanian | Michael I. Kanovitz |
| Eve-Lynn J. Rapp | Jonathan I. Loevy |
| EDELSON PC | LOEVY & LOEVY |
| 350 North LaSalle Street, 13th Floor | 312 N. May Street, Suite 100 |
| Chicago, Illinois 60654 | Chicago, Illinois 60607 |
| Telephone: (312) 589-6370 | Telephone: (312) 243-5900 |
| Email: jedelson@edelson.com | Email: scott@loevy.com |
| rbalabanian@edelson.com | jon@loevy.com |
| erapp@edelson.com | mike@loevy.com |
| *Class Counsel* | *Class Counsel* |

## **CERTIFICATE OF SERVICE**

  I, Scott R. Rauscher, an attorney, hereby certify that on November 23, 2015, I caused the foregoing to be filed by the Court's CM/ECF system and to be served on all counsel of record.

                /s/ Scott R. Rauscher