**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and classes of others similarly situation, <br>     *Plaintiffs*, <br> v. <br><br> CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., <br>     *Defendants*. | Case #: 1:12-cv-04069 <br> *Related to:* Case #: 1:13-cv-00903 <br>               Case #: 1:13-cv-00908 <br><br> Honorable Matthew F. Kennelly |

**VACATION OWNERSHIP MARKETING TOUR, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ..................................................................1

   A. TELEPHONE CALLS TO PLAINTIFFS ...........................................................2

   B. PROCEDURAL HISTORY..................................................................................2

   C. VOMT'S BUSINESS MODEL ............................................................................2

II. ARGUMENT: SUMMARY JUDGMENT IS PROPER UNDER ANY THEORY OF LIABILITY .................................................................................................................5

   A. SUMMARY JUDGMENT STANDARD ............................................................5

   B. NO DIRECT TCPA LIABILITY EXISTS AS CCL DID NOT MAKE OR INITIATE THE POLITICAL SURVEY CALLS..........................................................................5

   C. NO THEORY OF VICARIOUS LIABILITY IS PLEADED IN THE ACC OR OTHERWISE AVAILABLE AGAINST VOMT ........................................................5

      1. NO ALLEGATIONS REGARDING VICARIOUS LIABILITY ARE SET FORTH IN THE ACC TO PERMIT PLAINTIFFS TO PURSUE SUCH CLAIM .....................................5

      2. VOMT IS NOT A SELLER UNDER THE TCPA ........................................ 6

      3. THE RECORD EVIDENCE DEMONSTRATES THAT NO THEORY OF VICARIOUS LIABILITY EXISTS TO HOLD VOMT LIABLE UNDER THE TCPA ..............................7

         a. VOMT IS NOT VICARIOUSLY LIABLE FOR THE ACTIONS OF THE SROS......7

         b. VOMT IS NOT LIABLE UNDER PRINCIPLES OF AGENCY, APPARENT AUTHORITY, OR RATIFICATION .................................................................10

   D. NO JOINT VENTURE OR PARTNERSHIP EXISTS BETWEEN VOMT AND ANY OTHER DEFENDANT ..........................................................................................11

   E. VOMT IS ENTITLED TO SUMMARY JUDGMENT ON TELEPHONE CALLS TO PLAINTIFFS THAT DID NOT REFERENCE A CRUISE OR APPEAR IN PLAINTIFFS' OR DEFENDANTS' PHONE RECORDS ....................................................................13

   F. VOMT IS ENTITLED TO SUMMARY JUDGMENT ON ALL CALLS TO LANDLINE TELEPHONES......................................................................................................14

III. STAY OF LAWSUIT PENDING OUTCOME OF *SPOKEO V. ROBINS* ......................14

IV. CONCLUSION ............................................................................................................14

## I. INTRODUCTION

Vacation Ownership Marketing Tours, Inc. ("VOMT") has nothing to do with the telephone calls at issue in this case. It did not make or initiate any telephone calls and it did not ask anyone to make any telephone calls on its "behalf". No party involved with the making of the telephone calls or the receiving of the telephone calls ever heard of VOMT before this lawsuit.[1] ***All Plaintiffs concede they never heard of VOMT prior to the filing of this lawsuit.***[2] ***The owner and operator of the SROs, Jacob DeJongh ("DeJongh"), as well as the dialer of the calls, Darren Robb ("Robb"), never heard of VOMT either.***[3] Plaintiffs seek to hold VOMT responsible for the independent actions of third parties making political survey calls based solely on the fact that VOMT did not have any employees and it is owned and operated by two individuals that also have a relationship with co-Defendant Caribbean Cruise Line, Inc. ("CCL").

