IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPEHN PARKES, and REGINA STONE, on behalf of themselves and classes of others similarly situated, | ) ) ) ) ) | Case No. 12-cv-4069 |
| Plaintiffs, | ) ) | Honorable Matthew F. Kennelly |
| v. | ) ) ) | |
| CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC. AND VACATION OWNERSHIP MARKETING TOURS, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT THE BERKLEY GROUP, INC.'S RULE 56.1(a)(3)**
<u>**STATEMENT OF UNCONTESTED MATERIAL FACTS**</u>

Defendant, The Berkley Group, Inc. ("Berkley"), by and through its undersigned counsel, states as follows for its Rule 56.1(a)(3) Statement of Uncontested Material Facts:

<u>Description of the Parties</u>

1.  Named Plaintiff Gerardo Aranda ("Aranda") is a natural person domiciled in Illinois. (Doc. # 289, ¶ 9).

2.  Named Plaintiff Birchmeier ("Birchmeier") is a natural person domiciled in Illinois. (Doc. # 289, ¶ 10).

3.  Named Plaintiff Parkes ("Parkes") is a natural person domiciled in Illinois. (Doc. # 289, ¶ 11).

1

4. Named Plaintiff Stone ("Stone") is a natural person domiciled in Louisiana. (Doc. # 289, ¶ 12).

5. Defendant Caribbean Cruise Line, Inc. ("CCL") is a Florida corporation with its principle place of business in Fort Lauderdale, Florida. (Doc. # 301, ¶ 13).

6. Defendant Vacation Ownership Marketing Tours, Inc. ("VOMT") is a Florida corporation with its principal place of business in Fort Lauderdale, Florida. (Doc. # 292, ¶ 18).

7. Defendants Economic Strategy Group, Economic Strategy Group, Inc. and Economic Strategy LLC are collectively referred to as the "ESG Defendants." Jacob DeJongh is the President and sole employee of the ESG Defendants. (Doc. # 146, fns. 2, 3).

8. Defendant Berkley is a Florida corporation existing under the laws of the State of Florida, with its principal place of business in Fort Lauderdale, Florida. (Doc. #294, ¶ 17).

Venue and Jurisdiction Statement

9. This Court has federal question subject matter jurisdiction under 28 U.S.C. §1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (Doc. # 294, ¶ 7).

10. Venue is proper pursuant to 28 U.S.C. § 1391.

Statement of Facts

11. Berkley is a timeshare sales and marketing company operating under the Vacation Village trade name. (Deposition of Berkley's Corporate Representative, ("Berkley Dep.") at 16, 18, excerpts[1] of which are attached hereto as Exhibit A).

---

[1] Berkley is attaching only the pages of deposition transcripts that are cited in this Statement of Uncontested Material Facts. However, Berkley will provide entire deposition transcripts upon the Court's request.

12. Berkley's revenues are generated through timeshare sales conducted at its subsidiary or affiliated resorts, primarily in Virginia, Florida and Nevada. (Berkley Dep. at 15-20).

13. A customer visits and tours the timeshare resort as part of the timeshare sales process. (Deposition of Rebecca Foster ("Foster Dep.") at 39-40, excerpts of which are attached hereto as Exhibit B).

14. Berkley's marketing efforts to support its timeshare sales occur in one of three primary ways: (1) Berkley's internal permission-based marketing programs, (2) Berkley's owner referral programs, and (3) outside marketing vendors. (Berkley Dep. at 32-34, 45-46).

15. Over fifty percent (50%) of Berkley's Florida tours are generated internally by Berkley. (Declaration of Marc Landau ("Landau Dec.") at ¶ 13, attached as Exhibit C).

16. Berkley does not conduct non-permission based marketing, does not own an autodialer, does not place robocalls, makes all of its permission-based and owner referral calls by hand dialing, and owner referral calls are processed against do-not-call lists. (Berkley Dep. at 34, 36-37, 132; Berkley's Initial Disclosures at p. 2, attached as Exhibit D).

17. With regard to Berkley's Florida properties, VOMT supplies tour customers to Weston and Palm Beach Shores. (Deposition of Bruce Polansky ("Polansky Dep.") at 15, excerpts of which are attached hereto as Exhibit E; Foster Dep. at 28).

