## IN THE UNITED STATES DISTRICT COURT FOR THE
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and a class of others similarly situated, | Case No. 1:12-cv-04069 |
| *Plaintiffs*, | |
| *v.* | Honorable Matthew F. Kennelly |
| CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., | |
| *Defendants*. | |

## PLAINTIFFS' AND THE CLASSES' COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DECERTIFY AND CCL AND VOMT'S SECOND MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

I.    **Plaintiffs and Class Members Suffered Concrete Injuries When They Received Unlawful Prerecorded Voice Calls** ................................................................3

    A.    *Spokeo* **confirmed that Congress can identify intangible harms redressable in federal court** ..........................................................4

    B.    **Congress's judgment and the common law confirm that a violation of the TCPA is a concrete injury** ..............................................6

    C.    **The TCPA is not procedural in nature** ..............................................9

II.    **Defendants' Post Hoc Justifications for their Unlawful Calls Do Not Remedy Class Members' Injuries** ................................................................14

III.    **CCL/VOMT Cannot Obtain Summary Judgment** .......................................15

IV.    **The Core of Defendants' Decertification Argument Has Nothing to Do With** *Spokeo* ................................................................................................16

CONCLUSION ................................................................................................................19

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

*Campbell-Ewald v. Gomez*,
    136 S. Ct. 663 (2016) ...................................................................................................2, 8

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) .........................................................................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................*passim*

*Mims v. Arrow Fin. Servs. LLC*,
    132 S. Ct. 740 (2012) ...............................................................................................7, 8, 10

*Nashville, C. & St. L. Ry. Co. v. Wallace*,
    288 U.S. 249 (1933) .........................................................................................................7

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976) .........................................................................................................17

*Spokeo, Inc. v. Thomas Robins*,
    136 S. Ct. 1540 (2016) ............................................................................................*passim*

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .........................................................................................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ..............................................................................................18, 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................................16

**United States Circuit Court of Appeals Cases**

*Bhd. Of Maint. of Way Employees Div./IBT v. Norfolk S. Ry. Co.*,
    745 F.3d 808 (7th Cir. 2014) ..........................................................................................16

*Church v. Accretive Health, Inc.*,
    No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016)...................................6, 10, 13

*In re Nickelodeon Consumer Privacy Litig.*,
    No. 15-1441, 2016 WL 3513782 (3d Cir. June 27, 2016) ..................................................6

*Kyles v. J.K. Guardian Sec. Servs., Inc.*,
222 F.3d 289 (7th Cir. 2000) ........................................................5

*Murray v. Conseco, Inc.*,
467 F.3d 602 (7th Cir. 2006) ......................................................16

*Palm Beach Gold Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
781 F.3d 1254 (11th Cir. 2015) ..................................................13

*Sterk v. Redbox Automated Retail, LLC*,
770 F. 3d 618 (7th Cir. 2014) ..............................................4, 5, 17

*Westinghouse Elec. Corp. v. N.L.R.B.*,
809 F.2d 419 (7th Cir. 1987) ......................................................13

**United States District Court Cases**

*Aranda v. Caribbean Cruise Line, Inc.*
No. 12 C 4069, 2016 WL 1555576 (N.D. Ill. Apr. 18, 2016)..............................1

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014)......................................1, 15, 19

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016) .................10, 11, 13

*Fox v. Riverview Realty Partners*,
No. 12 C 9350, 2014 WL 1613022 (N.D. Ill. Apr. 22, 2014).....................18

*Gubala v. Time Warner Cable, Inc.*,
2016 WL 3390415 (E.D. Wis. June 17, 2016)................................12

*Khan v. Children's National Health System*,
2016 WL 2946165 (D. Md. May 19, 2016)............................12, 13

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)..........................................15

*Lane v. Bayview Loan Servicing, LLC*,
No. 15 C 10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016) .........................2, 13, 17, 18

*Matmanivong v. Nat'l Creditors Connection, Inc.*,
79 F. Supp. 3d 864 (N.D. Ill. 2015) ........................................5

*Mey v. GOT Warranty, Inc.*,
No. 5:15-cv-101, 2016 WL 3645195 (N.D.W.V. June 30, 2016) .................7, 14

*Parish v. Sheriff of Cook Cty.*,
    No. 07 C 4369, 2016 WL 1270400 (N.D. Ill Mar. 31, 2016) ...........................................16

*Rogers v. Capital One Bank (USA), N.A.*,
^    No 1:15-CV-4016-TWT, 2016 WL 3162592 (N.D. Ga. June 7, 2016).....................11, 13

*Smith v. Ohio State University*,
    2016 WL 3182675 (S.D. Ohio June 8, 2016) ...................................................11

*Thomas v. FTS USA, LLC*,
    2016 WL 3661960 (E.D. Va. June 30, 2016) .............................................1, 12

