IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and classes of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 12 C 4069 |
| CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Gerardo Aranda, Grant Birchmeier, Stephen Parkes, and Regina Stone filed suit on behalf of themselves and similarly situated individuals against Caribbean Cruise Line, Inc. (CCL), Vacation Ownership Marketing Tours, Inc. (VOMT), The Berkley Group, Inc., and Economic Strategy Group and its affiliated entities (collectively ESG). Plaintiffs alleged that defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by using an autodialer and an artificial or prerecorded voice to call their cellular and landline phones. According to plaintiffs, ESG placed millions of calls to consumers who did not consent to receive them. The nominal purpose of the calls was to conduct public opinion surveys, but plaintiffs alleged that the calls were in fact

telemarketing calls designed to sell vacation products at the direction and on behalf of CCL, VOMT, and Berkley.

Plaintiffs moved to certify two classes, one consisting of consumers who received calls to their cellular telephones and the other consisting of consumers who received calls to their residential landlines. In opposition to plaintiffs' motion to certify, defendants argued (among other things) that the proposed classes lacked commonality under Rule 23(a) and that Rule 23(b)(3) prohibited certification because individual issues would predominate over common ones. Specifically, defendants argued that plaintiffs' claimed injuries and their associated damages varied widely: some plaintiffs would be able to show they received a call and ascertained that it was one of the allegedly unlawful calls, but others would not be able to demonstrate they received a call at all, and still others would be able to show they received a call but did not hear its contents.

In August 2014, the Court certified two classes of persons who allegedly received calls featuring prerecorded messages from ESG between August 2011 and August 2012. Individuals in the first class, represented by Aranda, Parkes, Stone, and Birchmeier, allegedly received calls on their cellular telephones. Individuals in the second class, represented by Stone alone, allegedly received calls on their residential landlines. Each class was defined as follows:

> All persons in the United States to whom (1) one or more telephone calls were made by, on behalf, or for the benefit of the Defendants, (2) purportedly offering a free cruise in exchange for taking an automated public opinion and / or political survey, (3) which delivered a message using a prerecorded or artificial voice; (4) between August 2011 and August 2012, (5) whose (i) telephone number appears in Defendants' records of those calls and / or the records of their third party telephone carriers or the third party telephone carriers of their call centers or (ii) own records prove that they received the calls—such as their telephone records, bills, and / or recordings of the calls—and who submit an affidavit

or claim form if necessary to describe the content of the call.

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014).

In granting plaintiffs' motion for class certification, the Court disagreed that the proposed classes lacked commonality because they "by definition received the same calls offering a free cruise in exchange for a political or public opinion survey, made by or for one of the defendants, using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question." *Id.* at 251. The Court explained that plaintiffs were alleging "a common injury, resulting from receipt of the allegedly offending calls, not to mention common questions regarding the liability of the defendants who did not themselves place the calls." *Id.* The Court also rejected the argument that individual issues would predominate over common ones. It explained:

> As noted earlier, the common question among class members is whether they received calls fitting the description in the class definitions. These definitions do not leave much room for variation and are undoubtedly common to each class member: offer of a free cruise, offer made in exchange for participation in a political or public opinion survey; use of a prerecorded or artificial voice; date of call; by, on behalf of, or for the benefit of defendants. Defendants have not shown that any of these elements will be subject to variation among those described in the proposed class definitions. To put it another way, whether a particular defendant is liable is not an *individual* issue among class members. . . . Furthermore, defendants' contention about calculation of individual damages is a non-issue in terms of predominance. Plaintiffs are asking only for statutory damages, which eliminates individual variations.

*Id.*

Defendants sought permission from the court of appeals to appeal the class certification order under Federal Rule of Civil Procedure 23(f). The court of appeals denied defendants' request. *See In re Caribbean Cruise Line, Inc.*, No. 14-8021 (7th Cir. Oct. 10, 2014).

