**IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and a class of others similarly situated, *Plaintiffs*, | |
| *v.* | Case No. 1:12-cv-04069 |
| CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., *Defendants*. | The Honorable Matthew F. Kennelly |

**PLAINTIFFS' AND THE CLASSES' MOTION FOR PRELIMINARY APPROVAL**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    TERMS OF THE SETTLEMENT ........................................................................4

        A.      Class Definition ........................................................................................4

        B.      Monetary Relief ........................................................................................4

        C.      Settlement Fund Payments........................................................................6

        D.      Prospective Relief .....................................................................................6

        E.      Payment of Notice and Administration Expenses,
                Including Notice ........................................................................................7

        F.      Incentive Awards and Attorneys' Fees .....................................................7

        G.      Release of Liability....................................................................................7

IV.     THE PROPOSED SETTLEMENT WARRANTS
        PRELIMINARY APPROVAL .............................................................................. 7

        A.      The Strength of the Plaintiffs' Case Compared to the Amount of the
                Settlement Offer Favors Preliminary Approval.......................................9

        B.      The Potential Length, Complexity, and Expense of Further
                Litigation Favor Preliminary Approval ..................................................14

        C.      The Opinion of Competent Counsel Supports
                Preliminary Approval ..............................................................................14

        D.      The Stage of the Proceedings and the Amount of Discovery
                Completed Support Preliminary Approval ..............................................16

V.      THE PROPOSED METHOD OF NOTICE SHOULD
        BE APPROVED .................................................................................................. 17

VI.     CONCLUSION .................................................................................................... 19

## TABLE OF AUTHORITIES

**Supreme Court Cases**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)............................................................................17

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)....................................................................3, 10

**United States Court of Appeals Cases**

*Armstrong v. Bd. Of Sch. Directors of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) *overruled on other grounds* .......................7, 8, 16

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ..............................................................9

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ........................................................8, 10, 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .................................................... *passim*

*Walker v. Mitsubishi Motor Mfg. of Am., Inc.*,
    113 F. App'x 711, 712 (7th Cir. 2004) .............................................5

**United States District Court Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07-cv-2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)...........................9

*Aranda v. Caribbean Cruise Line, Inc.*,
    No. 12 C 4069, 2016 WL 1555576 (N.D. Ill. Apr. 18, 2016).........................2, 3

*Aranda v. Caribbean Cruise Line, Inc.*,
    No. 12 C 4069, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016)......................3, 14

*Arthur v. Sallie Mae, Inc.*,
    No. 2:10-cv-00198, Dkt. 266 (W.D. Wash. Sept. 17, 2012)...........................12

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014)............................................................................2, 5, 15

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ..............................................................................6

*Ellison v. Steven Madden, Ltd.*,
   No. 11-cv-5935, Dkt. 73 (C.D. Cal.) ...............................................................................15

*Flood v. Dominguez*,
   No. 08-cv0153 (N.D. Ind.)................................................................................................16

*Hashw v. Dept. Stores Nat'l Bank*,
   — F. Supp. 3d —, No. 13-727-RHK, 2016 WL 1729525
   (D. Minn. Apr. 26, 2016) ..................................................................................................12

*Hopwood v. Nuance Communications, Inc.*,
   No. 13-cv-2132, Dkt. 101-1 (N.D. Cal.) ..........................................................................11

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010)...............................................................................8, 10, 17

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................................................9

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................................ 10-12

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
   No. 3:11-md-02261, Dkt. 97 (S.D. Cal. Feb. 20, 2013) ...................................................12

*In re Northfield Labs., Inc. Sec. Litig.*,
   No. 06-cv-1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012)........................................8, 17

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill, Feb. 29, 2016)............................................17

*In re Southwest Airlines Voucher Litig.*,
   No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ..........................................9

*Kazemi v. Payless Shoesource, Inc.*,
  No. 3:09-cv-05142, Dkt. 94 (N.D. Cal. Apr. 2, 2012) ..................................................... 12

*Kessler v. Am. Resorts Int'l*,
  No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ........................................ 8

*Kolinek v. Walgreen, Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ............................................................................. 12, 15

*Kramer v. Autobytel, Inc., et al.*,
  No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) ................................................................. 12

*Kran v. Hearst Communications, Inc.*,
  No. 0:15-cv-02058-MJD-BRT (D. Minn.) ................................................................... 11

*Rojas v. Career Educ. Corp.*,
  No. 10-cv-05260 (N.D. Ill.) ........................................................................................ 15

