1

```
 1            IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
 2                   EASTERN DIVISION

 3

 4   GRANT BIRCHMEIER, et al.,        )  Docket No. 12 C 4069
                                      )
 5                       Plaintiffs,  )
                                      )
 6             vs.                    )
                                      )
 7   CARIBBEAN CRUISE LINE, INC., et  )  Chicago, Illinois
     al.,                             )  September 29, 2016
 8                                    )  10:00 o'clock a.m.
                         Defendants.  )
 9

10           TRANSCRIPT OF PROCEEDINGS - MOTION
         BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12   APPEARANCES:

13

14   For the Plaintiffs:   LOEVY AND LOEVY
                           BY:  MR. SCOTT R. RAUSCHER
15                         311 North Aberdeen Street, 3rd Floor
                           Chicago, IL  60607
16                         (312) 243-5900

17

18                         EDELSON PC
                           BY:  MS. EVE-LYNN J. RAPP
19                              MR. RAFEY S. BALABANIAN
                           350 North LaSalle Street, Suite 1300
20                         Chicago, IL  60654
                           (312) 589-6370
21

22

23   Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                           Official Court Reporter
24                         219 S. Dearborn Street, Suite 2102
                           Chicago, Illinois  60604
25                         (312) 435-5639
```

APPEARANCES CONTINUED:

For Caribbean            TABET DiVITO ROTHSTEIN
Cruise Line, Inc.:       BY:  MR. TIMOTHY A. HUDSON
                         209 South LaSalle Street, 7th Floor
                         Chicago, IL  60604
                         (312) 762-9450


For The Berkley          FORDE LAW OFFICES LLP
Group, Inc.:             BY:  MR. BRIAN PATRICK O'MEARA
                         111 West Washington Street, Suite 1100
                         Chicago, IL  60602
                         (312) 641-1441

1    (The following proceedings were had in open court:)

2         THE CLERK:  Case No. 12 C 4069, Birchmeier v.

3    Caribbean Cruise Line.

4         THE COURT:  Good morning.

5         MR. BALABANIAN:  Good morning, your Honor.

6         MR. HUDSON:  Good morning, your Honor.  Tim Hudson on

7    behalf of defendant Caribbean Cruise Line and Vacation

8    Ownership Marketing Tours.

9         MR. O'MEARA:  And good morning, your Honor.  Brian

10   O'Meara on behalf of the defendant The Berkeley Group.

11        MR. BALABANIAN:  Good morning, your Honor.  Rafey

12   Balabanian on behalf of plaintiffs in the class.

13        MS. RAPP:  Good morning, your Honor.  Eve-Lynn Rapp

14   on behalf of plaintiffs in the class.

15        MR. RAUSCHER:  Good morning, your Honor.  Scott

16   Rauscher also on behalf of plaintiffs in the class.

17        THE COURT:  Okay.  So I have a bunch of questions.

18        MR. BALABANIAN:  Yes, your Honor.

19        THE COURT:  I want to try to organize this and do

20   them in a sequence that makes sense.

21        Okay.  So it looks like it's going to take a total

22   of 24 months to fund the settlement, right?

23        MR. BALABANIAN:  Yes, your Honor.

24        THE COURT:  Okay.  I need somebody to -- and I have

25   an assumption about what the reason is, but I need it to be

1   explained.  And I don't know if that explanation should come

2   from the plaintiffs or from the defendants or both.

3          MR. BALABANIAN:  I'm happy to take the lead, and I'm

4   sure -- perhaps the defendants will want to supplement.

5          The reason is the financial viability of the

6   defendants.  We had to structure the settlement over time in

7   order for us to achieve the amount that we wanted to reach for

8   the settlement class.

9          THE COURT:  In other words, if it had all been

10   payable up front, you either wouldn't have gotten the same

11   amount or it would not have been doable.

12          MR. BALABANIAN:  Exactly right.  Exactly right.

13          THE COURT:  Is that correct on the defense side?

14          MR. O'MEARA:  Yes.  That is correct, your Honor.

15          THE COURT:  Both defendants say yes -- groups of

16   defendants say yes.  Okay.

17          MR. BALABANIAN:  And I can -- I could in a sidebar

18   elaborate on --

19          THE COURT:  No.  I --

20          MR. BALABANIAN:  -- how it's being --

21          THE COURT:  Nothing is going to be done at a sidebar

22   here.

