# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

GERARDO ARANDA, GRANT
BIRCHMEIER, STEPHEN PARKES, and
REGINA STONE, on behalf of themselves and
a class of others similarly situated,
*Plaintiffs*,

         *v.*

CARIBBEAN CRUISE LINE, INC.,
ECONOMIC STRATEGY GROUP,
ECONOMIC STRATEGY GROUP, INC.,
ECONOMIC STRATEGY, LLC, THE
BERKLEY GROUP, INC., and VACATION
OWNERSHIP MARKETING TOURS, INC.,
*Defendants.*

Case No. 1:12-cv-04069

Honorable Matthew F. Kennelly

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.     **Introduction** ................................................................................................. 1

II.    **Relevant Background** ................................................................................. 2

III.   **The Terms of the Settlement** .................................................................... 3

    **A.**    **Class Definition** ................................................................................ 3

    **B.**    **Monetary Relief** ............................................................................... 3

    **C.**    **Prospective Relief** ............................................................................ 4

    **D.**    **Payment of Notice and Settlement Administration Expenses** ........... 5

    **E.**    **Attorneys' Fees, Expenses, and Incentive Awards** ............................ 5

    **F.**    **Release** ............................................................................................... 5

IV.   **The Implemented Notice Plan Comports With Due Process** .................. 5

V.    **The Settlement is Deserving of Final Approval** ....................................... 8

    **A.**    **The Value of the Settlement in Light of the Risks of Continuing the Litigation Favors Final Approval** ........................................................ 9

    **B.**    **The Likelihood of an Increase in the Complexity, Length, and Expense of Continued Litigation Validates Final Approval of the Settlement** ... 12

    **C.**    **The Opinion of Competent Counsel Favors Approval** ..................... 13

    **D.**    **The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval** .............................................................. 15

    **E.**    **The Settlement is Not a Product of Collusion and There Are No "Red Flags" Present** ...................................................................... 16

    **F.**    **The Lack of Opposition to the Settlement Weighs in Favor of Final Approval** ................................................................................ 18

        1.   *Objector Taylor Chose to Object Instead of Seeking Assistance From Class Counsel* ..................................................................... 19

        2.   *Freedom Home Care Does Not Object to the Class Relief, Only Attorneys' Fees* ...................................................................... 20

i

3.      *McCabe Lacks Standing, and, in Any Event, Misunderstands the Settlement* .................................................................................................... 21

**VI.     Conclusion** ................................................................................................................ 24

## TABLE OF AUTHORITIES

### Cases

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28 2012). ..............8, 9, 19

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011)...................................16

*Aranda v. Caribbean Cruise Line, Inc.*,
 179 F. Supp. 3d 817 (N.D. Ill. 2016)...........................................................2, 11

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
 616 F.2d 305 (7th Cir. 1980) ...................................................................15

*Birchmeier v. Caribbean Cruise Line, Inc.*,
 302 F.R.D. 240 (N.D. Ill. 2014) ...................................................3, 7, 20

*Burns v. Elrod*,
 757 F.2d 151 (7th Cir. 1985) ...................................................................6

*Butler v. Am. Cable & Tel., LLC*,
 2011 WL 2708399 (N.D. Ill. July 12, 2011) ...........................................17

*Chambers v. Whirlpool Corp.*,
 No. CV111733FMOJCGX, 2016 WL 5922456 (C.D. Cal. Oct. 11, 2016) .............20

*Del Marcelle v. Brown Cty. Corp.*,
 680 F.3d 887 (7th Cir. 2012). ...................................................................23

*Devlin v. Scardelletti*,
 536 U.S. 1 (2002). ...................................................................................21

*Dunstan v. comScore*,
 No. 11-cv-5807, Dkts. 186, 369 (N.D. Ill.). ...................................................14

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974). ...............................................................................6

*Eubank v. Pella Corp.*,
 753 F.3d 718 (7th Cir. 2014). ...................................................9, 16, 17, 18

*Felzen v. Andreas*,
 134 F.3d 873 (7th Cir. 1998) ...................................................................15

*Freeman v. Berge*,
    F. App'x 738 (7th Cir. 2003) ........................................................................19

*Hashw v. Dept. Stores Nat'l Bank*,
    182 F. Supp. 3d 935 (D. Minn. April 26, 2016) ............................................11

*Hispanics United v. Vill. of Addison*,
    988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997) ...............................................13

*Hughes v. Kore of Indiana Enter., Inc.*,
    731 F.3d 672 (7th Cir. 2013) ...................................................................6, 22

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ...................................................................10

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................9, 13, 19

*In re Baby Prod. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) .........................................................................23

*In re Capital One Telephone Consumer Protection Act Litigation*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) .........................................................10, 11

*In re Caribbean Cruise Line, Inc.*,
    No. 14-8021 (7th Cir. Oct. 10, 2014) ...........................................................12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    281 F.R.D. 531 (N.D. Cal. 2012) ..................................................................20

*In re Facebook Privacy Litig.*,
    No. C 10-02389, Dkt. 69 (N.D. Cal. Dec. 10, 2010) ....................................14

*In re Gen. Elec. Co. Sec. Litig.*,
    998 F.Supp.2d 145 (S.D.N.Y. 2014) ............................................................20

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    No. 09md2087 BTM (KSC), 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) ..................20

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) .........................................................18

*In re Southwest Airlines Voucher Litig.*,
    No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ......................10

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...............................................................................8, 15

*Kolinek v. Walgreen, Co.*,
311 F.R.D. 483 (N.D. Ill. 2015). ...............................................................10, 11, 14

*Kristensen v. Credit Payment Servs. Inc.*,
No. 2:12-CV-00528-APG, 2015 WL 4477425 (D. Nev. July 20, 2015) .........................11

*McCabe v. Caribbean Cruise Line, Inc.*,
No. 13-cv-6131, Dkt. 37 (E.D.N.Y. July 3, 2014) ...................................................21

*McKinnie v. JP Morgan Chase Bank*,
678 F.Supp.2d 806 (E.D. Wis.2009) ...................................................................17

