## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and classes of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12 C 4069 |
| CARRIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed suit on behalf of themselves and similarly situated individuals against Caribbean Cruise Line, Inc. (CCL), Vacation Ownership Marketing Tours, Inc. (VOMT), The Berkley Group, Inc., and Economic Strategy Group and its affiliated entities (collectively ESG). Plaintiffs alleged that defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by using an autodialer and an artificial or prerecorded voice to call plaintiffs' cellular and landline telephones. After roughly four years of contested litigation, the parties reached agreement on a class-wide settlement of plaintiffs' claims, and plaintiffs have moved for final approval of the proposed settlement. Two purported class members have raised objections to the terms of the agreement. Plaintiffs' counsel have also petitioned for an award of attorney's fees. Defendants and one of the class members have objected to the size of the requested

fee. For the reasons stated below, the Court grants final approval of the settlement. The Court will issue a separate decision at a later time concerning the petition for attorney's fees.

## Background

The Court assumes familiarity with the basic facts of the case, which the Court has already discussed in other written decisions. *See, e.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 820–22 (N.D. Ill. 2016). In short, plaintiffs allege that ESG placed millions of calls to consumers without their consent. The calls featured prerecorded messages explaining to recipients that they would be eligible for a free cruise if they participated in various short political surveys. According to plaintiffs, ESG's true purpose in placing these calls was to sell vacation products at the direction and on the behalf of CCL, VOMT, and Berkley.

The parties engaged in contested litigation for roughly four years before reaching a settlement agreement. Over that time, the Court denied defendants' motion to dismiss, granted plaintiffs' motion for class certification over defendants' objection, denied defendants' motions for summary judgment, granted in part plaintiffs' motion for summary judgment, and denied defendants' additional motion for summary judgment and class decertification. Before proceeding to trial, the parties engaged in mediation, conducted by Wayne Andersen, a highly respected retired judge of this court. The parties reached agreement on a memorandum of understanding only four days before trial, and that memorandum formed the basis of the agreement that is now before the Court for approval.

The agreement's definition of the settlement class is the same as the definition of

the class in the Court's class certification order. That order certified two classes—one for individuals who received cellular phone calls and one for those who received landline calls—and defined each class as those persons in the United States who received the calls at issue in this case between August 2011 and August 2012 and (a) whose telephone number appeared in defendants' records or the records of third party telephone carriers or (b) whose own records prove that they received the calls. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014). The following individuals are excluded from the settlement class under the agreement: the judge in this case, defendants, those who opt out of the class pursuant to Federal Rule of Civil Procedure 23(e)(4), and counsel and their families.

The agreement provides that defendants will establish a common fund in an amount no lower than $56 million and no higher than $76 million, from which all class members will be paid. The total fund amount will be equal to the sum of the award to class members, settlement administration and notice expenses, any incentive award to class representatives, and any attorney's fee award. Class members may submit claim forms for approval by a settlement administrator, who was selected by plaintiffs and approved by the Court. Each class member who submits an approved claim will be entitled to $500 per call received unless the total of such payments (plus payment of administration expenses, incentive awards to class representatives, and attorney's fees) would exceed the $76 million cap on the fund total. If the cap is met, settlement class members with approved claims will be entitled to a *pro rata* share of the fund based on the number of calls they received. Plaintiffs' counsel have requested a fee award of 33% of the fund (minus notice expenses), up to a maximum of $24.5 million, and

3

plaintiffs request incentive awards of $10,000 for each of the four class representatives. No party or class member has objected to the requested incentive award for the class representatives.

Under the agreement, all cash payments to settlement class members are to be issued via checks that expire and become null and void unless cashed within ninety days. After the first round of cash payments and payment of administration expenses, attorney's fees, and incentive awards, any uncashed checks or unclaimed funds will be issued to settlement class members with approved claims on a *pro rata* basis. The agreement provides that any uncashed checks and unclaimed funds remaining after this second round of payments will be distributed to a *cy pres* recipient selected by Judge Andersen.

In addition to making payments into the settlement fund, defendants have agreed to conduct annual internal audits of their procedures to ensure that they do not make autodialed calls without consumer consent in the future. In exchange for defendants' agreement to make the required payments and conduct internal audits of their procedures, plaintiffs have agreed that settlement class members will be deemed to have released defendants from all claims against them.

