IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and classes of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12 C 4069 |
| CARRIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After the parties to this class action reached a settlement with the assistance of a mediator, class counsel petitioned for an award of attorneys' fees from the settlement fund. On the date that objections to the proposed settlement were due, but a little more than one week before the due date for defendants' response to the fee petition, Freedom Home Care, Inc., a member of the class, filed an objection to class counsel's fee request. The arguments and cited authorities in the response defendants eventually filed were similar to those contained in Freedom Home Care's objection. The Court ultimately granted plaintiffs' fee petition but awarded a lower amount than class counsel had requested, in part because of the concerns both Freedom Home Care and defendants had raised. Based on the Court's ruling on the fee petition, class counsel

will receive less than the amount they requested—roughly between $3 and $6 million less, depending on the ultimate number of claims approved. In other words, the class collectively will receive between $3 and $6 million more than it would have under class counsel's proposal.

Freedom Home Care has moved for an award of attorneys' fees in the amount of $59,410 to compensate its lawyers (objector's counsel) for their work in opposing class counsel's fee request. Plaintiffs and defendants both oppose Freedom Home Care's request. They argue that Freedom Home Care's objection did not materially benefit the class because the arguments in the objection were not significantly different from those that defendants made—and that Freedom Home Care knew defendants would make— in response to the fee petition. Plaintiffs and defendants also maintain that even if Freedom Home Care were entitled to a fee award of some amount, it has failed to provide adequate documentary support for the amount it requests. Plaintiffs also contend that objector's counsel billed an unreasonable number of hours for the amount of work the case required. If the Court were to award a fee for objector's counsel, the parties also disagree about whether the fee should come out of class counsel's attorneys' fee award or out of the portion of the common fund designated for the class.

In addition to requesting a fee for its counsel, Freedom Home Care argues that it is entitled to an incentive award in the amount of $1,000 for agreeing to represent the interests of the class as an objecting class member. Plaintiffs and defendants respond that Freedom Home Care's efforts in this case were not significant enough to warrant any award.

For the reasons discussed below, the Court denies Freedom Home Care's

motion.

## Discussion

The Seventh Circuit has recognized that when parties to a class action agree on a proposed settlement, objectors often play an essential role in representing the interests of the class before the reviewing court. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014). Specifically, the presence of objectors can mitigate the "acute conflict of interest between class counsel, whose pecuniary interest is in their fees, and class members, whose pecuniary interest is in the award to the class." *Id.* Defendants usually have no interest in reducing class counsel's fee because they "are interested only in the total costs of the settlement to them, and not in the division of the costs between attorneys' fees and payment to class members." *Id.* Where class counsel and defendants have agreed on a settlement and are no longer in an adversarial posture, it is therefore "desirable to have as broad a range of participants in the fairness hearing [on the proposed settlement] as possible [to mitigate] the risk of collusion over attorneys' fees and the terms of settlement generally." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 288 (7th Cir. 2002).

Courts encourage this broad participation "by permitting [objectors'] lawyers who contribute materially to the proceeding to obtain a fee." *Id.* Another basis for awarding fees to objector's counsel who materially benefit the class, in addition to incentivizing objector participation, is basic principles of restitution. *See id.* Though it is in class members' interest to be represented at the fairness hearing by lawyers who do not have a personal pecuniary interest opposed to that of the class, "high transaction costs prevent negotiation and voluntary agreement" between the class and outside counsel.

*Id.* Thus, where an objector's counsel provides "valuable albeit not bargained-for services" that make the class better off, principles of restitution "allow [objector's counsel] to claim a reasonable professional fee from the recipient of their services [the class]." *Id.* In determining whether an objector's counsel is entitled to a fee, the basic question therefore is "whether [counsel's] efforts did in fact create, enhance, preserve, or protect the fund under the court's supervision." William B. Rubenstein, *Newberg on Class Actions* § 15:94 (5th ed. June 2017 Update).

