**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and classes of others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 12 C 4069** |
| **CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC.,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs filed suit on behalf of themselves and those similarly situated against

Caribbean Cruise Line, Inc. (CCL), Vacation Ownership Marketing Tours, Inc. (VOMT),

The Berkley Group, Inc., and Economic Strategy Group and its affiliated entities

(collectively ESG). They alleged that the defendants violated the Telephone Consumer

Protection Act (TCPA), 47 U.S.C. § 227, by using an autodialer and an artificial or

prerecorded voice to call plaintiffs' cellular and landline telephones. With the assistance

of a mediator, retired United States District Judge Wayne Anderson, the parties reached

a settlement, which the Court approved in March 2017. *See Aranda v. Caribbean*

*Cruise Line, Inc.* (*Settlement Approval Decision*), No. 12 C 4069, 2017 WL 818854

(N.D. Ill. Mar. 2, 2017). As part of the settlement, Judge Anderson was appointed as special master for settlement administration. In that role, he oversaw the work of the designated claims administrator, Kurtzman Carson Consultants (KCC), and reviewed challenges to claims brought by the parties. Judge Anderson issued his award decision on May 17, 2019. *See* Special Master's Award of Calls, dkt. no. 768. The parties each object to several of Judge Anderson's determinations. For the reasons stated below, the Court sustains one of plaintiffs' objections and part of one of defendants' objections and overrules all of the others.

**Background**

The Court assumes familiarity with the facts of this case, which the Court has described extensively in previous written decisions. *See, e.g., Settlement Approval Decision*, 2017 WL 818854, at *1-6; *Aranda v. Caribbean Cruise Line, Inc.* (*Summary Judgment Order*), 179 F. Supp. 3d 817, 820-22 (N.D. Ill. 2016). In short, the plaintiffs allege—and the defendants acknowledge—that the defendants (through ESG) placed tens of millions of calls to consumers without their consent. According to plaintiffs, ESG's true purpose in placing these calls was to sell vacation products at the direction and on behalf of CCL, VOMT, and Berkley.

The parties engaged in contested litigation for roughly four years before reaching the settlement agreement noted above. Over that time, the Court denied defendants' motion to dismiss, granted plaintiffs' motion for class certification over defendants' objection, denied defendants' motions for summary judgment, granted in part plaintiffs' motion for summary judgment, and denied defendants' additional motion for summary judgment and class decertification. Then, on the eve of trial, the parties reached a settlement brokered by Judge Anderson. The Court approved that settlement in March

2

2017.

The settlement agreement defines the settlement class the same way the class certification order did. That is, the Court certified two classes—one for individuals who received cellular phone calls and one for those who received landline calls—and defined each class as those persons in the United States who received the calls at issue between August 2011 and August 2012.

Claimants had two options for recovering under the settlement. Option 1 enabled claimants whose telephone numbers appeared in the defendants' admittedly incomplete records to claim a presumptive three calls. Option 2 allowed claimants to claim more than three calls, subject to a declaration under penalty of perjury and further proof by other evidence and/or an additional affidavit, "if necessary to describe the content of the call." *See* Settlement Agreement, dkt. no. 502, ¶ 1.36. Under the settlement, claimants are eligible for $500 per unlawful call they received, subject to pro rata adjustment up or down depending on the total number of claims approved. The total payout will be no less than $56 million and no greater than $76 million.

The settlement also permitted the parties to challenge the number of calls claimed by a class member where they could show a "factual basis" for that challenge. *See id.* ¶ 5.3. And challenge they did. The defendants contested 43,158 (just over 94%) of the 45,850 Option 1 claims approved by KCC, the claim administrator. The defendants also challenged 1,136 of the approximately 12,000 Option 2 claims. The plaintiffs, for their part, disputed the basis for the defendants' Option 1 challenges and challenged KCC's Option 2 screening decisions. The special master adjudicated those challenges, and the parties have now asserted their objections to his conclusions.

