IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and classes of others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | |
| v. | |
| CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY GROUP, LLC, THE BERKLEY GROUP, INC. AND VACATION OWNERSHIP MARKETING TOURS, INC., | Case No. 12-cv-4069<br><br>Judge Matthew F. Kennelly |
| Defendants. | |

**DEFENDANTS' OBJECTION TO
THE SPECIAL MASTER'S UPDATE ON AWARD OF CALLS**

Defendants Caribbean Cruise Line, Inc., Vacation Ownership Marketing Tours, Inc., and The Berkley Group, Inc. ("Defendants"), pursuant to Rule 53(f) of the Federal Rules of Civil Procedure and Paragraph 15 of the Judgment Granting Final Approval of Settlement (Dkt. # 626), Object to the Special Master's Update on Award of Calls ("Award") as follows:

**Introduction**

On December 2, 2019, the Special Master awarded calls to 100 separate claimants who requested telephonic hearings. Ex. A hereto, Award. This objection is limited to the Special Master's award of 250 calls to one claimant, Daisy Exum. Defendants do not seek to disturb the Special Master's award of calls to the other 99 claimants. Simply put, Ms. Exum's award is

unsupported by the evidence and constitutes a windfall that far exceeds the awards to the other 99 claimants who requested telephonic hearings.

On January 13, 2017, Ms. Exum submitted her claim form claiming that she received 700 calls, which means Ms. Exum sought a $350,000 payment from the settlement fund.[1] This was an immediate red flag. KCC, the settlement administrator, reviewed Ms. Exum's claim form, applied the provisions of the Settlement Agreement (including screening her claim for fraud and abuse), and awarded one call to Ms Exum. After receiving notice of KCC's determination, Ms. Exum, through class counsel, requested a telephonic hearing with the Special Master to try to increase her award. Ms. Exum provided no additional supporting documentation with her request.

Ms. Exum testified at a telephonic hearing on September 16, 2019. Ex. B hereto, transcript of a.m. session; Exhibit C hereto, transcript of p.m. session.[2] The Special Master ultimately awarded 250 calls to Ms. Exum, which means that she will receive $125,000 (when applying the $500 per call scenario). The awards to the other 99 claimants pale in comparison to Ms. Exum's award and the Special Master provided no analysis or explanation to justify increasing Ms. Exum's call award by almost 250% from KCC's award. Nor does the Special Master cite any specific testimony or additional proof to support such a dramatic increase in Ms. Exum's award.

The sheer number of calls claimed by and ultimately awarded to Ms. Exum compared to other claimants warrants a reduction in her award in light of her testimony and lack of supporting

---

[1] While it is still unknown whether Defendants will ultimately be required to pay the Floor, the Ceiling, or somewhere in between, one likely scenario is that claimants will receive $500 per call.

[2] Defendants are attaching only pages 1 through 19 from the transcript of the p.m. session because the remaining part of the transcript reflects the telephonic hearing of another claimant, not Ms. Exum.

2

documentation. The majority of the other claimants who requested telephonic hearings were awarded calls in the single digits. Moreover, of those claimants who requested telephonic hearings, the claimant with the next highest call award received 30 calls, which is 220 fewer calls than Ms. Exum's award.

Sections 5.4 and 5.5 of the Settlement Agreement make clear that when Defendants assert a challenge, it is the Class Member's "ultimate burden" to "demonstrate the number of calls, greater than one (1)." Ex. D hereto, Settlement Agreement, §§ 5.4 & 5.5. Here, Ms. Exum's actions before the telephonic hearing, her testimony at the telephonic hearing, and her lack of documentation to support her claim for hundreds of calls demonstrate that she did not satisfy her burden of proof as required under the Settlement Agreement.

As discussed below, Ms. Exum should not be permitted to reap the benefit of such an excessive award that is unsupported by the record, is unreasonably disproportionate to other individual awards, and will reduce the settlement fund to the detriment of other claimants. Ms. Exum's award should be reduced to one call, which is the number that KCC awarded to her after screening her claim for fraud and abuse and properly applying the provisions of the Settlement Agreement.

## Jurisdiction

Rule 53(f)(2) provides that, "[a] party may file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served, unless the court sets a different time." Fed. R. Civ. P. 53(f)(2). The Special Master served the Award on December 2, 2019. Defendants' Objection to the Award is timely as it is filed no later than 21 days after service of the Award.

**Standard of Review**

Rule 53(f)(3) provides, in pertinent part, that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master." Fed. R. Civ. P. 53(f)(3). The Special Master made a factual finding that Ms. Exum received 250 calls from the political cruise call campaign at issue. Accordingly, the Special Master's Award is reviewed under a *de novo* standard of review.

Similarly, Rule 53(f)(4) provides that, "[t]he court must decide de novo all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). Therefore, to the extent that the Special Master's Award is deemed to be a conclusion of law based on his review and interpretation of a contract, the Settlement Agreement, the standard of review is still *de novo*. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) ("Contract interpretation . . . involves conclusions of law.).

