IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERARDO ARANDA, GRANT BIRCHMEIER, STEPHEN PARKES, and REGINA STONE, on behalf of themselves and classes of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CARIBBEAN CRUISE LINE, INC., ECONOMIC STRATEGY GROUP, ECONOMIC STRATEGY GROUP, INC., ECONOMIC STRATEGY, LLC, THE BERKLEY GROUP, INC., and VACATION OWNERSHIP MARKETING TOURS, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 12 C 4069 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2012, the plaintiffs in this case sued—on behalf of themselves and others similarly situated—Economic Strategy Group, Caribbean Cruise Line, Inc., The Berkeley Group, Inc., and Vacation Ownership Marketing Tours, Inc., alleging that they violated the Telephone Consumer Protection Act by placing millions of automated phone calls to individuals without their consent. After the Court certified a plaintiff class, the parties settled, and the Court approved the settlement agreement in March 2017. Under the agreement, class members could recover $500 per violating call claimed. The agreement provided that a claim administrator would make initial award decisions on class members' claims, and a special master would review the administrator's awards.

Daisy Exum filed a claim for 700 calls, which the claim administrator reduced to one call. She contested this award and requested a hearing on her claim before the special master, retired U.S. District Judge Wayne Andersen. After the hearing, which included testimony by Exum, the special master awarded her 250 calls. The defendants have appealed, arguing that Exum failed to prove each of the 250 calls awarded, as required for recovery under the settlement agreement.

**Background**

The Court has detailed the facts and procedural history of this case in previous written decisions and assumes familiarity with these. *See, e.g.*, *Order on Objections to the Special Master's May 2019 Award of Calls*, dkt. no. 804, 2019 WL 3457085 (July 31, 2019); *Settlement Approval Decision*, dkt. no. 596, 2017 WL 818854 (Mar. 2, 2017); *Order on Defendants' Second Motion for Summary Judgment and Motion for Class Decertification*, dkt. no. 456, 202 F. Supp. 3d 850 (N.D. Ill. 2016); *Order on Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment*, dkt. no. 421, 179 F. Supp. 3d 817 (N.D. Ill. 2016). The Court will therefore recount only those facts relevant to its analysis of the defendants' objections to the award of calls to Daisy Exum.

The plaintiff class sued the defendants under the Telephone Consumer Protection Act, 47 U.S.C. § 227, alleging that they had made millions of automated calls to private individuals without their consent. According to the plaintiffs, these calls were facilitated by Economic Strategy Group for the purpose of marketing the vacation services of Caribbean Cruise Line, Inc., The Berkley Group, Inc., and Vacation Ownership Marketing Tours, Inc.

In March 2017, after the Court had certified a class and denied the defendants'

motions for summary judgment and class decertification, the parties resolved the case through a settlement agreement, which the Court approved. *Settlement Approval Decision*, 2017 WL 818854, at *6. The agreement defined the settlement class as individuals who had received violating calls from the defendants between August 2011 and August 2012. It provided that settlement class members could recover $500 for each violating call they claimed. In the settlement agreement, the parties designated a claims administrator, Kurtzman Carson Consultants (KCC), to review class members' claims and make award determinations. They also designated a special master, retired U. S. District Judge Wayne Anderson, to review KCC's work and issue awards of calls.

The settlement agreement set forth two options, with different burdens of proof, for class members to file claims. Option 1 governed claims for three or fewer calls; these claims benefitted from a presumption of three calls that had to be rebutted by the defendants. Option 2 governed claims for more than three calls; if an Option 2 claim was challenged, the claimant would "have the ultimate burden . . . to demonstrate the number of calls, greater than one . . . , that [she] received." Settlement Agr., dkt. no. 502, ¶ 5.4. To satisfy this burden, the challenged claimant would have to "either submit supplemental documentation to prove each call claimed" or request a telephonic hearing with the special master to "testify as to the basis for each separate call claimed." *Id.* ¶ 5.5.

In May 2019, the special master issued a decision regarding awards to tens of thousands of claimants. Both the plaintiffs and defendants objected to the special master's award decision on various grounds. Additionally, the plaintiffs asked the Court to permit the special master to hold hearings with roughly one hundred Option 2

3

claimants whose claims were challenged and whose subsequent requests for telephonic hearings had been overlooked.  In July 2019, the Court issued an order overruling most of the objections to the special master's award of calls and allowing the special master to hold telephonic hearings with the Option 2 claimants who had requested them.

Daisy Exum submitted a claim for 700 calls, and KCC initially reduced her claim to one call.  Exum requested a telephonic hearing with the special master to prove her claims, and she was among the Option 2 claimants whose hearing requests had been overlooked during claim administration.  After the Court's July 2019 order allowing telephonic hearings for those claimants, the special master held a hearing on Exum's claims on September 16, 2019.

