**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERARDO ARANDA, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12 C 4069** |
| | ) | |
| **CARIBBEAN CRUISE LINE, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case filed suit on behalf of a class against a number of entities, alleging that they violated the Telephone Consumer Protection Act by placing millions of automated phone calls to them and others similarly situated without their consent. The Court later certified a class. The parties settled just before trial with the assistance of a mediator, retired U.S. District Judge Wayne Andersen. The Court approved the settlement agreement in March 2017. The agreement provided that class members could recover $500 per violating call claimed. It provided that a claim administrator would make initial award decisions on claims by class member and that a special master would review the administrator's awards. The Court appointed retired Judge Andersen as the special master.

The special master made an initial award of calls in May 2019, but this did not include about 100 claimants who had challenged the claim administrator's awards and requested hearings. These claimants were given notice of hearing dates, and the special master ultimately held 87 telephonic hearings. He issued an award in

December 2019. A little over 20 claimants claimed 10 or more calls. After conducting telephone hearings, at which counsel for the plaintiff class and for defendants permitted to question the claimants (as did the special master), he awarded fewer than 10 calls to a handful, 10 to 20 to nearly all the rest, and more than 20 to two claimants: Yolanda Higginbotham, who was awarded 30 calls, and Daisy Exum, who was awarded 250. Ms. Exum's award from the special master would translate into a total monetary award of $125,000. (Ms. Exum sought an award of 700 calls, which if accepted would have resulted in a monetary award of $350,000.)

The defendants appealed the special master's award of 250 calls to Ms. Exum, arguing that she failed to prove her entitlement to that many calls. In early March 2020, the Court issued in opinion in which it took defendants' objections under advisement but determined that it could not make a final ruling—which would involve either upholding or overturning the special master's implicit credibility determination—without hearing testimony by Ms. Exum directly.

The Court then set a hearing, to be held by telephone, for March 18, 2020. That hearing had to be vacated due to the coronavirus pandemic and the entry of a general order by this district's chief judge suspending all court proceedings, effective March 16, 2020. The Court later attempted to make arrangements to take Ms. Exum's testimony by video conference but then learned that this would require her to purchase Internet service, which she did not then have. The Court decided not to require Ms. Exum to take that step and therefore conducted the hearing by telephone, on June 12, 2020. The Court asked Ms. Exum a number of questions, and counsel for both sides were also given an opportunity to do so (class counsel did not ask questions; defense

counsel did).  The Court advised that it would consider Ms. Exum's testimony at the hearing before the special master along with her testimony at the hearing before this Court and any other evidence submitted by the parties.

During the June 12 hearing, Ms. Exum testified, as she had in the earlier hearing before the special master, that she had received the subject calls at the phone number xxx-xxx-7474.  This was originally a land line, but in or about 2009 she "ported" the number to a cellular phone, which is the phone on which she received the subject calls.

The period covered by the class settlement is August 2011 through August 2012, a period of approximately one year.  Ms. Exum said that during that period, the calls would come "every day, if not every day, certainly every other day, and they would come more than once in a day."  She said that she answered them "almost every time," because they were coming from different numbers, and she thought the calls could be coming from colleges to which her son had applied for admission.  She said that the caller—which she referred to as having a "robotic" voice—would make reference to taking a political-type survey, and she recalled references to the presidential election (presumably the one held in 2012) and to "Obamacare."  Ms. Exum stated that once she was able to ascertain that a call was a telemarketing call, she would wait a few seconds and then hang up—except for some of the calls earlier during the period, on which she may have punched in numbers when prompted by the caller.  She stated that on at least one occasion, she was transferred and then got a sales pitch for a cruise, or perhaps a time share.

The Court asked Ms. Exum if she was getting other "robocalls" during the same period.  She said, "There may have been a few other calls.  I just don't remember."  The

3

subject calls stood out, she said, because of the annoying robotic voice. Ms. Exum said that over the year in question, she had gotten a total of perhaps 20 or 30 other "robocalls."