In addition to the fact that Plaintiffs have failed to plead any secondary theory of liability in the Amended Consolidated Complaint ("ACC"), there are no facts existing in the record to demonstrate that VOMT had any direction or control over the actions of the survey research organizations ("SROs") or the manner and means of how the calls were made to result in VOMT being vicariously liable for the calls. In fact, the undisputed material facts reveal the opposite: VOMT had absolutely no involvement with the calls at issue in this lawsuit, and no joint venture arguments or vicarious liability theories can subject VOMT to liability for calls with which it had no involvement.[4]

Importantly, VOMT is not a seller under the TCPA to subject it to liability as it was not

---

1. Statement of Undisputed Material Facts in Support of VOMT's Motion for Summary Judgment ("Def. SOF"), ¶¶ 47, 52, 80.
2. Def. SOF, ¶¶ 62, 66, 68, 76.
3. Def. SOF, ¶¶ 52, 80.
4. *See* Declaration of Dan Lambert for VOMT ("VOMT Dec."), ¶¶ 7-8, attached to Def. SOF as **Exhibit 8.**

offering any products on the alleged calls at issue; VOMT actually does not "sell" anything to consumers. Even if VOMT could somehow be found responsible for the actions of the SROs, for the reasons set forth in CCL's Motion for Summary Judgment at Section II, summary judgment should be entered in favor of VOMT or, alternatively, this case should be stayed pending the decision of the United States Supreme Court in *Spokeo v. Robins*.

### A. Telephone calls to Plaintiffs

The description of the telephone calls to Plaintiffs is set forth in detail in CCL's Motion for Summary Judgment. As it relates to VOMT, neither DeJongh nor the operator of the dialer used by DeJongh, ever heard of VOMT.[5] More importantly, no Plaintiff ever heard mention of VOMT on any telephone call and had never heard of VOMT at all until the lawsuit was filed;[6] it was Plaintiffs' lawyers who decided VOMT should be included.[7]

### B. Procedural History

VOMT incorporates CCL's recitation of the procedural history. VOMT is lumped into the same two causes of action asserting only theories of direct liability against every single named Defendant collectively. There are no allegations in the ACC which distinguish VOMT's alleged wrongful conduct from any other Defendant and there are no facts in the record which support a finding of any theory of liability against VOMT for telephone survey calls made by the SROs – with whom VOMT never had any business relationship.

### C. VOMT's business model

VOMT was established in 2001 as an entity to place timeshare tours between a marketing

---

5. Def. SOF, ¶¶ 52, 80.
6. Def. SOF, ¶¶ 60-62, 66-69, 76.
7. Def. SOF, ¶¶ 62, 66, 76.

company and various timeshare developers.[8] In September, 2003, VOMT entered into an agreement with The Berkley Group, Inc. ("Berkley") to broker tour prospects from its lead generators to certain of Berkley's timeshare properties.[9] It was not until 2008 that VOMT began a relationship with CCL.[10] At that time, VOMT began brokering tour prospects from CCL customers for tours at Berkley properties.[11] It is VOMT's understanding that CCL generated customers in a wide variety of ways including, but not limited to, direct mail, radio, internet, television, business incentives, telephone, and in other ways.[12] During the course of the VOMT/CCL relationship, the number of tours brokered by VOMT from CCL customers was consistent.[13] The telephone calls at issue in this case took place between August 2011 – August 2012.[14] There was no spike in the number of tour prospects during this time period.[15]

VOMT does not own, sell, operate or market any vacation property, timeshares and/or cruise ships.[16] VOMT was not a party to any agreement with any SRO.[17] The SROs do not share common ownership, directorships, board members, physical location or any other connection to VOMT.[18] DeJongh and the SROs never heard of VOMT and never did business with VOMT.[19] VOMT was

---

8. Def. SOF, ¶ 37.
9. Def. SOF, ¶ 39. The agreement between VOMT and Berkley is attached as **Exhibit B** to the VOMT Dec.
10. Def. SOF, ¶ 40; VOMT Dec., ¶ 4.
11. *See* Marketing Agreement between VOMT and CCL, attached as **Exhibit A** to VOMT Dec.
12. *See* Declaration of Daniel Lambert for CCL ("CCL Dec."), ¶ 4, attached to Def. SOF as **Exhibit 1.**
13. Def. SOF, ¶¶ 42-43.
14. Def. SOF, ¶ 43.
15. Def. SOF, ¶ 43.
16. Def. SOF, ¶ 38.
17. Def. SOF, ¶¶ 4-5, 45. The Supplier Agreement between CCL and Employment for America, and the Supplier Agreement between CCL and ESGP shall be collectively known herein as "Supplier Agreements".
18. Def. SOF, ¶ 46.
19. Def. SOF, ¶ 51-52.