18. Between August 2010 and August 2012, Berkley had seven (7) other outside marketing vendors supply its timeshare tours. (Defendant The Berkley Group Inc.'s Answers to Plaintiff Grant Birchmeier's First Set of Interrogatories ("Berkley's Birchmeier Inter. Ans.") No. 2, attached as Exhibit F).

19. VOMT's on-site employees register customers and handle customer complaints or problems. (Deposition of Larry Hierholzer ("Hierholzer Dep." at 50, 64, excerpts of which are attached hereto as Exhibit G).

20. In 2003, Berkley entered into a marketing agreement ("Agreement") with VOMT, a marketing company, to sell Berkley timeshare tour leads. (Berkley Dep. at 45-46, 52-54, 132, Ex. 3 ("Agreement"), attached hereto as Exhibit H, at ¶ 3; Declaration of Vacation Ownership Management Tours, Inc. ("VOMT Dec.") at ¶ 7, Ex. B, attached as Exhibit I).

21. The Agreement sets forth the terms and provisions of the marketing relationship between Berkley and VOMT. (Berkley Dep. at 52-54; Exhibit H).

22. Berkley does not conduct, create, develop, authorize, manage, instruct, administer, direct, control or supervise any of the telemarketing efforts used by VOMT. (Defendant The Berkley Group Inc.'s Answers to Plaintiff David Wright's First Set of Interrogatories ("Berkley's Wright Inter. Ans.") No. 10, attached as Exhibit J).

23. The Agreement requires VOMT to comply with all laws, ordinances, rules, regulations and requirements as shall govern the responsibilities, actions and duties of VOMT under the Agreement. (Exhibit H at ¶ 6.b). The Agreement requires that VOMT make no representations on behalf of Berkley. (Exhibit H at ¶ 6.d). The Agreement expressly disclaims that it creates or could be construed to create a partnership or a joint venture between Berkley and VOMT. (Exhibit H at ¶ 14).

24. VOMT does not share with Berkley how it generates its leads, what its leads sources are, to whom it telemarkets, how it telemarkets, any other information about its call centers or its costs in generating leads. (Berkley Dep. at 51; Deposition of VOMT's Corporate

Representative ("VOMT Dep.") at 27-28, excerpts of which are attached hereto as Exhibit K; Hierholzer Dep. at 33, 226-27, 239-40).

25. Berkley does not share with VOMT any of Berkley's marketing strategies or processes. (Hierholzer Dep. at 230-32; Landau Dec. at ¶ 13; VOMT Dec. at ¶ 113).

26. Berkley does not share market strategies and processes with other vendors selling them customers, and those vendors do not share such information with Berkley. (Berkley Dep. at 50-51; Hierholzer Dep. at 239-241; VOMT Dep. at 27-28).

27. VOMT is a competitor of Berkley in procuring and generating customers to tour Berkley's timeshare resorts. (VOMT Dep. at 27-28; Berkley Dep. at 50-51; Hierholzer Dep. at 230-32; Foster Dep. at 56-59; Deposition of CCL's Corporate Representative ("CCL Dep.") at 29-30, excerpts of which are attached hereto as Exhibit L).

28. Timeshare tour leads have value and are sold to timeshare resorts in the marketplace. (Hierholzer Dep. at 226-228; Exhibit H; Berkley's Birchmeier Inter. Ans. No. 2).

29. Berkley does not know what VOMT pays to generate timeshare tours it sends to Berkley-affiliated resorts. (Hierholzer Dep. at 64-65).

30. Because timeshare interests are an interest in real estate, only licensed real estate salespeople are allowed to sell timeshare interests in Florida. (Hierholzer Dep. at 30, Landau Dec. at ¶ 18).

31. Because a vacation package is not an interest in real estate, CCL's Vacation package salespeople are not required to be licensed real estate salespeople in order to sell vacation packages. (Declaration of Caribbean Cruise Line, Inc. ("CCL Dec.") at ¶ 2, attached as Exhibit M).