*Wall v. Michigan Rental*,
    2016 WL 3418539 (E.D. Mich. June 22, 2016).............................................11

## Miscellaneous Authority

15 U.S.C. § 1681 ...........................................................................................12

47 U.S.C. § 227 ........................................................................................1, 8

47 U.S.C. § 551 ...........................................................................................12

137 Cong. Rec. 30, 821-30 (1991).......................................................................8

H.R. Rep. 98-934 ..........................................................................................12

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act*
    30 FCC Rcd. 7961 (2015) ..........................................................................8

Pub. L. 102-243, 105 Stat. 2394 (1991).................................................................8

Restatement (Second) of Torts (1979) ...................................................................14

*Rules Enabling Act of 1934*,
    28 U.S.C. § 2072 ...................................................................................16

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*
    4 Harv. L. Rev. 193 (1890) .........................................................................6

U.S. Const. art. III ................................................................................... *passim*

William Rubenstein, Alba Conte & Herbert Newberg,
*Newberg on Class Actions* (4th ed. 2011)...............................................................17

## INTRODUCTION

This case is not about a mere technical or procedural violation of the law. Defendants Caribbean Cruise Line, Inc. and Vacation Ownership Marketing Tours, Inc. (together, "CCL/VOMT"), and Defendant Berkley, Inc. engaged in one of the most extensive unsolicited telemarketing robocall schemes this country has ever seen, all in an effort to sell vacation products to Class members who never asked to buy them. The Court has already certified two Classes of consumers who received the calls and granted partial summary judgment in favor of one of the Classes, holding that prerecorded voice calls to cellular phones violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 243 (N.D. Ill. 2014); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 1555576 (N.D. Ill. Apr. 18, 2016).

Now, just weeks before trial, Defendants contend that the Classes were improperly certified based on the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 U.S. 1540 (2016). They now claim Class members' receipt of these invasive calls in violation of the TCPA is no longer sufficient to confer Article III standing, and, as an individual inquiry is now necessary to determine whether each Class member suffered a "concrete" harm, certification of the Classes is no longer appropriate. CCL/VOMT further argue, in their second (and separate) motion for summary judgment, that the entire case must be dismissed for lack of subject-matter jurisdiction. The Court should have no problem quickly rejecting Defendants' arguments.

Using *Spokeo* in an effort to decertify the Classes or grant summary judgment to the Defendants is a complete misfit. First, *Spokeo* does not represent a sea change in standing doctrine. *See Thomas v. FTS USA, LLC*, 2016 WL 3661960, at *4-*5 (E.D. Va. June 30, 2016) ("Contrary to Defendants' position, *Spokeo* did not change the basic requirements of standing.");

1

*see also Lane v. Bayview Loan Servicing, LLC.*, No. 15 C 10446, 2016 WL 3671467, at *3, 5 (N.D. Ill. July 11, 2016) (noting that the Seventh Circuit's existing jurisprudence on Article III standing as it relates to violations of a federal debt collection statute is "consistent with *Spokeo*"). Instead, the *Spokeo* majority merely clarified that courts must separately analyze the "concrete" and "particularized" prongs of the Article III standing inquiry and set forth some guidance on how to determine whether an injury is concrete—even when it is not tangible or palpable. Because Congress identified receipt of a prerecorded voice call as an intangible injury, a plaintiff that received such a call unquestionably has standing to seek redress in federal court. Indeed, when the Supreme Court specifically addressed Article III standing in a TCPA case during the same term as *Spokeo*, none of the four separate opinions raised the concern that an unlawful phone call was not a sufficient injury to confer standing. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669, 672 (stating the rule that parties must have a "concrete interest" in the litigation and holding that the plaintiff had such an interest); *id.* at 679 ("All agree that at the time Gomez filed suit, he had a personal stake in the litigation.") (Roberts, C.J., dissenting).

Moreover, despite the *Spokeo* petitioner's attempts to inject considerations related to class actions into the *Spokeo* litigation, the Supreme Court did not render a decision that even touched upon Rule 23 or class certification, and it did not hold that Article III standing requires individual inquiries. Simply put, Defendants have no support for their position that every single absent Class member must have standing to bring a claim on his or her own. But the question is irrelevant here anyway, because each Class member would have standing to assert an individual claim.

There is no question that Plaintiffs have standing to seek relief on behalf of themselves and the Classes. The Classes were appropriately certified, and it's now time for the case to proceed to trial in September.

**ARGUMENT**

## I.     Plaintiffs and the Other Class Members Suffered Concrete Injuries When They Received Unlawful Prerecorded Voice Calls.