3

In April 2016, the Court granted partial summary judgment for the plaintiffs, finding that they had established that the calls that the plaintiffs in the cell phone class received from ESG violated the TCPA. *See Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 1555576, at *4–7 (N.D. Ill. Apr. 18, 2016). The Court granted partial summary judgment because the evidence showed the calls were made using a prerecorded voice, the recording was played on every call without regard to whether the recipient gave a voice response, no plaintiff gave prior express consent to be called, and no statutory or regulatory exemption applied. The Court's ruling did not determine which defendants were responsible for the TCPA violation. That issue remains for trial.

The Court denied plaintiffs' motion seeking a determination of defendants' TCPA liability for the landline calls. The Court determined that were a jury to conclude that the calls were made exclusively by and for ESG (a tax-exempt non-profit organization) for a non-commercial purpose, FCC regulations would exempt the calls from liability. *Id.* at *9. The Court also denied defendants' motions for summary judgment, finding that disputes of material fact persisted regarding the purpose of the calls and the relationships between and among the defendants.

In May 2016, the Supreme Court decided *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In *Spokeo*, the Court vacated and remanded a Ninth Circuit decision finding that a plaintiff asserted a concrete and particularized injury sufficient to confer constitutional standing where he sued based on a defendant's violation of a consumer protection statute. Defendants, relying on *Spokeo*, have renewed their motion for summary judgment and have moved to decertify the classes.

**Discussion**

"Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)). The first of these three elements is that the plaintiff must have suffered an "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The injury must also be "fairly traceable to the challenged action of the defendant" and redressable through judicial action. *Id.*

In *Spokeo*, the Supreme Court considered a case in which a plaintiff brought suit to enforce the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681e(b), a consumer protection statute intended to ensure "fair and accurate credit reporting," *id.* § 1681(a)(1). The defendant, Spokeo Inc., was alleged to be a consumer reporting agency that operated a website through which users could search for information about a person by inputting that person's name, e-mail address, or telephone number. In response to an online inquiry, Spokeo would search its databases and provide information to the searcher about the search subject, such as his or her address, telephone number, marital status, age, occupation, finances, and education. The plaintiff, Thomas Robins, sued Spokeo when he learned that the company incorrectly reported that he was married with children, in his fifties, gainfully employed, affluent, and highly educated. This, Robins claimed, violated the FCRA, which provides that consumer reporting agencies must "follow reasonable procedures to assure maximum

5

possible accuracy" of consumer reports. 15 U.S.C. § 1681e(b).

The district court dismissed Robins's complaint for lack of subject matter jurisdiction based on the absence of an injury-in-fact sufficient to confer constitutional standing under Article III, but the Ninth Circuit reversed. The court first observed that under Ninth Circuit precedent, "the violation of a statutory right is usually a sufficient injury in fact to confer standing." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014). It then found that Robins had standing to sue because his asserted injury was concrete and particularized, traceable to Spokeo's conduct, and redressable through litigation. Specifically, the appellate court found that Robins's injury was sufficiently concrete and particularized because he alleged that Spokeo "violated *his* statutory rights, not just the statutory rights of other people," and his personal interests in the handling of his credit information [were] individualized rather than collective." *Id.* at 413.

The Supreme Court disapproved of the Ninth Circuit's reasoning. It explained that "concreteness" and "particularization" are distinct concepts and that both most exist for a plaintiff to have standing. The Court observed that the two reasons the Ninth Circuit gave for finding Robins had suffered an injury-in-fact—that his, not just other people's, rights were violated, and that his interests in the handling of his credit information were individualized—demonstrated only that the harm he alleged was particularized. They did not, however, demonstrate that his injury was concrete. The Court explained that "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist. When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548. Because the Ninth Circuit did not consider the extent to which Robins alleged more than a "bare

6

procedural violation," *id.* at 1549, the Court vacated the appellate court's judgment and remanded the case for further proceedings.

Defendants argue that *Spokeo* clarified that an injury must be both "concrete" and "particularized" to satisfy Article III and that the bare violation of a consumer protection statute does not amount to a "concrete" injury. They contend that plaintiffs have alleged only that defendants violated the TCPA, not that the defendants caused any concrete harm as a result of their statutory violation. As support for this contention, defendants point out that plaintiffs seek only statutory damages and not actual damages.