*Satterfield v. Simon & Schuster, Inc., et al.*,
  No. 06-cv-2893, Dkt. 132 (N.D. Cal. 2010) ................................................................. 12

*Schulte v. Fifth Third Bank*,
  No. 09-cv-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ...................................... 12

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................................... 13

*Weinstein v. The Timberland Co., et al.*,
  No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) ................................................................... 12

*Wright, et al. v. Nationstar Mortgage, LLC*,
  No. 14-cv-10457 (N.D. Ill.) ........................................................................................ 15

*Young v. County of Cook*,
  No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) ........................................... 14

## **Rules & Statutes**

Fed R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 53 ..................................................................................................... 5

## **Miscellaneous**

William B. Rubenstein, *Newberg on Class Actions* § 12:20 (5th ed.)............................................5

## I.    INTRODUCTION.

After more than four years of hard fought litigation in a "bet the company" case—a path that took the parties through fact and expert discovery, class certification, summary judgment, an attempt at decertification, and to the brink of trial—Plaintiffs are pleased to report the parties have reached a proposed class action settlement that, if approved, promises to go down as the largest TCPA settlement in history. And, not only that, the proposed settlement—reached literally four (4) days before the start of trial with the aid of the Honorable Wayne R. Andersen (ret.) of JAMS—is vastly superior to other TCPA settlements when comparing the most relevant part of any class settlement: how much will individual class members receive. In all, the settlement agreement (the "Settlement" or "Agreement")[1] can only be characterized as precedent setting, and for the reasons explained below, is deserving of this Court's preliminary approval.

The Settlement is exceptional and warranting approval for three primary reasons: (1) it is among a handful of deals that affords the per call, not per claimant, relief that the TCPA provides; (2) the anticipated monetary payment per call greatly exceeds (by many multiples) the amount typically available in settlements with a single payout without regard to the number of violative calls received; and (3) it provides for a common fund of up to $76 million, making it potentially the largest TCPA settlement ever reached. Specifically, Defendants have agreed to create a cash settlement fund of no less than $56 million—and up to $76 million—from which all class members' claims will be paid. Each class member who submits a valid claim will be entitled to $500 per call unless the $76 million ceiling is reached. If it is, then class members will receive a *pro rata* share of the fund (based on the number of calls they received), after the costs of notice and administration, a reasonable incentive award to Plaintiffs, and any attorneys' fees awarded by the Court are paid.

---

[1]    A copy of the Settlement Agreement is attached hereto as Exhibit 1.

By any measure, this Settlement is an extraordinary result. In only a handful of TCPA settlements do class members have the ability to recover based on the number of allegedly unlawful calls received. Indeed, recovery in other TCPA settlements is typically limited to a single flat rate ranging from less than $25 in cash or coupons to at most $200. But here, and even though establishing the number of calls received by the class members has always been a hotly disputed issue in this lawsuit, class members are set up to recover per call, at the full statutory amount of $500. Such relief is almost unprecedented, and it's in large part the reason why the settlement is so extraordinary. Also important, the Settlement provides meaningful prospective relief requiring Defendants to perform audits of their calling practices going forward to ensure that the conduct that gave rise to this litigation is not repeated.

Given this backdrop, there is no question that this Settlement should be viewed as fair, adequate and reasonable, and well within the range of possible approval. Accordingly, Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval to the Settlement, (ii) approving the proposed notice plan, and (iii) scheduling a final fairness hearing.

## II.    BACKGROUND.

The Court described the facts of this case in detail in its April 18, 2016 summary judgment order. *See Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 1555576, at *1-3 (N.D. Ill. Apr. 18, 2016). Briefly and for context, Plaintiffs claim that a telemarketing company, ESG and/or its other related entities, placed prerecorded voice calls to class members' cellular and landline telephones "to drum up business for [Defendants] CCL, VOMT, and Berkley as their agent" in violation of the TCPA. *Id.* at *2. After certifying two classes, *see Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014), the Court granted partial summary judgment to Plaintiffs, holding that the calls ESG (and/or its agents)

made to consumers' cellular phones violated the TCPA. *See Aranda*, 2016 WL 1555576, at *7.

Thus, the only issues remaining for trial were 1) whether CCL, VOMT, and Berkley would be

held vicariously liable for the calls placed on their behalf, and 2) whether the TCPA's political

survey exception applied to the calls placed to landline phones. *Id*. at *9, 13. As the parties were

preparing for trial, Defendants moved for summary judgment (for a second time) and to decertify

the class based on the Supreme Court's recent opinion in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540

(2016). The Court denied both motions. *Aranda v. Caribbean Cruise Line, Inc.*, 2016 WL

4439935 (N.D. Ill. Aug. 23, 2016).