23          MR. BALABANIAN:  Understood.

24          THE COURT:  And the reasons for that are fairly

25   obvious.  I mean, there could be objections and whatnot.

1   Everything is going to be completely a hundred percent on the
2   record.
3           MR. BALABANIAN:  It was a stupid suggestion.  Excuse
4   me.
5           THE COURT:  Yeah.
6           MR. BALABANIAN:  If the Court wants detail, I can
7   just confer with defense counsel.
8           THE COURT:  Go ahead.
9   (Brief pause.)
10          MR. BALABANIAN:  I would just say that with respect
11  to the defendants' funding obligations, they -- obviously, the
12  financial viability of them has been a very real issue in this
13  case from the start.  They had to be creative in how they were
14  going to fund the settlement, and they have gone to great
15  lengths to secure that funding, I will say.  So we're
16  confident --
17          THE COURT:  Can I get you to confirm that on the
18  defense side?
19          MR. O'MEARA:  I can confirm that, your Honor.
20          THE COURT:  Okay.  And you represent which folks
21  again?
22          MR. O'MEARA:  The Berkeley Group.
23          THE COURT:  The Berkeley Group.
24          MR. O'MEARA:  Yes.
25          THE COURT:  Okay.  My second question is whether -- I

1   have to say, I was a bit thrown.  I couldn't figure out which

2   notice was going where and when.  I mean, there's long forms,

3   there's short forms, there's postcards, there's this, there's

4   that.  At some point, I am going to need you to walk me

5   through what's what.

6           MR. BALABANIAN:  Yes, your Honor.

7           THE COURT:  But do the notices explain this sort of

8   two-stage payment thing?  Because it sounds like there's going

9   to be a two-stage payment, right?

10          MR. BALABANIAN:  That's right.

11          THE COURT:  You are going to get paid, and then the

12  second part is going to get paid, and it's dependent upon

13  whether the settlement ends up being the bigger amount or the

14  smaller amount, and it's also dependent upon the final deposit

15  being made by the defendants, whether it's bigger or smaller.

16          Do I have that basically right?

17          MR. BALABANIAN:  You do.

18          THE COURT:  Okay.  So is that explained in the

19  notice?

20          MR. BALABANIAN:  Yes and no.  It's explained in the

21  long form notice.  It's not explained in the individual

22  notices that will go to the class members because --

23          THE COURT:  The long form notice -- and,

24  unfortunately, I -- if I had been advising you on how to do

25  this, I would have said mark each notice as an exhibit.

1        So you have Exhibit 1 is like 800 pages of notice.  I

2  am exaggerating somewhat.

3        MR. BALABANIAN:  Yes, your Honor.

4        THE COURT:  So it's Exhibit what?

5        MR. BALABANIAN:  It is Exhibit D to the settlement

6  agreement, your Honor.

7        THE COURT:  Exhibit D to the settlement agreement is

8  the long form notice.  Okay.  So let me just get that one in

9  front of me.

10        All right.  So just zero me in on where it talks

11  about the two-stage thing.

12        MR. BALABANIAN:  The paragraph with respect to --

13        THE COURT:  When will I get my payment?

14        MR. BALABANIAN:  Right.

15        THE COURT:  Hang on a second.  Now I'm seeing that.

16  It's paragraph 9.

17        MR. BALABANIAN:  And, your Honor --

18        THE COURT:  Got it.  First payment will be made

19  within seven months after entry of the order finally approving

20  its settlement.  The second payment will be made up to 25

21  months later.

22        So who is going to get the long form notice,

23  everybody?

24        MR. BALABANIAN:  The long form notice is posted on

25  the settlement website.  Everyone will get notice of that

1   settlement website through the individual notices.

2           THE COURT:  Something will say to go there.  Then the

3   notice that the people that you end up having an address on

4   and so you are going to send it to an address, is that

5   Exhibit C?

6           MR. BALABANIAN:  B and C.  We are sending both

7   postcards and --

8           THE COURT:  So the postcards -- okay.  So let me tell

9   you what I think my concern is.  And part of it I am just kind

10  of reacting here, so I may not get this exactly right.

11          It's likely, I would think, that you're going to get

12  some number of people who will see the postcard and/or the

13  other short form notice that they get and don't ever go on to

14  the website and read the whole eight or nine pages; or if they

15  go on the website, they will get bored after the second

16  page -- "bored" is a word I am using to cover all sorts of

17  things, bored, fed up, whatever -- and won't get to the part

18  where it says "two stages."