*Miller UK Ltd. v. Caterpillar, Inc.*,
17 F. Supp. 3d 711 (N.D. Ill. 2014)...................................................................12

*Rivera v. Waukegan*,
No. 12-cv-8665 (N.D. Ill.)...............................................................................15

*Rojas v. Career Educ. Corp.*,
No. 10-cv-05260 (N.D. Ill.). ...........................................................................14

*Safeco Ins. Co. of Am. v. Am. Int'l Grp.*,
710 F.3d 754 (7th Cir. 2013) ...........................................................................8

*Saltzman v. Pella Corp.*,
257 F.R.D. 471 (N.D. Ill. 2009) .......................................................................20

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011)...................................................6, 8, 12, 13

*SEC v. Custable*,
796 F.3d 653 (7th Cir. 2015) ...........................................................................22

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .................................................................................2, 13

*Superior Beverage Co. v. Owens-Illinois, Inc.*,
827 F. Supp. 477 (N.D. Ill. 1993)......................................................................23

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ...........................................................9, 12, 13, 15, 16

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ................................................................8

*Van Patten v. Vertical Fitness Grp, LLC*,
    — F.3d —, No. 14-55980, 2017 WL 460663 (9th Cir. Jan. 30, 2017) ...........................12

*Wright, et al. v. Nationstar Mortgage, LLC*,
    No. 14-cv-10457 (N.D. Ill.) ................................................................14

*Young v. County of Cook*,
    No. 06-552 (N.D. Ill.) ................................................................14

**STATUTES**

Fed. R. Civ. P. 23 ................................................................6, 8

Telephone Consumer Protection Act, 47 U.S.C. § 227 ................................................................2

**OTHER AUTHORITIES**

Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain
    Language Guide* 3 (2010) ................................................................6

Federal Judicial Center, *Manual for Complex Litigation* (Fourth) (2004) ...........................19, 20

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2015) ...........................23

## I.     Introduction

Plaintiffs seek final approval of one of the most favorable TCPA settlements on record, not only in terms of the total size of the fund, but also in terms of the per call relief class members will receive. When all is said and done, Defendants will have created the full $76 million common fund which, if the Settlement is approved, will conservatively speaking provide class members with cash payments of at a minimum of about $135 per call (and likely more). Because the vast majority of class members took advantage of the presumption that they received three calls, most will receive in excess of $400—an order of magnitude more than the typical payment in a TCPA class action settlement of this size.

It is unsurprising, then, that the class's reaction to the settlement has been overwhelmingly positive. Since preliminary approval, the Settlement Administrator has successfully implemented the Court-approved notice plan, contacting hundreds of thousands of class members by mail and email, as well as engaging in an extensive online and print media campaign. Class Counsel has assisted thousands of class members with questions, claim forms, and obtaining records from their telephone service providers. The Class Members' approval of the Settlement is borne out in the numbers: In total, 63,583 class members have filed provisionally approved claims for 365,647 calls (far more than expected). Along with individual consumers, several Fortune 500 companies and Oakland County, Michigan decided to file claims and not objections. Only two requests for exclusion have been submitted, and only three objections were filed. One of the objections comes from an individual who is likely not a class member, one is a cursory pro se objection, and the third takes no issue with the Settlement as a whole, instead limiting its arguments to Class Counsel's fee request.

Given the high level of participation and low levels of opt-outs and objections, and as explained more fully below, the Court should not hesitate in granting final approval to the Settlement as it is unquestionably fair, reasonable, and adequate.

## II. Relevant Background

The Settlement now before the Court seeks to resolve claims against Defendants Caribbean Cruise Lines, Inc., Vacation Ownership Marketing Tours, Inc., and the Berkley Group, Inc. for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by operating a massive telemarketing scheme to offer "free" cruises actually designed to sell timeshares.[1] Over the course of four years of hard-fought litigation, the Court denied Defendants' motion to dismiss, granted adversarial class certification, denied Defendants' motions for summary judgment, and granted in large part Plaintiffs' motion for partial summary judgment. In the months before trial, Defendants also asked the Court to decertify the classes and grant summary judgment based on the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), a request that the Court also denied. Only two issues remained for trial: whether Defendants could be held vicariously liable for the violative telephone calls, and whether the calls to landline phones fell under a "political purpose" exception to the TCPA. *See Aranda*, 179 F. Supp. 3d at 828, 835.

Plaintiffs were fully prepared to go to trial on these issues, which would have included live testimony from Defendants' corporate officers. At the same time, Class Counsel was also responding to Defendants' newfound willingness to discuss settlement options that could provide real relief to class members. Only four days before trial, and with the assistance of the Hon.

---

[1] The facts of this case have been comprehensively recited on numerous occasions. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 820-22 (N.D. Ill. April 18, 2016).

Wayne Andersen (ret.) of JAMS, the parties agreed to a memorandum of understanding that

formed the basis for the $76 million Settlement now before the Court.

## III.    The Terms of the Settlement

The terms of the Settlement preliminarily approved by the Court are set forth in the

Parties' Settlement Agreement and are briefly summarized below:

**A.    Class Definition:** The "Settlement Class" as defined in the Agreement is

unchanged from the Court's class certification order and includes two classes—one for

individuals that received cellular phone calls and another for those who received calls on their

residential landline—each defined as:

> All persons in the United States to whom (1) one or more telephone calls were
> made by, on behalf, or for the benefit of the Defendants, (2) purportedly offering
> a free cruise in exchange for taking an automated public opinion and/or political
> survey, (3) which delivered a message using a prerecorded or artificial voice; (4)
> between August 2011 and August 2012, (5) whose (i) telephone number appears
> in Defendants' records of those calls and/or the records of their third party
> telephone carriers or the third party telephone carriers of their call centers or (ii)
> own records prove that they received the calls—such as their telephone records,
> bills, and/or recordings of the calls—and who submit an affidavit or claim form if
> necessary to describe the content of the call.

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014); *see also* Dkt.