**Discussion**

As mentioned above, only two purported members of the class have raised objections to any aspect of the settlement agreement other than the size of the potential attorney's fee award. Before addressing those specific objections, the Court first considers generally whether the agreement meets the requirements of Federal Rule of Civil Procedure 23. The Court must determine, for example, whether the notice

4

provided to the settlement class under the agreement is "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). With respect to the substance of the proposed settlement, the Court must determine whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In addition, the Court must consider whether there is anything suggesting that the settlement was the product of collusion. *See Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006).

A.  **Notice to the class**

The notice directed to the settlement class must be "the best notice that is practicable under the circumstances, including individual notice to all members through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Where individual members cannot be identified through reasonable effort, "notice by publication, imperfect though it is, may be substituted." *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013). Kurtzman Carson Consultants, LLC, the Court-approved settlement administrator in this case, has implemented the notice plan by providing both direct and publication notice. The Court is satisfied that the notice provided is sufficient under Rule 23(c)(2)(B).

The settlement administrator delivered notice directly, either through electronic or regular mail, to 78.6% of the 1,040,389 names and addresses associated with telephone numbers obtained from defendants' records. Notice was also published in ten prominent newspapers throughout the United States, as well as in a national edition of *People* magazine. Notice was also placed in online banner advertisements that received over 150 million impressions and was sent to the Attorney General of the United States as well as the Attorneys General of all 50 states, the District of Columbia,

Puerto Rico, Guam, the Northern Mariana Islands, the U.S. Virgin Islands, and American Samoa.  In addition, a settlement website (www.freecruisecallclassaction.net) provides notice and relevant court documents to website visitors, and the settlement administrator maintains a toll-free telephone number to assist class members.  In total, nearly 500,000 people have visited the settlement website, and over 9,000 calls have been made to the toll-free number.  There have been no objections to the adequacy of the notice to the class, and the Court is confident that under the circumstances of this case, the notice directed to the class has been the best notice practicable.

**B.**     **Rule 23(e)(2) factors**

A district court may only approve a proposed settlement upon a finding that the proposal is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making that finding, a court considers the following factors:  (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) the likely complexity, length, and expense of the litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement.  *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

      **1.**     **Strength of plaintiffs' case as compared to settlement offer**

"The most important factor relevant to the fairness of a class action settlement is the first one listed:  the strength of plaintiff[s'] case on the merits balanced against the amount offered in the settlement."  *Id.* (internal quotation marks omitted).  As this Court has noted previously, valuing hypothetical continued litigation is necessarily somewhat speculative and not an exact science.  *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493

6

(N.D. Ill. 2015) (Kennelly, J.). But the size of the monetary award defendants have agreed to pay under the proposed settlement suggests that this first factor favors approval of the settlement. As plaintiffs point out, TCPA cases of this size generally do not result in awards greater than $40 per plaintiff. *See, e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (providing $34.60 each to individual claimants); *Kolinek*, 311 F.R.D. at 494 (providing roughly $30 per claimant). Plaintiffs maintain that individual claimants in this case are likely to receive at least $135 *per call received*, meaning each approved claimant likely will receive at least $400 in total. Thus the monetary award in this case is clearly significant in comparison to the relief awarded in similar TCPA cases.

The amount offered in the settlement also appears to be substantial in light of the risks plaintiffs faced had they continued to trial. As plaintiffs note, a key issue at trial would be the factually and legally complicated question of whether Berkley, CLL, and VOMT could be held vicariously liable for the calls ESG made, and a jury's adverse finding on that issue would leave the class without any recovery at all. In addition, even if plaintiffs prevailed at trial, there was a serious possibility that a large jury verdict would render the defendants insolvent and unable to pay the damages awarded. *See* Dkt. 463 ("A judgment in the amount Plaintiffs seek could not be paid by Berkley. In fact, such a judgment would require Berkley to terminate thousands of employees and declare bankruptcy."). In light of the real risks associated with continued litigation, the amount defendants have agreed to pay appears to be fair and commensurate with the strength of plaintiffs' case.