In setting a fee award for class counsel in this case, the Court followed the approach of other courts within this circuit, dividing the agreed settlement fund (less notice and administrative costs) into "bands" and awarding a declining percentage of each band to class counsel. *See Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 1369741, at *9 (N.D. Ill. Apr. 10, 2017). Specifically, the Court awarded class counsel 36% of the first $10 million, 30% of the second $10 million, 24% of the next $36 million, and 18% of the remainder. *Id.* Other courts have referred to this fee structure as a "sliding scale" model. *Id.* at 1. To determine the specific percentages applied to each band in the model, the Court adopted the structures used in similar cases as a guide but added a "risk premium" for each band's percentage because of the significant risk class counsel took on in this particular case. *Id.* Class counsel had requested a different fee structure, a flat percentage (one-third) of the entire fund (less notice and administrative costs), which would have been higher in absolute terms than the award the Court ultimately made. Though the Court reduced the size of the requested award and applied the sliding-scale approach as both defendants and Freedom Home Care advocated, the Court otherwise largely rejected the arguments made by defendants and

4

Freedom Home Care, both of which argued against the addition of any risk premium. Indeed, both defendants and Freedom Home Care have appealed the Court's ruling, contending that it was an abuse of the Court's discretion.

At the time objector's counsel filed their appearances in this case on January 23, 2017, any reasonable observer of the case would have been aware that defendants would be opposing class counsel's fee petition and would be arguing for application of the sliding-scale method. Because of the structure of the proposed settlement, depending on the number of approved claims, the percentage of the common fund awarded to class counsel could affect the overall size of the common fund and thus the ultimate amount defendants would be obligated to pay.[1] Thus it was readily apparent that this is not a case in which defendants had no interest "in the division of the costs between attorneys' fees and payment to class members," because the percentage of the fund awarded to class counsel in this case could actually affect "the total costs of the settlement to [defendants]." *Pearson*, 772 F.3d at 787. Unlike some other settlement agreements, the proposed agreement in this case contained no "clear

---

[1] The court has discussed the structure of the proposed settlement elsewhere. See, e.g., *Aranda*, 2017 WL 1369741, at *1. The size of the common fund depends upon the number of approved claims. Unless the $76 million cap on the fund is reached, individual class members with approved claims will receive $500 per call received. The common fund consists of the payments for approved claims, incentive awards for class representatives, attorneys' fees for class counsel, and notice and administrative costs. If, for example, the settlement administrator approves claims for 100,000 calls, the amount in the common fund will equal $52 million plus attorneys' fees for class counsel (assuming notice and administrative costs are $2 million and ignoring incentive awards for the sake of convenience). If, in this scenario, the Court were to award class counsel 20% of the common fund (minus notice and administrative costs), the fund total would be $64.5 million ($52 million plus $12.5 million in attorneys' fees). If the Court were to award class counsel 30% of the common fund (minus notice and administrative costs), the fund total would be roughly $73.4 million ($52 million plus roughly $21.4 million in attorneys' fees).

5

sailing" provision that would prevent defendants from objecting to class counsel's fee request. In addition, by the time Freedom Home Care entered an appearance in the case, defendants had already moved for, and the Court had already entered, a briefing schedule on class counsel's fee petition. It was thus abundantly clear to class members and to potential objectors that defendants would be opposing class counsel's request for fees.

It was also foreseeable and highly likely that defendants would be arguing for application of the sliding-scale approach. Class counsel's own fee request expressly acknowledged that several courts in this district have applied fee structures other than the flat percentage class counsel advocated, such as the sliding-scale structure. And in a report filed with the fee petition, class counsel's expert, Professor William Rubenstein, acknowledged that "Seventh Circuit courts tend to award declining percentage as the size of the class's recovery increases." Dkt. no. 533-4 at 3. In short, the argument from Freedom Home Care's objection that the Court credited in ruling on class counsel's fee petition—that the sliding-scale approach was appropriate in this case—was the argument that Freedom Home Care knew, or reasonably should have known, defendants would be making. .