3

## Discussion

Rule 53 of the Federal Rules of Civil Procedure governs review of decisions made by a special master. *See Kanter v. C.I.R.*, 590 F.3d 410, 416 (7th Cir. 2009). Under that rule, "the district court's review of matters that are the subject of an objection is de novo unless the parties have stipulated (with the court's approval) that review will be for clear error." *Id.*; *see also* Fed. R. Civ. P. 53(f)(3). The parties here timely objected to the special master's award of calls and agree that there was no stipulation to clear-error review. This Court's review of the objections is therefore de novo. *See Westefer v. Snyder*, No. 00-162-GPM, 2013 WL 1286971, at *3 (S.D. Ill. Mar. 27, 2013) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

In this case, the objections rest principally on disagreements about how to interpret the settlement agreement. "Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law." *Am. Homeland Title Agency, Inc. v. Robertson*, No. 18-3293, 2019 WL 3071742, at *2 (July 15, 2019) (internal quotation marks and alteration omitted); *see also K4 Enters., Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 313, 914 N.E.2d 617, 624 (2009) ("A settlement agreement is in the nature of a contract and is governed by principles of contract law."). The Court is intimately familiar with the disputed terms given that it previously reviewed and approved the agreement. *See Settlement Approval Decision*, 2017 WL 818854, at *1; *cf. In re Res. Tech. Corp.*, 624 F.3d 376, 386 (7th Cir. 2010) ("A court that has issued an order is in the best position to interpret it." (internal quotation marks and alteration omitted).).

4

**A.      Objections based on Option 1 challenges**

As noted, the defendants challenged nearly all of the Option 1 claims.  The "factual basis" on which the defendants premised these challenges was that the claimants' phone numbers appeared fewer than three times in the class list—the list of call recipients reconstructed from the defendants' admittedly incomplete records.  The plaintiffs argued to the special master that the class list was not a sufficient factual basis on which to challenge Option 1's presumption of three calls.  They also submitted additional evidence from which KCC could cross-check the Option 1 claims.  This additional evidence consisted of (1) a list of phone numbers employed by the defendants during their call campaign that was used by the Court in its class certification decision (the "List of 57"); (2) a list of phone numbers constructed from online reports of illicit vacation product sales calls (the "List of 97"); and (3) data from an entity called Contact Center Compliance (the "CCC List").

The special master allowed the defendants' challenges over the plaintiffs' objection but permitted KCC to cross-check the challenged claims against the List of 57 and the List of 97.  He did not allow use of the CCC List because the data it contained were too attenuated from the illicit sales calls.  Both parties object to the special master's handling of this issue.

First, the defendants object that the special master erred by allowing KCC to cross-check the challenged Option 1 claims against any additional evidence.  They rely on a provision in the settlement agreement stating that "[i]f the challenged Settlement Class Member does not timely submit . . . supplemental documentation or testify before the Special Master, the Special Master shall sustain the Defendants' challenge and the

Settlement Class Member will have an Approved Claim for one (1) call." *Id.* ¶ 5.5.  In the defendants' view, the more-than 39,000 Option 1 claimants who did not personally respond when their claims were challenged were each therefore entitled to recover for only a single call.  The plaintiffs disagree, noting that class counsel responded on behalf of those class members by providing the various lists described above to the claim administrator and special master.

Second, the plaintiffs object that the defendants' challenge to Option 1 claims was improper in the first place because it effectively allowed the defendants to rebut Option 1's three-call presumption based only on the undisputedly incomplete class list. In the plaintiffs' view, the "factual basis" language of the settlement agreement required the defendants to produce some sort of affirmative evidence to rebut the presumption. They contend that "[t]he whole point of the three-call presumption, as the Special Master acknowledged, was to account for the fact that the Class List . . . is vastly incomplete."  Pls.' Br. in Supp. of Pls.' Objs., dkt. no. 774, at 11.   Plaintiffs say that "[i]f the presence of a telephone number on the class list a single time creates a presumption of three calls, but the fact that the number appears only a single time is sufficient to rebut that presumption, then there is no presumption."  *Id.*  Such an outcome would, they contend, frustrate the settlement agreement, particularly because all but fifty of the more than 43,000 Option 1 claims challenged by the defendants received notice and were entitled to the presumption *because* the claimant's phone number appeared on the class list.

The defendants oppose the plaintiffs' objection and their analysis supporting it. The defendants argue that the settlement agreement expressly provides that the

6

presumption of three calls "can be rebutted by Defendants' challenges," Settlement Agreement, dkt. no. 502, ¶ 5.4, and they say that that is precisely what they did. By the terms of the agreement, defendants contend, those challenges can be made on any "factual basis." *Id.* at ¶ 5.3. They say that the factual basis for the challenges at issue was that the relevant Option 1 claimants' phone numbers appeared fewer than three times on the class list. They also adopt the special master's reasoning that because the class list was used by this Court for class certification and notice purposes, it should be permitted as a factual basis to challenge Option 1 claims. Moreover, the defendants contend that the plaintiffs acknowledged (and purportedly accepted) the basis for the defendants' challenges earlier in this litigation. That is, according to the defendants, the plaintiffs forfeited their protests to the basis of these challenges (1) when they agreed to certain language for notices sent to Option 1 claimants after their claims were challenged and (2) by acknowledging, during settlement negotiations, that such challenges may occur.