**Argument**

**I.     The Special Master Erroneously Determined That Ms. Exum Is Entitled To An Award Of 250 Calls, Which Is A Payment Of Approximately $125,000.**

   *A.     Ms. Exum's claim, on its face, is suspect.*

Ms. Exum submitted her claim form electronically on January 13, 2017, nearly four and a half years after the political cruise call campaign ended. She did not provide any additional documentation at the time she submitted her claim form. Nevertheless, she stated, under oath, that she received exactly 700 calls from the political cruise call campaign.

Given the one-year class period, this means that Ms. Exum claims she received an average of almost 2 calls per day, every day, for 365 days, and that each call was a political cruise call. In doing so, Ms. Exum sought payment of $350,000 from the settlement fund. A comparison of Ms. Exum's claim to the claims of the other 99 claimants who requested

4

telephonic hearings highlights why her claim is not credible. The majority of these other claimants requested single digit call awards. The highest call request of these claimants (other than Ms. Exum) was for 50 calls, and there were only two of those.[3] So, of the claimants seeking telephonic hearings, Ms. Exum claimed 650 calls more than the claimant who had the next highest call request. In dollars, this means that Ms. Exum sought $325,000 more than the next highest claimant of the 99 other claimants who requested telephonic hearings. The bottom line is that Ms. Exum was awarded more calls simply because she claimed significantly more calls than the other claimants who requested telephonic hearings. Her testimony does not support such an award and she provided no documentation demonstrating that she received even a single call.

      **B.**     ***It is unclear whether Ms. Exum owned the relevant phone number during the class period.***

In conducting its duties under the Settlement Agreement, KCC performed a reverse look-up of the phone numbers that were called as part of the political cruise call campaign. That reverse look-up revealed that the phone number that Ms. Exum claimed to own during the one-year class period was actually associated with another individual, Edith Gay. Ex. E hereto, Email from KCC. Moreover, the home address associated with the phone number was not Ms. Exum's address. *Id*. KCC used this reverse look-up procedure for thousands of claimants, which was an accepted protocol. The fact that KCC associated the relevant phone number with a different individual and address creates significant doubt whether Ms. Exum even owned the phone number during the class period.

---

[3] Moreover, out of more than 57,000 total claim forms, only a small number of individual claimants requested more than 700 calls. All of those claimants received single digit call awards.

### C. Ms. Exum's pre-hearing conduct demonstrates her lack of credibility and unwillingness to be questioned about her claim.

One business day before the telephonic hearing, Ms. Exum sent an email outlining a list of conditions and restrictions that she wanted to inject into the proceedings. Ex. F, Email from Ms. Exum. Specifically, Ms. Exum wanted the Special Master to decide her claim without a hearing. *Id*. She further demanded that, if the Special Master conducted a hearing, Defendants' counsel should not be permitted to participate in the hearing and she did not want to be questioned about her claim. *Id*. These unusual requests are not indicative of an individual who is willing to stand by and defend a claim for 700 calls. Ms. Exum's attempt to block any further inquiry into her excessive demand is further evidence that her claim, which she has the burden to prove, is not credible.

### D. Ms. Exum's testimony is not credible and does not satisfy her burden of proof under the express terms of the Settlement Agreement.

Even if Ms. Exum owned the relevant phone number during the class period, her testimony does not support the hundreds of calls claimed. Ms. Exum testified that she received calls from other telemarketing companies or campaigns during the class period. Ex. B, pp. 36-37. She further testified that "we weren't really thinking much about the calls . . .", there "was just a lot going on that year", and "it was just a crazy year". *Id*., pp. 5-6. While Ms. Exum apparently had several distractions during the calling campaign, which concluded over seven years ago, she nevertheless asserts that she is able to identify 700 political cruise calls. Ms. Exum stated that she answered about 85-95% of the alleged 700 political cruise calls. Ex. B, p. 35. This means that she answered the phone between 595 to 665 times. *Id*., p. 36 ("Q: It's your testimony that you can recall picking up about 595 of these calls. A: At a minimum, yes."). While she allegedly took the time to answer hundreds of political cruise calls in a one-year time

6

period, and characterized the calls as "aggravating", "frustrating", and "annoying", she admitted that she never made any physical notes about the calls. Ex. B, pp. 10-12, 37. It is simply not credible that Ms. Exum would answer hundreds of "aggravating", "frustrating", and "annoying" calls and not create a single written record about any of those offending calls.