At the hearing, Exum was represented by class counsel, and the defendants participated through their counsel.  Exum testified that she did not have any written notes or phone records documenting the calls she claimed.  She explained that at some point, she had phone bills showing numerous automated calls from the defendants, but she had mailed those bills to KCC.  Exum testified that she vividly remembered receiving roughly two calls a day, most days, between August 2011 and August 2012.

The defendants argued to the special master that KCC had not received any call records or phone bills from Exum.  Additionally, the defendants contended that KCC's investigation of Exum's claim had revealed that during the settlement class period, the phone number at which Exum claimed to have received violating calls was registered to a different person named Edith Gay.  Exum testified that the phone number had been hers for at least twenty years, including for the settlement class period from August

2011 to August 2012. She acknowledged that she would occasionally receive calls asking for Gay, suggesting that it might have been Gay's phone number before it became hers.

In December 2019, the special master issued a decision in which he awarded 250 calls to Exum. The defendants have objected to the award.

## Discussion

The Court reviews de novo objections to a special master's findings of fact, unless the parties have stipulated to clear-error review. Fed. R. Civ. P. 53(f)(3). The parties did not so stipulate, so the Court will review de novo the defendants' objections to the award of 250 calls to Exum. *See* Judgment Granting Final Approval of Settlement, dkt. no. 626, ¶ 15.

The defendants argue that Exum failed to satisfy her burden to prove each of the 250 calls she was awarded. Exum is an Option 2 claimant, and she therefore had "the ultimate burden . . . to demonstrate the number of calls, greater than one . . . , that [she] received." Settlement Agr., dkt. no. 502, ¶ 5.4. This required Exum to "either submit supplemental documentation to prove each call claimed" or "testify as to the basis for each separate call claimed." *Id.* ¶ 5.5.

Courts do not require settlement claimants to prove their claims with the same quality or quantity of evidence that would be required to establish damages at trial. *See Manual for Complex Lit.* § 21.66 (4th ed. 2019). Specifically, the evidentiary standards are more relaxed for settlement claimants, and "secondary forms of proof and estimates are generally acceptable." *See id.* Courts consider the size of a claim when determining the level of proof required to verify it. *See Mullins v. Direct Digital, LLC*,

5

795 F.3d 654, 667 (7th Cir. 2015). "Claims for modest amounts are frequently accepted solely on the basis of the verified claim forms." Manual for Complex Lit. § 21.66. Large claims may warrant more proof to facilitate an "empirical assessment" of the likelihood of fraud or inaccuracy of the claim. *See Mullins*, 795 F.3d at 667; Manual for Complex Lit. § 21.66.

Exum has admitted that she does not currently have any documentation to support her claim of 700 calls, and she therefore supports her claim solely with her testimony. The settlement agreement allows claimants to prove their calls through their testimony alone. *See* Settlement Agr., dkt. no. 502, ¶ 5.5. The defendants argue, however, that Exum's testimony is insufficient to support her claim because she was not credible. Exum responds that because the special master allowed her 250 calls, he made an implicit determination that her testimony was credible. Exum adds that the Court should not reject the special master's implicit credibility determination without allowing her to testify in a telephonic hearing before the Court.

Preliminarily, the Court notes that Exum is correct that the special master implicitly credited her testimony. Although his award lacks any express finding regarding Exum's credibility, the award of 250 calls indicates that he found Exum at least partially credible. *Cf. United States v. Fox*, 548 F.3d 523, 529 (7th Cir. 2008) (noting that credibility determinations can be implied).

The defendants argue that the Court can reject the special master's credibility determination by reviewing the transcripts of Exum's hearing. The Court declines to do so. The special master made his credibility determination after direct consideration of Exum's testimony, which he heard live, albeit over the telephone. Even though the

6

hearing was by telephone, a transcript cannot capture the full flavor of the testimony, including factors that factfinders typically consider in assessing credibility. The Court is not comfortable making a determination regarding Exum's credibility without first hearing her testimony. *Cf. Jackson v. United States*, 859 F.3d 495, 499 (7th Cir. 2017) (holding that although a district court judge reviews de novo a magistrate judge's findings of fact, it cannot reject the magistrate judge's credibility determinations without holding its own hearing). If a recording of Exum's testimony before the special master is available, the Court would at least consider relying on that; otherwise, a separate telephone hearing will have to be arranged.

## Conclusion

For the foregoing reasons, the Court takes under advisement the defendants' objections to the special master's award of calls to Exum [dkt. no. 812]. The case is set for a status hearing on March 10, 2020 at 9:30 a.m. to set a schedule for further proceedings.

```
                            _____
                                  MATTHEW F. KENNELLY
                                  United States District Judge
```

Date: March 5, 2020