Ms. Exum stated that in the summer of 2012, the subject calls became less frequent. She summarized: "I was probably getting anywhere from two calls a day most days to maybe a call every other day as it got closer to the middle to the end of July into August."

The Court also asked Ms. Exum about records to support her claim. She stated that her phone bills at the relevant time "absolutely" listed the incoming calls she had received. When the Court challenged her on this, she said, "I'm a hundred percent sure." Ms. Exum further stated that she had located the bills after receiving notification of the lawsuit and had been able to identify the subject robocalls. She had kept all of her bills and did not have to obtain them from her cellular service provider. She testified (both during the hearing with the special master and during the hearing with this Court) that she had highlighted relevant calls and sent a stack of bills to an address in Rhode Island in support of her claim.

It is undisputed that the claim administrator has reported, contrary to Ms. Exum's statements, that it received no supporting documentation from her. During the hearing, the Court asked Ms. Exum why she had not kept copies of the bills she claimed to have sent in. She replied, "I honestly thought that I did keep copies," but that she had not been able to find them. She then speculated that because of the deadline to submit supporting information, "perhaps I sent the originals without actually making copies, but I'm almost certain that I did make copies." She has never been able to locate any

4

copies, however.

In response to a further question by the Court, Ms. Exum stated that after sending her materials to the address in Rhode Island, "I did not hear anything back from anybody."

The Court pointed out to Ms. Exum that during her testimony before the special master, she had testified that she had highlighted "about a hundred, just over a hundred" calls on the bills she claimed to have sent in. She testified before the Court, however, that "there was more calls" than that. She did not highlight the others, she said, because she suffers from carpal tunnel syndrome and it was acting up. She was concerned she would miss the deadline if she waited for her symptoms to subside, so she submitted the bills without further highlighting.

Ms. Exum told the Court that she is claiming a total of 700 calls. The Court asked how she had come up with this figure. Here is what Ms. Exum said:

> Well, the way I came up with that number is that I really sat down and thought about just how annoying, I mean, when I say annoying, just how annoying and aggravating those calls were. I know there were at least two calls a day minimum. I know that without any doubt, and so I just based it on doing two calls per day and then I multiplied that by, say, the number of days in a week and I remember the calls probably were slowing down and that's how I came up with that number.
>
> THE COURT: So it's basically two calls a day every day for a year essentially?
>
> THE WITNESS: Yes, your Honor.
>
> THE COURT: Seven days a week?
>
> THE WITNESS: Well, I'll be honest, I don't remember a lot of calls being on Sundays and even if there were, you know, I was always so busy on Sundays and there may have been calls on Saturdays, but I definitely know the majority of the Monday through Friday, it was like nonstop. So in all fairness, if I had to just say the number of days in a week at the most

six days, but definitely five days.

During examination by defense counsel, Ms. Exum conceded that she had previously testified that in addition to sending call records to the claim administrator, she had also sent them to class counsel. She backed away from this, however, during the hearing before the Court: she said that she sent out one envelope and claimed that when asked about this at the earlier hearing, she must have assumed that class counsel and the claim administrator were related entities.

Significantly (for reasons that will become clear), Ms. Exum testified during examination by defense counsel that when going through her phone bills to determine which calls were the subject calls, she did not identify the subject calls from the list of numbers on the class settlement website, which listed numbers from which the calls at issue had been placed. Rather, Ms. Exum said, she identified the calls "by the length of time that I was on the phone call, and when it was a minute or less, I knew that it was a call that I hung up on it, that I listened to just enough to identify that it was a robo call and I was not going to stay on the line with that caller." She conceded, however, that she had followed the same practice (staying on the line only briefly) in dealing with telemarketing calls other than the subject calls. This, presumably, would make it impossible to distinguish the subject calls from other robocalls by simply looking at phone bills. But Ms. Exum said she was certain that the calls she claimed to have highlighted on her bills were the subject calls.