not involved in any of the aspects of the various political surveys conducted by the SROs.[20] VOMT did not provide any assistance, including monetary support, to the establishment of the SROs.[21] The SROs were setup solely by DeJongh with input and funds from non-defendant third party brokers to conduct political surveys.[22] In fact, DeJongh's business plans for the SROs, and the formation of such entities, were completed before DeJongh had spoken with anyone from VOMT and called for the conducting of public opinion surveys and polls for political and market research purposes.[23] No component of DeJongh's business plan involved telemarketing for VOMT.[24] Neither DeJongh nor any of the SROs ever worked for or held an ownership interest in VOMT.[25]

VOMT did not provide any cruise or other offer to the SROs.[26] VOMT had no input into the scripts used on the calls.[27] VOMT did not transfer any funds to any of the SROs.[28] VOMT was not involved in the contracting between the SROs and the SROs clients or between the SROs and CCL.[29] VOMT did not, and could not, advise or affirmatively influence any SRO in its day to day functions or in the amount of calls the SROs conducted.[30] VOMT did not have any input or control regarding how telephone calls were made, when telephone calls were made or to whom telephone calls were made.[31] Because VOMT did not initiate the telephone call at issue, because VOMT had no agency relationship with the SROs and because VOMT did not direct or control the actions of the SROs, VOMT cannot be liable for purported violations of the TCPA.

---

20. Def. SOF, ¶ 48.
21. Def. SOF, ¶ 49.
22. Def. SOF, ¶¶ 10, 14.
23. Def. SOF, ¶ 15.
24. Def. SOF, ¶ 50.
25. Def. SOF, ¶ 51.
26. Def. SOF, ¶ 54.
27. Def. SOF, ¶ 55.
28. Def. SOF, ¶ 56.
29. Def. SOF, ¶ 57.
30. Def. SOF, ¶ 57.
31. Def. SOF, ¶ 58.

## II. ARGUMENT: SUMMARY JUDGMENT IS PROPER UNDER ANY THEORY OF LIABILITY

### A. Summary Judgment Standard

To avoid duplication, VOMT incorporates the legal standard section set forth in CCL's Motion for Summary Judgment.

### B. No direct TCPA liability exists as VOMT did not make or initiate the political survey calls

VOMT incorporates the legal argument and authorities set forth in CCL's Motion for Summary Judgment regarding direct liability. The bottom line is that "[d]irect liability under the TCPA … applies only to entities that 'initiate' the telemarketing calls."[32] It is undisputed that VOMT did not place any calls to Plaintiffs or any class members; it is also undisputed that VOMT did not tell anyone or any entity to place any such calls on its behalf.[33] Therefore, VOMT is entitled to summary judgment on Plaintiffs' claim of direct TCPA liability.

### C. No theory of vicarious liability is pleaded in the ACC or available against VOMT, and no such theory can be established as VOMT is not a "seller" under the TCPA

1. <u>No allegations regarding vicarious liability are set forth in the ACC to permit Plaintiffs to pursue such claim</u>

VOMT Incorporates CCL's arguments set forth in its Motion for Summary Judgment as to Plaintiffs' failure to allege vicarious liability. Omitted from the ACC is any allegation that VOMT is vicariously liable under a theory of agency, apparent authority, or ratification. VOMT is mentioned in the ACC only thirteen (13) times and other than being accused of forming a general joint venture

---

32. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014); *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2014 WL 2095310, at *4 (E.D. Mo. May 20, 2014) *rev'd and remanded*, 788 F.3d 814 (8th Cir. 2015) ("[A] seller is not directly liable for a TCPA violation unless it initiates call."); *see also In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 ¶ 24 (2013) ("FCC Dish Order") ("[W]e clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call ….").
33. Def. SOF, ¶¶ 52-58.

or partnership with CCL and Berkley, neither of which made the telephone calls at issue, no specific allegations of wrongdoing or any agency theory of liability exists. The allegations of the ACC insufficiently and repeatedly allege throughout that "Defendants placed (or directed or allowed to be placed for their own benefit and on their behalf), the robo-calls…."[34] Courts find this language insufficient to plead vicarious liability.[35]