5

32. VOMT never advised Berkley as to how the tour leads were generated for the program at issue in this lawsuit. (Berkley Dep. at 50-51, 74-79; VOMT Dep. at 27-28).

33. Berkley did not conduct, create, develop, authorize, manage, instruct, administer, direct, control or supervise the campaign at issue in this lawsuit. (Berkley Dep. at 46-47, Ex. 2, Berkley's Wright Inter. Ans. No. 2).

34. VOMT contracted with CCL to provide leads to VOMT. CCL Dep. at 26, Ex. 3; VOMT Dec. at ¶ 4, Ex. A).

35. VOMT provided Berkley no information about which tours were generated from the phone calls at issue and did not have the ability to determine which of the commissions paid to VOMT were for tours generated from the phone calls at issue, and at no time did the VOMT provide Berkley any information about whether a tour was generated through mailings, telemarketing, Internet marketing or any other type of advertising. (Defendant Caribbean Cruise Line, Inc.'s Notice of Serving Its Responses to Plaintiff Regina Stone's First Set of Interrogatories ("CCL's Stone Inter. Ans.") No. 13, attached as Exhibit N; Berkley's Birchmeier Inter. Ans. No. 4; CCL Dec. at ¶¶ 4, 13).

36. CCL markets and sells vacation packages to consumers, and vacation packages and timeshares are two different products. (CCL Dec. at ¶ 2; Landau Dec. at ¶ 18; CCL Dep. at 16).

37. Vacation packages, not timeshares, were sold during the political survey phone calls, and CCL representatives could not and did not have the authority to sell Berkley timeshare interests during the political survey calls. (Plaintiffs' Admissions to Defendant The Berkley Group, Inc.'s First Set of Requests for Admission ("Pls. Admissions") 104, attached as Exhibit O; Plaintiff Gerardo Aranda's Amended Response to Defendant The Berkley Group, Inc.'s First

set of Requests for Admissions to Aranda ("Aranda Admissions") 91, attached as Exhibit P; Landau Dec. at ¶¶ 9, 18); CCL Dec. at ¶ 2, Ex. A).

38.     The vacation packages sold for either $567 or $837. (CCL Dec., Ex. A).

39.     CCL contracted with the ESG Defendants to do marketing for CCL. (CCL Dep. at 33, Exs. 6 and 7).

40.     Certain of the ESG Defendants operated under the name Political Opinions of America ("POA"), which conducted the surveys at issue. (Deposition of Jacob Dejongh ("DeJongh Dep.") at 70-72, excerpts of which are attached hereto as Exhibit Q).

41.     POA sold the survey information to various Political Action Committees ("PACs"). (DeJongh Dep. Vol. III at 370).

42.     POA incentivized some survey takers by offering a free cruise, and once the survey was completed, the call was transferred to a CCL representative to sign up for the free cruise and to be offered the chance to buy a vacation package. (Caribbean Cruise Line, Inc.'s Answers to Plaintiff Grant Birchmeier's Fifth Set of Interrogatories ("CCL's Birchmeier 5th Inter. Ans.") No. 23, attached as Exhibit R; CCL Dep. at 39; CCL Dec., Ex. A).

43.     If a political call recipient took the POA survey and was transferred to CCL for registration for the free cruise, there was no requirement that the customer take a timeshare tour in order to take advantage of the free cruise. (CCL Dep. at 144-45; CCL's Birchmeier 5th Inter. Ans. No. 23; CCL's Stone Inter. Ans. No. 11; CCL Dec., Ex. A).

44.     Berkley had no knowledge of the phone calls at issue prior to May 15, 2012, when Berkley first learned of complaints about the political survey calls from Fox News and an email from Dan Lambert at VOMT. (Berkley Dep. at 74-75, 77-78; Declaration of Rebecca Foster ("Foster Dec.") at ¶ 3, Ex. 1, attached hereto as Exhibit S; Berkley Dep. at Ex. 11.)

45. Berkley did not authorize VOMT to say anything about Berkley timeshares in any of its marketing. (CCL's Birchmeier 5th Inter. Ans. No. 23).