Defendants' Motions both rely on the flawed premise that *Spokeo* requires plaintiffs to demonstrate that they have suffered an injury that "exists separate and apart from a statutory violation." (CCL/VOMT Second Mot. for Summary Judgment at 8; Mot. to Decertify at 7.) That's just wrong. The fact that a person received a call in violation of the TCPA is enough, on its own, to authorize that person to sue in federal court. As the Supreme Court made clear, if an individual suffers an intangible harm that Congress has identified as such, that person has suffered a concrete injury that is "real" and that "actually exist[s]," which "meet[s] minimum Article III requirements." *Spokeo*, 136 S. Ct. at 1548-49. Receipt of unsolicited, prerecorded voice telemarketing calls is just such an injury. Congress designed the TCPA to remedy the invasion of privacy that it found inherent to the receipt of prerecorded voice calls—an injury closely related to privacy interests that have been recognized at common law for centuries. Unlike the statute at issue in *Spokeo*, the provisions of the TCPA that Defendants violated here are entirely substantive, and not at all procedural in nature. Therefore, the Supreme Court's concerns about authorizing lawsuits for "bare procedural violations" do not come into play. *Id.* at 1549. As each Class member received a call, and each call was unlawful, every Class member has standing to sue Defendants.

### A. *Spokeo* confirmed that Congress can identify intangible concrete harms redressable in federal court.

Article III of the Constitution extends the judicial power of federal courts to "Cases" and "Controversies," U.S. Const. art. III, § 2, and requires the litigant invoking the federal courts' jurisdiction to have "standing," the first element of which being that the litigant has suffered "an injury in fact." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014). *Spokeo* reiterated the long-standing rule that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "'Concrete' is not … necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549.

Importantly, and contrary to Defendants' inaccurate statements of law that a statutory violation alone cannot be sufficient, the Supreme Court expressly held that the violation of a statutory right—in and of itself—may be a concrete injury so long as the right protects a legislatively identified interest. *Compare Spokeo*, 136 S. Ct. at 1549 ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact…. [A] plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.") (emphasis in original) *with* CCL/VOMT Second Mot. for Summary Judgment at 8 ("*Spokeo* thus makes clear that a plaintiff must prove that he or she has suffered a real-world, concrete injury that actually exists separate and apart from a statutory violation.") *and* Mot. to Decertify at 2 ("[T]he allegation of a mere statutory violation—without more—cannot satisfy Article III's standing requirements").)

4

In short, *Spokeo*'s holding reaffirms the Seventh Circuit's governing rule, that "Congress has the power to 'enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.'" *See Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 294 (7th Cir. 2000) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n. 3 (1973)); *Sterk*, 770 F.3d at 623 (same); *Matmanivong v. Nat'l Creditors Connection, Inc.*, 79 F. Supp. 3d 864, 870 (N.D. Ill. 2015) (Kennelly, J.) (same).

To be sure, a plaintiff does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. But the relevant issue is not, as Defendants assert, "whether each [C]lass member suffered a concrete injury in fact *as a result* of an alleged violation of the TCPA." (*See* Mot. to Decertify at 11) (emphasis added).) Rather, the inquiry is whether Congress has exercised its "power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment)); *see also id*. at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights."). Where the injury is the invasion of a right tethered to—not "divorced from"—the harm Congress identified, then *Spokeo* poses no bar to standing. *See id.* at 1549 (majority opinion).

The issue, then, is whether Congress has created such a right with the TCPA—not, as Defendants would have it (and as Spokeo unsuccessfully argued to the Supreme Court), whether Class members suffered an additional harm resulting from the telephone calls. Even though receiving a prerecorded voice "may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be

concrete." *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (concluding that "[t]he invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled," which was sufficient to confer standing). That intangible harm, like violations of other privacy rights identified by Congress, is "concrete in the sense that it involves a clear *de facto* injury[.]" *In re Nickelodeon Consumer Privacy Litig.*, — F.3d —, No. 15-1441, 2016 WL 3513782, at *7 (3d Cir. June 27, 2016) (concluding in a federal statutory privacy case that "[n]one of [the] pronouncements" in *Spokeo* "call[] into question whether the plaintiffs in this case have Article III standing"). That's enough to establish Article III standing.

**B.  Congress's judgment and the common law confirm that a violation of the TCPA is a concrete injury.**

By virtue of the TCPA, Plaintiffs and the other Class members have a legally protected privacy interest in their right not to receive certain types of telephone calls. When Plaintiffs and Class members received such calls, that right was violated, and they suffered a classic intangible harm: invasion of privacy. In assessing whether a statute that allows recovery for an intangible harm adequately defines a concrete injury, both history and Congress's judgment play important roles. *Spokeo*, 136 S. Ct. at 1549. Considerations of both factors establish that Congress created a substantive concrete privacy interest when it passed the TCPA, which was invaded when Plaintiffs and the other Class members received the unlawful calls at issue. No more is required to establish Article III injury in fact.