Defendants also argue that even if some plaintiffs did suffer concrete and particularized harm, the classes should be decertified because many other plaintiffs did not. For example, many plaintiffs incurred no charges related to the calls they received. Included among that large group are plaintiffs who did not personally answer the calls they received, plaintiffs who answered calls and were not irritated or annoyed by them, and plaintiffs who, according to defendants, benefited from the calls by staying on the line and accepting the defendants' vacation product offer. Defendants argue that determination of whether and to what extent these plaintiffs were injured requires a plaintiff-by-plaintiff inquiry that undermines the commonality of the classes and predominates over common issues, in contravention of Rules 23(a) and 23(b)(3).

*Spokeo* was not the first case to set forth that an injury must be both concrete and particularized to suffice as an injury-in-fact for the purposes of constitutional standing. (That said, it may have been the first case in which the Court opined on the distinction between the two concepts. *See Spokeo*, 136 S. Ct. at 1555 (Ginsburg, J.,

7

dissenting) ("The Court's opinion observes that time and again, our decisions have coupled the words 'concrete *and* particularized.' True, but true too, in the four cases cited by the Court, and many others, opinions do not discuss the separate offices of the terms 'concrete' and 'particularized.'") (internal citations omitted)). Indeed, concreteness and particularity have been the twin pillars of a justiciable injury-in-fact for at least forty years. *See, e.g.*, *Duke Power Co. v. Car. Envtl. Study Grp., Inc.*, 438 U.S. 59, 80 (1978) ("Where a party champions his own rights, and where the injury alleged is a concrete and particularized one which will be prevented or redressed by the relief requested, the basic practical and prudential concerns underlying the standing doctrine are generally satisfied when the constitutional requisites are met."). The Court in *Spokeo* also explained that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549. But this too was well-settled law. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Lujan*, 504 U.S. at 572.

More importantly, the Court did not find that Robins's asserted injury was not concrete. Rather, the Court simply observed that the Ninth Circuit failed to consider the question adequately. The Supreme Court did not reverse the Ninth Circuit outright; instead, it vacated the appellate court's judgment and remanded the case so the court could more carefully examine whether Robins's asserted harms were concrete.

The Supreme Court in *Spokeo* did, however, set forth a blueprint for evaluating whether an alleged injury is sufficiently concrete to qualify for purposes of the standing inquiry. The Court implied that tangible harms are generally sufficient to constitute a concrete injury, but a justiciable case or controversy can still exist even when the harms

8

the plaintiff alleges are intangible.  It cautioned courts that "concrete" is not a synonym for "tangible," for "we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."  *Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009), and *Church of Lukumi Bablu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)).

To identify whether an intangible injury is concrete, "both history and the judgment of Congress play important roles."  *Spokeo*, 136 S. Ct. at 1549.  The Court observed that because the case-or-controversy requirement at the heart of the standing inquiry "is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.* at 1549 (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)).  The Court also encouraged courts to defer to some extent to Congress's judgment, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements."  *Spokeo*, 136 S. Ct. at 1549.  This is why the Court has recognized Congress's power to "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law" and to "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."  *Id.* (internal citations and quotation marks omitted).  But, the Court cautioned, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.*

As defendants point out, a handful of district courts have, since *Spokeo*, conducted this analysis in similar cases and determined that plaintiffs like Robins lack standing to sue because they do not allege concrete injuries. For example, in *Smith v. Ohio State University*, plaintiffs applying to work for the defendant alleged that the defendant requested consent to pull their credit reports during the hiring process, providing a disclosure and authorization that included extraneous information. *See Smith v. Ohio State Univ.*, No. 2:15 C 3030, 2016 WL 3182675, at *1 (S.D. Ohio June 8, 2016). Plaintiffs sued the defendant under the FCRA, which provides that "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless . . . the consumer has authorized in writing . . . the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2)(A)(ii). The court found that the plaintiffs lacked standing to sue because they had not identified a concrete and particularized injury-in-fact. It noted the Supreme Court's observation in *Spokeo* that "[a] violation of one of the FCRA's procedural requirements may result in no harm," *Spokeo*, 136 S. Ct. at 1540, and it found that this was precisely what had occurred, because the plaintiffs "admitted that they did not suffer a concrete consequential damage as a result of OSU's alleged breach of the FCRA." *Smith*, 2016 WL 3182675, at *4.