The parties engaged in settlement negotiations several times throughout the litigation,

including by taking part in two separate day-long mediation sessions presided over by Judge

Andersen at JAMS (Chicago) on May 20, 2014, and then again on July 1, 2015. Despite their

best efforts, they were unable to reach a deal until the week before trial. (*See* Declarations of Jay

Edelson at ¶ 4 and Scott Rauscher at ¶ 4, attached hereto as Exhibits 2 and 3, respectively.) The

main impediment to settlement was the fact that the parties had widely disparate views of the

risks that each faced should the case not settle and thus, as to the overall value of the case.

Consequently, and despite a mediator's proposal from Judge Andersen, the parties were unable to

reach a settlement until now. And even now, reaching a deal was no easy task either; rather, for

the last six (6) weeks, the parties—and always with Judge Andersen by their side—worked

feverishly into the night, on weekends, and up to the eve of trial before they were able to finally

reach a deal. But, with the assistance of Judge Andersen—and more than a year after their last

attempt at settlement negotiations broke down and with only four days before the scheduled trial

date—the parties reached a memorandum of understanding that they presented to the Court at the

final pretrial conference and hearing on motions *in limine*. (Edelson Declaration ¶ 7; Rauscher

Declaration ¶ 4.) And, that memorandum of understanding forms the basis for the Settlement

Agreement now before the Court.

## III.     TERMS OF THE SETTLEMENT.

The core terms of the Settlement are summarized briefly below, and are set forth in full

detail in the Settlement Agreement attached as Exhibit 1:

**A.     Class Definition:** The "Settlement Class" as defined in the Agreement is

unchanged from the Court's class certification order and includes two classes—one for

individuals that received cellular phone calls and another for those who received landline calls—

each defined as:

> All persons in the United States to whom (1) one or more telephone calls were
> made by, on behalf, or for the benefit of the Defendants, (2) purportedly offering
> a free cruise in exchange for taking an automated public opinion and/or political
> survey, (3) which delivered a message using a prerecorded or artificial voice; (4)
> between August 2011 and August 2012, (5) whose (i) telephone number appears
> in Defendants' records of those calls and/or the records of their third party
> telephone carriers or the third party telephone carriers of their call centers or (ii)
> own records prove that they received the calls—such as their telephone records,
> bills, and/or recordings of the calls—and who submit an affidavit or claim form if
> necessary to describe the content of the call.

(Dkt. 241 at p. 31.) The judge presiding over this action, Defendants, people who opt out

of the class pursuant to Rule 23(e)(4), and counsel and their families—are excluded.

(Agreement § 1.36.)[2] These exclusions are standard in class action settlement agreements

and do not materially change the class definition.

**B.     Monetary Relief:** Defendants have agreed to create a common fund of between

$56 million and $76 million, from which all class members will be paid. (*Id.* § 1.38) Each class

---

[2]      At the pretrial conference, the Court rightly asked whether the settlement class definition differed
in any way from the certified class definition, and Plaintiffs' counsel responded that it didn't. Although
the class definition is identical to the Court's previous order, the parties negotiated standard—and
narrow—exclusions to avoid any appearance of a conflict. Thus, while there is no substantive difference
in the class definitions, Plaintiffs want the record to be clear.

member who submits an approved claim will receive at least $500 per call, unless the total of those payments, settlement administration and notice expenses, incentive awards, and attorneys' fees exceeds $76 million. (*Id.* § 2.2(b).) In that event, class members will be entitled to a *pro rata* share, per call, of the $76 million fund (less notice and administration, incentive awards, and attorneys' fees). (*Id.*) In no event will Defendants pay less than $56 million. (*Id.* § 1.38.)

Class members will have two options when submitting their claims: they may either indicate that they received three (3) or fewer calls, in which case they will be presumed to have received three (3) calls, or they may indicate that they received more than three (3) calls, in which case they will be asked to state the number of calls they received. (*Id.* § 1.3.) Class members whose phone numbers appear in Defendants' records will not need to submit any evidence with their claims. (*Id.*) Pursuant to the Court's class certification order, claimants whose phone numbers do not appear in Defendants' records will be required to provide evidence that they received calls in order to be considered class members and therefore to submit valid claims. (*Id.*); *see also Birchmeier*, 302 F.R.D. at 256.