19          And one of the concerns I have is somebody thinks,

20  I'm going to get $300 and they end up getting 150, and they

21  say, where is my other 150?  Now, if they had read the whole

22  long form notice, they would get it, but they haven't read the

23  whole long form notice.  And then what starts happening is I

24  start getting letters and you start getting letters and people

25  start filing claims and Wayne Andersen ends up having to deal

1   with stuff, you know, in his capacity as settlement master or

2   whatever you're calling him here.  And I think we need to try

3   to find a way to avoid that.  I mean, I think we need to try

4   to find a way to put -- maybe not necessarily in the postcard,

5   because the postcard is already quite crowded and quite small

6   type, but in the short form notice -- Exhibit C, in other

7   words -- something about this two-stage thing.

8           MR. BALABANIAN:  We can certainly do it in the email.

9   That's not an issue sizewise.  The postcard is a little tough.

10          THE COURT:  No, I say skip the postcard.

11          MR. BALABANIAN:  Very well.

12          THE COURT:  Because you said everybody is going to --

13  people you have addresses are going to get both the postcard

14  and Exhibit C.

15          MR. BALABANIAN:  If we can find an email for them.

16          THE COURT:  Oh, so Exhibit C is an email notice?

17          MR. BALABANIAN:  Correct.  Correct.

18          THE COURT:  So you are going to get the postcard by

19  mail -- okay, I see what you're saying.

20          MR. BALABANIAN:  Look, the reality is, Judge, we can

21  try to be creative.  We have included everything in the

22  postcard that we are required to under Rule 23, and it's --

23          THE COURT:  Yeah, you can't get the font much smaller

24  than that.

25          MR. BALABANIAN:  It's pretty small.  But that was

1  something the Court had brought up at the sort of preliminary

2  preliminary hearing we had a couple weeks ago, so I understand

3  that that's something on your radar.

4  　　　　　　THE COURT:  Maybe there is another way to do this.

5  So when the first payment is sent out, would there be a way to

6  put in with the first payment something that says, here is

7  your first payment.  The second one is going to come no later

8  than X?

9  　　　　　　MR. BALABANIAN:  Conceivably --

10  　　　　　　THE COURT:  I mean, I know that increases the cost.

11  I know that.

12  　　　　　　MR. BALABANIAN:  Well, conceivably, you could do that

13  on the check itself.  But the question is whether that second

14  payment is going to come.

15  　　　　　　THE COURT:  Yeah.

16  　　　　　　MR. BALABANIAN:  You know.  The difficulty is locking

17  people into an idea one way or another that you kind of --

18  that it's a fine line you have to take --

19  　　　　　　THE COURT:  So the second payment is not a certainty,

20  and so the concern would be if you tell people there is a

21  second payment, then they are going to say, where is my second

22  payment?

23  　　　　　　MR. BALABANIAN:  Right.  We could post it on the

24  website.  And, you know, with our experience in the Walgreens

25  case, we have supplemented that website throughout that

1 | process.

2 |         THE COURT:  I mean, is there a way -- I guess my

3 | question would be if there is a way to do this in a more

4 | prominent way than paragraph 9 of a -- or point 9 of a pretty

5 | gosh darn long thing here.  I mean, it's on page 5 out of 8.

6 |         MR. BALABANIAN:  Agreed.  Here's actually what I

7 | would suggest is that the website is going to be mocked up.

8 | We can put it on the landing page of the website.  Everybody

9 | is going to go to the website to file a claim.  Well, I

10 | shouldn't say everybody, but people will go to the website.

11 | And, you know --

12 |         THE COURT:  Is that your experience on these things,

13 | that people actually do go on the website?

14 |         MR. BALABANIAN:  Absolutely.  Absolutely, yes.  And

15 | so we don't have to hide it or we don't have to even have a

16 | link to it.  We can just have it posted prominently on the

17 | landing page.

18 |         THE COURT:  Let me go back to something you said.

19 | When you say there is a question about whether there is going

20 | to be a second payment, and maybe I'm missing something, is

21 | that if the defendants go belly up?