513 at 2 (Amended Preliminary Approval Order). The judge presiding over this action,

Defendants, people who opt out of the class pursuant to Rule 23(e)(4), and counsel and their

families—are excluded. (Settlement Agreement § 1.36.) These exclusions are standard in class

action settlement agreements and do not materially change the class definition.

**B.    Monetary Relief:** Defendants have agreed to create a common fund of between

$56 million and $76 million, from which all claiming class members will be paid. (*Id.* § 1.38.)

Defendants have already deposited the first installment of $10 million, with the remainder to be

paid over the next two years. (*Id.*) The exact amount that each claiming class member will

receive is not yet final, because the Settlement Administrator is still processing timely submitted claims, the claims challenge process is ongoing, and the Claims Deadline has been extended for hundreds of potential class members who are awaiting their call records to be provided in responses to subpoenas. (Dkt. 570.) However, a final number will be available after the challenge process is complete. As of now, if Defendants' potential challenges to certain claims are in large part overruled or not pursued (and Plaintiffs believe that will be the case), the 63,724 claiming class members' claim forms—who in aggregate claimed 366,580 calls—will receive approximately $135 per call, payable in two distributions. (*See* Declaration of Jay Edelson, attached as Exhibit 1 ¶ 5; Declaration of Lana Lucchesie, attached as Exhibit 2 ¶ 24.)[2] The overwhelming majority of class members claimed three calls (Lucchesie Decl. ¶ 24), and are thus expected to receive about $405 in total. If Defendants' potential challenges are successful and claiming class members are only able to recover for calls directly supported by Defendants' own records and other documentation, each claiming class member will recover approximately $420 per call.[3] (Edelson Decl. ¶ 8.) Either way, most claiming class members will receive hundreds of dollars.

      **C.**     **Prospective Relief:** Defendants have agreed to create and implement procedures that are aimed at ensuring that going forward, they do not make autodialed calls without consent. (Settlement Agreement § 2.3.) Specifically, Defendants will each perform annual internal audits of their procedures for ensuring that they will not make auto-dialed and/or robodialed telemarketing calls to cellular and/or landline telephones unless to the best of their knowledge, each call recipient has given prior express consent in writing to receive such calls, and shall

---

[2]      These figures exclude prospective claimants whose claim forms were screened out as obviously deficient by the Settlement Administrator during its initial review of submissions.

[3]      These calculations assume that the Court approves Class Counsel's fee request.

correct any deficiencies discovered through the audits in accordance with the law. (*Id.*) Such audits are to be conducted for a period of two years after the entry of final judgment. (*Id.*)

D. **Payment of Notice and Settlement Administration Expenses:** Defendants have agreed to pay from the Settlement Fund the costs of effectuating the Court-approved Notice Plan, as well as all expenses incurred by the Settlement Administrator in processing and paying valid claims and otherwise administering the Settlement. (*Id.* § 1.38.)

E. **Attorneys' Fees, Expenses, and Incentive Awards:** Plaintiffs filed their motion requesting attorneys' fees, expenses and incentive awards on January 10, 2017 (Dkt. 528), and published it on the Settlement Website. (Lucchesi Decl. ¶ 21.) Plaintiffs requested a fee and expense award of 33% of the total benefit to the class, up to a maximum of $24.5 million, and incentive awards of $10,000 for each of the four class representatives. (Dkt. 533.) Defendants filed their response in opposition to that motion on February 4, 2017 (Dkt. 565), and Plaintiffs will file a reply on February 17, 2017 in accordance with the Court's briefing schedule. (Dkt. 563.)

F. **Release:** In exchange for the monetary and prospective relief described above, each Settlement Class Member will be deemed to have released and forever discharged Defendants and all of their related subsidiaries and affiliates from any past, present, and future claims related to automated telephone calls made during the class period using a prerecorded or artificial voice and offering a free cruise in exchange for taking an automated public opinion and/or political survey. (Settlement Agreement § 3.)

IV. **The Implemented Notice Plan Comports with Due Process.**

Prior to granting final approval to this Settlement, the Court must first consider whether the Notice to the Settlement Class is "the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." Fed.

R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte*

*v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does

not require receipt of actual notice by all class members in order to comport with both Rule 23

and the requirements of due process, but it often includes (as in this case) direct notice to

individuals who can be identified by regular mail. *See Burns v. Elrod*, 757 F.2d 151, 154 (7th

Cir. 1985) (noting that "Rule 23 does not require defendants to exhaust every conceivable

method of identification"). Class members who cannot be identified through reasonable effort

can be notified by publication. *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 677 (7th

Cir. 2013).

The multi-part Notice Plan approved by the Court in this case has been implemented by

Court-approved Settlement Administrator, Kurtzman Carson Consultants LLC, and included

both direct and publication notice. Direct notice was provided to every class member who could

be identified through reasonable effort via both electronic and regular mail. To that end, the

Settlement Administrator mailed 858,242 direct postcard notices with Claim Forms (return

postage pre-paid) to class members. (Lucchesi Decl. ¶ 13).[4] The Settlement Administrator also

obtained email addresses for and sent email notice to each of 485,856 class members. (Lucchesi

Decl. ¶¶ 11, 12.) Ultimately, notice was directly delivered to 78.6% of the 1,040,389 names and

addresses associated with the telephone numbers obtained from the Defendants' records and was

thus reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice & Claims Process*

---

[4]     Of the 858,242 postcards mailed, 7,213 were returned by the U.S. Postal Service with
forwarding addresses and were re-mailed to the new address. (Lucchesi Decl. ¶ 13), 80,480 were
returned undeliverable without forwarding addresses. (*Id.*) Of those, the Settlement
Administrator was able to obtain updated addresses and re-mail 40,365 based on credit and other
public source databases. (*Id.*)

*Checklist & Plain Language Guide* 3 (2010) (concluding that a notice plan that reaches at least

70% of the class is reasonable).

The Notice Plan also included both print and electronic publication notice, which the

Court deemed "appropriate" at class certification and again in granting preliminary approval.