    **2.    Complexity, length, and expense of litigation**

The risks just discussed, as well as the history of this hard-fought litigation, suggests that continued litigation likely would add complexity, length, and considerable expense to this already complex, long, and expensive case. "If the Court approves the proposed settlement agreement, this case will end, and class members will be entitled to the retrospective and prospective relief [defendants] ha[ve] promised." *Kolinek*, 311 F.R.D. at 495. If, on the other hand, the Court were to deny approval, the parties would proceed to try a week-long class action jury trial. A verdict for plaintiffs likely would lead to a potentially fruitless attempt to recover damages from defendants who would be rendered insolvent or would file for bankruptcy. A verdict for defendants likely would result in an appeal of not only the verdict, but also certification of the class. (As plaintiffs note, defendants sought appellate review on that issue, but they were denied permission to appeal on an interlocutory basis.) *In Re Caribbean Cruise Line, Inc.*, No. 14-8021 (7th Cir. Oct. 10, 2014). Given the complexity and expense inherent in a class action jury trial, the possibility that plaintiffs might face problems recovering a potential judgment, and the likelihood of a potentially lengthy appellate review process, the Court is confident that the second *Synfuel* factor weighs in favor of approving the settlement and avoiding the increased complexity, length, and expense of continued litigation.

### 3. Amount of opposition

The extremely low level of opposition to the settlement proposal also favors its approval. Of the more than 1 million class members, only three purported members have objected to the proposed agreement, and one of those objects only to the proposed attorney's fee award, not the settlement itself. And rather than opting out or objecting, tens of thousands of class members—including Fortune 500 companies,

8

Oakland County, Michigan, and other sophisticated actors—have filed claims. Though the Court addresses the objectors' specific concerns below, the fact that so few class members have expresses opposition to the settlement supports the reasonableness of the proposal. *See In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (less than 0.01% objecting or opting out supports reasonableness of settlement).

### 4. Opinion of competent counsel

It is undisputed that class counsel are experienced and respected members of the plaintiff's class action bar. Attorneys at Edelson PC have extensive experience litigating consumer class actions, including numerous TCPA cases, and attorneys at Loevy & Loevy have extensive experience trying class actions before juries. That complementary experience of co-counsel gives them insight into the value of plaintiffs' claims and the potential risks and rewards of continued litigation through trial and appeal. Thus the opinion of the competent counsel, who negotiated this settlement with defendants at arms-length, and with the assistance of an experienced and respected mediator, favors approval of the proposed settlement. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate.").

### 5. Stage of proceedings and amount of discovery completed

As discussed above, the parties engaged in hard-fought litigation for over four years and were days away from trial when they reached agreement on settlement terms. They engaged in and reviewed the results of substantial discovery, they briefed three sets of dispositive motions, and the Court ruled on those motions. The Court is

therefore "satisfied that the discovery and investigation by class counsel prior to entering into settlement negotiations was extensive and thorough." *Id.* (internal quotation marks omitted). Thus the final *Synfuel* factor also favors approval of the settlement.

**C.     Absence of collusion**

The Court has not detected any "hints" that the parties' agreement was the result of collusion, and none of the objectors has made such a suggestion. *Mirfasihi*, 450 F.3d at 748. Indeed, the circumstances surrounding the parties' mediation and ultimate agreement minimize the likelihood of any collusion. As plaintiffs note, the parties reached settlement only after several rounds of mediation with a neutral mediator, and they did so only after years of combative litigation. In addition, the agreement lacks any of the problematic features the Seventh Circuit has identified as red flags for collusion. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) (questioning "clear-sailing clause" in which defendant agreed not to contest class counsel's request for attorneys' fees); *Eubank v. Pella Corp.*, 753 F.3d 718, 721 (7th Cir. 2014) (criticizing binding of single class despite adversity of subclasses, provision allowing reduction in attorney's fee award to revert back to defendant, and failure to quantify benefits to class members, among other problematic features). Nothing in the history of this litigation or in the terms of the settlement suggests that the agreement was the product of collusion.

**D.     Objections**

Only two purported class members have raised objections to the terms of the proposed settlement. Thomas Taylor has filed a *pro se* objection, arguing that it is unreasonable to require him to produce documentation of the calls he received in order

10

to be a part of the settlement class. As plaintiffs note, the settlement agreement uses the same definition of the class as the class certification order, which imposes the requirement on class members to produce documentation of calls if their numbers do not appear in defendants' records. See Birchmeier, 302 F.R.D. at 256. It is appropriate to require substantiation of claims in large class actions, see Settlement Administration, Ann. Manual Complex Lit § 21.66 (4th ed.), and Taylor has not provided any reason for the Court to revisit its class certification order at this stage. And as plaintiffs point out, class counsel helped class members to serve hundreds of subpoenas with wireless and landline providers to obtain records. This assistance would have been available to Taylor and other class members like him had he asked for it. Because Taylor offers no reason for the Court to reconsider its class certification order and has offered no other basis for his objection to the settlement proposal, the Court overrules his objection.[1]