It is true that Freedom Home Care filed its objection before defendants filed their formal written response to class counsel's petition. And in somewhat similar circumstances in *Reynolds*, where a district judge denied an objector's fee because he had already anticipated the objector's argument, the Seventh Circuit noted that "objectors must decide whether to object without knowing what objections may be moot because they have already occurred to the judge." *Reynolds*, 288 F.3d at 288. But in

that same case, the court ruled that a "compelling ground" for denying objector's counsel a fee was that other lawyers had made the same objection at the fairness hearing, and "the objectors added nothing." *Id.* at 289. A similar compelling ground for denying a fee exists here. Unlike the objector in *Reynolds*, who could not read the mind of the district judge, Freedom Home Care knew or reasonably should have known that defendants would be raising the very same argument it intended to make. Thus the class's interests would be protected whether or not Freedom Home Care objected. *See id.* at 288. Defendants were, in fact, especially well equipped to respond to class counsel's petition, because they had participated in the litigation since the beginning and could speak from experience about the value of class counsel's services and the reasonableness of their fee request. But because the deadline to file objections to the overall settlement preceded the due date for defendants' response brief, it appears that Freedom Home Care's counsel saw an opportunity to object to the fee petition before defendants could, possibly hoping that they could then take credit (and a portion of the common fund) when the Court eventually reduced the size of class counsel's fee. Given this background, the Court sees no legitimate basis to compensate Freedom Home Care's counsel and finds that there is a compelling reason to overrule counsel's request for compensation. The Court also notes that principles of restitution do not require the class members to pay for services they would not have bargained for, because they were already going to receive them for free from defendants.

      Plaintiffs do exaggerate when they characterize Freedom Home Care's objection as "essentially a boilerplate motion." Dkt. no. 655 at 8. The objection contained a fairly comprehensive analysis of the case law regarding attorneys' fees in class action

7

settlements within the Seventh Circuit and within this district, as well as criticisms of Professor Rubenstein's expert opinion and the expert opinion of Professor Todd Henderson, another of plaintiffs' experts. The relevant question, however, is not whether objector's counsel's work was of high quality, but whether it provided a material benefit to the class. *Cf. Reynolds*, 288 F.3d at 288 ("The law generally does not allow good Samaritans to claim a legally enforceable reward for their deeds."). Freedom Home Care emphasizes that it was the only party to propose applying a sliding scale to the whole fund, including attorneys' fees but excluding administration and notice costs, which is the approach the Court adopted. Defendants, by contrast, proposed that the fee award should come from applying the sliding scale only to the portion of the common fund designated for class members. Though the Court did not discuss defendants' proposed approach in its ruling, it rejected the proposal, which was inconsistent with other case law in this district. Freedom Home Care contends that it should get credit for being the only party that proposed the fee structure the Court ultimately adopted. But the Court would have arrived at that structure whether or not Freedom Home Care proposed it, because plaintiffs would have responded, as they did in their reply to defendants and Freedom Home Care, by pointing out that defendants' proposal was incorrect and explaining how the sliding scale approach should be applied were the Court to adopt it. In addition, as defendants point out, Freedom Home Care's proposed approach would lead to greater attorneys' fees (and a smaller award for the class) than defendants' approach, and thus Freedom Home Care's proposal could not have benefited the class, even if it were material. Finally, though Freedom Home Care's brief did contain some criticisms of plaintiffs' experts that were not included in

defendants' brief, those criticisms did not have any material effect on the Court's ruling and were not cited in the Court's opinion.

Because objector's counsel did not provide a material benefit to the class, the Court also denies an incentive award for Freedom Home Care. In addition, even if Freedom Home Care's objection had benefitted the class, Freedom Home Care has not demonstrated how its efforts in this litigation warrant an incentive payment. *Cf. Aranda*, 2017 WL 1369741, at *1 (approving $10,000 incentive award to class representatives in this case as reasonable where class representatives spent hours "reviewing the complaint and other documents, responding to requests for information, and sitting for depositions"). Freedom Home Care argues that an incentive award is warranted because it subjected itself to a risk of harassment by class counsel, but it has failed to substantiate this allegation.

**Conclusion**

For the reasons stated above, the Court denies Freedom Home Care's motion for attorneys' fees [dkt. nos. 635, 637].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 24, 2017