The Court concludes that the plaintiffs' objection must be sustained and the defendants' objection overruled. The context of the agreement's use of the term "factual basis" demonstrates that it should not be interpreted as broadly as the defendants propose. *See Bock v. Comput. Assocs. Int'l, Inc.*, 257 F.3d 700, 707 (7th Cir. 2001) (describing circumstances in which it is appropriate to consider objective extrinsic evidence in interpreting a contract "in spite of [a] merger clause"). Specifically, the plaintiffs and defendants negotiated and agreed to the three-call presumption for class members who filed Option 1 claims—as this Court and the special master have repeatedly noted—in large part because the defendants' records did not even approach

7

a complete accounting of consumers who received unlawful calls.  As the Court wrote at class certification, limiting recovery to those claimants whose calls were detailed in the defendants' incomplete records "would . . . leave out individuals who actually received the calls in question" and "would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct."  *Birchmeier v. Caribbean Cruise Line, Inc.* (*Class Certification Order*), 302 F.R.D. 240, 250 (N.D. Ill. 2014).  Based at least partly on this concern, the parties negotiated and the Court approved a settlement that included the three-call presumption.

The contract itself also undermines the defendants' reading.  "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others."  *Gallagher v. Lenart*, 226 Ill. 2d 208, 233, 874 N.E.2d 43, 58 (2007).  The defendants are correct that paragraph 5.4 of the settlement agreement provides that the three-call presumption may be rebutted by an appropriate challenge.  But the very next sentence suggests that that challenge must meet some minimum standard before the presumption is rebutted.  Specifically, it provides that "[a]ll other Settlement Class Members"—that is, other than Option 1 claimants—"will have the ultimate burden if their Claim Form is challenged to demonstrate the number of calls" they received.  Settlement Agreement, dkt. no. 502, ¶ 5.4.  Given this context, it would be odd to conclude that the Option 1 presumption could be rebutted based only on the evidence that the parties used to shape the agreement in the first place; if that were true, the parties would not have needed to specify that claimants *other than* those invoking Option 1 would bear the ultimate

8

burden of demonstrating their calls.

Furthermore, the defendants' reading would effectively delete the presumption from the contract. Illinois courts have long acknowledged that "[c]ontract terms and clauses should not be disregarded as surplusage, as it is presumed that language is not employed idly." *J.B. Esker & Sons, Inc. v. Cle-Pa's P'ship*, 325 Ill. App. 3d 276, 285, 757 N.E.2d 1271, 1279 (2001). To accept the defendants' assertion that the agreement permits an automatic rebuttal of the presumption based only on the very same incomplete class list that necessitated its inclusion in the first place would effectively write the presumption out, impermissibly disregarding it as surplusage. *See id.*

The defendants' contention that the Court's previous use of the class list for notice purposes somehow supports its position is unpersuasive. Specifically, they adopt the special master's reasoning that this Court's endorsement of the class list as a tool for effecting notice to claimants suggested that the list is "meaningful." To be sure, the Court used the class list to notify prospective claimants of their rights under the settlement agreement. *See Settlement Approval Decision*, 2017 WL 818854, at *2. But, in the same paragraph that it noted that the class list could be used for notice purposes, the Court also acknowledged that the class list was not sufficient on its own to accomplish reasonable notice and discussed the importance of additional notice by publication. *See id.* Notice was ultimately published in prominent newspapers and the national edition of *People* magazine, publicized using online banner advertisements, distributed to the United States' and each of the fifty states' attorney general, and detailed on a settlement website and toll-free information hotline. Thus although it is correct to describe the class list as "meaningful," this does not support the conclusion

9

that the list was comprehensive or that it could properly be used as the sole "factual basis" to rebut Option 1's three-call presumption.

And despite the defendants' blurry characterization, the Court has not previously determined that the class list was a sufficient basis to rebut the presumption. Specifically, the defendants contend that the Court already rejected the plaintiffs' presumption argument in denying what the plaintiffs styled as a motion to enforce the settlement. But in fact what the Court did was reserve ruling on this issue, concluding that

> it is up to the special master, in the first instance, to determine the appropriateness of defendants' challenges and to adjudicate them to the extent he concludes they are appropriate challenges. The Court does not believe it is appropriate to make an advance determination regarding what procedures or standards the special master should follow, including, in particular, what it takes to rebut the three-call presumption.