### E. Ms. Exum provided no timely or relevant documentation to support her claim.

During the telephonic hearing, Ms. Exum testified that when she heard about the settlement, she found some older phone bills and highlighted the political cruise calls. Ex. B, pp. 23. She claimed that she received one bill with "at least 30 pages of phone calls." *Id*., p. 11. She said that she highlighted 100 calls in her phone bills, but stopped highlighting because her carpel tunnel syndrome was acting up. *Id*., p. 21. Rather than resume the highlighting when her carpel tunnel syndrome subsided, Ms. Exum testified that she sent the phone bills (including pages that were not highlighted) to "an administrator at a Providence address" so that someone else could finish the highlighting. Ex. B, pp. 11 and 29. However, KCC has no record of receiving any documents from Ms. Exum other than her initial claim form. *Id*., pp. 29-30. Ms. Exum also claimed that she sent her phone bills to class counsel. *Id*., p. 31. But class counsel indicated that they did not receive any phone bills from Ms. Exum either. Ms. Exum originally stated that she retained copies of the phone bills that she allegedly sent to KCC and class counsel, but she could not locate them. Ex. B, p. 11. Later in the hearing, however, Ms. Exum testified that she did not make any copies of her phone bills. Ex. C, p. 6. Moreover, even though Ms. Exum sought hundreds of thousands of dollars from the settlement fund, she never checked to see if anyone received the phone bills she claims to have sent. Ex. B, p. 31.

Because Ms. Exum failed to produce a single phone bill, there is no way to determine whether the phone numbers on those bills were associated with the political cruise call campaign.

7

The only documents that Ms. Exum produced in addition to her claim form were her military identification, her department of corrections identification, and a letter from her pastor, all of which she produced after taking a break during the telephonic hearing. Ex. C, p. 4. But when she was asked to simply identify the documents before the break, Ms. Exum was cryptic and testified that there was "no way [she] could describe the documents without revealing what the documents are." Ex. B, p. 44. Section 5.5 of the Settlement Agreement specifically provides that, in the event of a challenge, KCC shall notify the challenged claimants that they "must *within thirty (30) days* either submit supplemental documentation to prove each call claimed or schedule a telephonic hearing with the Special Master . . . ." Ex. D, § 5.5 (emphasis added); Ex. B, p. 41. Ms. Exum failed to submit her military identification, her department of corrections identification, the letter from her pastor, or any other supplemental documentation within 30 days as required under the Settlement Agreement. Because Ms. Exum failed to produce these documents by the designated deadline, they should be disregarded. Furthermore, even if these documents are allowed, they do nothing to substantiate Ms. Exum's claim that she received hundreds of political cruise calls.

Ms. Exum led the Special Master to believe that she had pages and pages of phone bills supporting her claim and that she sent them to KCC and class counsel. But Ms. Exum never produced a single page of a phone bill and both KCC and class counsel deny ever receiving any phone bills. The fact that representations from both KCC and Ms. Exum's own counsel contradict her testimony is troubling. Despite the lack of documentary support and explicit contradiction between Ms. Exum's testimony and her own counsel's representations, Ms. Exum still stands to receive $125,000. Such a result ignores the evidence (and lack thereof), is

8

inconsistent with requirements set forth in the Settlement Agreement, and is fundamentally unfair to other claimants.

## Conclusion

For the foregoing reasons, Defendants respectfully request that this Court sustain Defendants' objection, reduce the Special Master's award to one call for Daisy Exum, and enter whatever further relief this Court deems just and appropriate.

Dated: December 23, 2019                                          Respectfully Submitted,

By: /s/ *Richard J. Prendergast*

Richard J. Prendergast, Esq.
Michael T. Layden, Esq.
RICHARD J. PRENDERGAST, LTD. (#11381)
111 W. Washington St., Suite 1100
Chicago, Illinois 60602
(T) (312) 641-0881
(F) (312) 641-3562
rprendergast@rjpltd.com
mlayden@rjpltd.com

Kevin M. Forde, Esq.
Brian P. O'Meara, Esq.
Forde Law Offices LLP
111 West Washington Street, Suite 1100
Chicago, IL 60602
(T) 312.465.4780
(F) 312.641.1288
kforde@fordellp.com
bomeara@fordellp.com

M. Peebles Harrison (*Pro Hac Vice*)
Rose, Harrison & Gilreath, P.C.
700 Blue Jay Street, Suite 1
Post Office Box 405 Kill Devil Hills,
North Carolina 27948
Phone: (252) 480-1414
Fax: (252) 480-1765
peebles@outerbankslaw.com

*Counsel for Defendant The Berkley Group, Inc.*

- and -

By: */s/ Jeffrey A. Backman*

Richard W. Epstein (Florida Bar No. 229091)
Richard.Epstein@gmlaw.com
Jeffrey A. Backman (Florida Bar No. 662501)
Jeffrey.Backman@gmlaw.com
GREENSPOON MARDER, P.A.
200 E. Broward Blvd., Suite 1500
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Fax)
*Admitted Pro Hac Vice*

Timothy Hudson, Esq.
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Floor
Chicago, Illinois 60604
312.762.9476 (Telephone)
312.762.9451 (Fax)
thudson@tdrlawfirm.com

*Counsel for Defendants Caribbean Cruise Line, Inc. and Vacation Ownership Marketing Tours, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, states that the foregoing DEFENDANTS' OBJECTION TO THE SPECIAL MASTER'S UPDATE ON AWARD OF CALLS was electronically filed with the Clerk of Court by using the CM/ECF system, which will provide copies to all counsel of record registered to receive CM/ECF notification on this 23rd day of December 2019.

/s/ *Richard J. Prendergast*