As indicated, the Court advised the parties—without objection—that it would also consider Ms. Exum's testimony before the special master. In broad strokes, her testimony was similar to that before the Court, though not entirely the same. In terms of

similarities, before the special master, Ms. Exum testified that there "were approximately two – one to two calls per day," but that "it didn't happen every day, but it almost happened almost every day, every other day. So I base that assumption on maybe one to two calls per day." Sept. 16, 2019 Tr. at 6-7. She also testified that the calls were memorable because of the upcoming presidential election, and she referenced a few occasions when she was routed to someone who attempted to market a cruise to her. And there are other similarities as well.

But there are significant inconsistencies between Ms. Exum's testimony before the Court has her testimony before the special master. These inconsistencies bear directly on Ms. Exum's contentions regarding the number of calls she received. In particular, contrary to her testimony to the Court that, in reviewing records, she had determined which calls to highlight by the length of the calls, Ms. Exum testified before the special master that she had determined which calls to highlight by checking the phone numbers from which the calls had been placed. This was directly contrary to her testimony before the Court, where (as noted earlier) she specifically denied doing that. Her testimony on this point before the special master was as follows:

> Q: So, Ms. Exum, when you were doing the highlighting years after 2011 and 2012, how did you know what numbers to highlight?
>
> A: Well, because there were calls from 312 area codes and there were calls from other 800 numbers that did not make sense to me.
>
> And, in addition, there was some information out there where, you know, people were talking about if they call the Administrator – and I, actually, called a few times to find out how can I get information of running down the phone calls.
>
> So on the Birchmeier website – I believe it's the Birchmeier website – you can find out if you were a party to the lawsuit, if your number had been called, or you could check your phone bills with certain numbers, and

7

that's how I ran down those numbers.

*Id.* at 28.

In and after the hearing before the Court, Ms. Exum offered additional evidence in support of her claim for 700 calls. Some of this amounted to evidence of good character. Ms. Exum also offered records to support the proposition, apparently contested by defendants, that she owned the relevant phone number during 2011-12. Most of the remaining exhibits that Ms. Exum has submitted consist of her communications with the claim administrator. At least one of these is offered, it appears, to support her claim that she sent annotated phone records to the administrator. Specifically, Ms. Exum cites her Exhibit B (dkt. no. 843, p. 2). This exhibit is an acknowledgment from the claim administrator, which appears to be a form letter of sorts, and which reads as follows:

> Mr./Ms. DAISY EXUM:
>
> You are receiving this email because you recently made a request for a telephonic hearing and/or submitted additional documents in support of your claim in the class action *Birchmeier et al v. Caribbean Cruise Line, Inc., et al.*, No. 12-cv-04069 (N.D. Ill.).
>
> We thank you for your patience with the claims process. There are a variety of legal issues that the attorneys have asked the Special Master to resolve, a process that will take at least several months. For those of you who requested a telephonic hearing, we will be in touch with you to schedule the hearing if and when that becomes necessary. We hope to have claims challenges resolved by the end of the year.

Exum Ex. B (dkt. 843).

Ms. Exum says that this e-mail "shows my request for a Telephonic Hearing along with acknowledgment of supporting documents." Exum suppl. submission (dkt. 845) at 1. The Court disagrees. The e-mail from the administrator says it was sent

because Ms. Exum made a request for a telephonic hearing, "and/or" submitted additional documents. And we know that Ms. Exum did make a request for a telephonic hearing. So the most that can be said with assurance about the administrator's e-mail is that it confirms that she requested a telephonic hearing. It does *not* confirm her submission of additional documents.

On the question of documentation, it is noteworthy that despite the fact that Ms. Exum has now known, for months, that the administrator has no supporting documents for her claims (i.e., it did not have her purported phone bills), Ms. Exum has not submitted, and has not been able to submit, further copies of those documents in support of her claim. Ms. Exum claimed that she kept copies, but she has never been able to locate them. Nor has she, apparently, been able to obtain them from her phone service provider or even attempted to do so. The only reasonable conclusion the Court can draw at this point is that Ms. Exum did not submit, and cannot produce, documentation that supports her claim for the 700 calls she asserts, the 250 calls awarded by the special master, or any other particular number of calls.