        2. <u>VOMT is not a seller under the TCPA</u>

VOMT cannot be liable for the allegedly unlawful calls since it is not a "seller" under the TCPA, as it does not sell or advertise any products to consumers and no calls were placed "on behalf" of VOMT. In the FCC's Dish Network Declaratory Ruling ("2013 FCC Ruling"), the FCC clarified when vicarious liability is available under the TCPA against a "seller", but did not discuss the potential liability of a random uninvolved third-party like VOMT.[36] The regulations implementing the TCPA define a seller as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services…."[37] VOMT cannot be liable for the allegedly unlawful calls since it is

---

34. *See, e.g.*, DE 289, ¶21.
35. *See, e.g.*, *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015); *Bank v. Philips Elecs. N. Am. Corp.*, No. 14-CV-5312 JG VMS, 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015); *Lary v. VSB Fin. Consulting, Inc.*, 910 So. 2d 1280, 1283 (Ala. Civ. App. 2005).
36. *In the Matter of the Joint Petition Filed by Dish Network, LLC et al.*, 28 F.C.C. Rcd. 6574, 6593 (2013) ("2013 FCC Ruling") ("[W]hile a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."); *see also Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, at *5 (N.D. Ill. 2013) (to show a third-party, independent contractor sent alleged fax advertisements "on behalf of" a defendant, a plaintiff cannot claim strict liability; it must make a case per traditional agency principles).
37. 47 C.F.R. §64.1200(f)(9).

not a "seller" under the TCPA, as it does not sell or advertise any products to consumers and no calls were placed "on behalf" of VOMT. Receiving a "benefit", alone, is not enough.[38]

### 3. The record evidence demonstrates that no theory of vicarious liability exists to hold VOMT liable under the TCPA

#### a. *VOMT is not vicariously liable for the actions of the SROs*

In an effort to avoid duplication, VOMT incorporates the legal authority and argument made by CCL in its Motion for Summary Judgment. VOMT will only focus on the specific facts applicable to it and how those facts are to be analyzed in accordance with the cited legal authority.

The undisputed material facts demonstrate that VOMT never formed any relationship, let alone an agency relationship, with any SRO making the telephone calls at issue in this case.[39] Plaintiffs' theory as to VOMT appears to be that because it had agreements with CCL and Berkley to broker timeshare tour prospects, because VOMT had no employees (other than its two directors), and because Messrs. Lambert and Verrillo are involved with both VOMT and CCL, that CCL should be held liable for calls made by the SROs during the limited time period of August 2011 – August 2012. But those facts establish nothing that is actually required to prove liability. VOMT is not a seller of anything. The owner and operator never heard of VOMT or knew of its existence.[40] VOMT was not mentioned on a single call and no Plaintiff ever heard of or came into contact with VOMT.[41] VOMT's agreement with CCL, an agreement that was entered into three (3) years prior to the telephone calls at issue, does not make VOMT liable for the calls made by the SROs – even if the Court were to find that the SROs were acting as agents for CCL.

---

38. 2013 FCC Ruling, at 6593 ("[W]e do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b).").
39. Def. SOF, ¶¶ 51-52.
40. Def. SOF, ¶ 52.
41. Def. SOF, ¶¶ 62, 66, 68, 76.

There is not a single case that has found vicarious liability under the circumstances presented in this case, *i.e.*, where the Plaintiffs have failed to make any showing of any relationship between the supposed third-party principal and the party making the telephone calls. In the cases cited in CCL's Motion, save *Kristensen*, the third parties at least had some relationship with the calling party, albeit insufficient to establish any form of vicarious liability. Nonetheless, the case law that has refused to find vicarious liability under the TCPA is instructive. In *Thomas*,[42] Taco Bell knew, approved and even administered funds to the calling parties, but because it did not "direct[] or supervise[] the manner and means of the text messages campaign," did not "create[] or develop[] the text message," or "play[] any role in the decision to distribute the message by way of a blast text," there was no liability.[43] In *Applestein*, Fairfield Resorts had an agreement with the third party making the calls on its behalf and the court found that was not enough to establish liability because the third party retained authority over its personnel, equipment, and facilities, and had no authority to sell any vacation ownerships for Fairfield.[44] Similarly, in *Mey v. Pinnacle Sec., LLC*, the defendant directly hired the third party making the telephone calls for the specific purpose of generating leads for the defendant.[45] But, because the defendant played a "passive role" in its relationship with the third-party lead generators and because it did not control, or even have access to, the content of the prerecorded calls, the court refused to find the defendant vicariously liable.[46]