46. The ESG Defendants were controlled and operated by Jacob DeJongh, operated under the POA trade name during the time that the calls at issue were made, and retained Darren Robb to place the phone calls at issue. (DeJongh Dep. at 109).

47. The political survey calls started in August 2011 and ended in August 2012. (Deposition of Daniel Lambert in FTC Matter No. 1223196 ("Lambert FTC Dep.") at 97, excerpts of which are attached hereto as Exhibit T; Doc. # 289, ¶ 1; Doc. # 146, p. 5).

48. Prior to this litigation, the ESG Defendants and Jacob Dejongh had never heard of Berkley, had never entered into any agreements with Berkley, took no direction from anyone at Berkley on any matter, including the calls, had no knowledge of Berkley's business or its operations and never mentioned Berkley in the political surveys.. (DeJongh Dep., Vol. IV at 358-99, Exs. 10, 16, 18, 24, 26; Berkley's Wright Inter. Ans. No. 9).

49. Prior to this litigation, Darren Robb had never heard of Berkley, had never entered into any agreement with Berkley, took no direction from anyone at Berkley on any matter, including the calls, and had no knowledge of Berkley's business or its operations. (Deposition of Darren Robb ("Robb Dep.") at 140-184, excerpts of which are attached hereto as Exhibit U).

50. Neither the term "Berkley" nor Berkley's trade name "Vacation Village" were said or mentioned during the political survey calls. (Deposition of Grant Birchmeier ("Birchmeier Dep.") at 21, excerpts of which are attached hereto as Exhibit V; Deposition of Regina Stone ("Stone Dep.") at 72, 74, excerpts of which are attached hereto as Exhibit W; Deposition of Gerardo Aranda ("Aranda Dep.") at 114, excerpts of which are attached hereto as

Exhibit X; Pls. Admissions 1, 2, 3; Aranda Admissions 1, 2, 3; CCL Dec. at Ex. A; DeJongh Dep., Vol. IV at 391-92, 396-97).

51. During the calls at issue, only one script was used by CCL representatives after the call was transferred. (CCL's Birchmeier 5th Inter. Ans. No. 23; CCL Dec. at ¶ 18, Ex. A).

52. The script used during the calls at issue is attached hereto as Exhibit Y. (CCL Dec. at ¶ 18, Ex. A).

53. The named plaintiffs did not hear the word "timeshare" during the calls they received as alleged in the Complaint, did not speak to anyone at Berkley as a result of the phone calls and did not tour a Berkley property because of the phone calls. (Birchmeier Dep. at 21; Stone Dep. at 84; Aranda Dep. at 114; Pls. Admissions 36, 37, 38, 136-137; Aranda Admissions 1, 129, 131).

54. No named plaintiff has purchased any product, good or service from Berkley or done any other business with Berkley as a result of the political survey calls. (Pls. Admissions 135, 137; Aranda Admissions 128, 130).

55. Berkley timeshare interests were not sold and could not be purchased during the political survey calls. (Pls. Admissions 1; Aranda Admissions 8; CCL Dec. at ¶¶ 11, 18, Ex. A).

56. During the political survey calls, recipients were not (1) given a timeshare purchase price or (2) advised about the terms and conditions of timeshare ownership. (Aranda Admissions 9, 12; CCL Dec. at Ex. A).

57. Berkley did not physically acquire or randomly generate lists of phone numbers, did not dial the phone numbers at issue in this case, did not direct others to dial the phone numbers at issue in this case, did not physically make the political survey calls and did not place calls from a third-party or randomly generated list of phone numbers without authorization. (Pls.

9

Admissions 15, 26, 27, 29, 30; Aranda Admissions 16, 27, 28, 30, 31; Berkley Dep. at 46-47, Ex. 2; Robb Dep. at 148-49, 154, 157-58; DeJongh Dep. Vol. IV at 369-70, 374).

58.     Berkley did not tell VOMT, CCL, the ESG Defendants, Robb or DeJongh which type of equipment was to be used to place the calls at issue in this case, did not instruct them as to when the phone calls at issue should be made or initiated and did not instruct them as to which states the calls at issue should be placed. (Robb Dep. at 161-162; DeJongh Dep. Vol IV at 378-79; Pls. Admissions 121; Aranda Admissions 83, 84, 85, 86, 87, 111, 112, 113, 114, 115).