As far as history is concerned, an individual's interest in privacy has long been recognized at common law. *See* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 220 n.1 (1890) (noting that, at the end of the 19th Century, the common law had already recognized a privacy interest for a century and a half). The TCPA furthers this

6

common law privacy interest by providing a federal cause of action to stop telemarketers from "escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012); *see also Mey v. GOT Warranty Inc.*, No. 5:15-cv-101, 2016 WL 3645195, at *3 (N.D.W.V. June 30, 2016) ("In essence, the TCPA can be seen as merely liberalizing and codifying the application of this common law tort to a particularly intrusive type of unwanted telephone call.").

And, "[e]ven if invasion of privacy were not a harm recognized as redressable through a common law tort claim, it would meet the requirement of concreteness as interpreted by *Spokeo* because Congress so clearly identified it as a legally cognizable harm." *Mey*, 2016 WL 3645195, at *4. "The judiciary clause of the Constitution … did not crystallize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy otherwise cognizable by the federal courts." *Nashville, C. & St. L. Ry. Co. v. Wallace*, 288 U.S. 249, 264 (1933). Congress therefore can create "new rights of action that do not have clear analogs in our common law tradition." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment). To do so, it must "identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." *Id*.

Here, the Congressional findings—which Defendants wholly ignore despite *Spokeo's* direction that this is the required inquiry—accompanying the TCPA repeatedly stress the same privacy-protecting aim that the Supreme Court recognized in *Mims*:

> (5) Unrestricted telemarketing, however, can be an *intrusive invasion of privacy*
> ….
> (6) Many consumers are outraged over the proliferation of *intrusive, nuisance calls* to their homes from telemarketers.
> * * * *
> (9) Individuals' *privacy rights*, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that *protects the privacy of individuals* and permits legitimate telemarketing practices.

(10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a *nuisance and an invasion of privacy*.

\* \* \* \*

(12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this *nuisance and privacy invasion*.

Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (found as a note to 47 U.S.C. § 227) (emphasis added). *See also* 137 Cong. Rec. 30, 821–30, 822 (1991) (statement of Senator Hollings) ("Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."); *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act*, 30 FCC Rcd. 7961 ¶ 1 (2015) ("Month after month, unwanted robocalls and texts … top the list of consumer complaints received by the [FCC].") (footnote omitted). Having found that prerecorded voice telemarketing calls "can be an intrusive invasion of privacy" and that "many consumers [were] outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes," Congress "provided complementary means of enforcing the [TCPA]," which includes a private right of action for consumers who received unlawful calls. *Mims*, 132 S. Ct. at 745-46 (2012).

Nothing in the *Spokeo* decision suggests that plaintiffs alleging statutory causes of action need to demonstrate any harm other than the one identified by Congress, a body that is "well positioned" to identify intangible harms and whose judgment is "instructive and important." *Spokeo*, 136 S. Ct. at 1549. Indeed, as noted above, the Supreme Court addressed Article III standing in a TCPA case during the same term as *Spokeo*, and none of the four separate opinions in that case raised the concern that a TCPA violation was not a sufficient injury. *See Campbell-*

8

*Ewald*, 136 S. Ct. at 669, 672 (stating the rule that parties must have a "concrete interest" in the litigation and holding that the plaintiff had such an interest); *id.* at 679 ("All agree that at the time Gomez filed suit, he had a personal stake in the litigation.") (Roberts, C.J., dissenting).

In sum, Congress found that prerecorded voice telemarketing calls constitute an invasion of privacy, and in passing the TCPA, it defined receipt of such a call as an injury. *Cf. Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment)). Thus, Plaintiffs and the other Class members do not need to "allege any *additional* harm beyond the one Congress has identified"—the invasion of privacy resulting from the unlawful calls. *See id.* (emphasis in original). They have Article III standing, this Court has jurisdiction, and class certification remains proper.

### C.    The TCPA is not procedural in nature.

Defendants note that in the context of a federal statutory cause of action, "a bare procedural violation" that is "divorced" from the harm Congress was trying to remedy does not result in concrete injury. (Mot. to Decertify at 6 (quoting *Spokeo*, 136 S. Ct. at 1549).) That's true but irrelevant here. The violations at issue in this case are directly tethered to, not divorced from, the harm that Congress identified.