Likewise, in *Gubala v. Time Warner Cable, Inc.*, another district court found that a plaintiff failed to allege a concrete injury where his suit was based on the defendant's failure to abide by the Cable Communications Policy Act, 47 U.S.C. § 551(e), which required it to destroy records containing his personal information. *See Gubala v. Time Warner Cable, Inc.*, No. 15 C 1078, 2016 WL 3390415, at *1 (E.D. Wis. June 17, 2016).

In *Khan v. Children's National Health System*, plaintiffs alleged violations of the Maryland Consumer Protection Act and the District of Columbia Consumer Protection Procedures Act, along with claims of negligence, breach of implied contract, and unjust enrichment under state law, contending that the defendant's alleged failure to "take sufficient steps to protect [the plaintiffs' sensitive personal information] through encryption, passwords, or other measures" led to a data breach that left this information exposed. *Khan v. Children's Nat'l Health Sys.*, No. TDC-15-2125, 2016 WL 2946165, at *1 (D. Md. May 19, 2016). The plaintiffs "[did] not claim that [they] or anyone else affected by the data breach [had] learned of any misuse" of their personal data, *id.*, but they claimed they were injured nonetheless because "the violations of state statutes and common law alleged in the Complaint establish[ed] standing," *id.* at *7. The court found that this was a bare procedural violation, and that because the plaintiffs "failed to connect the alleged statutory and common law violations to a concrete harm," the plaintiffs lacked standing to sue. *Id.*

Like the statute allegedly violated in *Spokeo*, the statutes at issue in each of these cases imposed record-keeping and procedural obligations on the defendants. The Supreme Court noted in *Spokeo* that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998), and *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). But in other circumstances, a plaintiff would need to show more than the mere violation of a procedural right. Section 1681e(b) of the FCRA, the Court

explained, was in the latter group of cases. "[N]ot all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Spokeo*, 136 S. Ct. at 1550.

The Supreme Court's point in *Spokeo* was not that a statutory violation cannot constitute a concrete injury, but rather that where the bare violation of a statute conferring a procedural right could cause a congressionally identified harm or material risk of harm and just as easily could not, it is not sufficient simply to allege that the statute at issue was violated. Failure to ensure the accuracy of a consumer report may result in a harm or material risk of harm the FCRA was intended to curb—loss of employment opportunities, for example, or a decrease in the consumer's creditworthiness. But it may also fail to cause any harm or material risk of harm at all. Put differently, the procedural rights imposed through section 1681e(b) are attenuated enough from the interests Congress identified and sought to protect through the FCRA that charging a defendant with violating them is not necessarily the same as charging the defendant with causing a congressionally-identified concrete injury that gives rise to standing to sue.

The same cannot be said of the TCPA claims asserted in this case. Unlike the statute at issue in *Spokeo* (and those at issue in *Smith*, *Gubala*, and *Khan*), the TCPA section at issue does not require the adoption of procedures to decrease congressionally-identified risks. Rather, section 227 of the TCPA prohibits making certain kinds of telephonic contact with consumers without first obtaining their consent. It directly forbids activities that by their nature infringe the privacy-related interests that

12

Congress sought to protect by enacting the TCPA. There is no gap—there are not some kinds of violations of section 227 that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients.

In any event, section 227 establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive. Both history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, *de facto* injury. As other courts have observed, American and English courts have long heard cases in which plaintiffs alleged that defendants affirmatively directed their conduct at plaintiffs to invade their privacy and disturb their solitude. *See, e.g.*, *Mey v. Got Warranty, Inc.*, No. 5:15 C 101, 2016 WL 3645195, at *3 (N.D.W.V. June 30, 2016) ("[T]he TCPA can be seen as merely liberalizing and codifying the application of [a] common law tort to a particularly intrusive type of unwanted telephone call."); *Caudill v. Wells Fargo Home Mort., Inc.*, No. 5:16-066-DCR, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) ("[The] alleged harms, such as invasion of privacy, have traditionally been regarded as providing a basis for a lawsuit in the United States."). And Congress enacted the TCPA to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, granting protection to consumers' identifiable concrete interests in preserving their rights to privacy and seclusion.