The professional settlement administrator—Kurtzman Carson Consultants d/b/a KCC—will be responsible for validating and approving submitted claims. (Agreement § 5.1.) After the settlement administrator makes an initial determination with regard to a claim, either party may challenge the acceptance or rejection of a claim form. (*Id.* § 5.3.) Challenges will be resolved by a special master, Judge Andersen (or if he is unavailable another experienced neutral from JAMS), whose decisions will be final.[3] (*Id.* §§ 1.39, 5.5.) However, even if Defendants

---

[3]     A special master can "perform duties consented to by the parties" and make final factual findings. Fed. R. Civ. P. 53(a)(1)(A), (f)(3)(B). Appointing a special master is common feature in class action settlements. *See* William B. Rubenstein, *Newberg on Class Actions* § 12:20 (5th ed.) (noting that courts routinely authorize special masters "to receive proofs of claims, respond to class member questions, rule on the validity of claims, conduct hearings on challenges to claims, and order final distribution of the settlement fund"); s*ee also Walker v. Mitsubishi Motor Mfg. of Am., Inc.*, 113 F. App'x 711, 712 (7th Cir.

successfully challenge a class member's claim, the class member will still be entitled to a payment for one call. (*Id.* § 5.5.)

      **C.**    **Settlement Fund Payments:** Defendants' payments into the Settlement Fund will be made in increments. Within twenty-one (21) days after the entry of preliminary approval, Defendants will pay $10 million into the settlement fund, which will be held in escrow. (*Id.* § 1.38.) Within seven (7) days of final judgment, Defendants will pay an additional $20 million into the settlement fund. (*Id.*) They will then pay the next $20 million in installments over the next twelve (12) months and the remaining balance (up to $26 million, depending on the number of calls validly claimed by the Class) over the following twelve (12) months. (*Id.*) Interest will be added to the fund. (*Id.*) Because the settlement will be funded by installment, class members, the settlement administrator (other than the initial out of pocket costs, such as postage and publication), and Class Counsel will be paid in two installments. (*Id.* §§ 2.2(c-d), 8.2.) The first installment will be paid within one hundred and eighty (180) days of the Agreement's effective date, and the second within twenty-eight (28) days of Defendants' final payment into the settlement fund. (*Id.*)

      **D.**    **Prospective Relief:** Defendants have agreed to create and implement procedures that are aimed at ensuring that going forward, they do not make autodialed calls without consent. (*Id.* § 2.3.) Specifically, Defendants will each perform annual internal audits of their procedures for ensuring that they will not make auto-dialed and/or robodialed telemarketing calls to cellular and/or landline telephones unless to the best of their knowledge, each call recipient has given prior express consent in writing to receive such calls, and shall correct any deficiencies discovered through the audits in accordance with the law. (*Id.*) Such audits are to be conducted

---

2004) ("The *Woodward* settlement also provided for the appointment of Special Masters to assess the claims of the individual class members."); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 901 (S.D. Ohio 2001) ("The Settlement Fund will be distributed by a court-appointed Special Master[.]").

for a period of two years after the entry of final judgment. (*Id.*)

      **E.    Payment of Notice and Administration Expenses, Including Notice:**

Defendants have agreed to pay from the Settlement Fund all reasonable Settlement

Administration Expenses including those related to notice and the special master. (*Id.* § 1.34.)

      **F.    Incentive Awards and Attorneys' Fees:** While Defendants have agreed that

Class Counsel shall be entitled to an award of attorneys' fees and costs in an amount to be

determined by the Court and paid from the Settlement Fund, and Class Counsel has agreed to

limit any such request for attorneys' fees to no more than $24.5 million, Defendants retain the

right to object to the amount of attorneys' fees ultimately sought by Class Counsel.[4] (*Id.* § 8.1.)

Any award of attorneys' fees will be paid on the same schedule as class members' claims. (*Id.*

§ 8.2.) Defendants have also agreed to pay from the Settlement Fund, subject to Court approval,

incentive awards to the class representatives of $10,000 each. (*Id.* § 8.3.)

      **G.    Release of Liability:** In exchange for the monetary and prospective relief

described above, each "Settlement Class Member" will be deemed to have released and

forever discharged Defendants and all of their related subsidiaries and affiliates from any past

present and future claims related to automated prerecorded or artificial voice offering a free

cruise in exchange for taking an automated public opinion and/or political survey. (*Id.* § 3.2)

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

      Rule 23(e) requires judicial approval of a proposed class action settlement based on a

finding that the agreement is "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e)(2);

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), which

involves a well-established two-step process. *Armstrong v. Bd. of Sch. Directors of City of*

---

[4]    The $24.5 million cap on the attorneys' fee request was not a part of the settlement negotiations, and Class Counsel agreed to it with no additional consideration from Defendants. (Edelson Declaration ¶ 8; Rauscher Declaration ¶ 5.)

*Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06-cv-1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step—preliminary approval—assesses whether the proposed settlement falls "within the range of possible approval," *see Armstrong*, 616 F.2d at 314, "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step—the final fairness determination. *Id.*

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal quotations omitted), a multi-factor test must be used to determine whether a proposed settlement is fair, reasonable, and adequate, *Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). At preliminary approval, courts consider the following four factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, and (4) the stage of the proceedings and amount of discovery completed. *See id.* (citing *Isby*, 75 F.3d at 1199).[5] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).[6]

---

[5]      One additional factor—the amount of opposition to the settlement—is not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT&T*, 270 F.R.D. at 349. Accordingly, it is not considered here.
[6]      In addition to these factors, the Seventh Circuit has identified several "red flags" that may alert courts to a problematic settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4)

Here, each factor supports the Settlement Agreement, which this Court should find well within the range of possible approval.

### A. The Strength of the Plaintiffs' Case Compared to the Amount of the Settlement Offer Favors Preliminary Approval.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted); *see also Eubank.*, 753 F.3d at 727 (finding that the district court should "estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement"). However, "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead courts are to provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (internal quotations omitted). "In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.). Finally, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete

---

coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723-26 (7th Cir. 2014). None of these warning signs are present here, as the Agreement (1) creates a settlement fund of at least $56 million, (2) with none of that money reverting to Defendants, and (3) with the completion of a short and simple claim form, (4) class members will receive real cash relief.

victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at 1200) (internal quotations omitted). In terms of tangible monetary relief, the proposed Settlement warrants approval, and that's true both when compared to other similar TCPA actions, and when viewed in light of the risks of a jury trial and potential appeals.

The first factor, an assessment of both the strength of the Plaintiffs' case and the amount offered in settlement, weighs heavily in favor of approval. No doubt Plaintiffs were in a strong position heading into trial, having: successfully certified two classes; argued against Defendants' Rule 23(f) petition, which was denied by the Seventh Circuit; won partial summary judgment and fought off two rounds of summary judgment by Defendants; and opposed Defendants' last-ditch effort to decertify under *Spokeo*. This is why Plaintiffs were able to negotiate a precedent setting deal that will likely provide all claiming class members with the complete relief they were entitled to for a non-willful TCPA violation: $500 per call. Nevertheless, victory at trial would not have been certain by any means. Of most concern, if a jury were to find that Defendants were not vicariously liable for the phone calls—a point on which Plaintiffs bear the burden of proof—then the class members would obtain no recovery at all. Further, the idea of a "complete victory" is illusory where, as here, a nine-figure or ten-figure judgment "would most surely bankrupt the prospective judgment debtor." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015). Thus even though Plaintiffs have a strong case, proceeding into the unknown with trial on TCPA vicarious liability—an issue that has never before gone to trial in a class case such as this one—would not have guaranteed victory, and any victory might well have been a hollow one.

In contrast to that unappealing possibility, this Settlement will result in the creation of a settlement fund of up to $76 million to pay class members' claims—the largest such fund on

record in any TCPA case. *See In re Capital One*, 80 F. Supp. 3d at 789 (noting that the

$75,455,099 settlement fund was the largest on record at the time). Not only that, but unlike

*Capital One*, this fact is not "deceiving" because "the size of the settlement amount" is not

"attributable mainly to the large size of the class." *See id.* Rather, the Settlement Class here—

which is a small fraction of the size of the *Capital One* class and does not, unlike *Capital One*,

involve class members who, on some occasions, received hundreds, even thousands of calls—

will divide up a settlement fund that's half a million dollars larger, will be paid on a per call

basis, and as result, is anticipated to award claimants almost fifteen (15) times as much, based on

receiving a single call. And here, those class members who received multiple calls will further

eclipse the *Capital One* settlement, (*see id.* at 787 (approving settlement that created

$75,455,099 fund for approximately 17.5 million class members, that ultimately awarded $34.60

per claimant)), as they are set to recover hundreds if not thousands of dollars.

Additionally, under the instant Settlement, both the provision of relief on a per violative

call basis and the estimated per call payments that class members are likely to receive are nearly

unprecedented. Class counsel is aware of only a handful of approved TCPA settlements (the

majority of which were handled by Class Counsel here) where per call relief has been available.

*See, e.g.*, *Hopwood v. Nuance Communications, Inc.*, No. 13-cv-2132, Dkt. 101-1, (N.D. Cal.)