22 |         MR. BALABANIAN:  It depends on the number of claims

23 | and -- what the total amount of filed and approved claims.  So

24 | there is a floor and a ceiling.  And whether or not the floor

25 | is --

1       THE COURT:  That's not what paragraph 9 tells them.
2    Paragraph 9 says, If the Court approves the settlement,
3    eligible class members whose claims were approved by the
4    settlement administrator will receive their per-call payment
5    in two roughly equal installments.  The first payment will be
6    made within seven months after entry of an order finally
7    approving the settlement, and the second payment will be made
8    up to 25 months later.  Should the defendant go out of
9    business, your second payment may be reduced in whole or in
10   part.
11      It says, you are going to get two installments.  They
12   are going to be roughly equal.  It doesn't say there's any
13   uncertainty other than the risk of the defendants going out of
14   business.
15      MR. BALABANIAN:  I misspoke.  I did.  And I -- excuse
16   me, Judge.  There will be a second payment regardless.
17      THE COURT:  There is a second payment.
18      MR. BALABANIAN:  Yes.
19      THE COURT:  So we don't have to be concerned about
20   creating a false hope because there isn't a false hope.
21      MR. BALABANIAN:  Well, just --
22      THE COURT:  The whole reason that you've structured
23   the settlement -- I mean, I know there are no guarantees in
24   life, but the reason the payment is structured the way it is
25   is to avoid the defendants going out of business.

1          MR. BALABANIAN:  Right.  Exactly.  And we think that

2  there's --

3          THE COURT:  Well, we need to do something about this.

4  You have an idea of what the issue and the problem is.

5          MR. BALABANIAN:  Yes.  And I think that it would

6  probably be taken care of through the website idea, but I

7  would want to present that to the Court to make sure that the

8  Court's comfortable with it.  We haven't mocked up the website

9  as of yet --

10          THE COURT:  Okay.

11          MR. BALABANIAN:  -- but it's not something that's

12  difficult to present to the Court as a supplement.

13          THE COURT:  Okay.  I think I'd like to see that.

14          MR. BALABANIAN:  Of course.

15          THE COURT:  In terms of -- the attorneys' fee payment

16  is going to be made, and it said in the long form notice in

17  the same way.  So how exactly does that get broken down?  Is

18  it half and half, or is it something other than half and half?

19  Because the percentages aren't exactly half and half in terms

20  of the -- when the money is going into the fund, right?

21          MR. BALABANIAN:  No, it's not exactly half and half

22  when the money is going into the fund, but, basically --

23          THE COURT:  What are you going to propose to me, I

24  guess, is probably the better question of when and how the

25  attorneys' fees get paid?

1        MR. BALABANIAN:  On the exact same schedule that the
2  class would be paid.
3        THE COURT:  But the question is the breakdown --
4        MR. BALABANIAN:  The breakdown would essentially be
5  half and half.
6        THE COURT:  Half and half.  Okay.  All right.
7        MR. BALABANIAN:  And if -- excuse me.
8        THE COURT:  Go ahead.  That's fine.
9        MR. BALABANIAN:  On the fee issue, just to be clear,
10  the fee is a maximum amount that we have stated.
11        THE COURT:  I understand.
12        MR. BALABANIAN:  We don't know if we will be seeking
13  that.
14        THE COURT:  I understand.  I get that.
15        MR. BALABANIAN:  Yeah.
16        THE COURT:  As you point out in here, this is a way
17  bigger settlement than overwhelming -- I mean, even on a
18  per-person basis than the overwhelming majority.  Maybe all --
19        MR. BALABANIAN:  Every settlement.
20        THE COURT:  -- of TCPA cases.  I know that we had
21  some discussions at some point in time about what you think
22  the claims rate is going to be.  Do people have a guess on
23  that?
24        MR. BALABANIAN:  Yeah, sure.
25        THE COURT:  What?

1          MR. BALABANIAN:  In TCPA cases, typically, it's

2     between 2 and 5 percent.

3          THE COURT:  It's going to be way higher than that on

4     this.

5          MR. BALABANIAN:  It's going to be higher than that on

6     this case.  We think it's going to approach 10 percent.  We

7     think the people will get probably about 3 to $500 per call at

8     the end of the day, and we do believe that the fund will be

9     exhausted.

10          THE COURT:  Yeah.  I'd be willing to bet there is a

11     chance it's going to be significantly in excess of 10 percent.

12     I mean, if I -- I get these things like other people do.

13     Okay?  When I see something that says I am going to get $2.48,

14     why bother?  It's the cost of a stamp or whatever.  If I got

15     something that says I am going to get as much as a couple or

16     three hundred bucks, I am putting that claim in.