*Birchmeier*, 302 F.R.D. at 255; *see also* Dkt. 513 at 3-4. Notice was published in the November

7, 2016 editions of the *New York Daily News*, *L.A. Times*, *Chicago Tribune*, *Dallas Morning*

*News*, *Houston Chronicle*, *Miami Herald*, *Philadelphia Inquirer*, *Washington Post*, *Atlanta*

*Journal-Constitution*, and *Boston Globe* (Lucchesi Decl. ¶ 14), as well as within the December 5,

2016 national edition of *People* magazine. (*Id.* ¶ 16.) To supplement the direct and publication

notice, the Settlement Administrator also placed internet banner advertisements that had

153,606,575 impressions, including 1,001,952 impressions on 800Notes.com—a website

demonstrated during the case to be visited by consumers. (*Id.* ¶ 18, *see* also Dkt. 337-3 at 42-88,

consumer complaints filed on 800notes.com). The Settlement has also received substantial press

coverage, furthering the reach of publication notice. (*See, e.g.*, Robert Channick, *That 'Free*

*Cruise' Robocall Could Get You up to$500 as Part of $76M Settlement,* Chi. Trib. (Dec. 2,

2016), http://trib.in/2k9kO6i; Herb Weisbaum, *How You Could Get $500 Per Call for Those*

*Unwanted Messages Six Years Ago,* NBC News (Jan.17, 2017), http://nbcnews.to/2jsHbXW.)

Finally, the required notice was sent to the Attorney General of the United States as well

as the Attorneys General of all 50 states, the District of Columbia, Puerto Rico, Guam, the

Northern Mariana Islands, the U.S. Virgin Islands, and American Samoa. (Lucchesi Decl. ¶ 4),

All of these notices directed class members to the Settlement Website—

www.freecruisecallclassaction.net—that provided the Notice, important Court documents

(including the Settlement Agreement), the ability to see if a telephone number appeared in

Defendants' records, and the ability to download and submit Claim Forms online. (*Id.* ¶ 21.) Additionally, since the time that the Notice Plan was effectuated and until this day, the Class Administrator has also maintained a toll-free telephone number where class members could request claim forms and obtain more information about the Settlement. (*Id.* ¶ 20.)[5] In total, nearly half a million people have visited the settlement website and over 9,000 calls have been made to the toll-free number. (*Id.* ¶¶ 20-21.)

Therefore, there can be no doubt that class members here received the best notice practicable under the circumstances. The individual notice by postcard or email where class members' contact information could reasonably be found, combined with the robust publication notice, meets the requirements of due process and Rule 23.

## V. The Settlement is Deserving of Final Approval.

Federal Rule of Civil Procedure 23(e) mandates that "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval . . . after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 CV 2898, 09 C 2026., 2012 WL 651727, at *1 (N.D. Ill. Feb. 28, 2012), *appeal dismissed*, *Safeco Ins. Co. of Am. v. Am. Int'l Grp.*, 710 F.3d 754 (7th Cir. 2013). Even so, "[f]ederal courts naturally favor the settlement of class action litigation." *Schulte*, 805 F. Supp. 2d at 578 (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). Given this predisposition towards settlement, the Court's approval inquiry "is limited to [consideration of] whether the settlement is lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002).

---

[5]     As noted above, in addition to the toll-free telephone number operated by the Settlement Administrator, Class Counsel also fielded thousands of calls from class members. (Edelson Decl. ¶ 2.)

The Seventh Circuit has identified five factors for district courts to consider in determining whether to approve a class action settlement: (i) the strength of a plaintiff's case compared to the amount of the defendant's settlement offer; (ii) an assessment of the likely complexity, length and expense of the litigation; (iii) an evaluation of the amount of opposition to the settlement among affected parties; (iv) the opinion of competent counsel; and (v) the stage of the proceedings and amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citation and internal quotations omitted); *accord In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (hereinafter "*In re AT&T II*"). In addition to these factors, courts in the Seventh Circuit should also consider whether the settlement is the product of collusion, or whether there are any "red flags" present in the settlement that would suggest it is unfair to the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 723-29 (7th Cir. 2014).

As explained below, these factors overwhelmingly weigh in favor of approving the Settlement in this case.

**A.      The Value of the Settlement in Light of the Risks of Continuing the Litigation Favors Final Approval.**

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *In re AT&T II*, 789 F. Supp. 2d at 958 (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002) and *Synfuel*, 463 F.3d at 653); *see also Eubank*, 753 F.3d at 727 (finding that the

9

district court should "estimate the likely outcome of a trial . . . in order to evaluate the adequacy of the settlement"). However, "[t]he Seventh Circuit has recognized that valuing hypothetical continued litigation is necessarily speculative and therefore an inexact science," and courts need only "estimate and come to a ballpark valuation" of the class's claims. *Kolinek v. Walgreen, Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (Kennelly, J.) (citation and internal quotations omitted); *see also In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at \*7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). Ultimately, because a settlement is a compromise, "courts need not—and indeed should not—'reject a settlement solely because it does not provide a complete victory to the plaintiffs.'" *In re Capital One Telephone Consumer Protection Act Litigation*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (quoting *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (hereinafter "*In re AT&T I*")). "This is especially true when complete victory would most surely bankrupt the prospective judgment debtor." *Id.* (pointing out that in TCPA cases involving millions of class members and phone calls, potential TCPA liability often reaches into the billions if not trillions of dollars).

Here, this first factor weighs strongly in favor of approval. Having obtained class certification, defeated a motion for summary judgment, and obtained partial summary judgment, Plaintiffs were in a strong position when the case settled. It is unsurprising, then, that the monetary relief provided under the Settlement—a $76 million Settlement Fund providing class members with a likely minimum of at least $135 per call (and approximately $400 total for most class members)—is far better than in other TCPA settlements. As Plaintiffs have previously explained, TCPA cases of this size generally result in settlements providing less than $40 in cash to each claiming class member, regardless of how many calls the class member received. *See,*

*e.g.*, *In re Capital One*, 80 F. Supp. 3d at 786 (providing $34.60 to each claiming class member); *Hashw v. Dept. Stores Nat'l Bank*, 182 F. Supp. 3d 935, 940, 944-45 (D. Minn. April 26, 2016) (approving settlement providing class members who received over 100 calls in violation of the TCPA a single $33.20 payment); *Kolinek*, 311 F.R.D. at 493 (providing a roughly $30 payment for each class member). Simply put, the strength of Plaintiffs' case is reflected in the excellent relief provided by the Settlement.