Plaintiffs contend that Kevin McCabe, the second objector to the settlement proposal, lacks standing to raise an objection. And indeed, McCabe's brief in support of his objection suggests that he is not a member of the class: he states that the calls he received from defendants were made and received outside of the class period (from August 2011 to August 2012). In addition, any claim McCabe might assert in this case would be barred by the doctrine of claim preclusion because he already sued defendants in the Eastern District of New York for the same alleged TCPA violation in a case that reached final judgment. McCabe does not deny that his claims in that case against VOMT and Berkley were dismissed or that the district court entered judgment in

---

[1] The Court notes that if, as is likely, Taylor has no such documentation, that would mean he is not a class member, which would bring into question his standing to object to the settlement.

11

his favor against CCL in the amount of $2,500. He contends, however, that the doctrine of claim preclusion does not bar his claims in this case because his claim in the New York case concerned only one of the allegedly improper phone calls he received from defendants. The doctrine of claim preclusion, however, requires a plaintiff to bring all of his claims arising out of the same transaction and bars additional suits against the same defendants if "the same facts were essential to maintain both actions." *Evans ex rel. Evans v. Lederle Labs.*, 167 F.3d 1106, 1113 (7th Cir. 1999). Apart from the dates of the alleged phone calls, the facts underlying McCabe's claim in the previous case and he claims in this case—including all essential facts—are identical. McCabe may not bring multiple, nearly identical actions against defendants merely because he received multiple individual calls. "Claim splitting is not a way around res judicata." *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1081 (7th Cir. 2011). Thus because McCabe is not a member of the class or has no live claims against defendants that could be released by the settlement agreement, he lacks standing to object.

Nevertheless, to ensure the interests of the class are protected, the Court will consider McCabe's objections despite his lack of standing. McCabe argues that the portion of the settlement agreement concerning class members' release of claims against defendants is too broad because it does not expressly contain a date restriction. The Court disagrees with McCabe's reading of the settlement agreement. The definition of "released claims" under the agreement is confined to those claims arising out of the "alleged calls," meaning the calls that are the subject of plaintiffs' complaint in this case, and the allegations in plaintiffs' complaint are limited to calls placed between August

2011 and August 2012 (the class period). McCabe is therefore mistaken that individuals who received calls outside the class period are at risk of having their claims released by virtue of the settlement agreement.

McCabe also objects to the agreement's proposed *cy pres* award. He argues that plaintiffs have not demonstrated that it would be infeasible to award the designated *cy pres* funds to the class. Because the agreement does not specify the amount of the potential *cy pres* award or the specific awardee, he contends that the agreement and the notice to the class may be providing inadequate information about an award that may turn out to be the "bulk of the total payout." Dkt. 545 at 10. The contention that a *cy pres* award is likely to involve a significant sum borders on the frivolous. This is a case in which, to receive payment, class members had to submit claim forms providing contact information. In short, they have already provided a concrete expression of their interest in receiving payment. And as previously discussed, the amount each class member will receive is significant—likely several hundred dollars at the low end. Under the settlement agreement, if any class members with approved claims fail to cash their initial checks, the funds left over will be redistributed to those with approved claims in a second round of payments. It is only after this second round of payments that unclaimed funds would go toward a *cy pres* award. For a *cy pres* award to be substantial, therefore, numerous individuals who already went to the trouble of filling out claim forms would have to fail to cash the checks they receive not once, but twice. It is overwhelmingly likely that any unclaimed funds designated for *cy pres* disposition will be so small that the cost of distributing those funds through the mail would far exceed the amount of the funds. Nevertheless, although it is unlikely that the *cy pres* payout

13

would be substantial, the Court will guard against this extremely remote possibility by modifying the agreement to make the size of the *cy pres* award and the identity of the recipient subject to this Court's approval.

## Conclusion

For the reasons stated above, the Court grants plaintiffs' motion [dkt. no. 571] for final approval of the proposed settlement agreement, subject to the following modification to section 2.2(f) of the agreement: a sentence shall be added to the end of section 2.2(f) stating "No funds shall be distributed to a *cy pres* recipient without prior approval of the Court."

                                                                  _____
                                                                         MATTHEW F. KENNELLY
                                                                          United States District Judge

Date: March 2, 2017