Order of June 18, 2018, dkt. no. 707, at 2. The Court's unwillingness to predetermine the outcome of challenges before the special master had opportunity to adjudicate them cannot be interpreted as a rejection of the plaintiffs' arguments on their merits. Rather, the Court was simply preserving the structure set forth in the settlement agreement, in which challenges would be submitted initially to the special master, subject to later review by the Court.

The defendants' forfeiture arguments fare no better. They first contend that the plaintiffs acknowledged and acquiesced during settlement negotiations to the use of the class list as a basis to rebut Option 1's three-call presumption and are therefore estopped from opposing the challenges. Specifically, they point to a comment made on an earlier draft of the portion of paragraph 5.3 of the agreement that concerns collective challenges against "designated groups" of claims. The commenter—who the

10

defendants say was class counsel—asked, "Can KCC tell us if a number appears on the list more than once?"  Ex. D to Defs.' Br. in Opp'n to Pls.' Objs., dkt. no. 791-1, at 12.  The commenter then suggested that "One type of challenge to claims would be that a claimant's number only appears on the Class List once and, therefore, [the claimant] must establish the other two calls.  So a 'designated group' would be people whose number only appears on the list once.*  Id.*  The plaintiffs counter that the settlement agreement's merger clause precludes consideration of evidence of pre-agreement negotiations such as the comment above.  *See* Settlement Agreement, dkt. no. 502, at ¶ 10.8.  They contend that the language of the agreement as it was ultimately agreed to ought to control here.

The Court concludes that the comment does not preclude plaintiffs' objection. First, in contrast with the previous decision of this Court discussed above, the comment is not the sort of "objective" extrinsic evidence that may be considered to resolve a latent ambiguity in spite of a merger clause.  *See Bock*, 257 F.3d at 707;  *Mathews v. Sears Pension Plan*, 144 F.3d 461, 467 (7th Cir.1998); *see also Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 463, 706 N.E.2d 882, 885 (1999) ("The integration clause makes clear that the negotiations leading to the written contract are not the agreement.").  But even if the comment were properly before the Court, it would not warrant the quasi-estoppel for which the defendants argue because it is far more ambiguous than the defendants suggest.   For one thing, it is not clear that the commenter was actually endorsing the idea that a challenge based only on the number of times an Option 1 claimant's phone number appeared on the class list was permitted under the settlement agreement.  Rather, the most natural reading of the comment is

that, under the version of the settlement agreement the commenter was reviewing, the final sentence of paragraph 5.3—the provision about group challenges—could be interpreted to permit such a challenge. That observation does not foreclose the current objection.

The defendants' other forfeiture argument also fails. They contend that the plaintiffs forfeited their objection to the use of the class list as the sole basis for challenges to Option 1 claims by agreeing to the following notice language sent to class members whose claims were challenged:

> Your Claim Form indicated that you received call(s). This letter is to notify you that the Defendants have asserted a challenge as to the total number of calls you claim to have received because the number of calls listed on your Claim Form do [sic] not match the number of calls appearing in defendants' records.

Ex. B to Defs.' Br. in Opp'n to Pls.' Objs., dkt. no. 791-1, at 5. According to the defendants, the plaintiffs also consented to adding the disclaimer that "[a]lthough Defendants' records do not necessarily evidence the number of calls you received because their records are incomplete, because a party has challenged your claim, you are required to submit proof that you received the number of claimed telephone calls if you want to recover for more than one call." Ex. C to Defs.' Br. in Opp'n to Pls.' Objs., dkt. no. 791-1, at 7. Defendants argue that this stipulated notice language proves that the plaintiffs knew about and acquiesced to the use of the class list as a basis to rebut Option 1 claims. In response, the plaintiffs note that they expressly reserved their rights under the settlement while negotiating when and to whom the notice should be sent. *See* Ex. 4 to Pls.' Br. in Supp. of Pls.' Objs., dkt. no. 774-5 ("Class Counsel objects to sending the challenge letters to the claimants . . . because they are improper in several respects and not allowed nor required by the settlement agreement. . . . Plaintiffs are

12

also reserving all rights under the settlement.").

Although the plaintiffs' reservation of rights was fairly broad and imprecise, the Court is satisfied that they did not forfeit their objection to the special master's ruling on the use of the class list as a basis to rebut Option 1's three-call presumption. Rather, the plaintiffs reserved their underlying objection while nevertheless conditionally negotiating notice language to be sent to class members whose claims were challenged. Administration of claims in a complex class settlement like this one requires the parties to collaborate extensively. The Court is unwilling to punish the plaintiffs for their willingness to amicably negotiate notice language while reserving their underlying objections for future resolution.