The Court believes that Ms. Exum is an honorable person, as supported by documents she has submitted. But her contention that she received 700 calls is not credible. As indicated, she is unable to document her contentions in any way. And her number of calls is admittedly an estimate to begin with. Indeed, if one takes her testimony about the relative frequency of calls as completely true, it makes her claimed number of calls an *extraordinarily generous* estimate. As estimates go, the one that Ms. Exum has offered as her claim lacks credence.

In addition, Ms. Exum's testimony about how she identified the calls she is

claiming suffers from a significant inconsistency, as the Court has described. On one occasion, she testified that she identified the calls by looking at phone numbers on the settlement website. More recently, she disavowed relying on those phone numbers and said she relied on the length of the calls as shown by her purported records. But that—virtually by her own admission—would not have permitted her to distinguish the subject calls from other robocalls that she received during the relevant period.

In addition, the claimant with the next highest number of calls awarded by the special master was able to support only thirty, and most of those awarded larger-than-the-default calls were awarded between ten and twenty. It does not stand to reason that Ms. Exum would have received *thirty-five to seventy times* as many calls as others. The most likely conclusion, and the one the Court adopts, is that Ms. Exum, like many Americans, received and receives a lot of robocalls but that her guesstimate erroneously puts all such calls she got from August 2011 to August 2012—whatever their source—into the Caribbean Cruise Line basket.

For these reasons, the Court rejects Ms. Exum's request for an award of 700 calls and respectfully overturns the special master's determination that Ms. Exum credibly supported a claim for 250 calls.[1]

The next question is how many calls the Court should award to Ms. Exum. Defendants say that the right answer is one. They rely on section 5.4 of the court-approved class settlement agreement, that says that all class members (with exceptions

---

[1] In one of Ms. Exum's submissions, she states that the defendants, at some earlier point, offered to settle with her for an award of 125 calls. But the Court may not consider this. Federal Rule of Evidence 408(a) bars use of a settlement offer to prove the validity or amount of a disputed claim.

not relevant here) "will have the ultimate burden if their Claim Form is challenged to demonstrate the number of calls, greater than one (1), that they received."  Class Settlement Agr. § 5.4.  Defendants also rely on section 5.5, which says, in part, that if a class member "does not timely submit the supplemental documentation or testify before the Special Master, the Special Master shall sustain the Defendants' challenge and the Settlement Class Member will have an Approved Claim for one (1) call."  *Id.* § 5.5. Section 5.5 goes on to say, however, that if a class member *does* testify before the special master—as Ms. Exum did—and a challenge by the defendants to a claim is sustained (as the Court has done), "the Settlement Class member will be permitted to recover for *at least* one (1) call."  *Id.* (emphasis added).

The Court does not find it appropriate to limit Ms. Exum to a single call.  There is no doubt in the Court's mind following consideration of her testimony that she received multiple calls covered by the class settlement.  Aside from her inability to support her claim with records, Ms. Exum has diligently pursued her claim, has testified twice, and has persuasively beat back defendants' contention that the phone number in question was not even hers.  The Court has concluded that she has not supported the very large claim that she proposed, or the award made by the special master, but it is appropriate to make an award to Ms. Exum within the range approved by the special master for other claimants who made claims for more than ten calls and proceeded to hearing. The Court hereby makes an award to Ms. Exum of fifteen calls, which is approximately in the middle of the approved range for class members who claimed more than ten calls.  The Court acknowledges that this is an estimate, but it is a reasonable and fair estimate based on the testimony and other evidence presented.  It is so ordered.

**Conclusion**

For the reasons stated above, the Court vacates the special master's award dated December 2, 2019 to the extent it awarded 250 calls to claimant Daisy Exum and hereby awards Ms. Exum fifteen calls.  Class counsel are directed to immediately provide a copy of this opinion to Ms. Exum and are to certify on the docket that they have done so.

Date:  July 22, 2020

_____
MATTHEW F. KENNELLY
United States District Judge