In *Makaron v. GE Security Manufacturing, Inc.*, UTC had an agreement with independent distributors and dealers who, in turn, would resell UTC's equipment to other end-users. UTC argued

---

42. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1081 (C.D. Cal. 2012) *aff'd,* 582 F. App'x 678 (9th Cir. 2014)
43. *Id*. at 1085.
44. *Applestein v. Fairfield Resorts*, No. 0004 SEPT.TERM 2007, 2009 WL 5604429 (Md. Ct. Spec. App. July 8, 2009).
45. *Mey v. Pinnacle Sec., LLC*, No. 5:11CV47, 2012 WL 4009718, at *5 (N.D.W. Va. Sept. 12, 2012).
46. *Id.*

it was not liable under the TCPA because it is a "manufacturer" and could not be considered a "seller" since alleged calls were not made on its behalf. The court analyzed the 2013 FCC Ruling and explained that UTC could only be deemed "a 'seller' under the TCPA if it turns out it has an applicable agency relationship with the entities that made the calls to the plaintiffs in this case. The court found that no actual agency exists since *inter alia* the contracts between UTC and its distributors and dealers prohibit such dealers from marketing "as" or "on behalf of" UTC. The court also rejected any theory of apparent authority or ratification not only because there was no agency relationship, but also because there was no proof of any manifestation by UTC to the plaintiffs.[47]

Perhaps most analogous to VOMT is *Kristensen v. Credit Payment Services, Inc.*, where the plaintiffs, rather than directly suing the party who sent the text messages, sought to hold the lenders who allegedly purchased the leads, and the party who contracted with the entity that sent the messages, vicariously liable under theories such as ratification and apparent authority, as well as a "control and benefit" theory of vicarious liability.[48] The *Kristensen* court granted summary judgment for the lenders who merely purchased the leads after finding no theory of vicarious liability subjected them to claims under the TCPA, as there was "no evidence that any of the defendants had either the legal or practical ability to control whether [the text sender] sent out unsolicited texts."[49]

VOMT is further removed from the SROs here than the independent contractors outlined in *Thomas*, *Applestein*, *Mey*, *Makaron*, and *Kristensen* as at no time did VOMT have any agreement with the SROs, VOMT did not request, direct or instruct any of the SROs to make or initiate any telephone calls, and VOMT is not a seller of anything. At best, VOMT is akin to the manufacturer, UTC, in *Makaron* or the lenders in *Kristensen*. Either way, there is no evidence to find VOMT

---

47. *Id.* at *10.
48. *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528-APG, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015).
49. *Id.* at *7.

vicariously liable for the actions of the SROs – entities with which VOMT never had a relationship.

> b. *VOMT is not liable under principles of agency, apparent authority, or ratification.*

In an effort to avoid duplication, VOMT incorporates the legal authority and argument made by CCL in its Motion for Summary Judgment. VOMT will only focus on the specific facts applicable to it and how those facts are to be analyzed in accordance with the cited legal authority.

As set forth above, no agency relationship existed between VOMT and any SRO making the calls at issue. VOMT did not enter into any contract with any SRO regarding the telephone calls at issue in this lawsuit.[50] Nor did VOMT have any relationship with the calling parties.[51] VOMT had literally no involvement in the calls placed by the SROs; VOMT's only involvement, if it can even be considered involvement, is by virtue of its long time agreement with CCL going back more than three years before CCL ever formed a relationship with any SRO.[52]

Plaintiffs also cannot extend liability to VOMT pursuant to "apparent authority".[53] As set forth in *Toney v. Quality Resources, Inc.*, for a plaintiff to plead apparent authority, the plaintiff "must allege that she reasonably believed that [the calling entity] called her as [the principal's] agent and that her belief is traceable to a manifestation of [the agent's] authority from [the principal]."[54] There are no facts suggesting that Plaintiffs received calls from the SROs believing them to be from or even "on behalf of" VOMT.[55] VOMT did nothing to create in Plaintiffs a reasonable belief that the SROs were acting on behalf of VOMT; in fact, Plaintiffs all admit they never even heard of