59.     Berkley did not provide VOMT, CCL, the ESG Defendants, Robb or DeJongh with any of the phone numbers used to initiate the phone calls at issue and did not tell them which phone numbers to dial for the phone calls at issue. (Robb Dep. at 162-163; DeJongh Dep. Vol IV at 379-80; Pls. Admissions 122; Aranda Admissions 106, 121, 122, 123, 124, 125).

60.     Berkley did not design, initiate or create the political survey concept for use during the phone calls at issue, did not suggest to anyone that the political survey should be used for the phone calls at issue, did not prepare any of the questions used in the survey conducted during the phone calls at issue and did not design the survey used during the phone calls at issue. (Robb Dep. at 151, 157, 160-61; DeJongh Dep. Vol. IV at 366-67, 373, 377, 388; Pls. Admissions 45, 46, 89; Aranda Admissions 40, 41, 78, 42).

61.     Berkley did not edit, draft, review or comment on any of the scripts or other creative material used during the phone calls at issue and did not suggest to VOMT, CCL, the ESG Defendants, Robb or DeJongh that the offer of a free cruise should be used during the phone calls at issue. (Robb Dep. at 150, 157-59; DeJongh Dep. Vol. IV at 373-75; Pls. Admissions 48, 82; Aranda Admissions 43).

62. On May 15 or May 16, 2012, Berkley advised VOMT that Berkley did not want any tour leads generated by inappropriate contact. (Berkley Dep. at 133-34; Foster Dep. at 25-28).

63. On June 19, 2012, Berkley wrote VOMT and instructed VOMT to "immediately cease and desist from any and all activities that in any way misrepresent any effort to solicit or identify prospects." This letter further stated, "[a]s the Complaint focuses on cellular telephone solicitation, we instruct you to not provide us any marketing leads generated from calls to cellular telephone numbers" and "we [Berkley] reserve the right to reject any other marketing leads generated by VOMT." (Foster Declaration at ¶ 4, Ex. 2; Vacation Ownership Marketing Tours, Inc.'s Responses to Plaintiff Grant Birchmeier's First Set of Interrogatories ("VOMT's Birchmeier Inter. Ans.") No. 2, Ex. A, attached as Exhibit Z).

64. In prior dealings, whenever Berkley told VOMT to limit a certain type of customer, VOMT complied with Berkley request. (Foster Dep. at 27-28).

65. In 2007-2008, VOMT sent to Berkley customers that were provided through an unregistered supplier. Berkley received complaints about this supplier, and it told VOMT to not send it any more customers from this supplier until the problem was corrected, which it ultimately was corrected. (Hierholzer Dep. at 187-188.)

66. In 2008-2009, VOMT sent south Florida customers to Orlando for tours, and the salespeople complained about these customers. Berkley asked VOMT to stop supplying these customers, and VOMT complied. (Hierholzer Dep. at 146-148.)

67. In 2008, Berkley received approximately 48,000 tours from VOMT. In 2009, Berkley received approximately 54,000 tours from VOMT. In 2010, Berkley received approximately 47,000 tours from VOMT. In 2011, Berkley received approximately 35,000 tours

from VOMT. In 2012, Berkley received approximately 36,000 tours from VOMT. In 2013, Berkley received approximately 36,000 tours from VOMT. In 2014, Berkley received approximately 35,000 tours from VOMT. (Landau Dec. at ¶ 19).

68.     Berkley never had control or authority over CCL's or VOMT's operations, does not and has not provided input or been involved with CCL's telemarketing operations, its equipment or sales and booking systems, has had no voting rights over operations and no authority to supervise or pay VOMT's or CCL's employees, cannot borrow money or sign any other documents on VOMT's or CCL's behalf, has never had access to those company's bank accounts, computer systems or financial records, and Berkley, VOMT and/or CCL do not and have not filed partnership or joint venture tax returns. (VOMT at ¶¶ 7, 9, 15; CCL Dec. at ¶¶ 4, 8, 9, 15, Landau Dec. at ¶¶ 4, 6).