Although Defendants make no attempt to explain how a violation of the TCPA is "procedural," a procedural statute, by definition, typically does not tell the regulated entity *what* to do (or what not to do). It tells the regulated entity *how* (or how not) to do something. *Cf. Spokeo*, 136 S. Ct. at 1550 (using "fail[ure] to provide [a] required notice" as an example of a "bare procedural violation"); *Lujan*, 504 U.S. at 572 (describing "procedural requirement for a hearing prior to denial of [a] license application" and "procedural requirement for an environmental impact statement before a federal facility is constructed"); *Summers v. Earth*

*Island Inst.*, 555 U.S. 488, 496 (2009) (treating denial of "the ability to file comments on some Forest Service actions" as "procedural injury"). Ensuring that a connection exists between a procedural right and a statutorily protected interest is necessary because "'procedural rights' are special." *Lujan*, 504 U.S. at 572 n.7. A plaintiff may vindicate a procedural right without altering the substantive result, i.e., the government may issue a revised environmental impact statement and still decide to build a federal facility next door. *Id.* But unless the disregard of the procedural requirement impairs a separate concrete interest of the plaintiff's, a suit to enforce a procedural right is little more than a suit to ensure the defendant follows the law. *Id.*; *Spokeo*, 136 S. Ct. at 1551 (Thomas, J., concurring) (noting that Article III's common-law history "required a further showing of injury for violations of 'public rights'—rights that involved duties owed to the whole community, considered as a community") (citation omitted).

That is not the case here. The portion of the TCPA that prohibits prerecorded voice calls does not require telemarketers to adopt certain procedures. Instead, it prohibits specific actions directed toward individual consumers, not because the consequences of those actions were undesirable, but because the practices were "invasive of privacy" in and of themselves. *See Mims*, 132 S. Ct. at 744 ("The [TCPA] bans certain *practices* invasive of privacy[.]") (emphasis added); *see also Booth v. Appstack, Inc.*, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (concluding that receiving junk telephone calls in violation of the [TCPA] is concrete and not procedural in nature). This kind of substantive statutory right cannot, by its nature, implicate the "bare procedural violation" problem that *Spokeo* addresses. *See, e.g., Church*, 2016 WL 3611543, at *3 n.2 (finding the "bare procedural violation" language in *Spokeo* "inapplicable" where "Congress provided [the plaintiff] with a substantive right [to receive certain information in a debt collection letter] . . . and [the plaintiff] has alleged that [the defendant] violated that

10

substantive right"); *Booth*, 2016 WL 3030256, at *5 (citing *Spokeo*, 136 S. Ct. at 1549-50);

*Rogers v. Capital One Bank (USA), N.A.*, No. 1:15-CV-4016-TWT, 2016 WL 3162592, at *2

(N.D. Ga. June 7, 2016) (holding that violations of the TCPA are concrete injuries); *see also*

*Spokeo*, 136 S. Ct. at 1552 (Thomas, J., concurring) ("[T]he concrete-harm requirement does not

apply as rigorously when a private plaintiff seeks to vindicate his own private rights. Our

contemporary decisions have not required a plaintiff to assert an actual injury beyond the

violation of his personal legal rights to satisfy the 'injury-in-fact' requirement.").

Ignoring these cases, Defendants point to the small handful of district courts applying

*Spokeo* to arguably procedural statutes that have found that plaintiffs don't have standing where

they can't allege the injury that a legislature intended to remedy when it required compliance

with the procedure. (Mot. to Decertify at 6-7; CCL/VOMT Second Mot. for Summary Judgment

at 9-11.) None of these cites inform the issues in dispute here. For example, in *Wall v. Michigan

Rental*, 2016 WL 3418539 (E.D. Mich. June 22, 2016), the plaintiffs' claim arose under RICO,

and the alleged predicate statutory violations involved a Michigan law that regulated a landlord's

use of security deposits. *Id.* at *3. The court reasoned that the plaintiffs lacked standing because

"there is no assertion that [d]efendants spent the deposits, used them for their own benefit, or

posed a risk of doing so—the sort of harms the statute was intended to prevent." *Id.* In other

words, because the alleged predicate statutory violations bore no connection to the interests

protected by the predicate statute, the plaintiffs lacked standing.

*Smith v. Ohio State University*, __ F. Supp. 3d __, 2016 WL 3182675 (S.D. Ohio June 8,

2016), is to the same effect. *Smith* arose, like *Spokeo*, under the Fair Credit Reporting Act. The

alleged statutory violation there was simply that although defendant sought and obtained

plaintiffs' authorization to run a credit report in connection with the plaintiffs' job applications, it

11

failed to do so in separate form as required by the FCRA. *Id.* at *1. That one-off procedural violation had no connection to the interest protected by the Act—ensuring "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). Without any other harm (the plaintiffs not only gave their authorization, they got the jobs they applied for), there was no concrete injury. *Id.* at *4. Further, at least one other district court has come to the conclusion that failure to provide a required disclosure under FCRA is both a violation of a "clearly substantive" protection and a concrete injury. *See Thomas*, 2016 WL 3653878, at *7-11.