Defendants cite a recent decision by a judge in the Central District of California who found no concrete injury where the named plaintiff alleged she received an unsolicited sales call from the defendant using an autodialer or artificial or prerecorded

voice in violation of section 227. *See Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339-AB (DTBx), slip op. at 6 (C.D. Cal. July 29, 2016). There, the court found that the mere violation of section 227 did not constitute a concrete injury and that any conceivable tangible and intangible harms associated with the call were too insignificant to rise to the level of a justiciable injury-in-fact. *Id.* at 5–6.

The Court respectfully disagrees with the reasoning of the judge in *Aitima Medical Equipment*. In contrast to statutes that impose obligations regarding how one manages data, keeps records, or verifies information, section 227 of the TCPA directly prohibits a person from taking actions directed at consumers who will be actively touched by that person's conduct. It does not matter whether plaintiffs lack additional tangible harms like loss of cell phone battery life, actual annoyance, and financial losses; Congress has identified that such unsolicited telephonic contact constitutes an intangible, concrete harm, and plaintiffs have alleged such concrete harms that they, themselves suffered. Their injuries are concrete and particularized, traceable to defendants' conduct, and judicially redressable. For these reasons, the Court overrules defendants' argument for summary judgment based on plaintiffs' purported lack of standing.

The same reasoning also explains why defendants' argument for decertification cannot carry the day. Defendants insist that because a mere statutory violation does not equate to a concrete harm sufficient to establish an injury in fact, the only plaintiffs with standing to sue would be those who suffered additional harm beyond the mere violation of their statutory rights—namely, plaintiffs who claim to have incurred monetary costs from the calls they received and plaintiffs who were in fact irritated or annoyed by

14

the calls. Accordingly, defendants argue that whether and to what extent each plaintiff was injured is a question that must be answered individually for each plaintiff.

This argument fails for two reasons. First, all of the plaintiffs in the two certified classes have alleged a common, concrete injury. As explained above, the intangible, concrete injury plaintiffs allege is that defendants violated a right Congress sought to protect through section 227: the right to be free from prerecorded non-emergency telemarketing calls they did not consent to receive. This concrete injury is alleged to have been suffered by every plaintiff—even plaintiffs who completed the survey, spoke with a CCL representative, and accepted defendants' vacation offer had a right to be free from unsolicited telemarketing calls, just as a homeowner has a right to be free from trespass even if she accepts a gift from the trespasser after he commits the offense. The key common question is whether defendants made unlawful calls to plaintiffs using a prerecorded voice without consent to make them; plaintiffs win if the answer to this question is yes, and defendants win if the answer is no. The classes therefore meet the commonality requirement imposed under Rule 23(a).

Second, given plaintiffs' choice to seek only statutory damages, common issues very clearly continue to predominate over individual ones. Defendants may be right that some plaintiffs were more irritated by the calls than others and some experienced monetary losses while others did not. But plaintiffs seek redress only for the single, common injury inflicted by violating their rights to be free from unsolicited telemarketing calls. To determine whether such an injury occurred, a jury need not determine the degree to which each plaintiff was annoyed, the amount of battery life or prepaid minutes each plaintiff lost, or the charges each plaintiff incurred for the calls.

Foregoing their right to seek actual damages based on their injuries has no effect on plaintiffs' standing to sue, for, as another court in this district recently noted, "[w]hether a case is within a court's power to adjudicate does not turn on the potential offsets to the alleged injury." *Johnson v. Yahoo!, Inc.*, No. 14 C 2028, Tr. of Rec. at 7:12–14 (N.D. Ill. July 25, 2016). But the fact that plaintiffs seek only statutory damages does affect whether their injuries must be determined on an individual basis. Because plaintiffs seek only the set statutory amount, factors that might affect the gravity of any variegated actual losses plaintiffs may have suffered are irrelevant. Thus the classes, as certified, continue to satisfy Rule 23(b)(3)'s predominance requirement.

## Conclusion

For the foregoing reasons, the Court denies defendants' motions to decertify the classes [dkt. no. 428] and for summary judgment [dkt. no. 434].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 23, 2016