(providing class members $65 per call); *Flanigan v. The Warranty Group, Inc.*, No. 2014 CH

00956 (Cir. Ct. Cook Cty.) (providing class members $50 per call).[7] Also, to say that in most

TCPA cases, class members' single payment amount is often far less than is anticipated here

would certainly be an understatement. Whereas individual class members here will likely receive

checks for hundreds or thousands of dollars, a claimant in a typical TCPA case receives $30 or

---

[7]    Edelson PC is also seeking final approval of a settlement in *Kran v. Hearst Communications, Inc.*, Case No. 0:15-cv-02058-MJD-BRT (D. Minn.), which also provides relief on a per-call basis.

$40. *See, e.g., In re Capital One*, 80 F. Supp. 3d at 786 (providing $34.60 to each claiming class member); *Hashw v. Dept. Stores Nat'l Bank*, — F. Supp. 3d —, No.13-727-RHK, 2016 WL 1729525, *1, 4 (D. Minn. April 26, 2016) (approving settlement providing class members who received over 100 calls in violation of the TCPA a single $33.20 payment); *Kolinek v. Walgreen, Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (Kennelly, J.) (providing a roughly $30 payment for each class member); *Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142, Dkt. 94 (N.D. Cal. Apr. 2, 2012) (granting approval of a settlement that provided a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261, Dkt. 97 (S.D. Cal. Feb. 20, 2013) (granting approval of a settlement that provided a $20 voucher or $15 cash to each class member); *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198, Dkt. 266 (W.D. Wash. Sept. 17, 2012) (granting approval of a settlement that provided $20-40 cash payment to each class member).

In contrast, here, at the expected claims rate, each class member will receive around $500 per call, not per person. Moreover, even if the claims rate here is double or triple the typical rate for this type of case, *see, e.g., Kolinek*, 311 F.R.D. at 493 (approving a settlement with a roughly 2.5% claims rate in TCPA case); *Capital One*, 80 F. Supp. 3d at 786 (noting a 7.87% claims rate "[d]espite the robust and effective notice plan"), and even if each class member submits a claim for three calls, claiming class members will still receive more than $100 per call. Because the payments here on a per-call basis rather than a per-claimant basis, even $100 per call would still be among the largest payouts in a TCPA class action, if not the largest. *See, e.g., Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (granting final approval of settlement that provided cash payments of $100 to claiming class members); *Weinstein v. The Timberland Co., et al.*, No. 06-cv-00484, Dkt. 93 (N.D. Ill. 2008) (granting final approval of

settlement that provided cash payments of $150 to claiming class members); *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893, Dkt. 132 (N.D. Cal. 2010) (granting final approval of settlement that provided cash payments of $175 to claiming class members). Simply put, this settlement dwarfs the typical result, both in terms of the absolute size of the fund and in terms of what each class member will receive.

Finally, and while not technically part of the analysis of this factor, Defendants' ability to pay any sizeable judgment was also a driving factor of the settlement, and a significant reason why the monetary relief secured here is so extraordinary. Indeed, the prospect of an annihilative judgment that would force Defendants into bankruptcy has always loomed over this case, and that threat was never more pronounced as when the trial approached. (Edelson Declaration ¶ 11.) And here, the risk of non-payment was certainly a determinative factor in not only Plaintiffs' ultimate decision to settle the case, but also the amount of the settlement, and how it should be structured (i.e., payments over time). (*Id.* ¶ 12.) Nevertheless, the focus of negotiations never veered from a settlement that fairly compensated the Class based on the strength of their claims and the chances of securing a favorable verdict, which is what Class Counsel was able to achieve. (*Id.* ¶ 13.) The Settlement accounts for those risks and puts the class members in the best possible position in light of them: it guarantees that a sizable portion (i.e. $30 million) will be paid even before the settlement agreement is effectuated. Further, it provides a creative payment plan, carefully negotiated such that Defendants will be best positioned to stay in business so that the class members are set up to receive even more cash down the road. And, in order to properly align incentives, Class Counsel is, of course, paid under the same structure and payment plan as the Class.

13

In the end, considering the monetary relief and the strength of Plaintiffs' case, especially when compared to similar TCPA cases, the first element of the test favors a finding that this settlement is "fair, reasonable, and adequate." *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *3 (N.D. Ill. Sept. 10, 2010) (recognizing that where a "settlement appears relatively generous when compared to settlements in analogous circumstances[, it] is sufficient to satisfy the standard for *preliminary* approval") (emphasis in original). The first—and most important—*Synfuel* factor therefore strongly supports approving the settlement.