17          MR. BALABANIAN:  Yes.

18          THE COURT:  And there's going to be some number of

19     people that won't even read this stuff.  I mean, you will have

20     sort of the initial drop-off of the people who don't open it,

21     the people who don't bother reading it, the people who read it

22     and decide, I don't want to have anything to do with this,

23     it's lawyers and lawsuits, I hate that stuff.

24          So my question is so what's -- let's say you end up

25     with 30 percent, okay, which would be a wildly high number for

1 class action settlements, but this is bigger than most. What

2 does the per-person amount end up going down to?

3 MR. BALABANIAN: Well, I can't do the math as I sit

4 here because I am just not that good at it.

5 THE COURT: You are not a math person. Yeah.

6 If it's 10 percent, what does it end up being,

7 ballpark?

8 MR. BALABANIAN: If it's 10 percent, that's a

9 $90 million payout, basically. So it would fall in between

10 the 3 and $500 per-call range, which dwarfs every other

11 settlement. And I am happy to add color to the claims rate

12 and how I got there, Judge. I'm not terribly proud to say,

13 but as the Court knows, you know, I do this kind of work a

14 lot, and so I do have my predictions. I have had other

15 settlements, one in particular where it was a per-call amount,

16 and people recovered substantial amounts. One of my class

17 members recovered to the tune of $13,000.

18 THE COURT: And it still ended up being --

19 MR. BALABANIAN: It was still the same rate. It was

20 about 4 percent in that case.

21 I do think it will be higher in this case, based on

22 our analysis. I think, realistically, it will approach the 10

23 percent range. And so --

24 THE COURT: It will be interesting to see.

25 MR. BALABANIAN: And, of course, the Court is going

1  to know all of that.

2           THE COURT:  Right.

3           In all of these notices, there's something that

4  says -- hang on a second.

5           Yeah.  So one thing that I thought was potentially

6  confusing --

7           MR. BALABANIAN:  Yes, your Honor.

8           THE COURT:  -- for your average layperson who is

9  going to get one of these things is this whole idea that you

10  might have to provide some sort of documentation.  So I tried

11  to read this as a non-lawyer, which is not easy to do.  But on

12  the postcard --

13           MR. BALABANIAN:  Yes.

14           THE COURT:  -- the claim form says, just send this

15  thing back, give us all this information, name, address, phone

16  number, including the phone number where the calls were

17  received, and your email address.  It says, you may, if

18  necessary, be required to provide documents.  They don't have

19  to do it with this, though, right?  They are just sending back

20  the --

21           MR. BALABANIAN:  For people who are not on the list?

22           THE COURT:  I'm talking about anybody who gets the

23  postcard.

24           MR. BALABANIAN:  Excuse me.  Right.

25           THE COURT:  They don't have to send back anything.

1          MR. BALABANIAN:  Correct.

2          THE COURT:  Okay.  So when -- there's some of these

3    other notices that say -- where the person signs it, it says,

4    I have included the required proof, or something like that.

5          MR. BALABANIAN:  That's for people not on the list.

6          THE COURT:  When you say "the list," again, since

7    somebody is going to be reading this someday, what do you mean

8    by "the list"?

9          MR. BALABANIAN:  The class list that we have.  So we

10    have the class definition broken up in two ways per the

11    Court's --

12          THE COURT:  So I am looking at, for example,

13    Exhibit A.  Exhibit A is the one that goes out to which

14    people?  Those are the people that are not on the list, I take

15    it?

16          MR. O'MEARA:  That's correct.

17          THE COURT:  Okay.

18          MR. BALABANIAN:  So you would obtain that from the

19    website, your Honor, to the extent you --

20          THE COURT:  So this is somebody who finds out about

21    it, they are not on the list, they find out about it, they go

22    on the website, they see this on the website.  Okay.

23          MR. BALABANIAN:  We have publication notice as well.

24          THE COURT:  Got it.

25          I would -- this is a really tiny thing, but anytime

1   you've got one of these forms that has -- that says something

2   that says, I've included the required proof that I received

3   these calls, put that in bold print, please.

4            MR. BALABANIAN:  Yes, your Honor.

5            THE COURT:  And it's not just on the one form.  It's

6   on several forms.  I just think that it needs to be flagged.