Nevertheless, risky territory remained ahead. The key issue of vicarious liability—that is, whether Berkley, CCL, and VOMT could be held liable for the calls made for their benefit—still remained for trial. *See Aranda*, 179 F. Supp. 3d at 833. This question is both legally and factually complicated, and its resolution has resulted in zero recovery in other certified class actions under the TCPA. *See, e.g.*, *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528-APG, 2015 WL 4477425, at *7 (D. Nev. July 20, 2015). There was thus a very real risk that the jury could return a complete defense verdict, or a verdict for Berkeley, leaving the class with no recovery at all.

Even if Plaintiffs did win at trial, a serious risk of non-payment would have remained. A large jury verdict could easily have rendered any or all of the Defendants insolvent. (Dkt. 463 at 3 ("A judgment in the amount Plaintiffs seek could not be paid by Berkley. In fact, such a judgment would require Berkley to terminate thousands of employees and declare bankruptcy.").) The Settlement, by contrast, provides substantial and guaranteed relief, structured in way that Defendants can pay what they owe without subjecting class members to the delay and uncertainty of Defendants' bankruptcy.

Thus, given the substantial risks, expense, and delay that would accompany further protracted litigation, and in comparison to other TCPA class action settlements, the Settlement

offers outstanding value, even relative to the strength of Plaintiffs' and the Class's case. The first—and most important—*Synfuel* factor, therefore, strongly supports final approval.

    **B.**    **The Likelihood of an Increase in the Complexity, Length, and Expense of Continued Litigation Validates Final Approval of the Settlement.**

Final approval is also favored in cases such as this where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Here, the alternative to settlement is an immediate week-long class action jury trial, which is an inherently risky proposition. *See Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 739 (N.D. Ill. 2014) ("[T]he reality known to first year law students [is] that juries are inherently unpredictable, and there is no such thing as a sure winner either in pretrial proceedings or at trial.") (internal citation omitted).

Even if Plaintiffs prevailed at trial, recovery for the class would be uncertain. Defendants have already indicated that they would challenge a jury verdict on due process grounds, making remittitur a distinct possibility. (*See* Dkt. 463 at 3-6.) Further, Defendants would almost certainly appeal any verdict for the Plaintiffs, likely along with the class certification order, for which Defendants already sought appellate review. *In Re Caribbean Cruise Line, Inc.*, No. 14-8021 (7th Cir. Oct. 10, 2014) (denying petition for review). In the Court of Appeals, class members would risk not only the loss of a jury verdict, but also decertification and possible dismissal for lack of Article III standing. (*See* Dkts. 430, 435.) While this Court's holding that Plaintiffs suffered a concrete injury under Article III is in accord with recent circuit court decisions, *see, e.g., Van Patten v. Vertical Fitness Grp, LLC*, — F.3d —, No. 14-55980, 2017 WL 460663, at *4 (9th Cir. Jan. 30, 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'")

(quoting *Spokeo*, 136 S. Ct. at 1549), there is nevertheless a risk that either the Seventh Circuit or the Supreme Court would disagree. Further, while the federal government has previously stepped in to defend the constitutionality of the TCPA, *see, e.g.*, United States of America's Memorandum in Support of the Constitutionality of the Telephone Consumer Protection Act of 1991, *Holt v. Facebook, Inc.*, No. 3:16-cv-02266, Dkt. 48 (N.D. Cal. October 17, 2016), the current administration's position is unknown.

If anything, "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now . . . ." *In re AT&T II*, 789 F. Supp. 2d at 964. The proposed Settlement, in contrast, avoids the uncertainty of trial—and potentially lengthy appeals—and instead provides relief to the Settlement Class that Defendants have represented they should be able to pay on the agreed-upon schedule. As such, the second *Synfuel* factor also weighs in favor of final approval.

## C. The Opinion of Competent Counsel Favors Approval.

The next factor considered by courts is the opinion of competent counsel regarding the fairness, reasonableness and adequacy of the Settlement. *Synfuel*, 463 F.3d at 653; *see also Schulte*, 805 F. Supp. 2d at 586 ("The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23."). This is especially true where class counsel are qualified, where discovery and settlement negotiations have taken place and where there is no indication of collusion. *See id.*; *see also Hispanics United v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997) (noting that a "strong initial presumption of fairness attaches" where the settlement is "the result of arm's length negotiations," and where plaintiff's counsel are "experienced and have engaged in adequate discovery").

13

Here, Class Counsel are experienced members of the plaintiff's class action bar who have built their practice litigating similarly complex consumer class actions and are capable of assessing the strengths and weaknesses of the Parties' respective positions. Indeed, attorneys at Edelson PC have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389, Dkt. 69 at 5 (N.D. Cal. Dec. 10, 2010); *see also Dunstan v. comScore*, No. 11-cv-5807, Dkts. 186, 369 (N.D. Ill.) (securing adversarial certification of largest ever privacy class comprised of 10 million consumers on claims arising under federal privacy statutes, and ultimately achieving a $14 million settlement, which resulted in claiming class members receiving approximately $500 each). With respect to TCPA class actions in particular, Edelson PC has extensive experience in similar complex litigation and have been appointed class counsel in numerous TCPA class actions, many of them in this District. *See, e.g., Wright, et al. v. Nationstar Mortgage, LLC*, No. 14-cv-10457 (N.D. Ill.) (serving as lead counsel in $12.1 million unsolicited call settlement); *Kolinek v. Walgreen Co.*, No. 13-cv-4806 (N.D. Ill.) (serving as lead counsel $11 million unsolicited call settlement); *Rojas v. Career Educ. Corp.*, No. 10-cv-05260 (N.D. Ill.) (serving as lead counsel in $20 million text spam settlement).