For these reasons, the Court sustains the plaintiffs' objection to the special master's decision allowing the defendants to challenge Option 1 claims solely on the basis of the class list. Given this resolution, it is not necessary to address the plaintiffs' other objection—that the special master should have permitted the claim administrator to cross-check the challenged claims against the CCC List. And because the Court concludes that the defendants' challenges to most of the Option 1 claims based only on the class list were improper under the terms of the settlement agreement, the Court also overrules the defendants' objection that claimants who did not individually respond to its challenges should be awarded only a single call.[1]

---

[1] The Court notes that even if it had overruled the plaintiffs' objection, the defendants' objection would not have prevailed. The defendants' contention that the settlement agreement required each Option 1 claimant to respond individually and not through their attorneys—that is, class counsel—is unsupported by the language of the settlement agreement or case law and thus would fail on its merits.

**B.    Objections based on Option 2 challenges**

Option 2 allowed class members to claim more than three calls.  To do so, they had to submit a form specifying under penalty of perjury how many calls they had received and provide further proof by other evidence and/or an additional affidavit "if necessary to describe the content of the call."  *See* Settlement Agreement, dkt. no. 502, ¶ 1.36.  About 12,000 people submitted Option 2 claims, of which the defendants challenged a significant portion.

The defendants object to the special master's handling of some of their challenges.  Specifically, the defendants argue that Judge Anderson permitted the claim administrator, KCC, to consider evidence that was not sufficiently reliable to support challenged claims.  This objection can be further subdivided into (1) an objection based on the use of the List of 97 to support any claims and (2) a separate objection based on reliance on the List of 57 as it related to only a handful of corporate entities that filed a significant number of claims via a single representative.

The plaintiffs also object to the special master's handling of Option 2 claims. Specifically, they contend that the special master erred when he allowed the claim administrator to cross-check the Option 2 claims against the class list, the List of 57, and the List of 97 before any challenges were lodged.  For the sake of clarity, the Court addresses these objections in reverse order.

**1.    Plaintiffs' objection to KCC's pre-challenge adjustment of Option 2 claims**

At the threshold, the plaintiffs object to the methods KCC employed in its initial screening of Option 2 claims.  Specifically, KCC employed a cross-check of the Option 2 claims against other evidence and adjusted the claims to the number of calls that

14

were supported by that evidence.  But there appears to be some uncertainty about precisely *what* other evidence KCC used.  The special master noted in his award decision that "KCC awarded calls for matches it found for numbers from the Class List, the List of 57, and the List of 97 and any additional matches found by reviewing documents submitted with the original claims by claimants."  *See* Special Master's Award of Calls, dkt. no. 768, at 5-6.  The plaintiffs, on the other hand, appear to suggest that KCC reduced Option 2 claimants to only the number of calls that appeared on the undisputedly incomplete class list.  Curiously, the defendants seemingly do not take a position on which evidence KCC used to cross-check the Option 2 claims.

The Court proceeds on the understanding that the special master was correct that KCC cross-checked Option 2 claims against all three lists.  After all, if KCC had reduced all of the Option 2 claims to only the number of calls reflected in the class list, the defendants' objections to the special master's handling of their challenges—that the List of 97 and List of 57 were insufficient to support some claims—would be nonsensical.  The Court therefore construes the plaintiffs' objection as relating to only the special master's handling of Option 2 claims that were corroborated by only the class list and not the List of 57 or List of 97.

With this understanding in mind, the Court turns to the merits of the plaintiffs' objection.  The plaintiffs contend that KCC acted improperly and in violation of the settlement agreement when it reduced the number of calls claimed by Option 2 claimants before any formal challenge was lodged by the defendants.  The plaintiffs argue that the Option 2 claimants who claimed twelve calls or fewer should have been permitted to proceed with as many calls as they reported because they were required to

attest under penalty of perjury to the number of calls received on the very forms on which they filed their claims. The plaintiffs propose a cutoff of twelve calls as the upper bound at which Option 2 claims should not have been reduced by KCC, as that is the maximum number of calls that the special master sustained for a challenged claimant who requested and received a telephonic hearing under the settlement agreement's challenge provision. They emphasize that Option 1 claimants whose claims were challenged were provided the opportunity to support their claims with a sworn affidavit that, if submitted, was considered conclusive. In the plaintiffs' view, it would be inequitable to treat the sworn declarations submitted in support of Option 2 claims any differently.