---

50. Def. SOF, ¶ 53.
51. Def. SOF, ¶¶ 52, 80.
52. Def. SOF, ¶ 40; VOMT Dec., ¶ 4.
53. *See, e.g.*, *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 744 (N.D. Ill. 2014) (citing Restatement (Third) of Agency § 2.03 cmt. c (2006)).
54. *Toney*, 75 F. Supp. 3d at 744; *see also Makaron*, 2015 WL 3526253, at *8-*9 (apparent authority cannot arise unless the principal's manifestations to a third party supply a "reasonable basis" for that party to believe that the principal has authorized the alleged agent to do the act in question).
55. Def. SOF, ¶¶ 60-76.

VOMT. Finally, none of the Plaintiffs ever became a "tour prospect" such that VOMT would have formed any relationship with them. Indeed, none of the Plaintiffs purchased a cruise package or anything at all, from any Defendant.

Similarly, Plaintiffs cannot prove that VOMT ratified the actions of the SROs.[56] VOMT did not accept any "benefit" stemming from the SROs' calls to these Plaintiffs, and Plaintiffs have neither alleged nor proved that VOMT accepted any benefit. Plaintiffs also cannot show that they even sought to obtain *any* benefit from VOMT; indeed, Plaintiffs did not try to obtain a free cruise or purchase anything. Not only is there no agency relationship for the reasons set forth above, but no Plaintiff in this lawsuit purchased anything from VOMT, or even heard about VOMT on the purported telephone calls.[57] As Plaintiffs did not purchase anything from VOMT or engage in any business transaction with VOMT, they cannot allege VOMT benefited from the unlawful calls Plaintiffs allege they received. For this reason as well, in addition to the fact that no agency relationship existed between VOMT and any calling party, any attempt to impose vicarious liability against VOMT on a ratification theory fails.

### D. No joint venture or partnership exists between VOMT and any other Defendant

Rather than allege the existence of a joint venture or partnership between VOMT and any party that ***initiated*** the alleged violative calls, Plaintiffs allege a joint venture or partnership exists between CCL, VOMT, and Berkley.[58] Without a joint venture/partnership with the SROs that actually made the telephone calls, there can be no basis for liability against VOMT as the non-calling party. VOMT's relationship with CCL and Berkley, without the inclusion of the calling party, is

---

56. Restatement (Third) of Agency § 4.01(2) (2006) (A principal can ratify an act by "(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.").
57. Def. SOF, ¶¶ 62, 66, 68, 76.
58. DE 289, ¶¶ 32-33.

irrelevant. Regardless, VOMT has not entered into a joint venture or partnership with either CCL or Berkley.[59] VOMT existed several years before CCL even became an entity, and although VOMT has a business relationship with Berkley, VOMT and Berkley are entirely separate corporate entities with separate functions and officers and directors.[60] In fact, the parties could actually be considered competitors. For this Court to find the existence of a joint venture, it must find the following elements: "(1) intention of the parties to create a joint venture; (2) joint control or joint right of control; (3) joint proprietary interests in the subject matter of the venture; (4) right of both venturers to share in the profits; and (5) duty of both to share in the losses."[61] A partnership, on the other hand, "is created 'when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses.'"[62] The existence of a partnership is fully dependent upon "whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both."[63]

Plaintiffs allege CCL, VOMT, and Berkley operate as a *general* joint venture/partnership "with respect to the sale of Berkley timeshares and vacation packages,"[64] but Plaintiffs are unable to substantiate this allegation as no evidence exists to support this claim. Nor do Plaintiffs ever tie any such theory to the specific telephone calls at issue and the relationship with the SROs. Regardless,

---

59. VOMT Dec., ¶¶ 7-11.
60. VOMT Dec., ¶¶ 7-11.
61. *Skeen v. Carnival Corp.*, No. 08-22618-CIV, 2009 WL 1117432, at *3 (S.D. Fla. Apr. 24, 2009). Florida law contains similar elements; the Florida Supreme Court has explained:
   > In order to create a joint venture, a contract must contain the following elements: (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained. The absence of one of the elements precludes a finding of a joint venture.

*Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 8 So. 3d 1076, 1089 (Fla. 2008).

62. *C. I. R. v. Culbertson*, 337 U.S. 733, 740 (1949).
63. *Id.* at 741.
64. DE 289, ¶¶ 32-33.

whether a joint venture or partnership exists between CCL, VOMT, and Berkley has no bearing on Plaintiffs' claims as the undisputed evidence shows none of these entities initiated the telephone calls. Nevertheless, there is no evidence that VOMT created a joint venture or partnership with any party to make the calls at issue; in fact, the evidence demonstrates that no such venture or partnership was ever intended or created since VOMT specifically crafted its contracts with other parties to avoid the creation of a joint venture; neither VOMT nor the individuals who control it have any say in Berkley's operations, VOMT and Berkley did not share in losses or profits, and Berkley does not have any control or right to control VOMT's operations.[65] VOMT is also a separate and distinct entity from CCL; it was incorporated seven (7) years before CCL, and maintains its own corporate books and records, and separate bank accounts, and there never was any intention for VOMT and CCL to operate as a joint venture.[66] Plaintiffs cannot show the existence of any of the foregoing elements. Thus, summary judgment must be granted in favor of VOMT on any supposed joint venture or partnership theory of liability.[67]

### E. VOMT is entitled to Summary Judgment on telephone calls to Plaintiffs that did not reference a cruise or appear in Plaintiffs' or Defendants' phone records

In an effort to avoid duplication, VOMT incorporates the legal authority and argument made by CCL in its Motion for Summary Judgment. VOMT is entitled to summary judgment as to any calls allegedly placed to Plaintiffs that cannot be substantiated by Plaintiffs' call records, as required by the class definitions.

---

65. VOMT Dec., ¶¶ 7-11.
66. Def. SOF, ¶ 59; VOMT Dec., ¶¶ 20-21.
67. To the extent Plaintiffs now claim that VOMT is liable pursuant to some sort of alter-ego relationship with CCL, not only is no such theory pleaded, but it is expressly refuted by the record evidence. *See* VOMT Dec., ¶¶ 7-11, and CCL Dec., ¶¶ 7-11.

### F. VOMT is entitled to Summary Judgment on calls placed to Landline Telephones

In an effort to avoid duplication, VOMT incorporates the legal authority and argument made by CCL in its Motion for Summary Judgment. Because Regina Stone, the only named plaintiff to claim she received a violative call on her residential landline, is unable to substantiate with her own call records the alleged violative calls she claims she received, VOMT is entitled to summary judgment on the entire class of calls placed to Landline Telephones.

### III. STAY OF LAWSUIT PENDING OUTCOME OF *SPOKEO v. ROBINS*

VOMT alternatively request the Court to stay this lawsuit pending the Supreme Court's impending decision in *Spokeo, Inc. v. Robins*,[68] as set forth in VOMT and CCL's Motion to Stay being filed simultaneously with this instant Motion.[69]

### IV. CONCLUSION

As the foregoing arguments establish, VOMT is entitled to summary judgment on all counts. Alternatively, this Court should stay this lawsuit pending the ruling of the Supreme Court of the United States in the case of *Spokeo v. Robins*.

DATED: November 23, 2015        Respectfully submitted,

*s/Jeffrey Backman*
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
Admitted Pro Hac Vice
Richard.Epstein@gmlaw.com
JEFFREY A. BACKMAN, ESQ
(Fla. Bar No. 0662501)
Admitted Pro Hac Vice
Jeffrey.Backman@gmlaw.com
GREENSPOON MARDER, P.A
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301

---

68. 135 S.Ct. 1892 (2015).
69. DE 335.

954.491.1120 (Telephone)
954.343.6958 (Facsimile)

-and-

Timothy A. Hudson
THudson@TDRLAWFIRM.com
TABET DiVITO & ROTHSTEIN, LLC
209 S. LaSalle Street, Suite 700
Chicago, Illinois 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
Firm No.: 38234

*Attorneys for Vacation Ownership Marketing Tours, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification on this 23rd day of November, 2015.

*/s/ Jeffrey Backman*
Jeffrey A. Backman