69.     VOMT and CCL have never had any control or authority over Berkley's timeshare operations, and no one from those companies has or had authority to sign documents for Berkley, to supervise or pay Berkley employees, to borrow money on Berkley's behalf or access financial records. (Landau Dec. at ¶¶ 4, 5, 8, 9, 11; VOMT Dec. at ¶¶ 8, 10; CCL Dec. at ¶¶ 7, 9).

70.     VOMT and CCL have never had control or input in Berkley' timeshare construction, planning, pricing or financing, and Berkley has never had any input in CCL's vacation packages' pricings or offerings. (Landau Dec. at ¶ 8; VOMT Dec. at ¶ 11; CCL Dec. at ¶¶ 10, 17, 19).

71.     VOMT and CCL have never had the right to sell and have never been authorized to sell Berkley timeshare products or units or bind Berkley to any contract, and Berkley has

never had the right to sell CCL's vacation packages or bind CCL or VOMT to any contract. (Landau Dec. at ¶¶ 9, 18; VOMT Dec. at ¶¶ 8, 11, 16; CCL Dec. at ¶¶ 7, 17).

72. VOMT and CCL have never had any control or input in Berkley's timeshare amenities offered at Berkley's timeshare resorts or any other resort planning. (VOMT Dec. at ¶ 11; CCL Dec. at ¶ 10).

73. VOMT and CCL have never shared marketing strategies or other confidential information with Berkley, and Berkley has never shared its marketing strategies or other confidential information with VOMT or CCL. (CCL Dec. at ¶¶ 12, 13; VOMT Dec. at ¶ 13; Landau Dec. ¶ 13).

74. Berkley has never jointly owned or controlled any assets, including the telemarketing centers used to handle the political survey calls, properties or vacation packages with VOMT or CCL, and VOMT and CCL have never owned any Berkley timeshares. (VOMT Dep. at 8-9, 19; CCL Dep. at 146; VOMT Dec. at ¶ 14, 15; CCL Dec. at ¶ 14, 15; Landau Dec. at ¶¶ 7, 9, 10, 16).

75. The Agreement obligates Berkley to pay a commission; it does not obligate Berkley to share profits from its operations. Berkley, VOMT or CCL do not have an obligation to contribute to cover the losses incurred by the other and none of these parties guarantees the debts of the others. (Exhibit H; VOMT Dec. at ¶¶ 17, 18; CCL Dec. at ¶¶ 20, 21; Landau Dec. at ¶¶ 14, 17, 20).

76. Berkley's subsidiaries own the timeshares, and CCL owns the vacation packages. (Berkley Dep. at 19; CCL Dec. at ¶ 14).

77. Plaintiffs articulated their theories of liability against Berkley in an interrogatory answer served on May 22, 2015. (Plaintiffs' Response to The Berkley group, Inc.'s Third Set of Interrogatories to Plaintiffs, attached hereto as Exhibit AA, No. 1).

Dated this the 23rd day of November, 2015.

                THE BERKLEY GROUP, INC.

                By: /s/Brian P. O'Meara
                    One of its Attorneys

                    M. Peebles Harrison (*Pro Hac Vice*)
                    700 Blue Jay Street, Suite 1
                    Post Office Box 405
                    Kill Devil Hills, North Carolina 27948
                    Telephone: (252) 480-1414
                    Facsimile: (252) 480-1765
                    Email: peebles@outerbankslaw.com

                    Brian P. O'Meara
                    Forde Law Offices LLP
                    111 West Washington Street
                    Suite 1100
                    Chicago IL 60602
                    Telephone: (312) 465-4780
                    Facsimile: (312) 641-1288
                    Email: bomeara@fordellp.com

                    *Attorneys for The Berkley Group, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that the foregoing THE BERKLEY GROUP, INC.'S LOCAL RULE 56.1(a)(3) STATEMENT OF UNCONTESTED MATERIAL FACTS was electronically filed with the Clerk of Court by using the CM/ECF system, which will provide copies to all counsel of record registered to receive CM/ECF notification on this 23rd day of November, 2015.

/s/Brian P. O'Meara