Gubala v. Time Warner Cable, Inc.*, 2016 WL 3390415 (E.D. Wis. June 17, 2016) is no more applicable. There the plaintiff—who employed questionable pleading tactics—presented a claim for unlawful retention of personally identifiable information under the Cable Act, 47 U.S.C. § 551(e). The court dismissed the claim on the grounds that the plaintiff had not alleged "a concrete injury as a result of the defendant's retaining his personally identifiable information." 2016 WL 3390415, at *4. The court did not engage in the analysis dictated by *Spokeo*, but its holding is arguably consistent with *Spokeo*: the Cable Act, among other things, is intended "to protect the privacy of cable subscribers." H.R. Rep. 98-934, at 30. That interest is invaded by the disclosure of protected information, but retention on its own does not necessarily invade that interest. *Gubala* does include some dicta on what a plaintiff would need to show to establish injury in a disclosure action, but this can safely be disregarded. The court was neither presented with a disclosure claim, nor did it attempt to engage in the analysis set forth in *Spokeo* to determine whether violation of the statutory right to nondisclosure invaded the statutory interest of preserving the privacy of certain information. *See Gubala*, 2016 WL 3390415, at *4.

Next, the court in *Khan v. Children's National Health System*, __ F. Supp. 3d __, 2016 WL 2946165 (D. Md. May 19, 2016), was presented with a different question entirely: whether a

data breach, on its own, creates injury-in-fact. *Id.* at *3-*6. But the claims in that case were under the common law and general consumer protection statutes and the plaintiffs were unable to point to any findings of the Maryland General Assembly or D.C. City Council that suggested that those legislative bodies had identified a harm with respect to data breaches specifically. Here, on the other hand, Congress has identified Defendants' *exact conduct* as harmful and "important enough for a lawsuit." *Lane*, 2016 WL 3671467, at *3. Thus, *Khan*, like the other district court cases Defendants rely upon, is thus entirely inapplicable.

Finally, Defendants, in lengthy footnotes (repeated in both briefs), also attempt to distinguish the district court cases that have found the TCPA to grant substantive, not procedural, rights. (*See* Mot. to Decertify at 10-11, n.3; CCL/VOMT Second Mot. for Summary Judgment 11-12, n.46). Setting aside that it is inappropriate to evade page limits "by moving gobs of text into single-spaced footnotes," *Westinghouse Elec. Corp. v. N.L.R.B.*, 809 F.2d 419, 425 n.1 (7th Cir. 1987), Defendants are unable to persuasively distinguish the cases. First, they argue that *Rogers v. Capital One Bank* is incorrect because it relies on *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015), which, according to Defendants, is "flatly contradicted by *Spokeo*." (Mot. to Decertify at 10-11 n.3; CCL/VOMT Second Mot. for Summary Judgment at 11-12 n.46.) But the Eleventh Circuit disagrees and has made clear that it still considers *Palm Beach* to be good law. *See Church*, 2016 WL 3611543, at *3. Second, they suggest that *Booth v. Appstack, Inc.* held that the plaintiffs suffered an injury because they *pleaded* that they had to waste time answering telemarketing calls. (Mot. to Decertify at 10-11 n.3; CCL/VOMT Second Mot. for Summary Judgment 11-12 n.46.) Not so. The *Booth* court merely recognized that the wasted time is one reason "Congress agreed [that] such an injury is sufficiently concrete to confer standing." 2016 WL 3030256, at *5. Other

13

district courts have reached the same conclusion: the TCPA confers a substantive right, the violation of which is sufficient on its own to confer standing. *See, e.g.*, *Mey*, 2016 WL 3645195, at *3. Because Defendants' calls violated the TCPA, everyone who received one has standing to sue, and no individual inquires warrant the decertification of the Classes.

## II.     Defendants' Post Hoc Justifications for their Unlawful Calls Do Not Remedy Class Members' Injuries.

Defendants also contend that Plaintiffs and the other Class members lack standing because some spoke to a representative "to consider the free cruise offer" and were therefore uninjured. (Mot. to Decertify at 11; CCL/VOMT Second Mot. for Summary Judgment at 11.) Essentially, Defendants are taking the position that every single Class member lost the right to sue for a TCPA violation because a small portion of the Class purchased a vacation or timeshare. That position is flatly contradicted by the law.

Defendants provide only vague citations to *Spokeo* (*see* Mot. to Decertify at 11 (citing *Spokeo* for the proposition that "[e]vents that leave individuals unaffected or better off do not meet the 'usual meaning' of a 'real' injury")), even though *Spokeo* does not contain such a holding or support such a statement. It appears that they may be invoking the rule from Restatement (Second) of Torts § 920, which allows tortfeasors who harm the plaintiff but also "confer[] a special benefit to the interest of the plaintiff that was harmed" to consider "the value of the benefit conferred . . . in mitigation of damages." But Defendants cannot cite a single case where such a rule has been applied in the standing context, nor can they demonstrate that it has ever been accepted in this Circuit. Further, the comments to the Restatement explain that it doesn't even apply when the purported benefit relates to a different interest than the original injury. For example, "one who has harmed another's reputation by defamatory statements cannot show in mitigation of damages that the other has been financially benefited from their

14

publication." *Id.* cmt. b. Thus, even if that rule had been adopted in this Circuit and even if it had anything to do with standing (let alone in a way that changed after *Spokeo*), it wouldn't apply to this situation because a free cruise or timeshare does not relate to the privacy interest that was harmed when Plaintiffs and Class members received an unlawful phone call in the first instance.