## B. The Potential Length, Complexity, and Expense of Further Litigation Favor Preliminary Approval.

Preliminary approval is also favored in cases such as this one, where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Plaintiffs believe that they would have prevailed at trial, but they are also certain that any judgment would have been appealed. Defendants have raised challenges to—among other things—the constitutionality of Plaintiffs' standing and the due process implications of the size of a potential verdict. *See Aranda*, 2016 WL 4439935, at *2-6. (Dkt. 487 ¶ 1.) Defendants wasted no opportunity to try to preserve these issues for appeal, and almost certainly would have appealed not only the judgment but also the decision to certify the Classes in the first place. Although Plaintiffs strongly believe in the correctness of their positions, losing these or other issues on appeal could reduce or eliminate a jury award. Settlement entirely avoids that possibility, and this factor therefore strongly supports preliminary approval.

## C. The Opinion of Competent Counsel Supports Preliminary Approval.

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications

of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Here, the Court has already appointed Jay Edelson of Edelson PC and Scott Rauscher of Loevy & Loevy as Class Counsel. *See Birchmeier*, 302 F.R.D. at 256. (Dkt. 241.) Further, Class Counsel's law firms have extensive experience litigating and settling class actions and other complex litigation of similar size and scope. Aside from this case, Class Counsel at Edelson PC have extensive experience in similar complex litigation and have been appointed class counsel in numerous TCPA class actions, many of them in this District. *See, e.g., Wright, et al. v. Nationstar Mortgage, LLC*, No. 14-cv-10457 (N.D. Ill.) (serving as lead counsel in $12.1 million unsolicited call settlement); *Kolinek v. Walgreen Co.*, No. 13-cv-4806 (N.D. Ill.) (serving as lead counsel $11 million unsolicited call settlement); *Rojas v. Career Educ. Corp.*, No. 10-cv-05260 (N.D. Ill.) (serving as lead counsel in $20 million text spam settlement). They have developed an in-depth understanding of the TCPA and have successfully litigated emerging issues that continue to redefine its boundaries. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) (securing landmark ruling applying the TCPA to text messages); *Ellison v. Steven Madden, Ltd.*, No. 11-cv-5935, Dkt. 73 at 9 (C.D. Cal.) ("[Attorneys at Edelson PC] specialize in litigating consumer class actions and have pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue."). Ultimately, Edelson PC has been a leader in TCPA litigation, securing over $300 million on behalf of consumers to date. (*See* Edelson PC Firm Resume, a true and accurate copy of which is attached to the Edelson Declaration as Exhibit A.)

Likewise, Class Counsel at Loevy and Loevy have significant experience prosecuting class actions, and are regarded as some of the finest trial lawyers in Chicago—if not the entire

country—and have secured some of the largest verdicts in history on account of the claims alleged. *See, e.g.*, *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007) (Loevy & Loevy class counsel in $55 settlement following trial on liability and sample damages trials); *Flood v. Dominguez*, Case No. 08-cv-153 (N.D. Ind.) (Loevy & Loevy class counsel in $7.2 million settlement); *see also* Loevy and Loevy Firm Resume, attached to the Rauscher Declaration as Exhibit A. Based on their experience, Class Counsel are well-equipped to weigh in on the strength of the settlement, and believe that the Agreement is fair, reasonable, adequate and deserving of preliminary approval. (Edelson Declaration ¶ 14; Rauscher Declaration ¶ 7.)

### D. The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval.

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp.*, 2011 WL 3290302, at *8 (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted). This factor is not a concern where settlement is "reached at a very late stage, after the issues ha[ve] been clearly identified, liability and impact ha[ve] been decided, and a massive record ha[s] been compiled." *See Armstrong*, 616 F.2d at 325. Here, the parties reached the Settlement with the assistance of a third-party neutral, after more than four years of hard-fought litigation, and on the eve of a class action trial. They conducted substantial discovery, briefed all of the relevant issues at class certification, summary judgment, and in motions *in limine*, and were prepared to begin trial in less than a week. (Edelson Decl. ¶ 3; Rauscher Declaration ¶ 3.) As such, there can be no doubt that a "massive record has been compiled." *See Armstrong*, 616 F.2d at 325. Nor is there any danger of collusion. It is thus evident that the

16

parties and the Court have all of the information required to evaluate the Settlement, and therefore this factor favors granting preliminary approval as well.

## V.  THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED.

When a certified class action is settled, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *accord In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" when approving a settlement of a certified class action) (citation and internal quotations omitted); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Northfield*, 2012 WL 366852, at *7. The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT&T*, 270 F.R.D. at 352.