7            MR. BALABANIAN:  Yes, your Honor.

8            THE COURT:  I say this as somebody who imposes a

9   requirement on lawyers to do certain things before initial

10  status hearings.  It's on a website, tells them what to do, 30

11  percent non-compliance.  And that's lawyers.  Okay?  And I

12  assume there's going to be 30 percent non-compliance.

13           MR. BALABANIAN:  That's depressing.

14           THE COURT:  So if I could screen the whole thing on

15  the website, I would do it.  So just put that one thing in

16  bold print.

17           MR. BALABANIAN:  Yes, your Honor.  In everything, we

18  will.

19           THE COURT:  Let's see.  On the -- there's not going

20  to be anything going out in an envelope, right?  It's just a

21  postcard?

22           MR. BALABANIAN:  Correct.

23           THE COURT:  Okay.  So that question I was going to

24  ask is moot.

25           Oh, the -- I take it that the fees come out of the

1  overall amount?

2          MR. BALABANIAN:  Correct.

3          THE COURT:  And so that reduces it.  These notices

4  don't really seem to say that.  So you need to include

5  something about that.

6          MR. BALABANIAN:  Okay.  We can --

7          THE COURT:  In other words, something that says that

8  the fees come out of the overall amount.

9          MR. BALABANIAN:  We can do that.

10         THE COURT:  Okay.  What happens if you have so few

11 claimants that whatever the number is times $500 comes out to

12 less than 56 million?

13         MR. BALABANIAN:  It goes up.  So their --

14         THE COURT:  They'll get more than $500.

15         MR. BALABANIAN:  They will get up to $1500 per call.

16         THE COURT:  Fine.  That answers that question.

17         Okay.  Then the last thing.

18         MR. BALABANIAN:  Yes, your Honor.

19         THE COURT:  Page 5, footnote 3 of the motion.  This

20 is the thing that talks about -- well, it's actually in the

21 text of the motion.  So this thing about dispute -- a

22 challenge over whether somebody is actually a member of the

23 class or not, and the proposal is to have -- I am going to

24 call him Mr. Andersen since he is not a judge anymore; I mean,

25 he is, but he isn't -- is to have former Judge Andersen decide

1    this, and I am not sure that I am comfortable with that.  And

2    I appreciate it if what -- I guess what I'm -- let me amend

3    what I am saying.  I am not sure that I am comfortable with

4    him being the final arbiter of that.  I appreciate it if what

5    people were thinking is, well, we don't want to bother Judge

6    Kennelly with this.  That's my job is to be bothered with

7    stuff in lawsuits.  And I guess my concern would be that

8    somebody doesn't think they have their day in court on an

9    issue like that.

10           MR. BALABANIAN:  Yes.

11           THE COURT:  And I don't know how significant having

12   him being the final arbiter is or was in terms of the overall

13   settlement, but I guess I am just -- as I sit here and I have

14   thought about it some more after I read it initially, I am not

15   entirely comfortable with it.  I mean, I would be more

16   comfortable with it if there was something that made it clear

17   to people that they can appeal to me, or that you can appeal

18   to me, I mean, one way or another.  I don't want to

19   necessarily increase the cost, but we are talking about a lot

20   of money here, so if I increase the cost a little bit, it's no

21   big deal.

22           MR. BALABANIAN:  This Court is the final arbiter of

23   all matters related to the settlement.

24           THE COURT:  Well, it sounds like, though, that you've

25   got that as being kind of he is the final decisionmaker.  Did

1 I read it wrong?

2 MR. BALABANIAN: No. As between the parties, that's

3 true. But the Court's review doesn't end there, and someone

4 could come in on an objection, conceivably, and say, I don't

5 want Judge Andersen to decide my issue.

6 Now --

7 THE COURT: Yeah, but I don't want to leave it to

8 somebody to have to object on that. That's what I am telling

9 you. I want this settlement -- I am not comfortable with

10 that, and I want it to include something that says that -- I

11 mean, maybe it's like 95 percent of district court rulings,

12 people don't appeal, but I want to make sure that people know

13 that they have the right to appeal to me.

14 MR. BALABANIAN: Well, we can include that language.

15 THE COURT: Is that going to pose a problem on the

16 defense side in terms of the settlement?

17 MR. O'MEARA: I don't think so, your Honor. And just

18 to be clear, the challenge will likely be really just to the

19 number of calls rather than them being a class member.

20 THE COURT: Yeah, but "probably" is something less

21 than a hundred percent certain.