Loevy & Loevy has achieved significant trial success, having tried dozens of cases to verdict. Loevy & Loevy is particularly unique in that it is one of the few trial firms in the country to have tried class actions before juries. In fact, the firm has tried two class actions, including *Young v. County of Cook*, a class action that settled for $55 million following a jury liability verdict in favor of the class of jail detainees. No. 06-552 (N.D. Ill.). Loevy & Loevy has also negotiated many substantial settlements. For example, the firm negotiated a $20 million

14

settlement in *Rivera v. Waukegan*, No. 12-cv-8665 (N.D. Ill.), for a wrongfully convicted individual, the largest such settlement ever for a wrongfully convicted individual in the United States.

This substantial and relevant experience has allowed Class Counsel to accurately weigh the merits of the Settlement Class's claims along with the risks and potential rewards of trial and appeals as compared to Settlement. Class Counsel ultimately believe that the Settlement provides significant relief for individuals who may otherwise be left without a remedy and thus, the opinion of Class Counsel favors final approval as well.

    **D.    The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Final Approval.**

The *Synfuel* factor related to the stage of the proceedings and amount of discovery completed at the time the settlement is reached also favors final approval here. *Synfuel*, 463 F.3d at 653. This factor is satisfied where "discovery and investigation conducted by class counsel prior to entering into settlement negotiations was extensive and thorough." *Isby*, 75 F.3d at 1200 (citation and internal quotations omitted). This factor is not a concern where settlement is "reached at a very late stage, after the issues ha[ve] been clearly identified, liability and impact ha[ve] been decided, and a massive record ha[s] been compiled." *See Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

The procedural posture of this case further supports final approval, as the Parties have litigated the case for more than four years and have undertaken substantial discovery. The Court has decided three sets of dispositive motions (a motion to dismiss, motions for summary judgment, and a further motion for summary judgment for lack of standing) as well as granting adversarial class certification, denying a motion for decertification, and ruling on many of the

parties' motions *in limine*. Only two issues remained for trial. Four days before that trial—with

nearly all preparations complete—settlement was reached with the assistance of a neutral, third-

party mediator. With the benefit of the motion practice and argument on all substantive issues,

having reviewed the documents produced and, based upon the informed, arms'-length

negotiations that took place before a highly-regarded former judge of this District, there can be

no doubt that the Parties had the information and understanding necessary to negotiate the

beneficial Settlement now before the Court. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,

No. 07 C 2898, 2011 WL 3290302, at \*8 (N.D. Ill. July 26, 2011) ("extensive discovery has

undisputedly been completed . . . and it is impossible to say that the court and the parties are

unable to evaluate the merits of this case"). As such, the stage of the proceedings and amount of

discovery completed also weigh in favor of final approval.

## E. The Settlement Is Not a Product of Collusion and There Are No "Red Flags" Present.

Although not a factor specifically set forth in *Synfuel*, courts in the Seventh Circuit also

consider whether a settlement is the product of collusion, and whether there are any "red flags"

present in the settlement that would suggest it is unfair to settling class members. *Eubank*, 753

F.3d at 722–29. Some of the red flags include (i) the failure to properly establish the size of the

fund and the total class recovery, (ii) the reversion of unawarded attorneys' fees to the defendant,

(iii) substantial alterations to existing class definitions, (iv) the use of coupons, rather than cash

payments, for class compensation, and (v) overly complicated claim forms. *See id.* Here, the

Court should not hesitate to grant final approval to the Settlement because the Settlement was not

the result of collusion, nor does it raise any of the "red flags" identified by the Seventh Circuit

and other courts in analyzing class settlements.

16

First, there can be no doubt that this Settlement was not the result of collusion. As described above, the Parties engaged in several rounds—and in the final round, multiple days—of negotiations with the Hon. Wayne R. Andersen (ret.) of JAMS. *See Butler v. Am. Cable & Tel., LLC*, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) ("arm's-length negotiations facilitated by a neutral mediator is one factor . . . that supports a finding that the settlement was fair") (citing *McKinnie v. JP Morgan Chase Bank*, 678 F.Supp.2d 806, 812 (E.D. Wis.2009)). The timing of the mediation alone—e.g., that it occurred as the parties were preparing for an imminent jury trial—is clear evidence that there was no collusion in the negotiations that ultimately led to the Settlement.

Second, none of the "red flags" identified in *Eubank* are present here. First, with respect to knowledge of the size of the common fund and the amount of recovery to Settlement Class members, based on the claims data to date, Class Counsel believe that Defendants will be required to pay the full $76 million, and, as the Court knows, under no circumstances will the Defendants pay less than $56 million. (Edelson Decl. ¶ 8.) That stands in stark contrast to the *Eubank* fund, the size of which could only be "loosely" estimated. *Eubank*, 753 F.3d at 723. The Court also knows exactly how the fund will be distributed. And while the exact recovery available to claiming members of the Settlement Class has not yet been finally determined, the payments will at a minimum be about $135 per call. (Edelson Decl. ¶ 5.) Thus, unlike in *Eubank*, the Court here knows how much the Settlement Class will recover (at minimum) in both the aggregate and on an individual class member basis.

The same is true for the remaining concerns identified in *Eubank*. Based on the claims filed, Defendants will pay $76 million and will not receive a penny of it back. Nor does the Settlement Class definition call into question the propriety of certification as it did in *Eubank*.

17

There, the Seventh Circuit recognized adversity among several certified subclasses, thus rendering the settlement's provision of a single, unified class improper. *Eubank*, 753 F.3d at 721. Here, however, the two certified classes (recipients of landline calls and cellular calls) are only slightly different from each other, and not in a manner that causes any adversity between the two. As a result, there are no competing groups within the Class, and none of the diametrically opposed interests in *Eubank* are present here. *See id.* (finding "the adversity among subgroups" precluded class certification of one large class for settlement purposes) (citation and internal quotations omitted).