The defendants, on the other hand, contend that KCC was operating within the mandate of the settlement agreement when it screened Option 2 claims. Specifically, they point to paragraph 5.2, which mandates that the claim administrator "shall employ reasonable procedures to screen claims for abuse or fraud, including without limitation, by cross-referencing the information provided on the Claim Form against the Class List, and by reviewing the evidentiary proof submitted by Settlement Class Members." Settlement Agreement, dkt. no. 502, at ¶ 5.2. In their view, that is precisely what KCC was doing when it screened the Option 2 claims against other evidence. The defendants also argue that the settlement agreement's challenge provision is meant only to allow for "eligible claims" to be challenged and that KCC is the exclusive arbiter of which claims are eligible for compensation. In the defendants' view, therefore, the plaintiffs' challenge to KCC's screening procedure was outside the scope of the challenge procedures provided for by the settlement.

16

Even assuming that the plaintiffs could properly challenge KCC's screening, the Court concludes that that process was the sort of "reasonable procedure" KCC was directed by the settlement agreement to employ. The plaintiffs' argument that the screening improperly treated Option 1 claims differently from Option 2 claims is unpersuasive. Specifically, the plaintiffs contend that the special master's denial of their challenge resulted in inconsistent and unequal treatment of declarations from Option 1 claimants (whose declarations, when offered, were treated as conclusive evidence of the number of calls they received) and Option 2 claimants (whose declared number of calls were often reduced based on other evidence). But the Court is satisfied that Option 2 claims were both qualitatively and quantitatively different from Option 1 claims and that KCC and the special master therefore reasonably applied somewhat more rigorous screening standards to the former than they did the latter. These differences are perhaps best illustrated by the plaintiffs' own proposal that KCC's screening be reversed for claimants who claimed twelve or fewer calls. An Option 2 claim asserting twelve calls is worth $6,000 (give or take pro rata adjustments), whereas an Option 1 claim is by default worth only $1,500. This significant difference in value underscores the reasonableness of KCC's Option 2 screening efforts.

Likewise, the Court is unpersuaded that twelve calls—the largest number of calls awarded by the special master to a challenged Option 2 claimant after a telephonic hearing—is an appropriate cutoff under which claimants' declarations must be unquestioningly accepted. Paragraph 5.5 of the settlement expressly empowers the special master to hold telephonic hearings for class members whose claims are challenged and who wish to offer live testimony in support of their claims. That Judge

Anderson accepted one claimant's live testimony that she had received twelve calls does not establish that twelve is a magic number at which it becomes reasonable to simply take claimants at their word. Rather, it indicates only that the special master was, after a full hearing pursuant to the agreement, confident that this particular claimant was telling the truth. The fact that he reached that conclusion after live testimony during which he was able to assess demeanor and credibility in real time renders these awards decidedly different from the up-to-twelve-call Option 2 claims the plaintiffs ask to have conclusively credited. The Court thus concludes that it is not inequitable to treat calls awarded after a challenge and a telephonic hearing somewhat differently from claims made only on paper.

In sum, the defendants have the better of this objection. Paragraph 5.2 of the settlement agreement not only permits but actually requires the claim administrator to employ reasonable procedures to screen claims for abuse and fraud. Cross-referencing Option 2 claims against other supporting evidence is, in the Court's assessment, just such a reasonable procedure. And paragraph 5.5 empowers the special master to conduct hearings for challenged claimants who request them and to make findings based on the testimony he receives. It was not error for the special master to decline to forbid the claim administrator from cross-checking Option 2 claims with twelve or fewer calls simply because one claimant used paragraph 5.5's hearing procedure to support a claim for that many calls. The challenge to KCC's screening process was therefore correctly denied, and the plaintiffs' objection to that decision is overruled.

One final note related to the plaintiffs' objections. The plaintiffs ask the Court to allow the special master to hold telephonic hearings with about 100 claimants whose

previous hearing requests were inadvertently overlooked during the claim administration process. The defendants apparently do not oppose these hearings, and the special master has indicated his willingness to conduct them. The Court therefore sees no reason such hearings should be withheld and grants the plaintiffs' request in this respect.

### 2. Defendants' List of 57 objection

The defendants' first objection relates to only a relatively small subset of Option 2 claims: those claims submitted by five corporate claimants on behalf of their employees via a third-party representative, Robert Sepulveda, who worked for a company called Kent Recovery Services. These claims were screened against the class list, the List of 57, and the List of 97. The defendants challenged those calls supported by both the List of 97, discussed below, and the List of 57. The List of 57 is a list of phone numbers undisputedly used by the defendants during their call campaign. Eight of the numbers on the list were drawn from a list compiled by the Missouri Attorney General. The other forty-nine phone numbers were hosted by the defendants' telephone provider, Bandwidth.com.