In short, the injuries at issue here are invasive telephone calls. *Birchmeier*, 302 F.R.D. at 251 ("Here there is a common injury, resulting from receipt of the allegedly offending calls[.]"); *see also*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) ("Each class member suffered the same alleged injury, namely, receipt of at least one prerecorded prescription refill reminder call to the class member's cellular telephone without the recipient's prior express consent.") (Kennelly, J.). That invasion of privacy cannot be undone after it happens. And, while perhaps Defendants feel as though an offer of a so-called "free" cruise is enough to remedy an unlawful phone call, Congress has determined otherwise and its judgment must be respected. The TCPA sets out precisely the appropriate remedy for consumers who suffer such an invasion, and Plaintiffs seek that remedy in this suit, both on their own behalf and on behalf of the Classes.

## III. CCL/VOMT Cannot Obtain Summary Judgment.

CCL/VOMT—notably not joined by Berkley—have separately moved for summary judgment in addition to decertification based on their assertion that, in light of *Spokeo*, the Court no longer has subject matter jurisdiction. Their arguments range from merely wrong, (*see* CCL/VOMT Mot. for Summary Judgment at 8 (arguing that *Spokeo* requires additional resulting harm where Congress has defined a substantive right), to downright incomprehensible. (*See id.* at 11 (arguing that Plaintiffs lack standing to bring their claims on an individual basis because other Class members arranged for a "free cruise").) Here, again, CCL/VOMT's arguments are entirely wrong.

First, and as explained in detail above, Plaintiffs and Class members all have standing here as a result of Defendants' uniform violation of the TCPA. (*See* supra, Section I.)

Further, even if Plaintiffs did not have standing, CCL/VOMT couldn't get the relief they're seeking. A court without jurisdiction cannot grant summary judgment, it can only dismiss without prejudice. *Bhd. of Maint. of Way Employees Div./IBT v. Norfolk S. Ry. Co.*, 745 F.3d 808, 812 (7th Cir. 2014); *Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006) ("'No jurisdiction' and 'with prejudice' are mutually exclusive.").[1] Accordingly, CCL/VOMT's second summary judgment motion should be denied.

## IV.     The Core of Defendants' Decertification Argument Has Nothing to Do With *Spokeo*.

Finally, although Defendants cast their decertification motion as relating to *Spokeo*, their argument has effectively nothing to do with that case. Specifically, their core argument is that the Classes must be decertified because to do otherwise would deprive Defendants of their right to "litigate [their] statutory defenses to individual claims." (Mot. to Decertify at 8 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).) Defendants do not, however, identify any such defenses that they believe are relevant, let alone any such defenses that somehow arose because of *Spokeo*. Indeed, the only statute Defendants raise predates not only this case, but also the TCPA (and even touch-tone telephones). (Mot. to Decertify at 7 (citing Rules Enabling Act of 1934).) *See Parish v. Sheriff of Cook Cty.*, No. 07 C 4369, 2016 WL 1270400, at *1 (N.D. Ill. Mar. 31, 2016) ("[I]n the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by . . ..the opponent of the class.")

---

[1]     In any event, even if this case were to be dismissed, such dismissal would be without prejudice, and Plaintiffs would immediately refile in state court.

(quoting 3 W. Rubenstein, A. Conte & H. Newberg, Newberg on Class Actions § 7:47 (4th ed. 2011)). Further, *Spokeo* didn't mention statutory defenses to individual claims, nor does it have anything to do with class actions or class certification. *See* Spokeo, 136 S. Ct. at 1547 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing[.]") (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20 (1976)). There is no reason to relitigate class certification now.

Defendants next attempt to tie their attempt to reargue class certification to *Spokeo* by asserting that the defenses they intend to raise are supported by that decision. To that end, they cite *Spokeo* for the propositions that:

> [1] Class members who suffered no financial loss and who either benefited from the time spent on the phone or (at minimum) had no quarrel with the conversation do not have a "concrete interest that is affected" by the allegedly improper phone call.
> ***
> [2] Events that leave individuals unaffected or better off do not meet the "usual meaning" of a "real" injury.

(Mot. to Decertify at 10) (citations omitted). But *Spokeo* doesn't even come close to saying either of those things.