To ensure that the Notice satisfies the requirements of due process and Rule 23 in both form and content, the Parties have agreed to a comprehensive notice plan that is similar to—and in parts more comprehensive than—the one that the Court approved when the Classes were certified and that will be effected by the same professional settlement administrator. (Agreement § 4.) Notice will be provided by direct mail, email, Internet publication and print publication, and all forms of Notice are attached to the Agreement as Exhibits 1-B, 1-C, 1-D, 1-E and, 1-F.

The Notice Plan will provide direct mail and/or electronic notice to all Class Members whose physical addresses or email addresses can be determined through reasonable effort. Specifically, the Settlement Administrator has a list of approximately 900,000 telephone numbers that appear in Defendants' records, and when the Classes were originally certified, those numbers were used to determine the addresses of as many class members as possible. (*Id.* § 4.2(a).) When the notice process for this Settlement begins, the settlement administrator will update those records to ensure that the addresses are as current as possible, and it will send postcards to each class member for whom it is able to locate a valid U.S. mailing address (including for any class members where the settlement administrator is able to obtain an address that it did not have at the time the original notice went out), as well as sending emails to those whose email addresses it is able to obtain. (*Id.* § 4.2 (a-c).) In addition to direct notice, the Settlement Administrator will also arrange for Notice to be published with print advertisements in widely-read nationwide publications, which are identical to the ones the Court previously approved,[8] as well as with Internet banner advertisements on thousands of websites. (*Id.* § 4.2(e-f).)

The Notice will contain a paper claim form that class members may use to submit claims, and it will also direct class members to the settlement website, which will contain electronic versions of the claim form that can be submitted online, as well as the full Settlement Agreement, important court documents, and answers to frequently asked questions. (*Id.* § 4.2(d), Settlement Agreement Exhibits A-F.) The format and language of each form of Notice have been carefully drafted in straightforward, easy-to-read language, which clearly informs class members of all the material aspects of the deal, such as the range of potential class member recovery, class

---

[8]      Specifically, Notice will be published in the *New York Daily News*, *L.A. Times*, *Chicago Tribune*, *Dallas Morning News*, *Philadelphia Inquirer*, *Miami Herald*, *Houston Chronicle*, *Washington Post*, *Atlanta Journal-Constitution*, and *Boston Globe*, as well as in *People* magazine.

members' right to challenge the deal, and the amount of attorneys' fees that may be sought.[9] Additionally, and in compliance with Rule 23(e)(4), the Notice will additionally inform class members of their renewed right to exclude themselves from the Settlement, even if they did not previously do so. Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, KCC will send notice to the required government entities. (*Id.* § 4.2(g).)

Because the proposed notice plan effectuates direct notice to all class members identified by Defendants' records, reaches other potential class members through publication notice and the Settlement Website, and fully apprises class members of their rights, it comports with the requirements of due process and Rule 23 and should be approved.

## VI.    CONCLUSION.

For the reasons addressed above, Plaintiffs respectfully request that the Court enter an order (1) granting preliminary approval of the Settlement, (2) approving the form and content of the notice, and ordering that it be effectuated, (4) scheduling a final fairness hearing, and (4) providing such other and further relief as the Court deems reasonable and just.


Dated: September 26, 2016                    Respectfully submitted by:


                                             /s/ Jay Edelson

                                             Jay Edelson
                                             EDELSON PC
                                             350 North LaSalle Street, 13th Floor
                                             Chicago, Illinois 60654
                                             Telephone: (312) 589-6370

---

[9]      Additionally, the long-form notice, which is readily accessible on the Settlement Website, clearly explains that claiming class members will be paid in two installments, the expected timing of those payments (as well as for the funding of the Settlement), and the risk of non-nonpayment given that Defendants will not be funding the Settlement all at once.

Email: jedelson@edelson.com

Rafey S. Balabanian
Eve-Lynn J. Rapp
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Telephone: (415) 212-9300
Email: rbalabanian@edelson.com
erapp@edelson.com

/s/ Scott R. Rauscher

Scott R. Rauscher
Michael I. Kanovitz
Jonathan I. Loevy
LOEVY & LOEVY
312 N. May Street, Suite 100
Chicago, Illinois 60607
Telephone: (312) 243-5900
Email: scott@loevy.com
jon@loevy.com
mike@loevy.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Eve-Lynn J. Rapp, hereby certify that on September 26, 2016, I caused the foregoing to be served by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system.


/s/ Eve-Lynn J. Rapp