22 MR. O'MEARA: Yeah, I understand.

23 MR. BALABANIAN: And so the -- certainly, we would be

24 comfortable including language about how Judge -- or, excuse

25 me --

1       THE COURT:  Former Judge Andersen.

2       MR. BALABANIAN:  Mediator Andersen, former Judge

3  Andersen's determination is still subject to the Court's final

4  review and approval, because it is.  I mean, that's just the

5  reality of Rule 23.

6       THE COURT:  I didn't think that from looking at this.

7       MR. BALABANIAN:  I understand.

8       THE COURT:  I guess what I would say is I want you to

9  include something in here that says that whatever he

10  determines in his capacity as the settlement administrator --

11       MR. BALABANIAN:  Special master, your Honor.

12       THE COURT:  -- special master is, you know, subject

13  to my approval and that people would need to be -- that a

14  claimant whose claim gets turned down or cut in number or

15  whatever it is would need to be told at the time that Judge

16  Andersen decides it that they have X number of days to file

17  something with me to challenge it.  Okay?

18       MR. BALABANIAN:  Yes.

19       THE COURT:  So do that.

20       MR. BALABANIAN:  Yes.

21       THE COURT:  And so I think I've covered all of the

22  points I wanted to make.

23       All right.  Is there anything more you want to tell

24  me?

25       MR. BALABANIAN:  Two things.  A couple housekeeping

1    matters.

2            I am embarrassed to say that we gave the Court a

3    courtesy copy of a settlement agreement that wasn't fully

4    executed.  I do have a fully executed copy now if you want it

5    for your file, and I think the publication notice was cut off,

6    so I just want to --

7            THE COURT:  Yeah, okay.

8            MR. BALABANIAN:  I can give the Court a complete copy

9    now.

10           THE COURT:  Which one is the publication notice?

11   Exhibit what?

12           MR. BALABANIAN:  I think it was F, your Honor.

13           THE COURT:  It's in here.  Oh, you think it was cut

14   off at the bottom?  It looked like --

15           MR. BALABANIAN:  No, it's cut off to the side.  It's

16   weird -- you know, it's sort of the margin was to the left.

17   Maybe you got a corrected version.

18           THE COURT:  I think -- it didn't look like there were

19   any words missing or letters or anything like that, so I think

20   it's okay.

21           MR. BALABANIAN:  Just two other minor things.  I have

22   to acknowledge Judge Andersen's contribution to this.

23           THE COURT:  Oh, it's been enormous.  Yeah.

24           MR. BALABANIAN:  And he worked with the parties

25   nights and weekends, and it would not have gotten done.

1       And I have to thank the Court for the patience it's

2   displayed on this case.  I don't think we were deserving of

3   it.  I appreciate it, and we are glad we are here.

4           THE COURT:  It's a big case.

5           All right.  So with the one thing that I have asked

6   you to modify and the tweaks to the notice, I find that the

7   settlement is within the range of reasonableness.  And so the

8   motion for preliminary approval is granted, subject to the

9   small changes that we talked about.

10          What I'd like you to try to do is get me something

11  by -- in terms of showing me what the website is going to look

12  like, tweaking the notices, and making this one modification

13  about, you know, adjudication issues, is two weeks a

14  reasonable amount of time?  You probably need that long.

15          MR. BALABANIAN:  Certainly.  That's fine.

16          THE COURT:  Okay.  So I'm going to set you to come

17  back on the -- it's going to be a little more than that.  I am

18  going to have you come back on the 20th of October.  I am gone

19  for a bunch of days in the beginning of the month.

20          MR. BALABANIAN:  That's fine, Judge.

21          THE COURT:  All right.  Thanks.

22          MR. BALABANIAN:  Thank you for your time.

23          MR. O'MEARA:  Judge, real quickly.  I'm perhaps going

24  to ask the obvious here, but this is -- today is the granting

25  of the preliminary approval?  Because our first payment is 21

1    days from today.

2              THE COURT:  Yes.  I have granted the motion for

3    preliminary approval.

4              MR. O'MEARA:  Thank you very much, your Honor.

5              MR. BALABANIAN:  Thank you, your Honor.

6       (Which were all the proceedings had in the above-entitled

7    cause on the day and date aforesaid.)

8       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
9

10   _____        _____
     Carolyn R. Cox                          Date
     Official Court Reporter
11   Northern District of Illinois

12   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

13

14

15

16

17

18

19

20

21

22

23

24

25