And finally, unlike the *Eubank* settlement, which proposed providing only coupon payments to some class members through exceedingly long and difficult claim forms, *id.* at 725, this Settlement allowed Class Members to claim a *cash* recovery by submission of an easy-to-complete Claim Form that required only a relatively minimal amount of contact information. While certain individuals were required to provide documentation of the calls they received in order to submit claims, that requirement is derived from the class definition certified by the Court, and Class Counsel has provided assistance – at their own expense – obtaining those records for hundreds of class members. (Edelson Decl. ¶ 2.)

Given the absence of any red flags and the presence of only minimal opposition to the Settlement (as discussed further below), the Court should grant final approval to the Settlement.

### F. The Lack of Opposition to the Settlement Weighs in Favor of Final Approval.

Finally, the Court should consider the fact that there is very little opposition to the Settlement to be "strong circumstantial evidence favoring settlement." *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020–21 (N.D. Ill. 2000) (finding that a settlement where "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial

evidence in favor of the settlements"); *In re AT&T II*, 789 F. Supp. 2d at 965 (an exclusion or objection rate of 0.01% of class members was "remarkably low" and supported the settlement). Here, class members demonstrated that they overwhelmingly approved of the Settlement. Not only did tens of thousands of individuals file claims, but so did a number of Fortune 500 companies and the Oakland County, Michigan government—sophisticated actors with in-house counsel. That all of these class members showed their approval of the Settlement by filing claims instead of opting out or objecting demonstrates that the feeling among the class is largely positive.

Again, only three objections were raised here: one by a *pro se* objector, Thomas Taylor, and two by objectors represented by counsel, Kevin McCabe and Freedom Home Care, Inc. These objections do not "cast doubt upon the settlement's fairness, reasonableness, or adequacy." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *11 (overruling objections that failed to do so); *see also Freeman v. Berge*, 68 F. App'x 738, 743 (7th Cir. 2003) (affirming final approval of settlement and recognizing that objections must have merit to be considered); Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.643 (2004) ("Even a weak objection may have more influence than its merits justify in light of the inherent difficulties that surround review and approval of a class settlement"). Accordingly, they should be overruled.

        1.    *Objector Taylor Chose to Object Instead of Seeking Assistance from Class Counsel.*

Thomas J. Taylor objected to the Settlement *pro se*, arguing that it is unfair that he has to produce supporting documentation in order to submit a claim. However, the requirement that Taylor produce documentation to be a part of the Settlement Class originates not with the Settlement itself, but with the Court's class certification order, which requires individuals whose telephone numbers do not appear in the Defendants' records to submit documentation.

19

*Birchmeier*, 302 F.R.D. at 256. The Court has already twice confirmed that class certification was appropriate here, the Seventh Circuit declined to disrupt certification, and Taylor provides no reason to revisit those holdings.[6] In any event, Class Counsel helped class members serve more than 600 subpoenas with wireless and landline providers to obtain records and file claims. (Edelson Decl. ¶ 2.) The same assistance would have been open to Taylor, but he chose to object instead. Further, numerous class members were able to successfully obtain records of calls they received and filed claims that included supporting documentation. (*Id*.) Accordingly, Taylor's objection should be overruled.

> ### 2. Freedom Home Care Does Not Object to the Class Relief, Only Attorneys' Fees.

The objection of Freedom Home Care was prepared by notorious serial objector attorney Christopher Bandas, whose pattern of abusive objections is well-documented. *See, e.g.*, *Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *7 (C.D. Cal. Oct. 11, 2016), *appeal docketed*, No. 16-56686 (9th Cir.); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012); *In re Gen. Elec. Co. Sec. Litig.*, 998 F.Supp.2d 145, 156 (S.D.N.Y. 2014); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM (KSC), 2013 WL 5275618, *5 (S.D. Cal. Sept. 17, 2013). Even Mr. Bandas could not find anything wrong with the Settlement itself, and he objected only to Class Counsel's

---

[6]     The Court was well within its discretion to impose an evidentiary requirement for certain class members in this case. *See Saltzman v. Pella Corp.*,257 F.R.D. 471, 476 (N.D. Ill. 2009) (in consumer class action against window manufacturer related to inherent product defect, court found that buyers without sales records could verify their class membership by submitting photographs of the damage to their windows), *aff'd*, 606 F.3d 391 (7th Cir. 2010)*; see also* Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.66 (2004) (affirming that, in class actions, "it may be appropriate to require substantiation of the claims (e.g., through invoices, confirmations, or brokers' records).").

fee request. Accordingly, Plaintiffs will address Mr. Bandas's client's objection in their reply in support of their fee award as it has no bearing on the approval of the Settlement itself.

### 3. McCabe Lacks Standing, and, in Any Event, Misunderstands the Settlement.

The final objection was filed by Kevin McCabe, who has no standing to raise an objection. Objectors only have standing because they are "member[s] of [a] class bound by [a] judgment." *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002); *see also id.* at 10 ("What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement."). McCabe is not such a person. Although McCabe claims to be a class member in his objection, this is doubtful. His telephone number does not appear in Defendants' records, and he provided no documentation supporting his claim that he is a class member. To the contrary, the second sentence of his brief explains that he received calls from the Defendants "outside of the class period of August, 2011, through August, 2012." (Dkt. 545 at 1.) Further, represented by his current counsel, McCabe previously sued CCL, VOMT, and Berkley for violations of the TCPA resulting from telephone calls outside the class period in this case and he never alleged that he received any calls from Defendants during the class period relevant here. *See* Amended Class Action Complaint, *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-cv-6131, Dkt. 19 (E.D.N.Y.). Given the serious doubt as to McCabe's standing to object, Class Counsel twice requested that McCabe's counsel provide his basis for claiming to be a class member but received no response. (Edelson Dec. ¶ 3.)