The defendants challenged the award of calls from the forty-nine Bandwidth.com phone number because, they contend, those numbers were used for purposes unrelated to the underlying TCPA violations 30-40% of the time during the class period. The defendants contend that it was therefore necessary for claims based on calls from those phone numbers to include either other supporting evidence or an affidavit from the claimant describing the content of the call. *See* Settlement Agreement, dkt. no. 502, at ¶ 1.36. They say that the corporate claimants failed to provide adequate supporting

evidence. Specifically, they argue that the personal attestation from Robert Sepulveda regarding the number and content of calls received was not good enough to satisfy the settlement agreement's challenge procedure because Sepulveda was not the individual recipient of any of the claimed calls. Rather, he submitted the claim forms as a representative of the five corporations whose employees had individually received the calls.

The plaintiffs counter that the settlement agreement does not require any additional affidavit or declaration testimony beyond the original claim form unless such an affidavit is "necessary to describe the content of the call." *See id.* In the plaintiffs' view, it was not necessary to provide affidavits here because the claims had already survived KCC's cross-check and the corporations had previously been identified as class members. They also argue, in effect, that Sepulveda could be taken to have done his diligence before personally attesting to the calls. And, according to the plaintiffs, the defendants have not actually shown beyond mere speculation that the Bandwidth.com phone numbers were used for any other purpose than making the disputed phone calls during the class period.

The special master considered and rejected the defendants' challenge. Specifically, Judge Anderson concluded that Sepulveda had either laid an appropriate foundation for his representations based on affidavits of in-house personnel from the five corporations or could reasonably rely on KCC's cross-check to support his claims. The special master expressly noted that some of this evidence "would be inadmissible" at a formal trial but that the claim review process is "not a formal trial" and the evidence was therefore sufficient. *See* Special Master's Award of Calls, dkt. no. 768, at 6;

Manual for Complex Litigation § 21.66 (4th ed. 2004) ("Nor, for purposes of administering a settlement, should the court require the same amount and specificity of evidence needed to establish damages at a trial; secondary forms of proof and estimates are generally acceptable.").  The defendants now object to the special master's decision.

The Court overrules this objection.  Although the five corporate claimants indeed opted to use a representative, Sepulveda, to file the Option 2 claims on their behalf, nothing in the settlement agreement suggests that such an arrangement was not allowed.  Sepulveda filled out the claim forms in question based not on speculation or even estimates—a method of proof expressly endorsed by the Manual for Complex Litigation—but rather on information he had received from his clients.  And even then, KCC did not take those claims on faith but rather administered the cross-check described above and screened out any calls not supported by the class list, the List of 57, or the List of 97.  As such, the Court concludes that it was not "necessary" within the meaning of paragraph 1.36 of the settlement agreement for the five corporate claimants to submit additional first-person affidavits regarding the content of the claimed calls. The declarations made by Sepulveda on behalf of his clients—based on information he had gathered from them—were sufficient to support the disputed claims.  The defendant's objection is therefore overruled.

### 3.    Defendants' List of 97 objection

The defendants' other objection is based on the special master's handling of their challenge to the use of the List of 97 to support Option 2 claims.  Again, Option 2 required claimants to submit a claim form attesting to having received a specific number

21

of the calls that were the subject of the settlement. And, again, after they were submitted, KCC screened the Option 2 claims against the class list, List of 57, and List of 97.

First, the defendants contend that the Option 2 class members who relied on the List of 97 to support their claims have failed to provide a specific sworn statement regarding the calls they received, as defendants contend the settlement agreement requires. This argument can be further broken down into two parts. Initially, the defendants rehash the same arguments regarding the sufficiency of Sepulveda's submission of Option 2 claims on behalf of five corporate claimants that were ultimately supported by the List of 97. According to the defendants, Sepulveda's attestation in a representative capacity was inadequate to entitle those claimants to the calls they were awarded. The Court overrules this argument for the same reasons it overruled the argument with respect to the List of 57.

The argument is more significant as it relates to non-corporate claimants. The defendants appear to contend that those (non-corporate) Option 2 claims that relied on the List of 97 to withstand screening and/or challenge were insufficiently supported because the List of 97 was not available to claimants when they made their initial declarations. That is, at the time these claimants attested under penalty of perjury to having received unlawful phone calls from the defendants, they had been provided only the List of 57 phone numbers as potential sources for the calls. According to the defendants, it was therefore "not possible for [the claimants] to aver to the content of those calls because they never knew about the existence of the 97 numbers." Defs.' Br. in Supp. of Defs.' Objs., dkt. no. 778, at 6.