First, despite the Spokeo Petitioner's argument that an injury must be "palpable" for Article III purposes, *see* Reply Brief for Petitioner, *Spokeo, Inc. v. Robins*, No. 13-1339, 2015 WL 5731782, at *5 (U.S.), the Supreme Court specifically recognized that intangible (*i.e.* not financial) injuries "can nevertheless be concrete." *Spokeo*, 136 S. Ct. at 1549; *see also Lane*, 2016 WL 3671467, at *3 ("[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition."). Defendants' conclusion that Class members must show financial injury is therefore directly at odds with binding authority. *See Spokeo*, 136 S. Ct. at 1549; *Sterk*, 770 F.3d at 623 ("[Defendant] appears to confuse the separate issue of whether plaintiffs have suffered financial harm as a result of the disclosure with Article III's

17

injury-in-fact requirement for purposes of constitutional standing to bring suit in the first place."). Second, *Spokeo* contains not a *single mention* of the supposed rule that individuals who are left subjectively "better off" lack standing. Defendants invented it out of whole cloth to support arguments that they decided not to make at class certification and, as explained above, the argument lacks merit.

Spokeo similarly contains no support for Defendants' contention that all Class members must individually prove that they have standing. (*See* Mot. to Decertify at 7-8.) The governing rule in the Seventh Circuit is that "it is necessary . . . only for one named class plaintiff to have standing for the class to be certified," so "[t]he Court will not deny class certification based on the arguable lack of standing of certain unnamed class members." *Fox v. Riverview Realty Partners*, No. 12 C 9350, 2014 WL 1613022, at *3-4 (N.D. Ill. Apr. 22, 2014) (Kennelly, J.). Defendants suggest that *Spokeo* and *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), overrule the relevant Seventh Circuit authority *sub silentio*, but neither *Spokeo* nor *Tyson* address this issue. *Cf. Lane,* No. 15 C 10446, 2016 WL 3671467, at *5 ("It is worth noting too that the prior Seventh Circuit decisions addressing the concreteness of FDCPA injuries survived *Spokeo*, which established some general principles but did not contain a holding specific enough to overrule Seventh Circuit law on the FDCPA."). Even the portion of Chief Justice Roberts's concurring opinion in *Tyson* cited by Defendants didn't relate to class certification, but to the distribution of a damage award in a case where some class members suffered no invasion of a legal right at all. *See Tyson*, 136 S. Ct. at 1052-53. That hardly supports the conclusion that the Court must inquire into whether each individual absent Class member was or "w[as] not irritated or annoyed by the call," as Defendants claim. (*See* Mot. to Decertify at 9-10.) In any event, the

Court need not reach that issue here, because, as explained in detail above, every Class member was injured and would have standing to bring an individual claim.

In the end, the Court has already concluded that "[h]ere there is a common injury, resulting from receipt of the allegedly offending calls." *Birchmeier*, 302 F.R.D. at 251. Defendants do not, and indeed cannot, cite to any portion of *Spokeo* that changes that conclusion, and their attempt to relitigate class certification with no new evidence under the guise of *Spokeo* should be summarily rejected. As long as receipt of a call in violation of the TCPA is a concrete injury (and as described in detail above, it is), then Plaintiffs and all the other Class members have standing.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Decertify and CCL/VOMT's Second Motion for Summary Judgment should be denied, and the case should proceed to trial.

Respectfully submitted,

**GERARDO ARANDA**, **GRANT BIRCHMEIER**, **STEPHEN PARKES**, and **REGINA STONE**, on behalf of themselves and the Classes,

Dated: July 21, 2016

By: /s/ Eve-Lynn J. Rapp

Jay Edelson
Eve-Lynn J. Rapp
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Email: jedelson@edelson.com
jedelson@edelson.com
erapp@edelson.com

Rafey S. Balabanian
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, CA 94107
Tel: 415.212.9300
Fax: 415.373.9435
rbalabanian@edelson.com

*Counsel for Plaintiffs and the Classes*

Scott R. Rauscher
Michael Kanovitz
Jonathan I. Loevy
LOEVY & LOEVY
312 N. May Street, Suite 100
Chicago, Illinois 60607
Telephone: (312) 243-5900
Email: scott@loevy.com
mike@loevy.com
jon@loevy.com

*Counsel for Plaintiffs and the Classes*

Scott D. Owens
LAW OFFICES OF SCOTT D. OWENS, ESQ.
664 East Hallandale Beach Boulevard
Hallandale, Florida 33009
Telephone: (954) 306-8104
Email: scott@scottdowens.com

*Counsel for Stone*

## CERTIFICATE OF SERVICE

I, Eve-Lynn J. Rapp, an attorney, hereby certify that on July 21, 2016, I served the above and foregoing *Plaintiffs' and the Classes Combined Memorandum in Opposition to Defendants' Motion to Decertify and CCL and VOMT's Second Motion for Summary Judgment,* by causing the true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on this the 21st day of July 2016.

/s/ Eve-Lynn J. Rapp