Regardless of whether McCabe is a class member, he is not bound in any meaningful way by this judgment because all of his claims against the Defendants were resolved in the New York proceeding. His claims were dismissed as to VOMT and Berkley, and the Court later entered judgment in favor of McCabe and against CCL in the amount of $2,500. *McCabe v. Caribbean*

*Cruise Line, Inc.*, No. 13-cv-6131, Dkt. 37 (E.D.N.Y. July 3, 2014); *id.* Dkt. 54 (January 5, 2015). His legal claims against Defendants have therefore been resolved, and he has no further legal rights that the Settlement here could possibly release.

Despite not being affected by the Settlement at all, McCabe raises two issues that he believes weigh against final approval. The bulk of his objection relates to the *cy pres* provision in the Settlement Agreement. McCabe raises a number of cases in which courts have disapproved of settlements that involve donations to charities instead of cash payments to class members. (*See* Dkt. 545 (citing *Hughes*, 731 F.3d at 675 and *SEC v. Custable*, 796 F.3d 653, 656 (7th Cir. 2015, among others).) McCabe is absolutely right that *cy pres* is inferior to a cash award. (Dkt. 545 at 3.) Fortunately, this is not set up as a *cy pres* settlement and claiming class members here will receive a cash award.

The *only* way that any money will go to *cy pres* here is explained extremely clearly in the notice documents:

> All checks will expire and become void 90 days after they are issued. Any un-cashed checks issued to Settlement Class Members during the second round of payments, as well as any unclaimed funds remaining in the Settlement Fund after payment of all Approved Claims, all Settlement Administration Expenses, the Fee Award to Class Counsel, and the incentive awards to the Class Representatives shall be distributed to an appropriate cy pres recipient selected by the Special Master upon recommendations from Settlement Class Members.

(Settlement Agreement Ex. D § 9.) McCabe's suggestion that "the bulk of the total payout" could go to *cy pres* (Dkt. 545 at 10), is not even a remote possibility. The people who will be receiving these checks have already gone through the trouble of filling out claim forms, providing their contact information, and, in some instances, obtaining further documentary proof such as their telephone records, all with the understanding that if the Settlement is approved, they will receive checks. In the extremely unlikely event that thousands of claiming class members

22

simultaneously decide that they no longer want hundreds of dollars in relief and fail to cash their checks in the first round of payments, the funds will be divided among the rest of the class in the second round of payments. (Settlement Agreement § 2.2(f).) Money will only go to *cy pres* if – and only if – after two rounds of distribution, class members miss their second chance to cash checks and money *still* remains in the fund. (*Id.*)

The most likely scenario is that a handful of claiming class members forget to cash their checks and that a few thousand dollars remains in the Settlement Fund. Since it would cost more than that in postage to distribute the funds among the rest of the class (and because nobody wants a check for a penny), the Settlement provides for the donation of those funds. (Settlement Agreement § 2.2(f).) This small amount of money cannot raise the due process concerns McCabe notes, *see Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 895 (7th Cir. 2012) ("The principle *de minimis non curat lex* is applicable to constitutional cases[.]").[7] Further, there is no possible way that McCabe will ever be affected by any *cy pres* distribution in this case because he is not a class member and is not entitled to any portion of the Settlement Fund.

---

[7]     McCabe also objects that the Settlement Agreement does not identify a specific *cy pres* recipient. (Dkt. 545 at 8-10). That objection lacks merit, as the Settlement Agreement appropriately allows the Special Master to choose a suitable recipient after hearing from counsel for the Parties and any interested class members. There is no requirement that the recipient be chosen now, and there is good reason not to do so, given the possibility that there won't even be a *cy pres* distribution in this case. *See In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) (holding that settlement agreement was not required to identify *cy pres* recipient when it described process for choosing potential recipients); *Superior Beverage Co. v. Owens-Illinois, Inc.*, 827 F. Supp. 477, 478 (N.D. Ill. 1993) (after determining that "a substantial balance would be available" following distributions to class members, "the court invited applications for *cy pres* grants and for suggestions as to how such *cy pres* distributions should be made"); William B. Rubenstein, *Newberg on Class Actions*, § 12:34 (5th ed. 2015) ("A court or the parties will sometimes wait to see whether there are even excess funds to decide where to send them, or wait until final approval has been granted. Identifying specific recipients before that time may be a waste of effort and/or a lightning rod for objectors.").

McCabe's only other argument is his belief that that the release is too broad because it does not have an explicit date restriction.[8] As McCabe is not releasing any claims as a result of this Settlement, he again has no standing to raise this purported issue. Nevertheless, the objection is baseless because the release already contains such a restriction. By the terms of the Settlement Agreement, the release is limited to claims "regarding the alleged calls," that is, calls covered by the complaint in this case. (Settlement Agreement § 1.31.) That means calls during the class period. (*See* Dkt. 289 ¶ 1.) As should be obvious from the text of the Settlement, claims unrelated to the calls alleged in the complaint in this action are not released.

Because none of the objections raise valid concerns that reflect on the fairness, reasonableness, or adequacy of the Settlement, they pose no bar to final approval.

## VI. Conclusion

For the reasons addressed above, Plaintiffs respectfully request that the Court finally approve the Settlement as fair and reasonable.

Dated: February 9, 2017

Respectfully submitted by:

/s/ Jay Edelson

Jay Edelson
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Telephone: 312.589.6370
jedelson@edelson.com

Rafey S. Balabanian
Eve-Lynn Rapp

---

[8] McCabe also argues that "[t]he notion that a person, who did not choose to bring an action could, by simply doing claims. Thus, such a court's release of a non-participating class member's claims over which the court is not exercising jurisdiction violates due process." (Dkt. 545 at 11.) Plaintiffs are unable to respond to this argument because it is incomprehensible.

EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
rbalabanian@edelson.com
erapp@edelson.com

Scott R. Rauscher
Michael I. Kanovitz
Jonathan I. Loevy
LOEVY & LOEVY
311 N. Aberdeen St., Third Floor
Chicago, Illinois 60607
Tel: 312.243.5900
scott@loevy.com
jon@loevy.com
mike@loevy.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2017, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

s/ Eve-Lynn J. Rapp