22

The Court disagrees.  Although it is true that the claimants had not yet been provided the List of 97 when they initially made their claims, that is no reason to doubt the veracity of their declarations about the number and content of calls they had received.  It is overwhelmingly unlikely that any, or many, of the individual claimants recorded or memorized the phone numbers from which they received the illicit calls— particularly those who filed claims under Option 2 because they had received a large number of such calls.  Whether claimants were provided the List of 97 or just the List of 57 before they filed their claims thus has no bearing on whether they were able to accurately remember how many of the defendants' unlawful phone calls they received.

Next, the defendants argue that the List of 97 is insufficiently reliable to be used to support any claims.  They point to the fact that the List of 97 was constructed by the plaintiffs based on reports on what the defendants call a "blog site"—a forum called 800notes.com where consumers reported annoying phone calls and the numbers from which they received them.  The defendants contend that this source was problematic because it was difficult to verify the accuracy of the reports and because the information on the website was incomplete and in some cases ambiguous.  They also argue that the plaintiffs have failed to demonstrate the "in-service dates" for the 97 phone numbers on the list—that is, the dates during the class period that they were used for the calls that were the subject of the settlement.  (This latter argument tracks closely with the defendants' objection to the use of the Bandwidth.com phone numbers from the List of 57, discussed above.)  They further suggest that the plaintiffs' failure to rely on the List of 97 at class certification underscores that the plaintiffs themselves doubted the list's reliability.

23

The special master denied the defendants' challenge, concluding that although imperfect, the List of 97 was reliable enough to satisfy the relaxed evidentiary standards applicable to claim administration. *See* Manual for Complex Litigation § 21.66 (4th ed. 2004). The defendants object to that decision, and the Court overrules the objection. The List of 97 is undoubtedly imperfect, but to support a claim evidence need not be airtight, much less, as the defendants incorrectly suggest, admissible under the Federal Rules of Evidence. The List of 97 constitutes a sufficiently reliable form of what the Manual for Complex Litigation might call "secondary evidence" to support a claim against challenge under the settlement agreement. *See id.*

The defendants make one final narrower argument that warrants separate discussion. Specifically, they contend that the List of 97 is insufficiently reliable to support call awards *in excess* of those the individual class members actually claimed. That is, where a class member claimed a given number of calls, the defendants challenged KCC's willingness to award more calls based on the List of 97. They point to one class member in particular, Brian Reo, who claimed only seven calls on his Option 2 claim form but was ultimately awarded fifteen calls by KCC based at least in part on the List of 97. The special master denied this challenge, too, because he deemed KCC's scoring, which relied in part on the List of 97, sufficiently reliable to control even where it suggested a claimant had received more calls than he or she had originally declared.

This aspect of the defendants' objection presents the closest question, and the Court is ultimately persuaded that the defendants are correct in this limited respect. Although decidedly reliable enough to *support* claimants' declarations, the claim

24

administrator erred when it used the List of 97 to score calls to claimants in excess of the number they actually claimed on their claim forms. The claim administration process relies in significant part on claimants submitting truthful attestations about the number and content of illegal calls they received from the defendants. And where the attestations were challenged, the settlement agreement allowed the claimants to submit supplemental evidence, such as the List of 97. As discussed above, that supplemental evidence needed not be perfect much less admissible under the Federal Rules of Evidence. But, the Court now holds, the settlement agreement does not allow the claim administrator to use evidence like the List of 97 to award *more* calls than a claimant actually declared.

To be clear, the special master interpreted the settlement agreement correctly when he permitted claimants and the settlement administrator to rely on the List of 97 to *support* Option 2 claims. The Court simply finds that, in peculiar circumstances like Reo's where the claim administrator scored more calls than were actually claimed based only on the List of 97, the special master erred to the limited extent that he denied the defendants' challenge to those excess calls.

## Conclusion

For the foregoing reasons, the Court denies both parties' objections to the special master's award of calls [dkt. nos. 774, 778] with two exceptions. First, the Court sustains the plaintiffs' objection to the use of the class list as a sole basis to rebut the presumption of three calls for Option 1 claims. Second, the Court sustains the defendants' objection to the special master's award of calls to Option 2 claimants in excess of the number they actually declared on their claim forms, where the sole basis

25

for that excess award was the List of 97.  The Court also grants the plaintiffs' request to permit approximately 100 challenged claimants whose requests for telephonic hearings were inadvertently overlooked to have hearings with the special master.  The parties are to confer and draft an appropriate order embodying the Court's determinations and are to provide an agreed draft, or separate drafts, to the Court via e-mail by no later than August 2, 2019.  The case is set for a status hearing on August 5, 2019 at 9:30 a.m.

MATTHEW F. KENNELLY
United States District Judge

Date:  July 31, 2019